**EXHIBIT 2**

EXHIBIT A

**CT Corporation**

**Service of Process Transmittal**
05/12/2020
CT Log Number 537656571

| | |
|---|---|
| **TO:** | Michael Donaldson, General Counsel<br>EOG Resources, Inc.<br>1111 Bagby, Sky Lobby 2<br>Houston, TX 77002-4103 |
| **RE:** | **Process Served in New Mexico** |
| **FOR:** | EOG Resources, Inc.  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA, et al., Pltfs. vs. EOG RESOURCES, INC., DFT. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # D101CV202000899 |
| **NATURE OF ACTION:** | Wrongful Death |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Process Company, Hobbs, NM |
| **DATE AND HOUR OF SERVICE:** | By Courier on 05/12/2020 |
| **JURISDICTION SERVED :** | New Mexico |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/12/2020, Expected Purge Date: 05/22/2020<br><br>Image SOP<br><br>Email Notification,  Lisa Robichaux-Jones  lisa_robichaux-jones@eogresources.com<br><br>Email Notification,  Michael Donaldson  michael_donaldson@eogresources.com<br><br>Email Notification,  Michael Raab  michael_raab@eogresources.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Process Company<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201 |
| **For Questions:** | 866-665-5799<br>SouthTeam2@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



ORIGIN ID:LBBA (806) 776-1336
ERIKA SIMPSON
GLASHEEN, VALLES & INDERMAN LLP
1302 TEXAS AVENUE

LUBBOCK, TX 79401
UNITED STATES US

SHIP DATE: 08MAY20
ACTWGT: 0.50 LB
CAD: 2936108/INET4220

BILL SENDER

TO CORPORATION PROCESS COMPANY
EOG RESOURCES, INC.
726 EAST MICHIGAN, SUITE 330

HOBBS NM 88240
(111) 111-1111 REF: JAQUEZGARCIA 209708
INV:
PO: DEPT:

56BJ3/2925/FE4A

FedEx Express

E

FedEx
TRK# 0201 7704 2189 8830

WED - 13 MAY 12:00P
MORNING 2DAY

41 HOBA

88240
NM-US
LBB

D
B

FID: 831942 11May2020 LBBA 56C03/...

FedEx Ship Manager - Print Your Label(s)

Extremely Urgent

| **SUMMONS** | |
|---|---|
| First Judicial District Court<br>Santa Fe County, New Mexico<br>225 Montezuma Ave.<br>Santa Fe, NM 87501<br>Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2020-00899<br><br>Judge: Matthew Justin Wilson |
| TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA; and ESMERALDA RAMOS QUIRINO, on behalf of her minor child, A.J.J.R., Plaintiffs,<br><br>VS.<br><br>EOG RESOURCES, INC.,<br>Defendant. | Defendant Name:<br><br>EOG RESOURCES, INC.<br>C/O CORPORATION PROCESS COMPANY, REGISTERED AGENT<br>726 EAST MICHIGAN, SUITE 330<br>HOBBS, NM 88240 . |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached. The Court issued this Summons.

2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, May ___8___, 2020.

KATHLEEN VIGIL

CLERK OF THE COURT

By: _/s/ Jeanine Folato_____
      Deputy

Respectfully submitted,

_/s/ Chad Inderman_____

Chad Inderman

Pedro Leyva

GLASHEEN, VALLES, & INDERMAN, LLP

1302 Texas Avenue (79401)

P.O. Box 1976

Lubbock, Texas 79408

Tel: (806) 776-1331

Fax: (806) 329-0594

Email: efile.inderman@gvilaw.com

Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo

Jaramillo Law Firm, PC

505 Roma Ave. NW

Albuquerque, NM 87102

505-200-9454 (p)

505-717-1502 (f)

david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN

STATE OF _____   )

                                )ss

COUNTY OF _____   )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ County on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

*(check one box fill in appropriate blanks)*

[ ]    to the defendant _____ (used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____ (used when the defendant is not presently at place of abode ) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of this summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant_____ (used when defendant is a minor or an incompetent person).

[ ]    to _____, (name of person), _____, (title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).

Fees: _____

_____

Signature of Person making service

_____

Title (if any)

Subscribed and sworn to before me this _____ day of _____, 2020.

_____

Judge, notary or other officer

Authorized to administer oaths

_____

Official title

## USE NOTE

1. Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2. If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/6/2020 10:45 AM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
      Plaintiffs,

    Case assigned to Wilson, Matthew Justin

v.

    No.    D-101-CV-2020-00899

EOG RESOURCES, INC.,
      Defendant.

---

## COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

---

COME NOW Plaintiffs, Todd Lopez as Personal Representative of the Estate of Apolinar Jaquez Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child, A.J.J.R., complaining of EOG Resources, Inc., Defendant, and would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff Todd Lopez is a resident of Santa Fe, New Mexico and was appointed as the Personal Representative of the Estate of Apolinar Jaquez Garcia on April 3, 2020.

2. Plaintiff Cynthia Guereca is a resident of Texas and is the surviving spouse of Apolinar Jaquez Garcia, deceased.

3. Plaintiff A.J.J.R. is a resident of Juarez, Mexico and is the minor child of Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino.

4. Upon information and belief, at all times material hereto, Defendant EOG Resources, Inc. (hereinafter referred to as "Defendant EOG") was a foreign corporation registered to do business

---

in the State of New Mexico. Defendant EOG's principal place of business is in Texas. Defendant

EOG may be served with summons by serving its registered agent, Corporation Process Company

at 726 E. Michigan, Ste 330, Hobbs, NM 88240.

## II. JURISDICTION AND VENUE

5.      The allegations of the preceding and succeeding paragraphs are incorporated herein by this

reference.

6.      This Court has jurisdiction of this cause of action because the events and occurrences

giving rise to the death of Apolinar Jaquez Garcia occurred in the State of New Mexico.

7.      Additionally, venue is proper in Santa Fe County, New Mexico, as Todd Lopez, the

Personal Representative of the Estate of Apolinar Jaquez Garcia, resides and is domiciled in Santa

Fe, Santa Fe County, New Mexico. Therefore, jurisdiction and venue are proper in the District

Court of Santa Fe, Santa Fe County, New Mexico, pursuant to N.M.S.A. Section 38-3-1(A).

## III. GENERAL ALLEGATIONS

8.      The allegations of the preceding and succeeding paragraphs are incorporated herein by this

reference.

9.      Upon information and belief, on or about March 27, 2020, Defendant EOG contracted with

Apolinar Jaquez Garcia to transport fluid from one of their facilities to another.

10.     As Apolinar Jaquez Garcia was preparing to unload the fluid at Defendant EOG's Lomas

Reuse Facility, there was an explosion.

11.     Apolinar Jaquez Garcia was killed as a result of the explosion.

12.     Cynthia Guereca, A.J.J.R., and Alberto Apolinar Jaquez Ramos are the wrongful death

beneficiaries of Apolinar Jaquez Garcia.

## IV.  ALLEGATIONS AGAINST DEFENDANT EOG

13.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

### Negligence

14.     Defendant EOG had a duty to exercise the degree of care that a reasonably prudent person would use to avoid harm to others under circumstances similar to those described herein. Plaintiffs' injuries and damages were caused by Defendant EOG's negligent, careless, and reckless disregard of said duty.  Defendant EOG's breach of this duty consisted of, but is not limited to, the following acts and omissions:

       a.  In providing flammable and hazardous chemicals for transport;

       b.  In failing to inform Apolinar Jaquez Garcia of the flammable and hazardous nature of the chemicals he was transporting;

       c.  In failing to provide proper instruction to drivers transporting hazardous and flammable substances at their locations;

       d.  In providing a dangerous location at which to dispose of chemicals;

       e.  In failing to take reasonable precautions at their facility when having drivers unload flammable and hazardous substances;

       f.  In failing to warn Apolinar Jaquez Garcia of the potential of a fire and/or explosion;

       g.  Any additional manner revealed as discovery in this case progresses.

15.     Each of the foregoing acts or omissions of Defendant EOG, singularly or in combination with others, constituted negligence which was a proximate cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages.

### Punitive Damages

16.     Defendant EOG's conduct as stated above was intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico law justifying an award of punitive damages.

17.     Defendant EOG's employees, officers, principals and/or vice-principals were acting in the scope and course of their employment, and they had sufficient discretionary authority to speak and act for Defendant EOG with regard to the conduct at issue, independent of higher authority and were therefore, acting with managerial capacity.

18.     Each Plaintiff is entitled to an award of punitive damages against Defendant EOG.

## VI. COMPENSATORY DAMAGES

19.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

20.     Plaintiffs seek all damages to which they are justly entitled under New Mexico law in such amounts allowed by law and as determined by the fact finders in this case, as well as, any and all such other damages or other relief available under New Mexico law as determined appropriate by the Court.

### Wrongful Death of Apolinar Jaquez Garcia

21.     Plaintiffs' wrongful death claim is brought pursuant to the New Mexico Wrongful Death Statute, N.M.S.A., §41-2-1 (2013).

22.     As a result of the acts and/or omissions of Defendant, singularly or in combination, Apolinar Jaquez Garcia was killed.  Accordingly, the Estate of Apolinar Jaquez Garcia is entitled to an award of damages including, but not limited to, the following:

      a.     Reasonable expenses of funeral and burial costs;

      b.     The pain and suffering experienced by the decedent between the time of injury and death;

      c.     The value of lost earnings and earning capacity, and the value of the lost household services of the decedent;

      d.     The value of the decedent's life apart from her earning capacity;

e.     The loss to the beneficiaries of other expected benefits having a monetary value;

f.     Consideration of the mitigating or aggravating circumstances attending the wrongful act; and

g.     Any other actual or special damages in an amount to be proved at trial and as allowed by law.

### Loss of Consortium

23.     At all times material hereto, Cynthia Guereca was married to Apolinar Jaquez Garcia, deceased.

24.     Cynthia Guereca has lost the positive benefits flowing from her spousal relationship with Apolinar Jaquez Garcia.

25.     Plaintiff Cynthia Guereca is entitled to loss of consortium damages.

26.     At all times material hereto, Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino were the parents of A.J.J.R, a minor child.

27.     A.J.J.R. has lost the positive benefits flowing from her parental relationship with Apolinar Jaquez Garcia.

28.     Plaintiff A.J.J.R. is entitled to loss of consortium damages.

### VII.  PRAYER FOR RELIEF

29.     Plaintiffs pray for judgment in their favor and against Defendant for damages described herein; prejudgment and post-judgment interest at the highest rate allowed by law and from the earliest date allowed by law; if the evidence permits, an award of punitive damages against Defendant EOG; for costs of suit, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Chad Inderman*
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com
**ATTORNEYS FOR PLAINTIFFS**

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/6/2020 10:45 AM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
        Plaintiffs,

v.

EOG RESOURCES, INC.,
        Defendant.

**Case assigned to Wilson, Matthew Justin**

No. _____ D-101-CV-2020-00899

---

### PLAINTIFFS' JURY DEMAND

---

      COME NOW Plaintiffs, Todd Lopez as Personal Representative of the Estate of Apolinar

Jaquez Garcia, Cynthia Guereca, and Esmerelda Ramos Quirino, on behalf of her minor child,

A.J.J.R., by and through their attorneys of record, Glasheen, Valles & Inderman, LLP (Chad

Inderman, Pedro Leyva, and David Jaramillo), and hereby demand a trial by a jury of six (6)

persons of all issues so triable in the above captioned cause and hereby pay the required jury fee.

                         Respectfully submitted,

                         */s/ Chad Inderman*
                         Chad Inderman
                         Pedro Leyva
                         GLASHEEN, VALLES, & INDERMAN, LLP
                         1302 Texas Avenue (79401)
                         P.O. Box 1976
                         Lubbock, Texas 79408
                         Tel: (806) 776-1331
                         Fax: (806) 329-0594
                         Email: efile.inderman@gvilaw.com
                         Email: efile.pedro.leyva@gvilaw.com

                         And

---

*Todd Lopez, et al. v. EOG Resources, Inc.*
Plaintiffs' Jury Demand
                                                   Page 1 of 2

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

| **SUMMONS** |
|---|

| First Judicial District Court<br>Santa Fe County, New Mexico<br>225 Montezuma Ave.<br>Santa Fe, NM 87501<br>Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2020-00899<br><br>Judge: Matthew Justin Wilson |
|---|---|
| TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA; and ESMERALDA RAMOS QUIRINO, on behalf of her minor child, A.J.J.R., Plaintiffs,<br><br>VS.<br><br>EOG RESOURCES, INC., Defendant. | Defendant Name:<br><br>EOG RESOURCES, INC.<br>C/O CORPORATION PROCESS COMPANY, REGISTERED AGENT<br>726 EAST MICHIGAN, SUITE 330<br>HOBBS, NM 88240 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached. The Court issued this Summons.

2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, May ___8___, 2020.

KATHLEEN VIGIL

CLERK OF THE COURT

By: _Jeannine Flores_____

  Deputy

Respectfully submitted,

_/s/ Chad Inderman_____

Chad Inderman

Pedro Leyva

GLASHEEN, VALLES, & INDERMAN, LLP

1302 Texas Avenue (79401)

P.O. Box 1976

Lubbock, Texas 79408

Tel: (806) 776-1331

Fax: (806) 329-0594

Email: efile.inderman@gvilaw.com

Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo

Jaramillo Law Firm, PC

505 Roma Ave. NW

Albuquerque, NM 87102

505-200-9454 (p)

505-717-1502 (f)

david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF _____   )

                                      )ss

COUNTY OF _____   )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ County on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

*(check one box fill in appropriate blanks)*

[ ]   to the defendant _____ (used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)

[ ]   to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]   to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____ (used when the defendant is not presently at place of abode ) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of this summons and complaint.

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[ ]   to _____, an agent authorized to receive service of process for defendant _____.

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant_____ (used when defendant is a minor or an incompetent person).

[ ]   to _____, (name of person), _____, (title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).

Fees: _____

_____

Signature of Person making service

_____

Title (if any)

Subscribed and sworn to before me this _____ day of _____, 2020.

_____

Judge, notary or other officer

Authorized to administer oaths

_____

Official title

## USE NOTE

1. Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2. If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/6/2020 10:45 AM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
      Plaintiffs,

**Case assigned to Wilson, Matthew Justin**

v.

No.   D-101-CV-2020-00899

EOG RESOURCES, INC.,
      Defendant.

---

## COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

---

COME NOW Plaintiffs, Todd Lopez as Personal Representative of the Estate of Apolinar Jaquez Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child, A.J.J.R., complaining of EOG Resources, Inc., Defendant, and would respectfully show the Court as follows:

### I. PARTIES

1.    Plaintiff Todd Lopez is a resident of Santa Fe, New Mexico and was appointed as the Personal Representative of the Estate of Apolinar Jaquez Garcia on April 3, 2020.

2.    Plaintiff Cynthia Guereca is a resident of Texas and is the surviving spouse of Apolinar Jaquez Garcia, deceased.

3.    Plaintiff A.J.J.R. is a resident of Juarez, Mexico and is the minor child of Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino.

4.    Upon information and belief, at all times material hereto, Defendant EOG Resources, Inc. (hereinafter referred to as "Defendant EOG") was a foreign corporation registered to do business

in the State of New Mexico. Defendant EOG's principal place of business is in Texas. Defendant

EOG may be served with summons by serving its registered agent, Corporation Process Company

at 726 E. Michigan, Ste 330, Hobbs, NM 88240.

## II. JURISDICTION AND VENUE

5.      The allegations of the preceding and succeeding paragraphs are incorporated herein by this

reference.

6.      This Court has jurisdiction of this cause of action because the events and occurrences

giving rise to the death of Apolinar Jaquez Garcia occurred in the State of New Mexico.

7.      Additionally, venue is proper in Santa Fe County, New Mexico, as Todd Lopez, the

Personal Representative of the Estate of Apolinar Jaquez Garcia, resides and is domiciled in Santa

Fe, Santa Fe County, New Mexico. Therefore, jurisdiction and venue are proper in the District

Court of Santa Fe, Santa Fe County, New Mexico, pursuant to N.M.S.A. Section 38-3-1(A).

## III. GENERAL ALLEGATIONS

8.      The allegations of the preceding and succeeding paragraphs are incorporated herein by this

reference.

9.      Upon information and belief, on or about March 27, 2020, Defendant EOG contracted with

Apolinar Jaquez Garcia to transport fluid from one of their facilities to another.

10.     As Apolinar Jaquez Garcia was preparing to unload the fluid at Defendant EOG's Lomas

Reuse Facility, there was an explosion.

11.     Apolinar Jaquez Garcia was killed as a result of the explosion.

12.     Cynthia Guereca, A.J.J.R., and Alberto Apolinar Jaquez Ramos are the wrongful death

beneficiaries of Apolinar Jaquez Garcia.

## IV. ALLEGATIONS AGAINST DEFENDANT EOG

13.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

### Negligence

14.     Defendant EOG had a duty to exercise the degree of care that a reasonably prudent person would use to avoid harm to others under circumstances similar to those described herein. Plaintiffs' injuries and damages were caused by Defendant EOG's negligent, careless, and reckless disregard of said duty. Defendant EOG's breach of this duty consisted of, but is not limited to, the following acts and omissions:

  a.  In providing flammable and hazardous chemicals for transport;

  b.  In failing to inform Apolinar Jaquez Garcia of the flammable and hazardous nature of the chemicals he was transporting;

  c.  In failing to provide proper instruction to drivers transporting hazardous and flammable substances at their locations;

  d.  In providing a dangerous location at which to dispose of chemicals;

  e.  In failing to take reasonable precautions at their facility when having drivers unload flammable and hazardous substances;

  f.  In failing to warn Apolinar Jaquez Garcia of the potential of a fire and/or explosion;

  g.  Any additional manner revealed as discovery in this case progresses.

15.     Each of the foregoing acts or omissions of Defendant EOG, singularly or in combination with others, constituted negligence which was a proximate cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages.

### Punitive Damages

16.     Defendant EOG's conduct as stated above was intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico law justifying an award of punitive damages.

---

17.     Defendant EOG's employees, officers, principals and/or vice-principals were acting in the scope and course of their employment, and they had sufficient discretionary authority to speak and act for Defendant EOG with regard to the conduct at issue, independent of higher authority and were therefore, acting with managerial capacity.

18.     Each Plaintiff is entitled to an award of punitive damages against Defendant EOG.

## VI.  COMPENSATORY DAMAGES

19.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

20.     Plaintiffs seek all damages to which they are justly entitled under New Mexico law in such amounts allowed by law and as determined by the fact finders in this case, as well as, any and all such other damages or other relief available under New Mexico law as determined appropriate by the Court.

### Wrongful Death of Apolinar Jaquez Garcia

21.     Plaintiffs' wrongful death claim is brought pursuant to the New Mexico Wrongful Death Statute, N.M.S.A., §41-2-1 (2013).

22.     As a result of the acts and/or omissions of Defendant, singularly or in combination, Apolinar Jaquez Garcia was killed.  Accordingly, the Estate of Apolinar Jaquez Garcia is entitled to an award of damages including, but not limited to, the following:

      a.     Reasonable expenses of funeral and burial costs;

      b.     The pain and suffering experienced by the decedent between the time of injury and death;

      c.     The value of lost earnings and earning capacity, and the value of the lost household services of the decedent;

      d.     The value of the decedent's life apart from her earning capacity;

e.    The loss to the beneficiaries of other expected benefits having a monetary value;

f.    Consideration of the mitigating or aggravating circumstances attending the wrongful act; and

g.    Any other actual or special damages in an amount to be proved at trial and as allowed by law.

### Loss of Consortium

23.    At all times material hereto, Cynthia Guereca was married to Apolinar Jaquez Garcia, deceased.

24.    Cynthia Guereca has lost the positive benefits flowing from her spousal relationship with Apolinar Jaquez Garcia.

25.    Plaintiff Cynthia Guereca is entitled to loss of consortium damages.

26.    At all times material hereto, Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino were the parents of A.J.J.R, a minor child.

27.    A.J.J.R. has lost the positive benefits flowing from her parental relationship with Apolinar Jaquez Garcia.

28.    Plaintiff A.J.J.R. is entitled to loss of consortium damages.

### VII. PRAYER FOR RELIEF

29.    Plaintiffs pray for judgment in their favor and against Defendant for damages described herein; prejudgment and post-judgment interest at the highest rate allowed by law and from the earliest date allowed by law; if the evidence permits, an award of punitive damages against Defendant EOG; for costs of suit, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Chad Inderman*
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com
**ATTORNEYS FOR PLAINTIFFS**

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/6/2020 10:45 AM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
     Plaintiffs,

                                    Case assigned to Wilson, Matthew Justin

v.

                                   No.   D-101-CV-2020-00899

EOG RESOURCES, INC.,
     Defendant.

---

### PLAINTIFFS' JURY DEMAND

     COME NOW Plaintiffs, Todd Lopez as Personal Representative of the Estate of Apolinar

Jaquez Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child,

A.J.J.R., by and through their attorneys of record, Glasheen, Valles & Inderman, LLP (Chad

Inderman, Pedro Leyva, and David Jaramillo), and hereby demand a trial by a jury of six (6)

persons of all issues so triable in the above captioned cause and hereby pay the required jury fee.

                               Respectfully submitted,

                               */s/ Chad Inderman*
                               Chad Inderman
                               Pedro Leyva
                               GLASHEEN, VALLES, & INDERMAN, LLP
                               1302 Texas Avenue (79401)
                               P.O. Box 1976
                               Lubbock, Texas 79408
                               Tel: (806) 776-1331
                               Fax: (806) 329-0594
                               Email: efile.inderman@gvilaw.com
                               Email: efile.pedro.leyva@gvilaw.com

                               And

---

*Todd Lopez, et al. v. EOG Resources, Inc.*
Plaintiffs' Jury Demand
                                                         Page 1 of 2

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

| **SUMMONS** | |
|---|---|
| First Judicial District Court<br>Santa Fe County, New Mexico<br>225 Montezuma Ave.<br>Santa Fe, NM 87501<br>Court Telephone No.: (505) 455-8250 | Case Number: D-101-CV-2020-00899<br><br>Judge: Matthew Justin Wilson |
| TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA; and ESMERALDA RAMOS QUIRINO,<br>on behalf of her minor child, A.J.J.R.,<br>Plaintiffs,<br><br>VS.<br><br>EOG RESOURCES, INC.,<br>Defendant. | Defendant Name:<br><br>EOG RESOURCES, INC.<br>C/O CORPORATION PROCESS COMPANY, REGISTERED AGENT<br>726 EAST MICHIGAN, SUITE 330<br>HOBBS, NM 88240 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached. The Court issued this Summons.

2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, May ____8____, 2020.

KATHLEEN VIGIL

CLERK OF THE COURT

By: _____

    Deputy

Respectfully submitted,

_/s/ Chad Inderman_____

Chad Inderman

Pedro Leyva

GLASHEEN, VALLES, & INDERMAN, LLP

1302 Texas Avenue (79401)

P.O. Box 1976

Lubbock, Texas 79408

Tel: (806) 776-1331

Fax: (806) 329-0594

Email: efile.inderman@gvilaw.com

Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo

Jaramillo Law Firm, PC

505 Roma Ave. NW

Albuquerque, NM 87102

505-200-9454 (p)

505-717-1502 (f)

david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**

STATE OF __TEXAS_____   )

                                  )ss

COUNTY OF __LUBBOCK_____   )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in ___Hobbs, Lea_____ County on the _12th_ day of _____May_____, _2020__, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

***(check one box fill in appropriate blanks)***

[ ]   to the defendant _____ (used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)

[X]   to the defendant by ~~[mail]~~ [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]   to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____(used when the defendant is not presently at place of abode ) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of this summons and complaint.

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing  by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[ ]   to _____, an agent authorized to receive service of process for defendant

_____.

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant_____ (used when defendant is a minor or an incompetent person).

[ ]   to _____, (name of person), _____, (title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).

Fees: _____

_____

Signature of Person making service

_____

Title (if any)

Subscribed and sworn to before me this __12th__ day of _____May_____, 2020.

_____

Judge, notary or other officer

Authorized to administer oaths

Notary Public

Official title

USE NOTE

1. Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2. If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

**Erika Simpson**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Tuesday, May 12, 2020 12:20 PM |
| **To:** | Erika Simpson |
| **Subject:** | FedEx Shipment 770421898830 Delivered |

# Your package has been delivered

## Tracking # 770421898830

Ship date:
Mon, 5/11/2020

Erika Simpson
Glasheen, Valles & Inderman
LLP
LUBBOCK, TX 79401
US



Delivered

Delivery date:
Tue, 5/12/2020 11:18
am

CORPORATION PROCESS
COMPANY
EOG RESOURCES, INC.
726 EAST MICHIGAN, SUITE
330
HOBBS, NM 88240
US



## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 770421898830 |
| Status: | Delivered: 05/12/2020 11:18 AM Signed for By: A.FALSEMAN |
| Reference: | JAQUEZGARCIA 209708 |
| Signed for by: | A.FALSEMAN |
| Delivery location: | HOBBS, NM |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx 2Day® AM |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |
| Standard transit: | 5/13/2020 by 12:00 pm |

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
6/11/2020 3:34 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA**
**GUERECA; and ESMERALDA RAMOS QUIRINO,**
**on behalf of her minor child, A.J.J.R**

        **Plaintiff,**

**v.**                                            **No. D-101-CV-2020-00899**

**EOG RESOURCES, INC.,**

        **Defendant.**

### DEFENDANT EOG RESOURCES, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

Defendant EOG Resources, Inc. ("EOG") answers Plaintiffs' Complaint for Wrongful Death and Loss of Consortium ("Complaint") as follows:

**I.**        **Parties**

    1.    EOG does not have sufficient information to admit or deny the averments contained in Paragraph 1.

    2.    EOG does not have sufficient information to admit or deny the averments contained in Paragraph 2.

    3.    EOG does not have sufficient information to admit or deny the averments contained in Paragraph 3.

    4.    EOG admits the averments contained in Paragraph 4.

## II.      Jurisdiction and Venue

5.      Paragraph 5 contains a general incorporation of factual allegations, and EOG therefore incorporates by reference its responses to Paragraphs 1-4 above.

6.      Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, EOG denies the averments contained in Paragraph 6.

7.       Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, EOG denies the averments contained in Paragraph 7.

## III.     General Allegations

8.      Paragraph 8 contains a general incorporation of factual allegations, and EOG therefore incorporates by reference its responses to Paragraphs 1-7 above.

9.      EOG denies the averments contained in Paragraph 9.

10.     EOG admits that there was an explosion at the Lomas Rojas Reuse Water Pit. EOG does not have sufficient information to admit or deny the remaining averments contained in Paragraph 10.

11.     EOG admits that the Decedent was killed. EOG does not have sufficient information to admit or deny the remaining averments in Paragraph 11.

12.      EOG does not have sufficient information to admit or deny the averments contained in Paragraph 12.

## IV.     Allegations Against Defendant EOG

13.     Paragraph 13 contains a general incorporation of factual allegations, and EOG therefore incorporates by reference its responses to Paragraphs 1-12 above.

14.      EOG denies the averments contained in Paragraph 14, including subparts (a)-(g).

15.     EOG denies the averments contained in Paragraph 15.

16.     EOG denies the averments contained in Paragraph 16. EOG further denies that Plaintiffs are entitled to the damages requested in Paragraph 16.

17.     EOG denies the averments contained in Paragraph 17.

18.     EOG denies that Plaintiffs are entitled to the damages requested in Paragraph 18.

**VI.     Compensatory Damages**

19.     Paragraph 19 contains a general incorporation of factual allegations, and EOG therefore incorporates by reference its responses to Paragraphs 1-18 above.

20.     EOG denies that Plaintiffs are entitled to the damages requested in Paragraph 20.

21.     EOG admits that Plaintiffs have asserted a wrongful death claim pursuant to the New Mexico Wrongful Death Statute, N.M.S.A. § 41-2-1 (2013), as stated in Paragraph 21. EOG denies all remaining averments contained in Paragraph 21.

22.      EOG denies the averments contained in Paragraph 22, including subparts (a)-(g). EOG further denies that Plaintiffs are entitled to the damages requested in Paragraph 22.

23.     EOG does not have sufficient information to admit or deny the averments contained in Paragraph 23.

24.     EOG does not have sufficient information to admit or deny the averments contained in Paragraph 24.

25.     EOG denies that Plaintiffs are entitled to the damages requested in Paragraph 25.

26.     EOG does not have sufficient information to admit or deny the averments contained in Paragraph 26.

27.     EOG does not have sufficient information to admit or deny the averments contained in Paragraph 27.

28.     EOG denies that Plaintiffs are entitled to the damages requested in Paragraph 28.

## VII.   Prayer for Relief

29.   EOG denies that Plaintiffs are entitled to the relief requested in Paragraph 29.

30.   EOG denies each and every allegation that is not specifically admitted herein.

### AFFIRMATIVE DEFENSES

A.   The Complaint fails to state a claim for which relief may be granted

B.   The incident in question and any resulting injuries or damages were the result of negligent acts and/or omissions of others beyond EOG's control, whose acts or omissions were a proximate cause, producing cause, sole proximate cause, or sole producing cause of the incident in question and any resulting injuries or damages. In the unlikely event that any liability is found on the part of EOG, such liability should be reduced by the percentage of the causation found to have resulted from the acts or omissions of others.

C.   The incident and alleged damages in question set forth in the Complaint were caused, in whole or in part, by acts or omissions of a separate independent agency, not reasonably foreseeable, that destroyed any causal connection between the alleged acts or omissions of EOG and the injury complained of, thus becoming an intervening, superseding cause of the incident and/or alleged injuries.

D.   The incident and alleged damages in question set forth in the Complaint were caused, in whole or in part, by a third-party's conduct.

E.   Plaintiffs' damages, if any, were caused in whole or in part by the Decedent's acts or omissions.

F.   Plaintiffs failed to mitigate their damages.

G.     EOG denies that its actions were intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico Law, and denies that Plaintiffs are entitled to exemplary or punitive damages of any nature against EOG.

H.     EOG asserts that in the unlikely event that Plaintiffs are awarded any amount for damages attributable to their claims, EOG is entitled to the protections and/or a reduction in damages under any and all applicable proportionate responsibility and contribution statutes. To the extent Plaintiffs' purported damages were proximately and/or otherwise caused by the fault of the Decedent and/or the acts or omissions of others for whom EOG is not responsible, Plaintiffs' recovery should therefore be barred or reduced in accordance with applicable law.

I.     *Inadequate Procedural Protections against an Arbitrary or Erroneous Award.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages. A state may constitutionally award punitive damages only if the law of that state provides significant and effective procedural protections to defendants, and the law of this State does not. [*See Phillip Morris USA v. Williams*, 549 U.S. 346, 352, 127 S. Ct. 1057, 1062 (2007) (holding that "the Constitution imposes certain limits" regarding "procedures for awarding punitive damages," including requiring states to  implement "proper standards that will cabin the jury's discretionary authority" and "avoid an arbitrary determination of an award's amount"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-417, 123 S. Ct. 1513, 1519-1520 (2003) ("It is well established that there are procedural . . . constitutional limitations on [punitive damages] awards . . . .. Although these awards serve the same purposes as criminal penalties,

defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding. This increases our concerns over the imprecise manner in which punitive damages systems are administered.")].

J.      *Lack of Fair Notice.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because EOG lacked adequate notice either of the type of conduct that could warrant an award of punitive damages under the law of this State, or of the amount of such damages that could be awarded. The lack of fair notice bars any award of punitive damages. [*Phillip Morris USA v. Williams*, 549 U.S. 346, 127 S. Ct. 1057, 1059 (2007) (holding "unless a State insists upon proper standards that will cabin the jury's discretionary authority, its punitive damages system may deprive a defendant of 'fair notice of the severity of the penalty that a State may impose,'" thus violating due process); *BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 574-576, 116 S. Ct. 1589, 1598 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to a penalty, but also of the severity of the penalty that a State may impose."); *accord State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520 (2003).].

K.      *No Relationship to Civil Fines or Penalties.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because due process requires that any award of punitive damages bear a close relationship to appropriate civil fines or penalties established by the legislature, or by administrative agencies under authority delegated by the legislature. *BMW of N. Am, Inc. v. Gore,*

517 U.S. 559, 583-84, 116 S. Ct. 1589, 1603 (1996). The law of this State, however, fails to incorporate this due process requirement, and therefore no award of punitive damages may be constitutionally made under the law of this State.

L.   *Discrimination against Nonresident Corporate Defendant.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because punitive damages, as awarded in this State, impermissibly discriminate against corporate defendants, including EOG in this case, that are organized under the laws of other states and that maintain their principal places of business in other states. *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) (noting risk "that jurors will use their verdicts to express biases against big businesses, particularly those without strong local presences").

M.   *Extraterritorial Conduct.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1), by the Commerce Clause of the United States Constitution (Article I, § 8, cl. 3), and by principles of federalism embodied in the Constitution, to the extent that any claim is based on any conduct by  EOG that occurred outside this State. No legitimate interest of this State can be served by the imposition of punitive damages based on conduct that occurred outside this State; therefore, the limitations on state power in the Due Process and Commerce Clauses prohibit any award of punitive damages based on such conduct. [*See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409, 123 S. Ct. 1513, 1516 (2003) ("State cannot punish a defendant for conduct that may have been lawful where it occurred. Nor, as a general rule, does a State have a legitimate constitutional interest in imposing punitive damages to punish a defendant for unlawful acts

7

committed outside of its jurisdiction.") (internal citations omitted); *see also Phillip Morris USA v. Williams*, 549 U.S. 346, 347, 127 S. Ct. 1057, 1059 (2007) (holding that, because of the risk that punitive damages awards can, in practice, impose one State's (or one jury's) policies . . . upon other States . . . "it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance"); *Healy v. Beer Inst.*, 491 U.S. 324, 336, 109 S. Ct. 2491, 2499 (1989) (noting that "Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"); *Alaska Packers Ass'n v. Indus. Accident Comm'n*, 294 U.S. 532, 540-41, 55 S. Ct. 518, 521 (1935) (state lacks authority "to control the legal consequences of a tortious act committed elsewhere"); *Bonaparte v. Tax Court,* 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction.").].

N.     *Evidence of EOG's Financial Condition ("Net Worth" Evidence).* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State permits the introduction of evidence of EOG's financial condition [or "net worth"] with respect to the quantum of punitive damages. The introduction of such evidence violates Due Process by inviting the jury to award an arbitrary amount of punitive damages based on EOG's status as an industrial enterprise. [*Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) ("the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences").].

O.     *Excessive Fines.* Plaintiffs' claim for punitive damages is barred by the Excessive Fines Clause of the United States Constitution (Amendment VIII). The law of this State requires that a portion of any award of punitive damages be paid to the State and, therefore, an award of

punitive damages constitutes a "fine" subject to the Excessive Fines Clause. Under the circumstances of this case, any amount of punitive damages would be excessive and in violation of the Excessive Fines Clause.

P.    *Insufficient Nexus between EOG's Conduct and Alleged Harm.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because EOG's conduct that is alleged to warrant punitive damages is unrelated to Plaintiffs' harm. Punitive damages may not be awarded to punish and deter conduct that bears no relation to the plaintiff's harm. [*Phillip Morris USA v. Williams*, 549 U.S. 346, 353, 127 S. Ct. 1057, 1063 (2007) (holding that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23, 123 S. Ct. 1513, 1523 (2003) (holding "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); and *id.* at 423 (holding that "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis").].

Q.    State Farm v. Campbell *Reprehensibility Factors.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, each of the five reprehensibility factors set out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538

U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

   R. State Farm v. Campbell *Single-Digit Ratio.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the constitutional factors that govern the permissible ratio of punitive damages to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (holding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

   S. State Farm v. Campbell/BMW v. Gore *Civil Fines Comparison.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, §  18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the comparable civil fine that could be imposed on the defendant[s] for the conduct in question. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 123 S. Ct. 1513, 1531 (2003)

(holding that civil fines are more appropriate benchmarks for punitive damages than criminal penalties); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996) (holding that courts "should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."); (O'Connor, J., concurring in part and dissenting in part) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S. Ct. 2909, 2934 (1989)); *Clark v. Chrysler Corp.,* 436 F. 3d 594, 607 (6th Cir. 2006) (rejecting potential for punitive damages award as a basis for comparison in favor of potential civil penalties under applicable federal statute). Such specific jury instructions and specific findings of fact on the comparable civil penalties are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

T.     Phillip Morris v. Williams / State Farm v. Campbell *Relationship Test.* Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the direct relationship between EOG's conduct and the specific injury suffered by Plaintiffs. *Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057, 1064 (2007) (holding that "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003) (holding that "[D]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the

reprehensibility analysis."). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001), to ensure that the award is based solely on the conduct that caused specific injury to the plaintiff[s].

U.      State Farm v. Campbell *"Double-Counting" Issue*. Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the exclusion of all items of compensatory damage from the quantum of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 1525 (2003) (noting that "[t]he compensatory damages for the injury suffered here . . . likely were based on a component that was duplicated in the punitive award"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424 (2001), to ensure that items of compensatory damages are not impermissibly 'double-counted' in the quantum of punitive damages.

V.      EOG pleads any and all applicable statutory limits on punitive damages.

W.      EOG reserves the right to amend its affirmative defenses as more information is learned through investigation and discovery.

**PRAYER**

WHEREFORE, Defendant EOG Resources, Inc. respectfully requests that the Court, upon trial, enter judgment that Plaintiffs take nothing by their claims, and award Defendant all such other relief, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

**HOLLAND & HART LLP**

By: ___*/s/ Bradford C. Berge*_____
　　　Bradford C. Berge
　　　Judd C. West
　　　Julia Broggi
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

-and-

**MEHAFFYWEBER**

By: ___*/s/ Michael W. Magee*_____
　　　Michael W. Magee
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas  77002
Telephone: (713) 210-8955
Facsimile: (713) 655-0222
michaelmagee@mehaffyweber.com

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed on June 11, 2020, via Odyssey File & Serve, causing all counsel of record to be served via electronic mail, including the following:

Chad Inderman
Pedro Leyva
Glasheen, Valles & Inderman, LLP
PO Box 1976
Lubbock, Texas 79408
Efile.inderman@gvilaw.com
Efile.pedro.leyva@gvilaw.com

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
david@djnmlaw.com


*/s/ Bradford C. Berge*
Bradford C. Berge


14814956_v1

14

EXHIBIT D

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
9/8/2020 8:44 AM
KATHLEEN VIGIL CLERK OF THE COURT
Leah Baldonado

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA;**          **D-101-CV-2020-00899**
**CYNTHIA GUERECA; and ESMERALDA**              **Judge Matthew J. Wilson**
**RAMOS QUIRINO, on behalf of her minor child,**
**A.J.J.R.**
          **Plaintiffs,**

**v.**

**EOG RESOURCES, INC.,**
          **Defendant.**

<u>**RULE 16(B) SCHEDULING ORDER**</u>
<u>**JURY**</u>

Pursuant to Rule 1-016(B), NMRA, the Court herewith establishes the following schedule

governing this case:

1.    **MEDIATION/SETTLEMENT CONFERENCE DEADLINE.** The parties shall

conduct a mediation or settlement conference on or before **<u>December 31, 2020,</u>** unless the parties

have already completed a mediation or settlement conference.  This deadline may <u>not</u> be extended by

agreement of counsel and will only be extended by Court Order for truly exceptional circumstances.

Counsel shall complete the discovery necessary for good faith settlement discussions in advance of

the mediation or settlement conference.  Counsel shall either file a Request for Referral to Settlement

Conference for a referral to a qualified settlement facilitator through the Court's Alternative Dispute

Resolution ("ADR") Program, or they may make their own arrangements for a private mediator or

settlement facilitator.  An information sheet with directions for using the Court's ADR Program is

attached.    Within five days of the mediation or settlement conference, counsel or the

mediator/settlement facilitator shall file a Certificate of Compliance to report on the outcome of the

settlement conference.

2. **JOINDER OF PARTIES.**   Additional parties shall not be joined unless otherwise ordered by the Court.  If additional parties are joined, such joinder must occur in a sufficiently timely manner so that the Mediation/Settlement Conference deadline and trial setting are not affected.

3. **AMENDMENT OF PLEADINGS.**  Motions to Amend the Complaint or Answer will be filed within **four (4) weeks of the date of entry of this Order,** unless otherwise ordered by the Court.

4. **MOTIONS.**  Motions addressed to the pleadings (e.g. motions under Rule 1-012(B), (D), (E), or (F) NMRA) shall be filed **within eight (8) weeks of the date of entry of this Order**, unless otherwise ordered by the Court.  Motions for Summary Judgment pursuant to Rule 1-056 NMRA and motions to exclude expert testimony, including *Daubert-Alberico* motions, shall be filed no later than **June 07, 2021** unless otherwise ordered by the Court.  **All motions will be submitted to the Court via email to sfeddiv9proposedtxt@nmcourts.gov pursuant to the motion package rule in L.R. 1-201(D).**

5. **DISCOVERY.**  The time to complete discovery ends **May 24, 2021**, unless otherwise ordered by the Court.  Discovery requests shall be served in sufficient time to allow response before the close of the discovery period.  Motions to compel are due no later than **five business days after the close of discovery.**  Counsel may not by agreement extend this due date.  Failure to provide the motion package on motions to compel within 30 days of the discovery deadline set forth herein may result in the trial setting being vacated.

6. **WITNESSES.**  The parties shall file a list of expert witnesses expected to testify at trial on or before the dates set forth below:

**Plaintiff's expert(s) –**           **March 29, 2021**

**Defendant's Experts –**        <u>**April 26, 2021.**</u>

At the time the expert witnesses are identified, the party presenting the expert witness shall provide to all other parties the following:  1) a current *curriculum vita* of the expert; 2) a written summary of the opinions and the bases therefor that the expert will present at trial; and 3) any written reports that have been prepared by the expert.

The parties shall file a list of all non-expert witnesses expected to testify at trial on or before <u>**March 01, 2021.**</u>.

7. **EXHIBITS.**  The parties shall file a list of all exhibits expected to be submitted at trial no later than **four (4) weeks before Docket Call**.  Parties will file and present a copy to the Court of an exhibit list that contains the exhibits numbered as they will be introduced at trial, identified by name or description, and with three columns to indicate "tendered," "admitted," "objection." Plaintiff will number exhibits  Plaintiff's Exhibit P - #; Defendant will number exhibits Defendant's Exhibit D - # (Defendant will not use letters). If there are more than one party per side, then each party will number exhibits with the first letter of the lead party on that side, e.g. if there are two plaintiffs – Brown and Martinez – Brown's exhibits will be marked: Plaintiff's Exhibit B - # and Martinez's exhibits will be marked Plaintiff's Exhibit M - #. Within five working days of service of a party's exhibit list, any party objecting to authenticity shall file written notice of objection.

8. **WITNESSES.**  The parties shall file a final list of witnesses expected to testify at trial no later than **four (4) weeks before Docket Call.**  Witnesses should be listed as may-call or will-call witnesses. All witnesses should be listed except for rebuttal witnesses, the need for whose testimony cannot reasonably be anticipated.

9. **DEPOSITION DESIGNATIONS.**  The parties shall submit page and line designation of

all depositions that each party intends to present at trial **four (4) weeks before Docket Call.** A party shall file objections to the other party's designations and counter-designations **three (3) weeks before Docket Call. If counsel cannot agree on the deposition designations, the proponent of the deposition shall submit to the Court the deposition with page and lines indicated and the objections seven days before the Docket Call.**

10. **MOTIONS IN LIMINE.** Motions *in limine*, except for *Daubert/Alberico* motions shall be filed on or before **six weeks before Docket Call. Responses must be filed four weeks before the Docket Call. No reply briefs are required, and movant must submit the package to the Court four weeks before the Docket Call.** Counsel are reminded that motions in limine are not to be used for matters which are properly addressed in motions for summary judgment or motions to exclude expert testimony. Motions in Limine are to address specific items of evidence or argument, not general propositions.

11. **PRE-TRIAL CONFERENCE.** The pre-trial conference mandated by Rule 1-016(C) NMRA shall be held **September 20, 2021, at 9:00 a.m.** at the **Judge Steve Herrera Judicial Complex, 225 Montezuma Avenue, Santa Fe, New Mexico**. Trial counsel must attend the pre-trial conference.

12. **PRE-TRIAL ORDER.** Plaintiff shall prepare plaintiff's portion of the Pre-Trial Order and submit it to opposing counsel no later than **the date of the pre-trial conference**. Opposing counsel shall file the Pre-Trial Order no later than **two (2) weeks after the pre-trial conference**.

13. **JURY INSTRUCTIONS.** Jury instructions shall be filed and presented to the Court in three packets. One packet shall consist of those instructions which are stipulated to by both parties. A second packet shall consist of the Plaintiff's additional proposed instructions. The third packet shall consist of the Defendant's additional proposed instructions. All proposed jury instructions shall

be filed on or before **seven days before Docket Call**.

14. **TRIAL/DOCKET CALL.** Trial of this matter is set for a trailing docket on

<u>October 25, 2021 at 8.30 A.M.</u>, at the Judge Steve Herrera Judicial Complex, 225 Montezuma

Avenue, Santa Fe, New Mexico. At that time, attorneys and parties must appear for case scheduling

and jury selection. **Because the trial date has been set either by agreement of counsel or by the**

**Court at the Scheduling Conference, the trial date will not be continued except in truly**

**exceptional circumstances.** The Court will attempt to work around scheduling conflicts within the

trial docket; however, counsel should arrange to have co-counsel or substitute counsel available to

try the case if such conflicts cannot be resolved.

**IT IS SO ORDERED.**

9/4/20

**Matthew J. Wilson**
**District Judge, Division 9**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that copies of this order were e-served on the date of acceptance for e-filing to counsel who registered for e-service as required by the rules and mailed to pro se parties, if any to:

Victoria Martinez
Court Monitor

Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART, LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
505-988-4421

505-983-6043
bberge@hollandhart.com
jewest@hollandhart.com
jbroggi@hollandhart.com

And


Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, TX 77002
713-210-8955
713-655-0222
michaelmagee@mehaffyweber.com

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

## HOW TO USE THE COURT'S ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAM TO REQUEST A REFERRAL TO SETTLEMENT CONFERENCE

1.      Let the Court know you want a settlement conference. If you were referred to a settlement conference by a judge's scheduling order, you must still follow this procedure.  This procedure is also used to request a referral to foreclosure mediation.

a.          **Obtain the proper forms:** get them from the Self Help Center or from the ADR Office: call 505.455.8146 or email:  sfedselfserv@nmcourts.gov.   You can also download the forms from the Court's website:  http://firstdistrictcourt.com.  Use *only* these forms; *do not* make up your own forms.

*If you want the Court to assign a Settlement Facilitator from the Court's list:*  Obtain a Request for Referral to Settlement Conference form.  Complete the form.  Settlement Facilitators on the Court's list are attorneys with at least 5 years of experience in the subject matter area who have mediation training and experience.

*If you and the other party have agreed on a Settlement Facilitator (who may be, but is not required to be, a person on the Court's list) and just need a Referral Order,* obtain a "Stipulated Request for Referral to Settlement Conference".  Complete the form.

Then make enough **copies** of the Request for Referral to Settlement Conference for yourself, the judge, the ADR Office, and all the parties.  Make 2 sets of self-addressed, stamped **envelopes** to provide copies of the Request and the Referral Order to all parties or their attorneys.

b.          Then **file the Request in the Court Clerk's office**.

> Effective July 1, 2015 all **attorneys are required to efile all pleadings**.  If you are a Court appointed attorney for Settlement Facilitation, you do not have to pay a fee for efiling Certificates of Compliance, Notices of Non-Compliance, or Requests for Replacement Settlement Facilitator.  Individual attorneys must set up their own accounts to waive filing fees for these cases.  Under the firm admin tab in the Odyssey File and Serve page, set up an account with a name, such as OBO State of NM or Court Appointee, and as a waiver account.  When you are submitting something to be efiled, you will select the "waiver account".   If you have questions about efiling, please contact Tyra J. Martinez at 505.455.8200 or sfedtjm@nmcourts.gov.

> ***Pro se parties:*** **file the Request in the Court Clerk's office** The Clerk's office will keep the original.  Ask the filing clerk to endorse (stamp) each of the copies.  *If you can't go to the Courthouse in person,* you can file by fax (505.455.8280) or mail by mailing the original and copies to the Court Clerk's Office, First Judicial District Court, P. O. Box 2268, Santa Fe, NM  87504-2268.  Be sure to include stamped envelopes, one with your name and address, and one for each party with their name and address.  Include a letter asking the Court Clerk to file your Request, return endorsed copies to you and the other party by mail, and provide a copy to the ADR Office.

c.      Pro se parties:  Take another endorsed copy to the Self Help Center (next to the Court Clerk's offices), along with one set of the self-addressed, stamped envelopes.

d.     *You must also provide copies of the Request you file to all parties.* Use the other set of envelopes to mail the Request to all parties.  You must do this yourself; court employees will not mail copies of the Request to the other parties for you.

2.     The ADR Office will assign a settlement facilitator, and will generate a Referral Order, which will be given to the judge's assistant along with the envelopes.

3.     The judge's assistant will get the Order signed by the judge and entered in the court file, and then mail it to the Settlement Facilitator and all parties using the envelopes provided by the person who filed the Request.

**An Order of Referral to Settlement Conference is a court order and _all_ of its terms MUST be obeyed by every person to whom it applies!   DO NOT IGNORE ANY PART OF THE REFERRAL ORDER!**

4.     Each party **MUST contact the Settlement Facilitator** within 10 days after entry of the Order to schedule a Settlement Conference.  Scheduling of settlement conferences is NOT done by the ADR Office.

5.     Each party must provide the information described on the **Settlement Conference Information Sheet** to the Settlement Facilitator no later than 5 business days before the date selected for the Settlement Conference.  *Do not return the Settlement Conference Information Sheet to the ADR Office.* Fill it out completely, and be as specific as you can about the issues.  The more information the Settlement Facilitator has, the better he or she will be able to help you.

6.     All the participants – parties *and* their attorneys - in the Settlement Conference except the Settlement Facilitator must complete a short, anonymous, confidential, **evaluation** of the Settlement Facilitator's performance within 5 business days after the Settlement Conference concludes. Completed form should be returned to the Court Constituent Services Division, ADR Office as directed on the evaluation form.

7.     Within 5 business days after the settlement conference, the **Settlement Facilitator** will **file** a **Certificate of Compliance** with the Court Clerk.

8.     If any participant at any time does not comply with any term of the Order, the other participants should remind him/her of the terms of the Order.  If non-compliance continues, any other participant may file a **Notice of Non-Compliance** using the court's form. The judge may take any appropriate action in response to the Notice of Non-Compliance.

9.     The Settlement Facilitator or any party may file a **Request for Replacement Settlement Facilitator** using the proper form.  *No explanation is required for requesting that the Settlement Facilitator be replaced.*  If you use this form, the ADR Office will assign a replacement Settlement Facilitator from the Court's list.  If you and the other parties agree on a replacement Settlement Facilitator, use the **Stipulated Request for Replacement Settlement Facilitator.**  The rest of the procedures are the same as for a Request for Referral to Settlement Conference.

10.     If your case is referred to settlement conference and you do not feel that a settlement conference will be helpful in resolving it, you may ask the Court's permission not to have a settlement

conference by filing a Motion for Excusal from Settlement Conference (get the form from the FJDC website or the Self Help Center). *Remember, just because you ask for excusal doesn't mean the judge will grant your request. You must continue to comply with the Referral Order until it is modified by another court Order.*

11.     Settlement Facilitators on the Court's list are paid $500.00, plus applicable taxes, for the first 4 hours, which may include up to an hour of preparation time. If the case does not settle during that time and the parties agree to continue, the rate is $150.00 per hour, plus applicable taxes, for the next 4 hours. If the case does not settle within that time, and the parties agree to continue the settlement conference, the parties and the Settlement Facilitator shall agree in writing upon an hourly rate to be paid to the Settlement Facilitator.

Usually, each party will be responsible for payment of one-half of the Settlement Facilitator's fee, plus applicable taxes.

Payment for the first 4 hours must be made prior to the beginning of the settlement conference, unless other arrangements have been made in writing with the Settlement Facilitator.

If you use a settlement facilitator who is not on the Court's list, the Court's fee schedule will not apply.

12.     If you feel you cannot afford the cost of a settlement facilitator, you may file a **Motion for Free or Reduced-Cost Settlement Facilitation**. Follow the same filing procedures described above for filing a Request for Referral to Settlement Conference.

EXHIBIT 1

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/23/2020 2:39 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA; and ESMERALDA
RAMOS QUIRINO, on behalf of her minor child,
A.J.J.R.
      Plaintiffs,

v.

EOG RESOURCES, INC.,
      Defendant.

D-101-CV-2020-00899
Judge Matthew J. Wilson

<u>**ORDER GRANTING MOTION TO AMEND COMPLAINT**</u>

THIS MATTER came before the Court on the Plaintiff's Motion to Amend the

Complaint. The Court will rule on the papers submitted and without a hearing. See LR1-201.

Having reviewed the Motion, Response and Reply, THE COURT FINDS, CONCLUDES AND

ORDERS:

    1.      The Court has subject matter and personal jurisdiction in this case.

    2.      Leave to amend a complaint "shall be freely given when justice so requires." Rule

1-015(A) NMRA.

    3.      One who employs independent contractors may be vicariously liable for

independent contractors' actions or omissions in certain situations.

    4.      A principal may also be liable for the acts or omissions of its apparent agents.

    5.      The Motion to Amend the Complaint is GRANTED.

    6.      The issues raised in the Response can be addressed at the summary judgment

stage of the proceedings.

So Ordered:

11/23/20

Matthew J. Wilson
District Court Judge

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies of this order were e-served on the date of acceptance for e-filing to counsel who registered for e-service as required by the rules and mailed to pro se parties, if any, to:

Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

## ATTORNEYS FOR PLAINTIFFS

Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART, LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
505-988-4421
505-983-6043

bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

And

Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, TX 77002
713-210-8955
713-655-0222
michaelmagee@mehaffyweber.com

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

_Hollie Tanabe_
Hollie Tanabe
Administrative Assistant

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/23/2020 4:03 PM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
      Plaintiffs,

v.                               No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
      Defendant.

---

## FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

---

COME NOW Plaintiffs, Todd Lopez as Personal Representative of the Estate of Apolinar Jaquez Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child, A.J.J.R., complaining of EOG Resources, Inc., Defendant, and would respectfully show the Court as follows:

### I. PARTIES

1.    Plaintiff Todd Lopez is a resident of Santa Fe, New Mexico and was appointed as the Personal Representative of the Estate of Apolinar Jaquez Garcia on April 3, 2020.

2.    Plaintiff Cynthia Guereca is a resident of Texas and is the surviving spouse of Apolinar Jaquez Garcia, deceased.

3.    Plaintiff A.J.J.R. is a resident of Juarez, Mexico and is the minor child of Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino.

4.    Upon information and belief, at all times material hereto, Defendant EOG Resources, Inc. (hereinafter referred to as "Defendant EOG") was a foreign corporation registered to do business

in the State of New Mexico. Defendant EOG's principal place of business is in Texas. Defendant EOG has previously entered an appearance and may be served through its counsel of record.

## II.  JURISDICTION AND VENUE

5.      The allegations of the preceding and succeeding paragraphs are incorporated herein by this reference.

6.      This Court has jurisdiction of this cause of action because the events and occurrences giving rise to the death of Apolinar Jaquez Garcia occurred in the State of New Mexico.

7.      Additionally, venue is proper in Santa Fe County, New Mexico, as Todd Lopez, the Personal Representative of the Estate of Apolinar Jaquez Garcia, resides and is domiciled in Santa Fe, Santa Fe County, New Mexico. Therefore, jurisdiction and venue are proper in the District Court of Santa Fe, Santa Fe County, New Mexico, pursuant to N.M.S.A. Section 38-3-1(A).

## III. GENERAL ALLEGATIONS

8.      The allegations of the preceding and succeeding paragraphs are incorporated herein by this reference.

9.      Upon information and belief, on or about March 27, 2020, Defendant EOG instructed Apolinar Jaquez Garcia to transport fluid from the Hearnes facility to the Lomas facility. Defendant EOG did not inform Apolinar Jaquez Garcia of the flammable and hazardous nature of the substance he was transporting.

10.     As Apolinar Jaquez Garcia was preparing to unload the fluid at Defendant EOG's Lomas Reuse Facility, there was an explosion.

11.     Apolinar Jaquez Garcia was killed as a result of the explosion.

12.     Cynthia Guereca, A.J.J.R., and Alberto Apolinar Jaquez Ramos are the wrongful death beneficiaries of Apolinar Jaquez Garcia.

## IV.  ALLEGATIONS AGAINST DEFENDANT EOG

13.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

### Negligence

14.     At all times relevant to these causes of action, Defendant EOG had a duty to act as a safe and reasonably prudent company.  Defendant EOG breached these duties and was negligent. Defendant EOG's negligence was the sole cause and/or cause of the explosion made the basis of this suit and Apolinar Jaquez Garcia's death.

15.     Defendant EOG, acting through its employees, agents, apparent agents, or contractors, failed to exercise ordinary care as a reasonable and prudent company would have acted under the same or similar circumstances.  Defendant EOG's negligence includes but is not limited to the following:

a.   In providing flammable and hazardous substances for transport in a water hauler;

b.   In failing to inform Apolinar Jaquez Garcia of the flammable and hazardous nature of the load he was transporting;

c.   In failing to warn Apolinar Jaquez Garcia of the flammable and hazardous nature of the load he was transporting;

d.   In failing to provide a material safety data sheet to Apolinar Jaquez Garcia concerning the load he was transporting;

e.   In failing to have proper hazmat placards identifying the hazardous nature of the substances to be transported;

f.   In failing to provide proper instruction to drivers transporting hazardous and flammable substances at their locations;

g.   In providing a dangerous location at which to load/unload flammable and hazardous substances;

h.   In failing to take reasonable precautions at their facility when having drivers load/unload flammable and hazardous substances;

i.   In failing to warn Apolinar Jaquez Garcia of the potential of a fire and/or explosion;

j.   Any additional manner revealed as discovery in this case progresses.

16.   Each of the foregoing acts or omissions of Defendant EOG, singularly or in combination with others, constituted negligence which was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages.

### *Respondeat Superior*

17.   Defendant EOG is liable for any and all damages that resulted from the negligence of its employees, agents, apparent agents, or contractors under the doctrine of *Respondeat Superior*.  At all times relevant to the allegations in this Complaint, Defendant EOG's employees, agents, apparent agents, or contractors, were acting within the course and scope of their employment and were negligent. This negligence was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages. Therefore, Defendant EOG is vicariously liable to Plaintiffs on the basis of *Respondeat Superior.*

18.   Defendant EOG's conduct as stated above was intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico law justifying an award of punitive damages.

19.   Furthermore, Defendant EOG's employees, officers, principals and/or vice-principals were acting in the scope and course of their employment, and they had sufficient discretionary authority to speak and act for Defendant EOG with regard to the conduct at issue, independent of higher authority and were therefore, acting with managerial capacity.

20.   Defendant EOG further authorized, participated in or ratified the conduct of its employees, officers, principals and/or vice-principals. Therefore, Defendant EOG is vicariously liable for punitive damages based upon its authorization, participation, and/or ratification of the conduct of

its employees, officers, principals and vice-principals.

21.     As a direct and proximate result of acts or omissions as set forth above, Apolinar Jaquez Garcia was killed and Plaintiffs suffered injuries and damages in an amount to be proven at trial.

## VI.  COMPENSATORY DAMAGES

22.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

23.     Plaintiffs seek all damages to which they are justly entitled under New Mexico law in such amounts allowed by law and as determined by the fact finders in this case, as well as, any and all such other damages or other relief available under New Mexico law as determined appropriate by the Court.

### Wrongful Death of Apolinar Jaquez Garcia

24.     Plaintiffs' wrongful death claim is brought pursuant to the New Mexico Wrongful Death Statute, N.M.S.A., §41-2-1 (2013).

25.     As a result of the acts and/or omissions of Defendant, singularly or in combination, Apolinar Jaquez Garcia was killed.  Accordingly, the Estate of Apolinar Jaquez Garcia is entitled to an award of damages including, but not limited to, the following:

    a.     Reasonable expenses of funeral and burial costs;

    b.     The pain and suffering experienced by the decedent between the time of injury and death;

    c.     The value of lost earnings and earning capacity, and the value of the lost household services of the decedent;

    d.     The value of the decedent's life apart from her earning capacity;

    e.     The loss to the beneficiaries of other expected benefits having a monetary value;

    f.     Consideration of the mitigating or aggravating circumstances attending the wrongful act; and

g.    Any other actual or special damages in an amount to be proved at trial and as allowed by law.

**Loss of Consortium**

26.    At all times material hereto, Cynthia Guereca was married to Apolinar Jaquez Garcia, deceased.

27.    The untimely death of Apolinar Jaquez Garcia has caused Cynthia Guereca severe emotional distress due to the loss of society, guidance, companionship, love, and comfort deprived to her from the death of her husband.

28.    Plaintiff Cynthia Guereca is entitled to loss of consortium damages.

29.    At all times material hereto, Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino were the parents of A.J.J.R, a minor child.

30.    The untimely death of Apolinar Jaquez Garcia has caused A.J.J.R. severe emotional distress due to the loss of society, guidance, companionship, love, and comfort deprived to her from the death of her father.

31.    Plaintiff A.J.J.R. is entitled to loss of consortium damages.


**VII.  PRAYER FOR RELIEF**

32.    Plaintiffs pray for judgment in their favor and against Defendant for damages described herein; prejudgment and post-judgment interest at the highest rate allowed by law and from the earliest date allowed by law; if the evidence permits, an award of punitive damages against Defendant EOG; for costs of suit, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Pedro Leyva*

Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed through the Odyssey File & Service system, which caused all counsel of record to be served by electronic means, and that a courtesy copy was emailed on this 23rd day of November 2020 to the following counsel of record:

bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com
Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504

And

michaelmagee@mehaffyweber.com
Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

*/s/ Pedro Leyva*
Pedro Leyva

EXHIBIT C

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/7/2020 1:50 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA**
**GUERECA; and ESMERALDA RAMOS QUIRINO,**
**on behalf of her minor child, A.J.J.R**

      **Plaintiff,**

**v.**                               **No. D-101-CV-2020-00899**

**EOG RESOURCES, INC.,**

      **Defendant.**

**<u>DEFENDANT EOG RESOURCES, INC.'S ANSWER TO PLAINTIFFS'</u>**
**<u>FIRST AMENDED COMPLAINT</u>**

      Defendant EOG Resources, Inc. ("EOG") answers Plaintiffs' First Amended Complaint

for Wrongful Death and Loss of Consortium ("Complaint") as follows:

### I.      Parties

    1.  In answer to the allegations contained in paragraphs 1, 2, and 3 of the Complaint, EOG

states it does not have sufficient information or knowledge to admit or deny the allegations and

therefore denies the same.

    2.  EOG admits the allegations contained in paragraph 4 of the Complaint.

### II.      Jurisdiction and Venue

    3.  In answer to the allegations contained in paragraph 5 of the Complaint, EOG incorporates

its responses contained in paragraphs 1 and 2 of this answer by reference as though fully set forth

herein.

---

4.   In answer to the allegations contained in paragraph 6 of the Complaint, EOG admits the Court has subject matter jurisdiction over the Complaint.

5.   In answer to the allegations contained in paragraph 7 of the Complaint, EOG states the allegations are legal conclusions to which no response is required. To the extent the allegations are factual or may be construed against it, EOG states it does not have sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

### III.    General Allegations

6.   In answer to the allegations contained in paragraph 8 of the Complaint, EOG incorporates its responses contained in paragraphs 1 through 5 of this answer by reference as though fully set forth herein.

7.   EOG denies the allegations contained in paragraph 9 of the Complaint.

8.   In answer to the allegations contained in paragraphs 10 and 11 of the Complaint, EOG admits that there was an explosion at the Lomas Rojas Reuse Water Pit and that Mr. Garcia died. EOG does not have sufficient information or knowledge to admit or deny the remaining allegations and therefore denies the same.

9.   In answer to the allegations contained in paragraph 12 of the Complaint, EOG states it does not have sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

### IV.    Allegations Against Defendant EOG

10. In answer to the allegations contained in paragraph 13 of the Complaint, EOG incorporates its responses contained in paragraphs 1 through 9 of this answer by reference as though fully set forth herein.

11.  EOG denies the allegations contained in paragraphs 14, 15, including subparts (a) through (h), 16, 17, 18, 19, 20, and 21 of the Complaint.

## VI.    Compensatory Damages

12. In answer to the allegations contained in paragraph 22 of the Complaint, EOG incorporates its responses contained in paragraphs 1 through 11 of this answer by reference as though fully set forth herein.

13. In answer to the allegations contained in paragraph 23 of the Complaint, EOG admits that the Complaint seeks recovery of Plaintiffs' damages and denies that Plaintiffs are entitled to the requested relief from EOG as a matter of law.

14. In answer to the allegations contained in paragraph 24 of the Complaint, EOG admits the Complaint asserts a wrongful death claim under N.M.S.A. § 41-2-1 (2013) and denies any inference that EOG is liable to Plaintiffs pursuant to the same.

15. EOG denies the allegations contained in Paragraph 25, including subparts (a)-(g).

16. In answer to the allegations contained in paragraphs 26 and 27 of the Complaint, EOG does not have sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

17. In answer to the allegations contained in paragraph 28 of the Complaint, EOG states the allegations are legal conclusions for which no response is required. To the extent the allegations are factual or may be construed against it, EOG denies the same.

18. In answer to the allegations contained in paragraphs 29 and 30 of the Complaint, EOG does not have sufficient information or knowledge to admit or deny the allegations and therefore denies the same.

19. In answer to the allegations contained in paragraph 31 of the Complaint, EOG states the allegations are legal conclusions for which no response is required. To the extent the allegations are factual or may be construed against it, EOG denies the same.

## VII.    Prayer for Relief

20. EOG denies all allegations and prayers for relief contained in the Complaint not expressly admitted herein.

## Affirmative Defenses

A.  As a separate, alternative and affirmative defense, EOG states Plaintiff's claim for respondeat superior liability arising from the actions and omissions of EOG's independent contractors fails to state a claim upon which relief may granted as a matter of law.

B.  As a separate, alternative and affirmative defense, EOG states that the subject incident was the result of negligent acts, omissions, and/or fault of third parties and/or Mr. Garcia, decedent, for whom EOG is not responsible. The liability, negligence and/or fault of third parties and/or Mr. Garcia must be allocated in accordance with New Mexico's pure comparative fault doctrine.

C.  As a separate, alternative and affirmative defense, EOG states the subject incident and alleged damages in question set forth in the Complaint were caused, in whole or in part, by the intentional acts or omissions of a separate independent agency, not reasonably foreseeable, that destroyed any causal connection between the alleged acts or omissions of EOG and the injury complained of, thus becoming an intervening, superseding cause of the incident and/or alleged injuries.

D.  As a separate, alternative and affirmative defense, EOG states that Plaintiffs failed to mitigate their damages.

E.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages. A state may constitutionally award punitive damages only if the law of that state provides significant and effective procedural protections to defendants, and the law of this State does not. [*See Phillip Morris USA v. Williams*, 549 U.S. 346, 352, 127 S. Ct. 1057, 1062 (2007) (holding that "the Constitution imposes certain limits" regarding "procedures for awarding punitive damages," including requiring states to  implement "proper standards that will cabin the jury's discretionary authority" and "avoid an arbitrary determination of an award's amount"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-417, 123 S. Ct. 1513, 1519-1520 (2003) ("It is well established that there are procedural . . . constitutional limitations on [punitive damages] awards . . .. Although these awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding. This increases our concerns over the imprecise manner in which punitive damages systems are administered.")].

F.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because EOG lacked adequate notice either of the type of conduct that could warrant an award of punitive damages under the law of this State, or of the amount of such damages that could be awarded. The lack of fair notice bars any award of

punitive damages. [*Phillip Morris USA v. Williams*, 549 U.S. 346, 127 S. Ct. 1057, 1059 (2007) (holding "unless a State insists upon proper standards that will cabin the jury's discretionary authority, its punitive damages system may deprive a defendant of 'fair notice of the severity of the penalty that a State may impose,'" thus violating due process); *BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 574-576, 116 S. Ct. 1589, 1598 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to a penalty, but also of the severity of the penalty that a State may impose."); *accord State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520 (2003).].

G.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because due process requires that any award of punitive damages bear a close relationship to appropriate civil fines or penalties established by the legislature, or by administrative agencies under authority delegated by the legislature. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 583-84, 116 S. Ct. 1589, 1603 (1996). The law of this State, however, fails to incorporate this due process requirement, and therefore no award of punitive damages may be constitutionally made under the law of this State.

H.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because punitive damages, as awarded in this State, impermissibly discriminate against corporate defendants, including EOG in this case, that are

organized under the laws of other states and that maintain their principal places of business in other states. *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) (noting risk "that jurors will use their verdicts to express biases against big businesses, particularly those without strong local presences").

I.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1), by the Commerce Clause of the United States Constitution (Article I, § 8, cl. 3), and by principles of federalism embodied in the Constitution, to the extent that any claim is based on any conduct by EOG that occurred outside this State. No legitimate interest of this State can be served by the imposition of punitive damages based on conduct that occurred outside this State; therefore, the limitations on state power in the Due Process and Commerce Clauses prohibit any award of punitive damages based on such conduct. [*See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409, 123 S. Ct. 1513, 1516 (2003) ("State cannot punish a defendant for conduct that may have been lawful where it occurred. Nor, as a general rule, does a State have a legitimate constitutional interest in imposing punitive damages to punish a defendant for unlawful acts committed outside of its jurisdiction.") (internal citations omitted); *see also Phillip Morris USA v. Williams*, 549 U.S. 346, 347, 127 S. Ct. 1057, 1059 (2007) (holding that, because of the risk that punitive damages awards can, in practice, impose one State's (or one jury's) policies . . . upon other States . . . "it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance"); *Healy v. Beer Inst*., 491 U.S. 324, 336, 109 S. Ct. 2491, 2499 (1989) (noting that "Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"); *Alaska Packers Ass'n v. Indus. Accident Comm'n*, 294

U.S. 532, 540-41, 55 S. Ct. 518, 521 (1935) (state lacks authority "to control the legal

consequences of a tortious act committed elsewhere"); *Bonaparte v. Tax Court,* 104 U.S. 592,

594 (1881) ("No State can legislate except with reference to its own jurisdiction.").].

J.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for

punitive damages is barred by the Due Process Clauses of the United States Constitution

(Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico

State Constitution (Article II, § 18), because the law of this State permits the introduction of

evidence of EOG's financial condition [or "net worth"] with respect to the quantum of punitive

damages. The introduction of such evidence violates Due Process by inviting the jury to award

an arbitrary amount of punitive damages based on EOG's status as an industrial enterprise.

[*Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) ("the presentation

of evidence of a defendant's net worth creates the potential that juries will use their verdicts to

express biases against big businesses, particularly those without strong local presences").].

K.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for

punitive damages is barred by the Excessive Fines Clause of the United States Constitution

(Amendment VIII). The law of this State requires that a portion of any award of punitive

damages be paid to the State and, therefore, an award of punitive damages constitutes a "fine"

subject to the Excessive Fines Clause. Under the circumstances of this case, any amount of

punitive damages would be excessive and in violation of the Excessive Fines Clause.

L.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for

punitive damages is barred by the Due Process Clauses of the United States Constitution

(Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico

State Constitution (Article II, § 18), because EOG's conduct that is alleged to warrant punitive

damages is unrelated to Plaintiffs' harm. Punitive damages may not be awarded to punish and deter conduct that bears no relation to the plaintiff's harm. [*Phillip Morris USA v. Williams*, 549 U.S. 346, 353, 127 S. Ct. 1057, 1063 (2007) (holding that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23, 123 S. Ct. 1513, 1523 (2003) (holding "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); and *id.* at 423 (holding that "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis").].

M.  As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, each of the five reprehensibility factors set out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

N.  As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution

(Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the constitutional factors that govern the permissible ratio of punitive damages to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (holding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

O.  As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the comparable civil fine that could be imposed on the defendant[s] for the conduct in question. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 123 S. Ct. 1513, 1531 (2003) (holding that civil fines are more appropriate benchmarks for punitive damages than criminal penalties); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996) (holding that courts "should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."); (O'Connor, J., concurring in part and dissenting in part) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*,

492 U.S. 257, 301, 109 S. Ct. 2909, 2934 (1989)); *Clark v. Chrysler Corp.,* 436 F. 3d 594, 607 (6th Cir. 2006) (rejecting potential for punitive damages award as a basis for comparison in favor of potential civil penalties under applicable federal statute). Such specific jury instructions and specific findings of fact on the comparable civil penalties are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

P.   As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the direct relationship between EOG's conduct and the specific injury suffered by Plaintiffs. *Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057, 1064 (2007) (holding that "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003) (holding that "[D]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis."). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v.*

*Leatherman Tool Group, Inc*., 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001), to ensure that the award is based solely on the conduct that caused specific injury to the plaintiff[s].

Q.  As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the exclusion of all items of compensatory damage from the quantum of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 1525 (2003) (noting that "[t]he compensatory damages for the injury suffered here . . . likely were based on a component that was duplicated in the punitive award"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424 (2001), to ensure that items of compensatory damages are not impermissibly 'double-counted' in the quantum of punitive damages.

**Prayer**

WHEREFORE, Defendant EOG Resources, Inc. respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint for Wrongful Death and Loss of Consortium with prejudice, enter judgment in EOG Resources, Inc.'s favor, and award all such other relief, at law or in equity, that the Court deems just and proper.

Respectfully submitted,

**HOLLAND & HART LLP**

By: _____ */s/ Judd C. West* _____
        Bradford C. Berge
        Judd C. West
        Julia Broggi
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

-and-

**MEHAFFYWEBER**

By: _____ /s/ *Michael W. Magee* _____
        Michael W. Magee
        Mark M. Appling
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas  77002
Telephone: (713) 210-8955
Facsimile: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2020, I caused a true and correct copy of the foregoing to be filed and served electronically via Odyssey File and Serve, which caused all parties and counsel listed on the Court's Case Service Contacts to be served by electronic means, and that I caused a true copy of the foregoing to be served on the following persons or entities via electronic mail:

Chad Inderman
Pedro Leyva
Glasheen, Valles & Inderman, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX 79408
Telephone:  (806) 776-1331
efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com

-and-

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Avenue NW
Albuquerque, NM 87102
Telephone:  (505) 200-9454
david@djnmlaw.com

ATTORNEYS FOR PLAINTIFFS


*/s/  Judd C. West*
_____
Judd C. West

15789589_v2

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/23/2020 3:09 PM
KATHLEEN VIGIL CLERK OF THE COURT
Jill Nohl

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA**
**GUERECA; and ESMERALDA RAMOS QUIRINO,**
**on behalf of her minor child, A.J.J.R**

       **Plaintiff,**

**v.**                                **No. D-101-CV-2020-00899**

**EOG RESOURCES, INC.,**

**Defendant.**

### STIPULATED ORDER AMENDING RULE 16 (B) SCHEDULING ORDER
### TO EXTEND MEDIATION DEADLINE

THIS MATTER having come before the Court on the parties' joint motion to extend the

mediation deadline, and the Court having reviewed the joint motion, and being otherwise advised

in the premises, FINDS the motion is well taken and should be GRANTED.

IT IS THEREFORE ORDERED that the parties' deadline to complete mediation or

attend a settlement conference is extended until June 1, 2021. All other deadlines contained in

the Court's Rule 16 (B) Scheduling Order shall remain in full force and effect.

                                         12/23/20
_____
The Honorable Matthew J. Wilson
First Judicial District Judge, Division 9

Respectfully submitted by,

**HOLLAND & HART LLP**
By:   */s/ Judd C. West*
Bradford C. Berge
Judd C. West
Julia Broggi
110 North Guadalupe, Suite 1
Santa Fe, NM 87501
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

-and-

**MEHAFFYWEBER**

By:   */s/ Michael W. Magee*
        Michael W. Magee
Mark M. Appling
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas  77002
Tel: (713) 210-8955
Fax: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com

*Attorneys for Defendant EOG Resources,*
*Inc.*

**GLASHEEN, VALLES, & INDERMAN,**
**LLC**

By:  */s/  Pedro Leyva*
Pedro Leyva
Chad Inderman
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com

-and-

**JARAMILLO LAW FIRM, PC**

David J. Jaramillo
505 Roma Avenue NW
Albuquerque, NM 87102
Tel:  (505) 200-9454
Fax:  (505) 717-1502
david@djnmlaw.com

*Attorneys for Plaintiffs*

15925794_v1

EXHIBIT 1

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/23/2021 3:28 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leah Baldonado

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
Plaintiffs,

v.

D-101-CV-2020-00899

EOG RESOURCES, INC.,
Defendant.

## ORDER RE: JOINT MOTION FOR EXTENSION
## OF PRETRIAL DEADLINES

      **THIS MATTER** having come before the Court on the Parties' Joint Motion for Extension

of Pretrial Deadlines, and the Court having reviewed the Motion and having been advised that all

parties have stipulated to the extension of deadlines provided below, and being otherwise fully

apprised in the premises FINDS;

      The Motion is well taken and should be GRANTED.

      **IT IS THEREFORE ORDERED** that the Rule 16(B) Scheduling Order shall be amended

as follows:

    1.      Plaintiffs' expert witnesses:  ____April 29, 2021_____ ;

    2.      Defendants' expert witnesses:  _____May 28, 2021_____;

    3.      Non-expert witnesses expected to testify at trial:  ___April 29, 2021_____ ;

    4.      Discovery:  ____June 24, 2021_____ ;

    5.      All other deadlines contained in the Rule 1-016 NMRA Pretrial Scheduling Order

filed on  _____September 8, 2020___ , shall remain the same.

_____ 02/23/21
HONORABLE MATTHEW J. WILSON
DISTRICT COURT JUDGE

Submitted by:

**/s/ Pedro Leyva**
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

ATTORNEYS FOR PLAINTIFFS


**/s/ Michael W. Magee**
Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com

2

jbroggi@hollandhart.com

And

Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 210-8955
Facsimile: (713) 655-0222
michaelmagee@mehaffyweber.com

ATTORNEYS FOR DEFENDANT,
EOG RESOURCES, INC.

EXHIBIT 1

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
4/5/2021 9:45 AM
KATHLEEN VIGIL CLERK OF THE COURT
Desiree Brooks

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
      Plaintiffs,

v.                                    No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
      Defendant.

---

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO FILE**
**SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND LOSS OF**
**CONSORTIUM**

---

**THIS MATTER** having come before the Court on the Plaintiffs' Unopposed Motion for

Leave to File Second Amended Complaint, and the Court having considered said motion, and

noting Defendant's concurrence in that motion, finds that:

The motion is well taken.

IT IS THEREFORE ORDERED that Plaintiffs' Unopposed Motion for Leave to File

Second Amended Complaint is GRANTED.

4/2/2021

Presiding Judge

Respectfully submitted,

*/s/ Pedro Leyva*
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com
**ATTORNEYS FOR PLAINTIFFS**

**APPROVED BY:**

*approved by Michael Magee via email*
Bradford C. Berge
Judd C. West
Julia Broggi
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com
**HOLLAND & HART LLP**
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504

And

Michael W. Magee
michaelmagee@mehaffyweber.com
**MEHAFFYWEBER**
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002
**ATTORNEYS FOR DEFENDANT**
**EOG RESOURCES, INC.**

EXHIBIT K

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/6/2021 8:51 AM
KATHLEEN VIGIL CLERK OF THE COURT
Maureen Naranjo

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
     Plaintiffs,

v.                                                                No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
ROBBY GARZA CONDE, JR,
     Defendants.

---

### SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

---

COME NOW Plaintiffs, Todd Lopez as Personal Representative of the Estate of Apolinar Jaquez Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child, A.J.J.R., complaining of EOG Resources, Inc., Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC, and Robby Garza Conde, Jr., Defendants, and would respectfully show the Court as follows:

### I. PARTIES

1.    Plaintiff Todd Lopez is a resident of Santa Fe, New Mexico and was appointed as the Personal Representative of the Estate of Apolinar Jaquez Garcia on April 3, 2020.

2.    Plaintiff Cynthia Guereca is a resident of Texas and is the surviving spouse of Apolinar Jaquez Garcia, deceased.

3.    Plaintiff A.J.J.R. is a resident of Juarez, Mexico and is the minor child of Apolinar Jaquez

Garcia, deceased, and Esmeralda Ramos Quirino.

4.     Defendant EOG Resources, Inc. (hereinafter referred to as "Defendant EOG") is a foreign corporation registered to do business in the State of New Mexico. Defendant EOG's principal place of business is in Texas. Defendant EOG has previously entered an appearance and may be served through its counsel of record.

5.     Defendant Bedrock Petroleum Consultants, LLC (hereinafter referred to as "Defendant Bedrock Petroleum") is a foreign corporation registered to do business in the State of New Mexico. Defendant Bedrock Petroleum's principal place of business is in Texas. Defendant Bedrock Petroleum may be served with summons by serving its registered agent, C T Corporation System at 206 S Coronado Ave, Espanola, NM 87532.

6.     Defendant RCG Energy Services, LLC (hereinafter referred to as "Defendant RCG Energy") is a foreign corporation conducting business in this state before, during, and after the incident in question. Defendant RCG Energy has no registered agent in this state.  As a result of these intentional, substantial, continuous and systematic contacts within New Mexico, this Court has personal jurisdiction over Defendant RCG Energy as to all claims arising from those contacts. Defendant RCG Energy may be served in conformity with the requirements of NMSA 38-1-6.1 or through its Registered Agent, Robby Garza Conde, Jr. at 7451 104th St., Lubbock, Texas 79424.

7.     Upon information and belief, at all times material hereto, Defendant Robby Garza Conde, Jr. (hereinafter referred to as "Defendant Garza") is an individual working in the State of New Mexico who resides in Lubbock, Lubbock County, Texas.  Defendant Garza may be served with summons at his last known residence located at 7451 104th St., Lubbock, Texas 79424.

## II.  JURISDICTION AND VENUE

8.     The allegations of the preceding and succeeding paragraphs are incorporated herein by this

reference.

9.     This Court has jurisdiction of this cause of action because the events and occurrences giving rise to the death of Apolinar Jaquez Garcia occurred in the State of New Mexico.

10.     Additionally, venue is proper in Santa Fe County, New Mexico, as Todd Lopez, the Personal Representative of the Estate of Apolinar Jaquez Garcia, resides and is domiciled in Santa Fe, Santa Fe County, New Mexico. Therefore, jurisdiction and venue are proper in the District Court of Santa Fe, Santa Fe County, New Mexico, pursuant to N.M.S.A. Section 38-3-1(A).

### III. GENERAL ALLEGATIONS

11.     The allegations of the preceding and succeeding paragraphs are incorporated herein by this reference.

12.     Defendant EOG has vast oilfield operations in southeastern New Mexico. As part of its oilfield operations, Defendant EOG owns and operate water reuse facilities. Fluids coming out of Defendant EOG's oil wells are sent to the reuse facilities where the fluids are chemically treated and later used for EOG's fracing operations.

13.     Defendant EOG interviews and selects employees for Bedrock to hire and assign to EOG's reuse facilities. If Defendant EOG decides it wants to employ the individuals it interviews, it sends them to Defendant Bedrock Petroleum who hires the individuals to work at EOG's reuse facilities as "consultants."

14.     Defendant EOG uses Defendant Bedrock Petroleum as a front for employing consultants but EOG actually hires and controls the consultants.

15.     Defendant Garza was working as a reuse consultant at Defendant EOG's reuse facilities. Defendant Garza had been interviewed by Defendant EOG and hired through Defendant Bedrock Petroleum.

16.     On March 27, 2020, Defendant EOG needed to ship sludge (a mixture of produced water and hydrocarbons) from its Hearns reuse facility to its Lomas reuse facility. Defendant Garza was the EOG representative on site at the Hearns facility on March 27, 2020. At some point during that day, a chemical spill was discovered at the Hearns facility. Defendant Garza instructed Apolinar Jaquez Garcia, a water truck driver, to clean the chemical spill in the chemical containment area at the Hearns facility by sucking the chemicals into his vacuum tanker. Defendant EOG and Defendant Garza failed to inform Apolinar Jaquez Garcia that he was loading hazardous materials into his water truck. Defendant EOG and Defendant Garza did not tell Apolinar Jaquez Garcia he was hauling hazardous materials.

17.     As Apolinar Jaquez Garcia was preparing to unload the hazardous materials at Defendant EOG's Lomas Reuse Facility, his tanker, that contained hazardous materials, exploded.

18.     The explosion killed Apolinar Jaquez Garcia.

19.     Defendant EOG has taken the position that the fluid in Apolinar Jaquez Garcia's tanker was water, yet they agree that water does not explode.

20.     Defendant Garza's supervisor testified in his deposition that Apolinar Jaquez Garcia was instructed to haul hazardous materials by Defendant Garza.

21.     Cynthia Guereca, A.J.J.R., and Alberto Apolinar Jaquez Ramos are the wrongful death beneficiaries of Apolinar Jaquez Garcia.

## IV.  ALLEGATIONS AGAINST DEFENDANT EOG

22.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

## Negligence

23.     At all times relevant to these causes of action, Defendant EOG had a duty to act as a safe

and reasonably prudent company. Defendant EOG breached these duties and was negligent. Defendant EOG's negligence was the sole cause and/or cause of the explosion made the basis of this suit and Apolinar Jaquez Garcia's death.

24.    Defendant EOG, acting through its employees, agents, apparent agents, or contractors, failed to exercise ordinary care as a reasonable and prudent company would have acted under the same or similar circumstances. Defendant EOG's negligence includes but is not limited to the following:

     a.    In providing hazardous materials for transport in a water hauler;

     b.    In failing to inform Apolinar Jaquez Garcia of the hazardous nature of the load he was transporting;

     c.    In failing to provide Apolinar Jaquez Garcia with shipping papers describing the hazardous materials;

     d.    In failing to warn Apolinar Jaquez Garcia of the flammable and hazardous nature of the load he was transporting;

     e.    In failing to provide a material safety data sheet to Apolinar Jaquez Garcia concerning the hazardous materials he was transporting;

     f.    In failing to have proper hazmat placards identifying the hazardous nature of the hazardous materials to be transported;

     g.    In failing to provide proper instruction to drivers transporting hazardous materials at its locations;

     h.    In failing to placard Apolinar Jaquez Garcia's tanker;

     i.    In providing a dangerous location at which to load/unload hazardous materials;

     j.    In failing to take reasonable precautions at their facility when having drivers load/unload hazardous materials;

     k.    In failing to warn Apolinar Jaquez Garcia of the potential of a fire and/or explosion;

     l.    In failing to stop the job after learning that smoke was coming out of the tanker;

     m.    In failing to train its workers regarding the dangers of its facilities;

n.  Any additional manner revealed as discovery in this case progresses.

25.     Each of the foregoing acts or omissions of Defendant EOG, singularly or in combination with others, constituted negligence which was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages.

**Negligent Hiring, Supervision, and Training**

26.     Defendant EOG is responsible for the hiring, supervision and training of its workers, including Defendants Bedrock Petroleum, Garza, and RCG Energy, to assure the proper execution of those duties.

27.     Defendant EOG had a duty of care to hire, supervise and train its workers, including Defendants Bedrock Petroleum, Garza, and RCG Energy, to conduct work in a reasonable and safe manner.

28.     Defendant EOG breached its duty to exercise reasonable care and acted negligently and careless in hiring, supervising and training Defendants Bedrock Petroleum, Garza, and RCG Energy, for the duties which Defendant EOG could foresee and expect Defendants Bedrock Petroleum, Garza, and RCG Energy, to perform in the course of their employment.

***Respondeat Superior***

29.     Defendant EOG is liable for any and all damages that resulted from the negligence of its employees, agents, apparent agents, or contractors, including Defendant Bedrock Petroleum, Defendant Garza, and Defendant RCG Energy, under the doctrine of *Respondeat Superior.*  At all times relevant to the allegations in this Complaint, Defendant EOG's employees, agents, apparent agents, or contractors, including Defendant Bedrock Petroleum, Defendant Garza, and Defendant RCG Energy, were acting within the course and scope of their employment and were negligent. This negligence was a cause of the above-referenced occurrence and the death of Apolinar Jaquez

Garcia and Plaintiffs' damages. Therefore, Defendant EOG is vicariously liable to Plaintiffs on the basis of *Respondeat Superior.*

## Negligence *Per Se*

30.     At all times pertinent hereto there were in force and effect, state and federal statutes that were enacted for the safety of the public at large, including Plaintiffs.

31.     The Federal Motor Carrier Safety Act adopted regulations, hereinafter referred to as "FMCSR," that apply to shippers of hazardous materials, including Defendant EOG.

32.     There were in force and effect FMCSR regulations that were violated by Defendant EOG including but not limited to the following:

> A.  FMCSR § 172.200 regarding describing hazardous materials;
>
> B.  FMCSR § 172.201 regarding shipping papers;
>
> C.  FMCSR § 172.202, 172.203 regarding description of hazardous materials on shipping papers;
>
> D.  FMCSR § 172.204 regarding shipper's certification;
>
> E.  FMCSR § 172.205 regarding hazardous waste manifest;
>
> F.  FMCSR § 172.328 regarding hazardous material placards;
>
> G.  FMCSR § 172.400 regarding general labeling requirements;
>
> H.  FMCSR § 172.400 regarding placarding requirements;
>
> I.  FMCSR § 172.704 regarding training requirements.

33.     These sections create standards of conduct, and Defendant EOG's conduct represents unexcused violations of these standards. Plaintiffs belong to the class of persons that these statutes were meant to protect. Therefore, because of these violations, Defendant EOG is guilty of negligence *per se.*

***Negligent Selection of a Contractor***

34.     In the event Defendants Bedrock Petroleum, Garza, and RCG Energy are found to be independent contractors, Defendant EOG failed to exercise reasonable care and acted negligently and carelessly in selecting Defendants Bedrock Petroleum, Garza, and RCG Energy, as contractors, knowing the dangers involved in the work they would be performing.

35.     Defendant EOG's conduct as stated above was intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico law justifying an award of punitive damages.

36.     Furthermore, Defendant EOG's employees, officers, principals and/or vice-principals were acting in the scope and course of their employment, and they had sufficient discretionary authority to speak and act for Defendant EOG with regard to the conduct at issue, independent of higher authority and were therefore, acting with managerial capacity.

37.     Defendant EOG further authorized, participated in or ratified the conduct of its employees, officers, principals and/or vice-principals. Therefore, Defendant EOG is vicariously liable for punitive damages based upon its authorization, participation, and/or ratification of the conduct of its employees, officers, principals and vice-principals.

38.     As a direct and proximate result of acts or omissions as set forth above, Apolinar Jaquez Garcia was killed and Plaintiffs suffered injuries and damages in an amount to be proven at trial.

## V.  ALLEGATIONS AGAINST DEFENDANT BEDROCK PETROLEUM

39.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

## Negligence

40.     At all times relevant to these causes of action, Defendant Bedrock Petroleum had a duty to

act as a safe and reasonably prudent company. Defendant Bedrock Petroleum breached these duties and was negligent. Defendant Bedrock Petroleum negligence was a cause of the explosion made the basis of this suit and Apolinar Jaquez Garcia's death.

41.     Defendant Bedrock Petroleum, acting through its employees, agents, apparent agents, or contractors, failed to exercise ordinary care as a reasonable and prudent company would have acted under the same or similar circumstances. Defendant Bedrock Petroleum's negligence includes but is not limited to the following:

    a.  In providing hazardous materials for transport in a water hauler;

    b.  In failing to inform Apolinar Jaquez Garcia of the hazardous nature of the load he was transporting;

    c.  In failing to provide Apolinar Jaquez Garcia with shipping papers describing the hazardous materials;

    d.  In failing to warn Apolinar Jaquez Garcia of the flammable and hazardous nature of the load he was transporting;

    e.  In failing to provide a material safety data sheet to Apolinar Jaquez Garcia concerning the hazardous materials he was transporting;

    f.  In failing to have proper hazmat placards identifying the hazardous nature of the hazardous materials to be transported;

    g.  In failing to provide proper instruction to drivers transporting hazardous materials between EOG locations;

    h.  In failing to placard Apolinar Jaquez Garcia's tanker;

    i.  In failing to take reasonable precautions at Defendant EOG's facility when having drivers load/unload hazardous materials;

    j.  In failing to warn Apolinar Jaquez Garcia of the potential of a fire and/or explosion;

    k.  In failing to stop the job after learning that smoke was coming out of the tanker;

    l.  Any additional manner revealed as discovery in this case progresses

42.     Each of the foregoing acts or omissions of Defendant Bedrock, singularly or in combination with others, constituted negligence which was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages.

**Negligent Hiring, Supervision, and Training**

43.     Along with Defendant EOG, Defendant Bedrock Petroleum is responsible for the hiring, supervision and training of its employees, including Defendants RCG Energy and Garza, to assure the proper execution of those duties.

44.     Defendant Bedrock Petroleum had a duty of care to hire, supervise and train its workers, including Defendants RCG Energy and Garza, to conduct work in a reasonable and safe manner.

45.     Defendant Bedrock Petroleum breached its duty to exercise reasonable care and acted negligently and careless in hiring, supervising and training Defendants RCG Energy and Garza for the duties which Defendant Bedrock Petroleum could foresee and expect Defendants RCG Energy and Garza to perform in the course of their employment.

***Respondeat Superior***

46.     Defendant Bedrock Petroleum is liable for any and all damages that resulted from the negligence of its employees, agents, apparent agents, or contractors, including Defendant Garza and Defendant RCG Energy, under the doctrine of *Respondeat Superior*.  At all times relevant to the allegations in this Complaint, Defendant Bedrock Petroleum's employees, agents, apparent agents, or contractors including Defendant Garza and Defendant RCG Energy, were acting within the course and scope of their employment and were negligent. This negligence was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages. Therefore, Defendant Bedrock Petroleum is vicariously liable to Plaintiffs on the basis of *Respondeat Superior*.

***Negligent Selection of a Contractor***

47.     In the event Defendants Garza and RCG Energy are found to be independent contractors, Defendant Bedrock Petroleum failed to exercise reasonable care and acted negligently and carelessly in selecting Defendants Garza, and RCG Energy, as contractors, knowing the dangers involved in the work they would be performing.

48.     Defendant Bedrock Petroleum's conduct as stated above was intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico law justifying an award of punitive damages.

49.     Furthermore, Defendant Bedrock Petroleum's employees, officers, principals and/or vice-principals were acting in the scope and course of their employment, and they had sufficient discretionary authority to speak and act for Bedrock Petroleum with regard to the conduct at issue, independent of higher authority and were therefore, acting with managerial capacity.

50.     Bedrock Petroleum further authorized, participated in or ratified the conduct of its employees, officers, principals and/or vice-principals. Therefore, Bedrock Petroleum is vicariously liable for punitive damages based upon its authorization, participation, and/or ratification of the conduct of its employees, officers, principals and vice-principals.

## VI. ALLEGATIONS AGAINST DEFENDANTS GARZA and RCG ENERGY

51.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

## Negligence

52.     At all times relevant to these causes of action, Defendant RCG Energy had a duty to act as a safe and reasonably prudent company.  Defendant Garza had a duty to act as a safe and reasonably prudent individual. Defendant RCG Energy and Defendant Garza breached these duties and were

negligent. Defendant RCG Energy and Defendant Garza's negligence was a cause of the explosion made the basis of this suit and Apolinar Jaquez Garcia's death.

53.     Defendant Garza's negligence includes but is not limited to the following:

     a.  In instructing Apolinar Jaquez Garcia to load hazardous materials into a water truck;

     b.  In providing hazardous materials for transport in a water hauler;

     c.  In failing to inform Apolinar Jaquez Garcia of the hazardous nature of the load he was transporting;

     d.  In failing to provide Apolinar Jaquez Garcia with shipping papers describing the hazardous materials;

     e.  In failing to warn Apolinar Jaquez Garcia of the flammable and hazardous nature of the load he was transporting;

     f.  In failing to provide a material safety data sheet to Apolinar Jaquez Garcia concerning the hazardous materials he was transporting;

     g.  In failing to have proper hazmat placards identifying the hazardous nature of the hazardous materials to be transported;

     h.  In failing to provide proper instruction to drivers transporting hazardous materials between EOG locations;

     i.  In failing to placard Apolinar Jaquez Garcia's tanker;

     j.  In failing to take reasonable precautions at Defendant EOG's facility when having drivers load/unload hazardous materials;

     k.  In failing to warn Apolinar Jaquez Garcia of the potential of a fire and/or explosion;

     l.  In failing to stop the job after learning that smoke was coming out of the tanker;

     m.  Any additional manner revealed as discovery in this case progresses

54.     Each of the foregoing acts or omissions of Defendant Garza, singularly or in combination with others, constituted negligence which was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages.

*Respondeat Superior*

55.     Defendant RCG Energy is liable for any and all damages that resulted from the negligence of its employees, agents, apparent agents, or contractors, including Defendant Garza, under the doctrine of *Respondeat Superior*.  At all times relevant to the allegations in this Complaint, Defendant Garza was acting within the course and scope of his employment and was negligent. This negligence was a cause of the above-referenced occurrence and the death of Apolinar Jaquez Garcia and Plaintiffs' damages. Therefore, Defendant RCG Energy is vicariously liable to Plaintiffs on the basis of *Respondeat Superior*.

56.     Defendant Garza and RCG Energy's conduct as stated above was intentional, malicious, willful, reckless and/or wanton, as those terms are defined in New Mexico law justifying an award of punitive damages.

57.     Furthermore, Defendant Garza, an officer and principal of Defendant RCG Energy, was acting in the scope and course of his employment and had sufficient discretionary authority to speak and act for RCG Energy with regard to the conduct at issue, independent of higher authority and were therefore, acting with managerial capacity.

58.     RCG Energy further authorized, participated in or ratified the conduct of its employees, officers, principals and/or vice-principals. Therefore, RCG Energy is vicariously liable for punitive damages based upon its authorization, participation, and/or ratification of the conduct of its employees, officers, principals and vice-principals.

## VIII.  COMPENSATORY DAMAGES

59.     The allegations of the preceding and succeeding paragraphs are incorporated herein by reference for all purposes.

60.     Plaintiffs seek all damages to which they are justly entitled under New Mexico law in such

amounts allowed by law and as determined by the fact finders in this case, as well as, any and all such other damages or other relief available under New Mexico law as determined appropriate by the Court.

## Wrongful Death of Apolinar Jaquez Garcia

61.    Plaintiffs' wrongful death claim is brought pursuant to the New Mexico Wrongful Death Statute, N.M.S.A., §41-2-1 (2013).

62.    As a result of the acts and/or omissions of Defendant, singularly or in combination, Apolinar Jaquez Garcia was killed.  Accordingly, the Estate of Apolinar Jaquez Garcia is entitled to an award of damages including, but not limited to, the following:

> a.    Reasonable expenses of funeral and burial costs;
>
> b.    The pain and suffering experienced by the decedent between the time of injury and death;
>
> c.    The value of lost earnings and earning capacity, and the value of the lost household services of the decedent;
>
> d.    The value of the decedent's life apart from her earning capacity;
>
> e.    The loss to the beneficiaries of other expected benefits having a monetary value;
>
> f.    Consideration of the mitigating or aggravating circumstances attending the wrongful act; and
>
> g.    Any other actual or special damages in an amount to be proved at trial and as allowed by law.

## Loss of Consortium

63.    At all times material hereto, Cynthia Guereca was married to Apolinar Jaquez Garcia, deceased.

64.    The untimely death of Apolinar Jaquez Garcia has caused Cynthia Guereca severe emotional distress due to the loss of society, guidance, companionship, love, and comfort deprived

to her from the death of her husband.

65.     Plaintiff Cynthia Guereca is entitled to loss of consortium damages.

66.     At all times material hereto, Apolinar Jaquez Garcia, deceased, and Esmeralda Ramos Quirino were the parents of A.J.J.R, a minor child.

67.     The untimely death of Apolinar Jaquez Garcia has caused A.J.J.R. severe emotional distress due to the loss of society, guidance, companionship, love, and comfort deprived to her from the death of her father.

68.     Plaintiff A.J.J.R. is entitled to loss of consortium damages.

## IX.  PRAYER FOR RELIEF

69.     Plaintiffs pray for judgment in their favor and against Defendants for damages described herein; prejudgment and post-judgment interest at the highest rate allowed by law and from the earliest date allowed by law; if the evidence permits, an award of punitive damages against Defendants EOG, Bedrock Petroleum, RCG Energy, and Garza; for costs of suit, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Pedro Leyva
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed through the Odyssey File

& Service system, which caused all counsel of record to be served by electronic means, and that a

courtesy copy was emailed on this 6th day of April 2021 to the following counsel of record:


bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com
Bradford C. Berge
Judd C. West
Julia Broggi
**HOLLAND & HART LLP**
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504

And

michaelmagee@mehaffyweber.com
Michael W. Magee
**MEHAFFYWEBER**
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT**
**EOG RESOURCES, INC.**

_/s/ Pedro Leyva_
Pedro Leyva

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
5/4/2021 10:24 AM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
     Plaintiffs,

v.                                                    No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
ROBBY GARZA CONDE, JR,
     Defendants.

## ORDER VACATING DEADLINES AND TRIAL DATE SET FORTH IN THE RULE 1-016 SCHEDULING ORDER DATED SEPTEMBER 04, 2020

THIS MATTER having come before the Court on the parties *Joint Motion Vacating Deadlines and Trial Date Set Forth in the Rule 1-016 Scheduling Order Dated September 04, 2020*, the Court having reviewed the Motion and being otherwise fully advised in its premises, finds that that the Motion is well-taken and should be granted.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the deadlines set forth in the September 04, 2020, Scheduling Order including the trial date of October 25, 2021, are hereby vacated.  Counsel for Plaintiffs shall submit a request for a Rule 1-016 Scheduling Conference.

_____    5/3/2021
Matthew J. Wilson
District Court Judge

**Approved by:**

*/s/Pedro Leyva*_____
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

ATTORNEYS FOR PLAINTIFFS


*/s/ Michael W. Magee    Approved Via Email*
Judd C. West
jcwest@hollandhart.com
**HOLLAND & HART LLP**
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504

And

Michael W. Magee
michaelmagee@mehaffyweber.com
**MEHAFFYWEBER**
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

EXHIBIT M

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
5/6/2021 6:13 PM
KATHLEEN VIGIL CLERK OF THE COURT
Faith Griego

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

TODD LOPEZ, as Personal Representative
Of the Estate of APOLINAR JAQUEZ
GARCIA; CYNTHIA GUERECA;
and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A. J. J. R.,

      Plaintiffs,

v.

                                    No. D-101-CV-2020-00899

EOG RESOURCES, INC.;
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
BOBBY GARZA CONDE, JR,

      Defendants.

## BEDROCK PETROLEUM CONSULTANTS, LLC'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

      Bedrock Petroleum Consultants, LLC ("Bedrock") for its answer to Plaintiffs' Complaint Second Amended Complaint for Wrongful Death and Loss of Consortium ("Complaint") states as follows:

### I. PARTIES

      1.     Bedrock is without sufficient information to form an opinion as to the truth of the allegations set forth in Paragraphs 1 through 3 of Plaintiffs' Complaint and thus denies the same.

      2.     The allegations contained in Paragraph 4 of the Compliant are not directed at Bedrock and no response is required.  To the extent any response is required, Bedrock is without sufficient knowledge to affirm or deny the allegations of Paragraph 4 of the Complaint and therefore denies the same.

1

3.      Bedrock admits the allegations contained in Paragraph 5 of the Complaint.

4.      The allegations contained in Paragraphs 6 through 7 of the Compliant are not directed at Bedrock and no response is required.  To the extent any response is required, Bedrock is without sufficient knowledge to affirm or deny the allegations of Paragraphs 6 through 7 of the Complaint and therefore denies the same.

## II. JURISDICTION AND VENUE

5.      In response to the allegations contained in Paragraph 8 of the Complaint, Bedrock incorporates by reference its responses to Paragraph 1-7 of the Complaint.

6.      Paragraphs 9 and 10 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, Bedrock denies the same and demands strict proof thereof.

## III. GENERAL ALLEGATIONS

7.      In response to the allegations contained in Paragraph 11 of the Complaint, Bedrock incorporates by reference its responses to Paragraph 1-10 of the Complaint.

8.      The allegations contained in Paragraph 12 of the Compliant are not directed at Bedrock and no response is required.  To the extent any response is required, Bedrock is without sufficient knowledge to affirm or deny the allegations of Paragraph 12 of the Complaint and therefore denies the same.

9.      In response to the allegations contained in Paragraphs 13 and 14 of the Complaint, Bedrock admits that it works for EOG Resources, Inc. ("EOG") to provide consultants to work at their facilities.   Bedrock is without sufficient knowledge to affirm or deny the remaining allegations of Paragraphs 13 and 14 of the Complaint and therefore denies the same.

10.     In response to the allegations contained in Paragraph 15 of the Complaint, Bedrock admits that Defendant Garza was working as a consultant and EOG facilities.  Bedrock is without sufficient knowledge to affirm or deny the remaining allegations of Paragraph 15 of the Complaint and therefore denies the same.

11.     In response to the allegations contained in Paragraph 16 of the Complaint, Bedrock admits that Defendant Garza was working at the Hearns reuse facility on March 27, 2020.  Bedrock is without sufficient knowledge to affirm or deny the remaining allegations of Paragraph 16 of the Complaint and therefore denies the same.

12.     Bedrock is without sufficient knowledge to affirm or deny the allegations of Paragraphs 17 through 21 of the Complaint and therefore denies the same.

## IV. ALLEGATIONS AGAINST DEFENDANT EOG

13.     In response to the allegations contained in Paragraph 22 of the Complaint, Bedrock incorporates by reference its responses to Paragraph 1-21 of the Complaint.

14.     The allegations contained in Paragraphs 23 through 38 of the Compliant are not directed at Bedrock and no response is required.  To the extent any response is required, Bedrock is without sufficient knowledge to affirm or deny the allegations of Paragraphs 23 through 38 of the Complaint and therefore denies the same.

## V. ALLEGATIONS AGAINST DEFENDANT BEDROCK PETROLEUM

15.     In response to the allegations contained in Paragraph 39 of the Complaint, Bedrock incorporates by reference its responses to Paragraph 1-38 of the Complaint.

**Negligence**

16.     Bedrock denies the allegations contained in Paragraphs 40 through 42, including all subparts, of the Complaint.

**Negligent Hiring, Supervision, and Training**

17.     Paragraphs 43 and 44 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, Bedrock denies that it was negligent or that it violated any legal duties.

18.     Bedrock denies the allegations contained in Paragraph 45 of the Complaint.

**Respondeat Superior**

19.     In response to the allegations contained in Paragraph 46 of the Complaint, Bedrock denies that its employees and/or contractors were negligent.  Further, Bedrock denies that any such alleged negligence was a cause of Apolina Jaquez Garcia's (the "decedent") death and/or Plaintiffs' damages.  The remaining allegations Paragraph 46 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, Bedrock denies the same and demands strict proof thereof.

**Negligent Selection of Contractor**

20.     Bedrock denies the allegations contained in Paragraphs 47 through 50 of the Complaint.

**VI. ALLEGATIONS AGAINST DEFENDANTS GARZA AND RCG ENERGY**

21.     In response to the allegations contained in Paragraph 51 of the Complaint, Bedrock incorporates by reference its responses to Paragraph 1-50 of the Complaint.

**Negligence**

22.     In response to the allegations contained in Paragraph 52 of the Complaint, Bedrock denies that its employees and/or contractors were negligent.  Further, Bedrock denies that any such alleged negligence was a cause of the decedent's death, the explosion at issue and/or Plaintiffs' damages.  The remaining allegations Paragraph 52 of the Complaint contain

legal conclusions to which no responses are required.   To the extent responses are required, Bedrock denies the same and demands strict proof thereof.

23.     Bedrock denies the allegations contained in Paragraphs 53 and 54, including all subparts, of the Complaint.

**Respondent Superior**

24.     In response to the allegations contained in Paragraph 55 of the Complaint, Bedrock denies that its employees and/or contractors were negligent.   Further, Bedrock denies that any such alleged negligence was a cause of the decedent's death and/or Plaintiffs' damages. The remaining allegations Paragraph 55 of the Complaint contain legal conclusions to which no responses are required.   To the extent responses are required, Bedrock denies the same and demands strict proof thereof.

25.     Bedrock denies the allegations contained in Paragraph 56 of the Complaint.

26.     Paragraphs 57 and 58 of the Complaint contain legal conclusions to which no responses are required.   To the extent responses are required, Bedrock denies the same and demands strict proof thereof.

## VIII. COMPENSATORY DAMAGES

27.     In response to the allegations contained in Paragraph 59 of the Complaint, Bedrock incorporates by reference its responses to Paragraph 1-58 of the Complaint.

28.     In response to the allegations contained in Paragraph 60 of the Complaint, Bedrock denies that Plaintiffs are entitled to recover from Bedrock any of the relief claimed. Bedrock denies that there is any proper evidence showing conduct by Bedrock entitling Plaintiffs to any relief in any form whatsoever from Bedrock.

**Wrongful Death of Apolinar Jaquez Garcia**

29.     Paragraph 61 of the Complaint contains legal conclusions to which no responses are required.  To the extent responses are required, Bedrock denies the same and demands strict proof thereof.

30.     In response to the allegations contained in Paragraph 62 of the Complaint, Bedrock denies that Plaintiffs are entitled to recover from Bedrock any of the relief claimed. Bedrock denies that there is any proper evidence showing conduct by Bedrock entitling Plaintiffs to any relief in any form whatsoever from Bedrock.

**Loss of Consortium**

31.     Bedrock is without sufficient information to form an opinion as to the truth of the allegations set forth in Paragraphs 63 through 68 of Plaintiffs' Complaint and thus denies the same.

**IX. PRAYER FOR RELIEF**

32.     In response to the allegations contained in Paragraph 69 of the Complaint, Bedrock denies that Plaintiffs are entitled to recover from Bedrock any of the relief claimed. Bedrock denies that there is any proper evidence showing conduct by Bedrock entitling Plaintiffs to any relief in any form whatsoever from Bedrock.

**DEFENSES**

1.     All allegations of the Complaint not expressly admitted in this answer are denied.

2.     The Complaint fails to state claims upon which relief can be granted.

3.     The sole, proximate cause of the alleged injuries and damages complained of in the Complaint was the act or acts of Plaintiffs, the decedent, and/or third party or parties for which Bedrock is in no way responsible.

4.     The contributing negligence and/or fault of third parties, which negligence may have been the proximate, contributing cause of the alleged injuries and damages, should be apportioned, and any damages awarded against Bedrock should be reduced by the percentages of fault found against third parties, and any award against Bedrock should be limited only to its own percentage of fault, which fault is denied.

5.     Any injuries or expenses sustained or incurred by Plaintiffs were proximately caused in whole or in part by the conduct of, superseding or independent, intervening actions of, or one or more persons or entities other than Bedrock, including, any conduct of Plaintiffs, and the Decedent, for whose conduct Bedrock is not responsible.

6.     Any injuries or expenses sustained or incurred by Plaintiffs were proximately caused in whole or in part by the conduct of, superseding or independent, intervening actions of, or one or more persons or entities other than Bedrock, for whose conduct Bedrock is not responsible.

7.     Plaintiffs have failed to mitigate their claimed damages.

8.     Plaintiffs' claims are barred to the extent there is no causal connection between the claimed injuries and the alleged negligence of Bedrock.

9.     Unless Bedrock's liability for punitive damages and the appropriate amount of punitive damages are required to be established by proof of every element beyond a reasonable doubt, any award of punitive damages would violate Bedrock's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the New Mexico Constitution, and would be improper under the common law and public policies of the State of New Mexico.

10.     Plaintiffs' claim for punitive damages against Bedrock cannot be maintained, because an award of punitive damages under current New Mexico law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the New Mexico Constitution, and the common law and public policies of the State of New Mexico.

11.     Plaintiffs' claim for punitive damages cannot be maintained, because any award of punitive damages under New Mexico law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of Bedrock, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with clarity the conduct or mental state that makes damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.  Any such verdict would violate Bedrock's due process rights

8

guaranteed by the Fourteenth Amendment to the United States Constitution and the New Mexico Constitution and would be improper under the common law and public policies of New Mexico.

12.    To the extent that New Mexico law permits punishment to be measured by the net worth or financial status of Bedrock and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of Bedrock in other States, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and the New Mexico Constitution.

13.    Bedrock does not knowingly nor intentionally waive any applicable defenses. Bedrock reserves the right to assert additional defenses that it may discover in the course of the proceedings of this matter and to which it may be entitled under the law, including case law, statutes and rules, of the jurisdictions whose law may be found to apply to the claims asserted.

**WHEREFORE**, Bedrock requests that the Complaint against it be dismissed with prejudice, or in the alternative, that they be awarded judgment in its favor with attorney's fees and costs.

Respectfully submitted by:

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: _____
Tyler M. Cuff
Post Office Box 1888
Albuquerque, NM  87103
Telephone: (505) 765-5900
Facsimile:  (505) 768-7395
Email: tcuff@rodey.com

## <u>CERTIFICATE OF SERVICE</u>

We here by certify that a true and correct copy of the foregoing pleading was served via

Court's filing system on this <u>6th</u> of May, 2021 to:

| | |
|---|---|
| Chad Inderman<br>Pedro Leyva, Jr.,<br>Glasheen, Valles & Inderman, LLP<br>1302 Texas Avenue<br>Lubbock, TX 79401<br>Tele: (806) 776-1332<br>Email: inderman@gvilaw.com<br>Email: pedro.leyva@gvilaw.com | David J. Jaramillo<br>Jaramillo Law Firm, PC<br>505 Roma Ave. NW<br>Albuquerque, NM 87102<br>Tele: (505) 200-9454<br>Email: david@djnmlaw.com |
| Bradford C. Berge<br>Judd C. West<br>Julia Broggi<br>110 North Guradalupe, Suite 1<br>Santa Fe, NM 87504<br>Tele: (505) 0988-4421<br>Email: bberge@hollandhart.com | Michael W. Magee<br>Mehaffy Weber<br>One Allen Center<br>500 Dallas Street, Suite 2800<br>Houston, TX 77002<br>Tele: (713)655-7800<br>Email: michaelmagee@mehaffyweber.com |

By: _____

Tyler M. Cuff

EXHIBIT A

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
5/13/2021 3:10 PM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

TODD LOPEZ, as Personal Representative
Of the Estate of APOLINAR JAQUEZ
GARCIA; CYNTHIA GUERECA;
and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A. J. J. R.,

      Plaintiffs,

v.

                                                No. D-101-CV-2020-00899

EOG RESOURCES, INC.;
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
BOBBY GARZA CONDE, JR,

      Defendants.

## RCG ENERGY SERVICES, LLC AND BOBBY GARZA CONDE, JR.'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

      RCG Energy Services, LLC and Bobby Garza Conde, Jr. ("RCG") for their answer to Plaintiffs' Complaint Second Amended Complaint for Wrongful Death and Loss of Consortium ("Complaint") state as follows:

### I. PARTIES

      1.     RCG is without sufficient information to form an opinion as to the truth of the allegations set forth in Paragraphs 1 through 3 of Plaintiffs' Complaint and thus denies the same.

      2.     The allegations contained in Paragraph 4 of the Compliant are not directed at RCG and no response is required. To the extent any response is required, RCG is without sufficient knowledge to affirm or deny the allegations of Paragraph 4 of the Complaint and therefore denies the same.

3.      The allegations contained in Paragraph 5 of the Compliant are not directed at RCG and no response is required.  To the extent any response is required, RCG is without sufficient knowledge to affirm or deny the allegations of Paragraph 5 of the Complaint and therefore denies the same.

4.      In response to the allegations contained in Paragraph 6 of the Complaint, RCG admits that it is a foreign corporation that has no registered agent in the state of New Mexico. The remaining allegations contained in Paragraph 6 of the Complaint contain legal conclusions for which no response is required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

5.      In response to the allegations contained in Paragraph 7 of the Complaint, RCG admits that Bobby Garza Conde does some work in New Mexico and that he resides in Lubbock, Texas..  The remaining allegations contained in Paragraph 7 of the Complaint contain legal conclusions for which no response is required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

## II. JURISDICTION AND VENUE

6.      In response to the allegations contained in Paragraph 8 of the Complaint, RCG incorporates by reference its responses to Paragraph 1-7 of the Complaint.

7.      Paragraphs 9 and 10 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

## III. GENERAL ALLEGATIONS

8.      In response to the allegations contained in Paragraph 11 of the Complaint, RCG incorporates by reference its responses to Paragraph 1-10 of the Complaint.

9.      The allegations contained in Paragraph 12 of the Compliant are not directed at RCG and no response is required.  To the extent any response is required, RCG is without sufficient knowledge to affirm or deny the allegations of Paragraph 12 of the Complaint and therefore denies the same.

10.      In response to the allegations contained in Paragraphs 13 and 14 of the Complaint, RCG admits that it works for EOG Resources, Inc. ("EOG") to provide consultants to work at their facilities.  RCG is without sufficient knowledge to affirm or deny the remaining allegations of Paragraphs 13 and 14 of the Complaint and therefore denies the same.

11.      In response to the allegations contained in Paragraph 15 of the Complaint, RCG admits that Defendant Garza was working as a consultant and EOG facilities.  RCG is without sufficient knowledge to affirm or deny the remaining allegations of Paragraph 15 of the Complaint and therefore denies the same.

12.      In response to the allegations contained in Paragraph 16 of the Complaint, RCG admits that Defendant Garza was working at the Hearns reuse facility on March 27, 2020.  RCG is without sufficient knowledge to affirm or deny the remaining allegations of Paragraph 16 of the Complaint and therefore denies the same.

13.      RCG is without sufficient knowledge to affirm or deny the allegations of Paragraphs 17 through 21 of the Complaint and therefore denies the same.

**IV. ALLEGATIONS AGAINST DEFENDANT EOG**

14.      In response to the allegations contained in Paragraph 22 of the Complaint, RCG incorporates by reference its responses to Paragraph 1-21 of the Complaint.

15.      The allegations contained in Paragraphs 23 through 38 of the Compliant are not directed at RCG and no response is required.  To the extent any response is required, RCG is

without sufficient knowledge to affirm or deny the allegations of Paragraphs 23 through 38 of the Complaint and therefore denies the same.

## V. ALLEGATIONS AGAINST DEFENDANT BEDROCK PETROLEUM

16.     In response to the allegations contained in Paragraph 39 of the Complaint, RCG incorporates by reference its responses to Paragraph 1-38 of the Complaint.

**Negligence**

17.     RCG denies the allegations contained in Paragraphs 40 through 42, including all subparts, of the Complaint.

**Negligent Hiring, Supervision, and Training**

18.     Paragraphs 43 and 44 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, RCG denies that it was negligent or that it violated any legal duties.

19.     RCG denies the allegations contained in Paragraph 45 of the Complaint.

**Respondeat Superior**

20.     In response to the allegations contained in Paragraph 46 of the Complaint, RCG denies that its employees and/or contractors were negligent.  Further, RCG denies that any such alleged negligence was a cause of Apolina Jaquez Garcia's (the "decedent") death and/or Plaintiffs' damages.  The remaining allegations Paragraph 46 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

**Negligent Selection of Contractor**

21.     RCG denies the allegations contained in Paragraphs 47 through 50 of the Complaint.

## VI. ALLEGATIONS AGAINST DEFENDANTS GARZA AND RCG ENERGY

22.     In response to the allegations contained in Paragraph 51 of the Complaint, RCG incorporates by reference its responses to Paragraph 1-50 of the Complaint.

### Negligence

23.     In response to the allegations contained in Paragraph 52 of the Complaint, RCG denies that its employees and/or contractors were negligent.  Further, RCG denies that any such alleged negligence was a cause of the decedent's death, the explosion at issue and/or Plaintiffs' damages.  The remaining allegations Paragraph 52 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

24.     RCG denies the allegations contained in Paragraphs 53 and 54, including all subparts, of the Complaint.

### Respondent Superior

25.     In response to the allegations contained in Paragraph 55 of the Complaint, RCG denies that its employees and/or contractors were negligent.  Further, RCG denies that any such alleged negligence was a cause of the decedent's death and/or Plaintiffs' damages.  The remaining allegations Paragraph 55 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

26.     RCG denies the allegations contained in Paragraph 56 of the Complaint.

27.     Paragraphs 57 and 58 of the Complaint contain legal conclusions to which no responses are required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

## VIII. COMPENSATORY DAMAGES

28.     In response to the allegations contained in Paragraph 59 of the Complaint, RCG incorporates by reference its responses to Paragraph 1-58 of the Complaint.

29.     In response to the allegations contained in Paragraph 60 of the Complaint, RCG denies that Plaintiffs are entitled to recover from RCG any of the relief claimed.  RCG denies that there is any proper evidence showing conduct by RCG entitling Plaintiffs to any relief in any form whatsoever from RCG.

### Wrongful Death of Apolinar Jaquez Garcia

30.     Paragraph 61 of the Complaint contains legal conclusions to which no responses are required.  To the extent responses are required, RCG denies the same and demands strict proof thereof.

31.     In response to the allegations contained in Paragraph 62 of the Complaint, RCG denies that Plaintiffs are entitled to recover from RCG any of the relief claimed.  RCG denies that there is any proper evidence showing conduct by RCG entitling Plaintiffs to any relief in any form whatsoever from RCG.

### Loss of Consortium

32.     RCG is without sufficient information to form an opinion as to the truth of the allegations set forth in Paragraphs 63 through 68 of Plaintiffs' Complaint and thus denies the same.

## IX. PRAYER FOR RELIEF

33.     In response to the allegations contained in Paragraph 69 of the Complaint, RCG denies that Plaintiffs are entitled to recover from RCG any of the relief claimed.  RCG denies

that there is any proper evidence showing conduct by RCG entitling Plaintiffs to any relief in any form whatsoever from RCG.

## DEFENSES

1.      All allegations of the Complaint not expressly admitted in this answer are denied.

2.      The Complaint fails to state claims upon which relief can be granted.

3.      The sole, proximate cause of the alleged injuries and damages complained of in the Complaint was the act or acts of Plaintiffs, the decedent, and/or third party or parties for which RCG is in no way responsible.

4.      The contributing negligence and/or fault of third parties, which negligence may have been the proximate, contributing cause of the alleged injuries and damages, should be apportioned, and any damages awarded against RCG should be reduced by the percentages of fault found against third parties, and any award against RCG should be limited only to its own percentage of fault, which fault is denied.

5.      Any injuries or expenses sustained or incurred by Plaintiffs were proximately caused in whole or in part by the conduct of, superseding or independent, intervening actions of, or one or more persons or entities other than RCG, including, any conduct of Plaintiffs, and the Decedent, for whose conduct RCG is not responsible.

6.      Any injuries or expenses sustained or incurred by Plaintiffs were proximately caused in whole or in part by the conduct of, superseding or independent, intervening actions of, or one or more persons or entities other than RCG, for whose conduct RCG is not responsible.

7.      Plaintiffs have failed to mitigate their claimed damages.

8.      Plaintiffs' claims are barred to the extent there is no causal connection between the claimed injuries and the alleged negligence of RCG.

9.     Unless RCG's liability for punitive damages and the appropriate amount of punitive damages are required to be established by proof of every element beyond a reasonable doubt, any award of punitive damages would violate RCG's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the New Mexico Constitution, and would be improper under the common law and public policies of the State of New Mexico.

10.     Plaintiffs' claim for punitive damages against RCG cannot be maintained, because an award of punitive damages under current New Mexico law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the New Mexico Constitution, and the common law and public policies of the State of New Mexico.

11.     Plaintiffs' claim for punitive damages cannot be maintained, because any award of punitive damages under New Mexico law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate

status of RCG, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with clarity the conduct or mental state that makes damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.  Any such verdict would violate RCG's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the New Mexico Constitution and would be improper under the common law and public policies of New Mexico.

12.     To the extent that New Mexico law permits punishment to be measured by the net worth or financial status of RCG and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of RCG in other States, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and the New Mexico Constitution.

13.     RCG does not knowingly nor intentionally waive any applicable defenses. RCG reserves the right to assert additional defenses that it may discover in the course of the proceedings of this matter and to which it may be entitled under the law, including case law, statutes and rules, of the jurisdictions whose law may be found to apply to the claims asserted.

**WHEREFORE**, RCG requests that the Complaint against it be dismissed with prejudice, or in the alternative, that they be awarded judgment in its favor with attorney's fees and costs.

Respectfully submitted by:

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: _____

       Tyler M. Cuff
       Post Office Box 1888
       Albuquerque, NM  87103
       Telephone: (505) 765-5900
       Facsimile:  (505) 768-7395
       Email: tcuff@rodey.com

## **CERTIFICATE OF SERVICE**

We here by certify that a true and correct copy of the foregoing pleading was served via

Court's filing system on this 13th of May, 2021 to:

| | |
|---|---|
| Chad Inderman<br>Pedro Leyva, Jr.,<br>Glasheen, Valles & Inderman, LLP<br>1302 Texas Avenue<br>Lubbock, TX 79401<br>Tele: (806) 776-1332<br>Email: inderman@gvilaw.com<br>Email: pedro.leyva@gvilaw.com | David J. Jaramillo<br>Jaramillo Law Firm, PC<br>505 Roma Ave. NW<br>Albuquerque, NM 87102<br>Tele: (505) 200-9454<br>Email: david@djnmlaw.com |
| Bradford C. Berge<br>Judd C. West<br>Julia Broggi<br>110 North Guradalupe, Suite 1<br>Santa Fe, NM 87504<br>Tele: (505) 0988-4421<br>Email: bberge@hollandhart.com | Michael W. Magee<br>Mehaffy Weber<br>One Allen Center<br>500 Dallas Street, Suite 2800<br>Houston, TX 77002<br>Tele: (713)655-7800<br>Email: michaelmagee@mehaffyweber.com |

By: _____
       Tyler M. Cuff

EXHIBIT 2

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/26/2021 3:52 PM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA**
**GUERECA; and ESMERALDA RAMOS QUIRINO,**
**on behalf of her minor child, A.J.J.R.**

                    **Plaintiffs,**

**v.**                                        **No. D-101-CV-2020-00899**

**EOG RESOURCES, INC.,**
**BEDROCK PETROLEUM CONSULTANTS, LLC,**
**RCG ENERGY SERVICES, LLC, and**
**ROBBY GARZA CONDE, JR,**

                    **Defendants.**

<u>**RULE 16(B) SCHEDULING ORDER**</u>
<u>**JURY**</u>

Pursuant to Rule 1-016(B), NMRA, the Court herewith establishes the following schedule

governing this case:

1.  **MEDIATION/SETTLEMENT CONFERENCE DEADLINE.** The parties shall

conduct a mediation or settlement conference on or before <u>**February 14, 2022,**</u> unless the parties

have already completed a mediation or settlement conference. This deadline may <u>not</u> be extended by

agreement of counsel and will only be extended by Court Order for truly exceptional circumstances.

Counsel shall complete the discovery necessary for good faith settlement discussions in advance of

the mediation or settlement conference. Counsel shall either file a Request for Referral to Settlement

Conference for a referral to a qualified settlement facilitator through the Court's Alternative Dispute

Resolution ("ADR") Program, or they may make their own arrangements for a private mediator or

settlement facilitator.  An information sheet with directions for using the Court's ADR Program is attached.   Within five days of the mediation or settlement conference, counsel or the mediator/settlement facilitator shall file a Certificate of Compliance to report on the outcome of the settlement conference.

2.  **JOINDER OF PARTIES.**  Additional parties shall not be joined unless otherwise ordered by the Court.  If additional parties are joined, such joinder must occur in a sufficiently timely manner so that the Mediation/Settlement Conference deadline and trial setting are not affected.

3. **AMENDMENT OF PLEADINGS.** Motions to Amend the Complaint or Answer will be filed within **four (4) weeks of the date of entry of this Order,** unless otherwise ordered by the Court.

4. **MOTIONS.**  Motions addressed to the pleadings (e.g. motions under Rule 1-012(B), (D), (E), or (F) NMRA) shall be filed **within eight (8) weeks of the date of entry of this Order**, unless otherwise ordered by the Court.  Motions for Summary Judgment pursuant to Rule 1-056 NMRA and motions to exclude expert testimony, including *Daubert-Alberico* motions, shall be filed no later than **March 14, 2022** unless otherwise ordered by the Court.  **All motions will be submitted to the Court via email to sfeddiv9proposedtxt@nmcourts.gov pursuant to the motion package rule in L.R. 1-201(D).**

5.  **DISCOVERY.**  The time to complete discovery ends  **February 28, 2022**, unless otherwise ordered by the Court.  Discovery requests shall be served in sufficient time to allow response before the close of the discovery period.  Motions to compel are due no later than **five business days after the close of discovery.**  Counsel may not by agreement extend this due date. Failure to provide the motion package on motions to compel within 30 days of the discovery deadline set forth herein may result in the trial setting being vacated.

6. **WITNESSES.** The parties shall file a list of expert witnesses expected to testify at trial on or before the dates set forth below:

Plaintiff's expert(s) – <u>**January 3, 2022**</u>

Defendant's Expert(s) – <u>**January 31, 2022**</u>.

At the time the expert witnesses are identified, the party presenting the expert witness shall provide to all other parties the following: 1) a current *curriculum vita* of the expert; 2) a written summary of the opinions and the bases therefor that the expert will present at trial; and 3) any written reports that have been prepared by the expert.

The parties shall file a list of all non-expert witnesses expected to testify at trial on or before **December 6, 2021.**

7. **EXHIBITS.** The parties shall file a list of all exhibits expected to be submitted at trial no later than **four (4) weeks before Docket Call**. Parties will file and present a copy to the Court of an exhibit list that contains the exhibits numbered as they will be introduced at trial, identified by name or description, and with three columns to indicate "tendered," "admitted," "objection." Plaintiff will number exhibits Plaintiff's Exhibit P - #; Defendant will number exhibits Defendant's Exhibit D - # (Defendant will not use letters). If there are more than one party per side, then each party will number exhibits with the first letter of the lead party on that side, e.g. if there are two plaintiffs – Brown and Martinez – Brown's exhibits will be marked: Plaintiff's Exhibit B - # and Martinez's exhibits will be marked Plaintiff's Exhibit M - #. Within five working days of service of a party's exhibit list, any party objecting to authenticity shall file written notice of objection.

8. **WITNESSES.** The parties shall file a final list of witnesses expected to testify at trial no later than **four (4) weeks before Docket Call**. Witnesses should be listed as may-call or will-call witnesses. All witnesses should be listed except for rebuttal witnesses, the need for whose testimony

cannot reasonably be anticipated.

9. **DEPOSITION DESIGNATIONS.**  The parties shall submit page and line designation of all depositions that each party intends to present at trial **four (4) weeks before Docket Call.**  A party shall file objections to the other party's designations and counter-designations **three (3) weeks before Docket Call. If counsel cannot agree on the deposition designations, the proponent of the deposition shall submit to the Court the deposition with page and lines indicated and the objections seven days before the Docket Call.**

10. **MOTIONS IN LIMINE.**  Motions *in limine*, except for *Daubert/Alberico* motions shall be filed on or before **six weeks before Docket Call. Responses must be filed four weeks before the Docket Call.  No reply briefs are required, and movant must submit the package to the Court four weeks before the Docket Call.**   Counsel are reminded that motions in limine are not to be used for matters which are properly addressed in motions for summary judgment or motions to exclude expert testimony.  Motions in Limine are to address specific items of evidence or argument, not general propositions.

11. **PRE-TRIAL CONFERENCE.**  The pre-trial conference mandated by Rule 1-016(C) NMRA shall be held **July 8, 2022, at 9:00 a.m.** at the **Judge Steve Herrera Judicial Complex, 225 Montezuma Avenue, Santa Fe, New Mexico.**  Trial counsel must attend the pre-trial conference.

12. **PRE-TRIAL ORDER.**  Plaintiff shall prepare plaintiff's portion of the Pre-Trial Order and submit it to opposing counsel no later than **the date of the pre-trial conference.**  Opposing counsel shall file the Pre-Trial Order no later than **two (2) weeks after the pre-trial conference.**

13. **JURY INSTRUCTIONS.**  Jury instructions shall be filed and presented to the Court in three packets.  One packet shall consist of those instructions which are stipulated to by both parties.  A second packet shall consist of the Plaintiff's additional proposed instructions.  The third packet

shall consist of the Defendant's additional proposed instructions.  All proposed jury instructions shall be filed on or before **seven days before Docket Call**.

14.  **TRIAL/DOCKET CALL.**  Trial of this matter is set for a trailing docket on **August 1, 2022 at 8.30 A.M.**, at the Judge Steve Herrera Judicial Complex, 225 Montezuma Avenue, Santa Fe, New Mexico.  At that time, attorneys and parties must appear for case scheduling and jury selection.  **Because the trial date has been set either by agreement of counsel or by the Court at the Scheduling Conference, the trial date will not be continued except in truly exceptional circumstances.**  The Court will attempt to work around scheduling conflicts within the trial docket; however, counsel should arrange to have co-counsel or substitute counsel available to try the case if such conflicts cannot be resolved.

**IT IS SO ORDERED.**

7/26/2021

Matthew J. Wilson
District Judge, Division 9

**REMOTE ACCESS:**
Until the current operating guidelines for the New Mexico Courts that have been put in place concerning the Coronavirus are modified, parties and attorneys are to appear remotely for all hearings. Parties and attorneys may appear by video at **meet.google.com/bbu-aujx-qfx** (video appearance is preferred) or by calling **1-336-949-8079** and entering pin number **862702640#**. As changes are being made frequently, please visit the court website firstdistrictcourt.nmcourts.gov the day before your hearing. Once at the court website, click on District Court Judges and scroll down to Judge Matthew J. Wilson, Division IX, then click on View Calendar for up to date information on how to appear remotely.

**REGARDING EXHIBITS:**
If the matter to be heard is an evidentiary hearing and if a party intends to introduce exhibit(s) into evidence at this hearing, the party seeking the introduction of the exhibit(s) into evidence shall provide a copy of the exhibit(s) to the other party.  A copy of the exhibit(s) shall be provided to the Court at least 2 days before the hearing in an envelope or a binder with the case caption clearly marked on the envelope or binder.  The Court will not review the exhibit(s) prior to the hearing. At the hearing, the Court will review the exhibit(s) for evidentiary purposes if there is no objection to the admission of the exhibit(s) or the moving party is able to introduce the exhibit(s) into evidence

through an appropriate witness or otherwise.

**NOTE** Due to the high volume of cases in this Division, this Court may not be able to accommodate notices of dates of unavailability.

***NOTE** Parties are to assume all proceedings are on FTR. If the parties want transcripts, they should make arrangements in advance to provide their own court reporter.

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that copies of this order were e-served on the date of acceptance for e-filing to counsel who registered for e-service as required by the rules and mailed to pro se parties, if any to:

Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

ATTORNEYS FOR PLAINTIFFS

Judd C. West
jcwest@hollandhart.com
**HOLLAND & HART LLP**
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504

And

Michael W. Magee
michaelmagee@mehaffyweber.com
**MEHAFFYWEBER**
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

_Jessica Vigil_
Jessica Vigil
TCAA for Judge Matthew J. Wilson

## HOW TO USE THE COURT'S ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAM TO REQUEST A REFERRAL TO SETTLEMENT CONFERENCE

1.      Let the Court know you want a settlement conference. If you were referred to a settlement conference by a judge's scheduling order, you must still follow this procedure.  This procedure is also used to request a referral to foreclosure mediation.

a.      **Obtain the proper forms:**  get them from the Self Help Center or from the ADR Office: call 505.455.8146 or email:  sfedselfserv@nmcourts.gov.  You can also download the forms from the Court's website:  http://firstdistrictcourt.com. Use *only* these forms; *do not* make up your own forms.

*If you want the Court to assign a Settlement Facilitator from the Court's list:* Obtain a Request for Referral to Settlement Conference form.  Complete the form.  Settlement Facilitators on the Court's list are attorneys with at least 5 years of experience in the subject matter area who have mediation training and experience.

*If you and the other party have agreed on a Settlement Facilitator (who may be, but is not required to be, a person on the Court's list) and just need a Referral Order,* obtain a "Stipulated Request for Referral to Settlement Conference".  Complete the form.

Then make enough **copies** of the Request for Referral to Settlement Conference for yourself, the judge, the ADR Office, and all the parties.  Make 2 sets of self-addressed, stamped **envelopes** to provide copies of the Request and the Referral Order to all parties or their attorneys.

b.      Then **file the Request in the Court Clerk's office**.

> Effective July 1, 2015 all **attorneys are required to efile all pleadings**.  If you are a Court appointed attorney for Settlement Facilitation, you do not have to pay a fee for efiling Certificates of Compliance, Notices of Non-Compliance, or Requests for Replacement Settlement Facilitator.  Individual attorneys must set up their own accounts to waive filing fees for these cases.  Under the firm admin tab in the Odyssey File and Serve page, set up an account with a name, such as OBO State of NM or Court Appointee, and as a waiver account.  When you are submitting something to be efiled, you will select the "waiver account".  If you have questions about efiling, please contact Tyra J. Martinez at 505.455.8200 or sfedtjm@nmcourts.gov.

> ***Pro se parties:*** **file the Request in the Court Clerk's office** The Clerk's office will keep the original.  Ask the filing clerk to endorse (stamp) each of the copies.  *If you can't go to the Courthouse in person*, you can file by fax (505.455.8280) or mail by mailing the original and copies to the Court Clerk's Office, First Judicial District Court, P. O. Box 2268, Santa Fe, NM 87504-2268.  Be sure to include stamped envelopes, one with your name and address, and one for each party with their name and address.  Include a letter asking the Court Clerk to file your Request, return endorsed copies to you and the other party by mail, and provide a copy to the ADR Office.

c.      Pro se parties:  Take another endorsed copy to the Self Help Center (next to the Court Clerk's offices), along with one set of the self-addressed, stamped envelopes.

d.    *You must also provide copies of the Request you file to all parties.* Use the other set of envelopes to mail the Request to all parties.  You must do this yourself; court employees will not mail copies of the Request to the other parties for you.

2.    The ADR Office will assign a settlement facilitator, and will generate a Referral Order, which will be given to the judge's assistant along with the envelopes.

3.    The judge's assistant will get the Order signed by the judge and entered in the court file, and then mail it to the Settlement Facilitator and all parties using the envelopes provided by the person who filed the Request.

**An Order of Referral to Settlement Conference is a court order and *all* of its terms MUST be obeyed by every person to whom it applies!  DO NOT IGNORE ANY PART OF THE REFERRAL ORDER!**

4.    Each party **MUST contact the Settlement Facilitator** within 10 days after entry of the Order to schedule a Settlement Conference.  Scheduling of settlement conferences is NOT done by the ADR Office.

5.    Each party must provide the information described on the **Settlement Conference Information Sheet** to the Settlement Facilitator no later than 5 business days before the date selected for the Settlement Conference. *Do not return the Settlement Conference Information Sheet to the ADR Office.* Fill it out completely, and be as specific as you can about the issues.  The more information the Settlement Facilitator has, the better he or she will be able to help you.

6.    All the participants – parties *and* their attorneys - in the Settlement Conference except the Settlement Facilitator must complete a short, anonymous, confidential, **evaluation** of the Settlement Facilitator's performance within 5 business days after the Settlement Conference concludes.  Completed form should be returned to the Court Constituent Services Division, ADR Office as directed on the evaluation form.

7.    Within 5 business days after the settlement conference, the **Settlement Facilitator** will **file** a **Certificate of Compliance** with the Court Clerk.

8.    If any participant at any time does not comply with any term of the Order, the other participants should remind him/her of the terms of the Order.  If non-compliance continues, any other participant may file a **Notice of Non-Compliance** using the court's form. The judge may take any appropriate action in response to the Notice of Non-Compliance.

9.    The Settlement Facilitator or any party may file a **Request for Replacement Settlement Facilitator** using the proper form. *No explanation is required for requesting that the Settlement Facilitator be replaced.* If you use this form, the ADR Office will assign a replacement Settlement Facilitator from the Court's list.  If you and the other parties agree on a replacement Settlement Facilitator, use the **Stipulated Request for Replacement Settlement Facilitator.** The rest of the procedures are the same as for a Request for Referral to Settlement Conference.

10.    If your case is referred to settlement conference and you do not feel that a settlement conference will be helpful in resolving it, you may ask the Court's permission not to have a settlement

conference by filing a Motion for Excusal from Settlement Conference (get the form from the FJDC website or the Self Help Center). *Remember, just because you ask for excusal doesn't mean the judge will grant your request.  You must continue to comply with the Referral Order until it is modified by another court Order.*

11.     Settlement Facilitators on the Court's list are paid $500.00, plus applicable taxes, for the first 4 hours, which may include up to an hour of preparation time.  If the case does not settle during that time and the parties agree to continue, the rate is $150.00 per hour, plus applicable taxes, for the next 4 hours.  If the case does not settle within that time, and the parties agree to continue the settlement conference, the parties and the Settlement Facilitator shall agree in writing upon an hourly rate to be paid to the Settlement Facilitator.

Usually, each party will be responsible for payment of one-half of the Settlement Facilitator's fee, plus applicable taxes.

Payment for the first 4 hours must be made prior to the beginning of the settlement conference, unless other arrangements have been made in writing with the Settlement Facilitator.

If you use a settlement facilitator who is not on the Court's list, the Court's fee schedule will not apply.

12.     If you feel you cannot afford the cost of a settlement facilitator, you may file a **Motion for Free or Reduced-Cost Settlement Facilitation**.   Follow the same filing procedures described above for filing a Request for Referral to Settlement Conference.

EXHIBIT R

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
10/4/2021 4:52 PM
KATHLEEN VIGIL CLERK OF THE COURT
Maureen Naranjo

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.

                Plaintiffs,

v.                                         No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
ROBBY GARZA CONDE, JR,

                Defendants.

## ORDER AMENDING TRIAL SETTING

      THIS MATTER came before the Court sua sponte. THE COURT FINDS, CONCLUDES

AND ORDERS:

      Due to the current public health emergency, Chief Judge Mary Marlowe Sommer has

directed that beginning in October 2021, jury trials scheduled in the Jury Assembly Room will be

shifted two days out from Monday, such that jury selection will begin on a Wednesday instead of

on a Monday. Further, the directive states that each block of trial time will still consist of a full

two-week rotation, but the rotation shall begin on a Wednesday and will end on a Tuesday instead

of beginning on a Monday and ending on a Friday.

      **Therefore, the current two-week trial block set to begin on August 1, 2022, is moved**

**to August 3, 2022, with an ending date of no later than August 16, 2022.**

. . .

. . .

| Existing Start Date for Jury Trial: | New Start Date for Jury Trial: |
|---|---|
| August 1, 2022 | August 3, 2022 |

So Ordered:

_____    9/29/2021
Matthew J. Wilson
District Court Judge

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies of this Order were served on the parties listed below on the date this Order was accepted for filing by the Clerk's Office.

Chad Inderman
Pedro Leyva
**GLASHEEN, VALLES, & INDERMAN, LLP**
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Telephone: (806) 776-1331
Facsimile: (806) 329-0594
efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com


David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
Telephone: (505) 200-9454
Facsimile: (505) 717-1502
david@djnmlaw.com

*Attorneys for Plaintiff*

Tyler M. Cuff
P.O. Box 1888
Albuquerque, NM 87103-1888
Telephone: (505) 765-5900
Facsimile: (505) 768-7395

Matthew Scott Rappaport
P.O. Box 25687
Albuquerque, NM 87125-0687
Telephone: (505) 842-1950
Facsimile: (505) 243-4408
mrapparot@mstlaw.com

Judd C. West
jcwest@hollandhart.com
**HOLLAND & HART LLP**
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504

Michael W. Magee
michaelmagee@mehaffyweber.com
**MEHAFFYWEBER**
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002

*Attorneys for Defendants*

Jessica Vigil
TCAA for Judge Matthew J. Wilson

EXHIBIT Q

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
10/14/2021 2:50 PM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

TODD LOPEZ, as Personal Representative
of the ESTATE OF APOLINAR JAQUEZ GARCIA,
CYNTHIA GUERECA and
ESMERALDA RAMOS QUIRINO, on behalf
of her minor child, A.J.J.R.,

      Plaintiffs,

vs.               Case No.: D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC and
ROBBY GARZA CONDE, JR.,

      Defendants.

### DEFENDANT EOG RESOURCES, INC.'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

    Defendant EOG Resources, Inc. by and through its attorneys of record Miller Stratvert P.A. (Matthew S. Rappaport) hereby submits its Answer to Plaintiffs' Second Amended Complaint for Wrongful Death and Loss of Consortium as follows:

## I.    PARTIES

    1. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiffs' Second Amended Complaint and therefore denies the same.

    2. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of Plaintiffs' Second Amended Complaint and therefore denies the same.

3. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of Plaintiffs' Second Amended Complaint and therefore denies the same.

4. This Defendant admits the allegations contained in Paragraph 4 of Plaintiffs' Second Amended Complaint.

5. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of Plaintiffs' Second Amended Complaint and therefore denies the same.

6. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of Plaintiffs' Second Amended Complaint and therefore denies the same.

7. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of Plaintiffs' Second Amended Complaint and therefore denies the same.

## II.    JURISDICTION AND VENUE

8. Defendant incorporates by reference its Answers to Paragraphs 1 through 7 of Plaintiffs' Second Amended Complaint as though fully set forth herein.

9. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of Plaintiffs' Second Amended Complaint and therefore denies the same.

10. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of Plaintiffs' Second Amended Complaint and therefore denies the same.

## III.   GENERAL ALLEGATIONS

11.  Defendant incorporates by reference its Answers to Paragraphs 1 through 10 of Plaintiffs' Second Amended Complaint as though fully set forth herein.

12.  EOG admits it has oilfield operations in the State of New Mexico, including ownership of water use facilities.  This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 of Plaintiffs' Second Amended Complaint and therefore denies the same.

13.  This Defendant denies the allegations contained in Paragraph 13 of Plaintiffs' Second Amended Complaint.

14.  This Defendant denies the allegations contained in Paragraph 14 of Plaintiffs' Second Amended Complaint.

15.  This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of Plaintiffs' Second Amended Complaint and therefore denies the same.

16.  This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of Plaintiffs' Second Amended Complaint and therefore denies the same.

17.  This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of Plaintiffs' Second Amended Complaint and therefore denies the same.

18.  This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of Plaintiffs' Second Amended Complaint and therefore denies the same.

3

19. This Defendant denies the allegations contained in Paragraph 19 of Plaintiffs' Second Amended Complaint.

20. In answer to the allegations contained in paragraph 20 of Plaintiffs' Second Amended Complaint, this Defendant states that the deposition testimony speaks for itself and denies all inconsistent and additional allegations contained in Paragraph 20 of Plaintiffs' Second Amended Complaint.

21. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of Plaintiffs' Second Amended Complaint and therefore denies the same.

## IV.    ALLEGATIONS AGAINST DEFENDANT EOG

22. Defendant incorporates by reference its Answers to Paragraphs 1 through 21 of Plaintiffs' Second Amended Complaint as though fully set forth herein.

**Negligence**

23. EOG admits that it has a duty to act with ordinary care. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of Plaintiffs' Second Amended Complaint and therefore denies the same.

24. This Defendant denies the allegations contained in Paragraph 24 of Plaintiffs' Second Amended Complaint.

25. This Defendant denies the allegations contained in Paragraph 25 of Plaintiffs' Second Amended Complaint.

4

**Negligent Hiring, Supervision and Training**

26. EOG admits it has a responsibility to hire, supervise and train its own employees. This Defendant denies the remaining allegations contained in Paragraph 26 of Plaintiffs' Second Amended Complaint.

27. EOG admits it has a duty of care to hire, supervise and train its own employees. This Defendant denies the remaining allegations contained in Paragraph 27 of Plaintiffs' Second Amended Complaint.

28. This Defendant denies the allegations contained in Paragraph 28 of Plaintiffs' Second Amended Complaint.

**Respondeat Superior**

29. This Defendant denies the allegations contained in Paragraph 29 of Plaintiffs' Second Amended Complaint.

**Negligence Per Se**

30. The allegations contained in Paragraph 30 of Plaintiffs' Second Amended Complaint appear to state a legal conclusion which does not call for a response by this Defendant. In the event the remaining allegations state any factual or legal allegation against this Defendant, they are denied.

31. The allegations contained in Paragraph 31 of Plaintiffs' Second Amended Complaint appear to state a legal conclusion which does not call for a response by this Defendant. In the event the remaining allegations state any factual or legal allegation against this Defendant they are denied.

32. The allegations contained in Paragraph 32 of Plaintiffs' Second Amended Complaint appear to state a legal conclusion which does not call for a response by this Defendant. In the

event the remaining allegations state any factual or legal allegation against this Defendant they are denied.

33. This Defendant denies the allegations contained in Paragraph 33 of Plaintiffs' Second Amended Complaint.

**Negligent Selection of a Contractor**

34. This Defendant denies the allegations contained in Paragraph 34 of Plaintiffs' Second Amended Complaint.

35. This Defendant denies the allegations contained in Paragraph 35 of Plaintiffs' Second Amended Complaint.

36. This Defendant denies the allegations contained in Paragraph 36 of Plaintiffs' Second Amended Complaint.

37. This Defendant denies the allegations contained in Paragraph 37 of Plaintiffs' Second Amended Complaint.

38. This Defendant denies the allegations contained in Paragraph 38 of Plaintiffs' Second Amended Complaint.

## V.   ALLEGATIONS AGAINST DEFENDANT BEDROCK PETROLEUM

39. Defendant incorporates by reference its Answers to Paragraphs 1 through 38 of Plaintiffs' Second Amended Complaint as though fully set forth herein.

**Negligence**

40. Paragraph 40 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 40 does allege factual or legal allegations against this Defendant, they are denied.

41. Paragraph 41 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 41 does allege factual or legal allegations against this Defendant, they are denied.

42. Paragraph 42 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 42 does allege factual or legal allegations against this Defendant, they are denied.

**Negligent Hiring, Supervision and Training**

43. Paragraph 43 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 43 does allege factual or legal allegations against this Defendant, they are denied.

44. Paragraph 44 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 44 does allege factual or legal allegations against this Defendant, they are denied.

45. Paragraph 45 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 45 does allege factual or legal allegations against this Defendant, they are denied.

*Respondeat Superior*

46. Paragraph 46 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 46 does allege factual or legal allegations against this Defendant, they are denied.

Negligent Selection of a Contractor

47. Paragraph 47 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 47 does allege factual or legal allegations against this Defendant, they are denied.

48. Paragraph 48 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 48 does allege factual or legal allegations against this Defendant, they are denied.

49. Paragraph 49 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 49 does allege factual or legal allegations against this Defendant, they are denied.

50. Paragraph 50 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 50 does allege factual or legal allegations against this Defendant, they are denied.

## VI.    ALLEGATIONS AGAINST DEFENDANTS GARZA AND RCG ENERGY

51. Defendant incorporates by reference its Answers to Paragraphs 1 through 50 of Plaintiffs' Second Amended Complaint as though fully set forth herein.

**Negligence**

52. Paragraph 52 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 52 does allege factual or legal allegations against this Defendant, they are denied.

53. Paragraph 53 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 53 does allege factual or legal allegations against this Defendant, they are denied.

54. Paragraph 54 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 54 does allege factual or legal allegations against this Defendant, they are denied.

***Respondeat Superior***

55. Paragraph 55 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 55 does allege factual or legal allegations against this Defendant, they are denied.

56. Paragraph 56 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 56 does allege factual or legal allegations against this Defendant, they are denied.

57. Paragraph 57 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 57 does allege factual or legal allegations against this Defendant, they are denied.

58. Paragraph 58 of Plaintiffs' Second Amended Complaint does not appear to contain any factual or legal allegations against this Defendant. To the extent that Paragraph 58 does allege factual or legal allegations against this Defendant, they are denied.

## VII.    COMPENSATORY DAMAGES

59. Defendant incorporates by reference its Answers to Paragraphs 1 through 58 of Plaintiffs' Second Amended Complaint as though fully set forth herein.

60. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of Plaintiffs' Second Amended Complaint and therefore denies the same.

**Wrongful Death of Apolinar Jaquez Garcia**

61. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 of Plaintiffs' Second Amended Complaint and therefore denies the same.

62. This Defendant denies the allegations contained in Paragraph 62 of Plaintiffs' Second Amended Complaint as to this Defendant. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 62 of Plaintiffs' Second Amended Complaint and therefore denies the same.

**Loss of Consortium**

63. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of Plaintiffs' Second Amended Complaint and therefore denies the same.

64. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 of Plaintiffs' Second Amended Complaint and therefore denies the same.

65. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 of Plaintiffs' Second Amended Complaint and therefore denies the same.

66. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of Plaintiffs' Second Amended Complaint and therefore denies the same.

67. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 of Plaintiffs' Second Amended Complaint and therefore denies the same.

68. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of Plaintiffs' Second Amended Complaint and therefore denies the same.

## IX. PRAYER FOR RELIEF

69. This Defendant denies the allegations contained in Paragraph 69 of Plaintiffs' Second Amended Complaint.

70. Any remaining allegation not admitted herein is denied.

## AFFIRMATIVE AND/OR ADDITIONAL DEFENSES

1. As a separate, alternative and affirmative defense, EOG states Plaintiff's claim for respondeat superior liability arising from the actions and omissions of EOG's independent contractors fails to state a claim upon which relief may granted as a matter of law.

2. As a separate, alternative and affirmative defense, EOG states that the subject incident was the result of negligent acts, omissions, and/or fault of third parties and/or Mr. Garcia, decedent, for whom EOG is not responsible. The liability, negligence and/or fault of third parties and/or Mr. Garcia must be allocated in accordance with New Mexico's pure comparative fault doctrine.

3. As a separate, alternative and affirmative defense, EOG states the subject incident and alleged damages in question set forth in the Complaint were caused, in whole or in part, by the intentional acts or omissions of a separate independent agency, not reasonably foreseeable, that destroyed any causal connection between the alleged acts or omissions of

EOG and the injury complained of, thus becoming an intervening, superseding cause of the incident and/or alleged injuries.

4. As a separate, alternative and affirmative defense, EOG states that Plaintiffs failed to mitigate their damages.

5. As a separate, alternative and affirmative defense, EOG denies the allegations of negligence attributed to it in Plaintiffs' Second Amended Complaint. If it is determined that EOG is liable to Plaintiffs (which is expressly denied), the amount of its liability must be reduced to the extent of the comparative fault of Plaintiffs and the comparative fault of any and all others whose negligence or wrongful conduct contributed or caused the damages of which Plaintiffs complain.

6. As a separate, alternative and affirmative defense, Plaintiffs' claims are barred to the extent that the injuries and damages complained of were caused or contributed to by the negligence or fault of others, including the Plaintiffs, for which EOG is neither liable nor responsible.

7. As a separate, alternative and affirmative defense, to the extent discovery reveals that the damages of which Plaintiffs complain resulted from an independent, intervening cause that defense is asserted herein.

8. As a separate, alternative and affirmative defense, to the extent that Plaintiffs claim damages resulting from pre-existing, idiopathic or underlying conditions unrelated to the subject accident, Plaintiffs cannot claim such damages from EOG.

9. As a separate, alternative and affirmative defense, any action or inaction on the part of EOG, which is denied, did not proximately cause any injury or damage to Plaintiffs.

10. As a separate, alternative and affirmative defense, to the extent that Plaintiffs' claims are barred or limited by the applicable statute of limitations, statute of repose, or survival statutes, these defenses are asserted.

11. As a separate, alternative and affirmative defense, to the extent that Plaintiffs' claims are barred or limited by the exclusivity provision of the New Mexico Workers' Compensation Act, this defense is asserted.

12. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages provides inadequate procedural protections against arbitrary or erroneous awards of such damages. A state may constitutionally award punitive damages only if the law of that state provides significant and effective procedural protections to defendants, and the law of this State does not. [*See Phillip Morris USA v. Williams*, 549 U.S. 346, 352, 127 S. Ct. 1057, 1062 (2007) (holding that "the Constitution imposes certain limits" regarding "procedures for awarding punitive damages," including requiring states to implement "proper standards that will cabin the jury's discretionary authority" and "avoid an arbitrary determination of an award's amount"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-417, 123 S. Ct. 1513, 1519-1520 (2003) ("It is well established that there are procedural . . . constitutional limitations on [punitive damages] awards . . . . Although these awards serve the same purposes as criminal penalties, defendants subjected to punitive damages in civil cases have not been accorded the

13

protections applicable in a criminal proceeding. This increases our concerns over the imprecise manner in which punitive damages systems are administered.")].

13. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because EOG lacked adequate notice either of the type of conduct that could warrant an award of punitive damages under the law of this State, or of the amount of such damages that could be awarded. The lack of fair notice bars any award of punitive damages. [*Phillip Morris USA v. Williams*, 549 U.S. 346, 127 S. Ct. 1057, 1059 (2007) (holding "unless a State insists upon proper standards that will cabin the jury's discretionary authority, its punitive damages system may deprive a defendant of 'fair notice of the severity of the penalty that a State may impose,'" thus violating due process); *BMW of N. Am, Inc. v. Gore*, 517 U.S. 559, 574-576, 116 S. Ct. 1589, 1598 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to a penalty, but also of the severity of the penalty that a State may impose."); *accord State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520 (2003).].

14. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because due process requires that any award of punitive damages bear a close relationship to appropriate civil fines or penalties established by the legislature, or by administrative agencies under authority delegated by

the legislature. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 583-84, 116 S. Ct. 1589, 1603 (1996). The law of this State, however, fails to incorporate this due process requirement, and therefore no award of punitive damages may be constitutionally made under the law of this State.

15. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because punitive damages, as awarded in this State, impermissibly discriminate against corporate defendants, including EOG in this case, that are organized under the laws of other states and that maintain their principal places of business in other states. *Honda Motor Co. v. Oberg,* 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) (noting risk "that jurors will use their verdicts to express biases against big businesses, particularly those without strong local presences").

16. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1), by the Commerce Clause of the United States Constitution (Article I, § 8, cl. 3), and by principles of federalism embodied in the Constitution, to the extent that any claim is based on any conduct by EOG that occurred outside this State. No legitimate interest of this State can be served by the imposition of punitive damages based on conduct that occurred outside this State; therefore, the limitations on state power in the Due Process and Commerce Clauses prohibit any award of punitive damages based on such conduct. [*See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 409, 123 S. Ct. 1513, 1516 (2003) ("State cannot punish a

defendant for conduct that may have been lawful where it occurred. Nor, as a general rule, does a State have a legitimate constitutional interest in imposing punitive damages to punish a defendant for unlawful acts committed outside of its jurisdiction.") (internal citations omitted); *see also Phillip Morris USA v. Williams*, 549 U.S. 346, 347, 127 S. Ct. 1057, 1059 (2007) (holding that, because of the risk that punitive damages awards can, in practice, impose one State's (or one jury's) policies . . . upon other States . . . "it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance"); *Healy v. Beer Inst.*, 491 U.S. 324, 336, 109 S. Ct. 2491, 2499 (1989) (noting that "Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders"); *Alaska Packers Ass'n v. Indus. Accident Comm'n*, 294 U.S. 532, 540-41, 55 S. Ct. 518, 521 (1935) (state lacks authority "to control the legal consequences of a tortious act committed elsewhere"); *Bonaparte v. Tax Court,* 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction.").].

17. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State permits the introduction of evidence of EOG's financial condition [or "net worth"] with respect to the quantum of punitive damages. The introduction of such evidence violates Due Process by inviting the jury to award an arbitrary amount of punitive damages based on EOG's status as an industrial enterprise. [*Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S. Ct. 2331, 2341 (1994) ("the presentation of evidence of a defendant's net worth creates the

potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences").].

18. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Excessive Fines Clause of the United States Constitution (Amendment VIII). The law of this State requires that a portion of any award of punitive damages be paid to the State and, therefore, an award of punitive damages constitutes a "fine" subject to the Excessive Fines Clause. Under the circumstances of this case, any amount of punitive damages would be excessive and in violation of the Excessive Fines Clause.

19. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because EOG's conduct that is alleged to warrant punitive damages is unrelated to Plaintiffs' harm. Punitive damages may not be awarded to punish and deter conduct that bears no relation to the plaintiff's harm. [*Phillip Morris USA v. Williams*, 549 U.S. 346, 353, 127 S. Ct. 1057, 1063 (2007) (holding that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23, 123 S. Ct. 1513, 1523 (2003) (holding "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); and *id.* at 423 (holding that "due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other

17

parties' hypothetical claims against a defendant under guise of the reprehensibility analysis").].

20. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, each of the five reprehensibility factors set out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

21. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the constitutional factors that govern the permissible ratio of punitive damages to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (holding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). Such specific jury instructions and specific findings of

fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

22. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the comparable civil fine that could be imposed on the defendant[s] for the conduct in question. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 123 S. Ct. 1513, 1531 (2003) (holding that civil fines are more appropriate benchmarks for punitive damages than criminal penalties); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996) (holding that courts "should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."); (O'Connor, J., concurring in part and dissenting in part) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S. Ct. 2909, 2934 (1989)); *Clark v. Chrysler Corp.*, 436 F. 3d 594, 607 (6th Cir. 2006) (rejecting potential for punitive damages award as a basis for comparison in favor of potential civil penalties under applicable federal statute). Such specific jury instructions and specific findings of fact on the comparable civil penalties are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

23. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the direct relationship between EOG's conduct and the specific injury suffered by Plaintiffs. *Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S. Ct. 1057, 1064 (2007) (holding that "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003) (holding that "[D]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis."). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001), to ensure that the award is based solely on the conduct that caused specific injury to the plaintiff[s].

24. As a separate, alternative and affirmative defense, EOG states that Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of the New Mexico State Constitution (Article II, § 18), because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific

findings of fact with respect to, the exclusion of all items of compensatory damage from the quantum of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426, 123 S. Ct. 1513, 1525 (2003) (noting that "[t]he compensatory damages for the injury suffered here . . . likely were based on a component that was duplicated in the punitive award"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), to ensure that items of compensatory damages are not impermissibly 'double-counted' in the quantum of punitive damages.

WHEREFORE, Defendant EOG Resources, Inc. respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint for Wrongful Death and Loss of Consortium with prejudice, enter judgment in EOG Resources, Inc.'s favor, and award all such other relief, at law or in equity, that the Court deems just and proper.

Respectfully submitted,

MILLER STRATVERT P.A.

By: */s/ Matthew S. Rappaport*
    Matthew S. Rappaport
    P.O. Box 25687
    Albuquerque, NM 87125-0687
    Telephone: (505) 842-1950

&

\

21

MEHAFFY WEBER

By:___ /s/ *Michael W. Magee*_____
          Michael W. Magee
          Mark M. Appling
          One Allen Center
          500 Dallas Street, Suite 2800
          Houston, Texas 77002
          Telephone: (713) 210-8955
          Facsimile: (713) 655-0222
          michaelmagee@mehaffyweber.com
          markappling@mehaffyweber.com

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

22

I HEREBY CERTIFY that on the 14th
day of October, 2021, I filed the foregoing
pleading electronically through the
Odyssey File & Serve system, which caused
the following parties or counsel to be
served by electronic means, as more fully
reflected on the Notice of Electronic Filing:

      Chad Inderman
      Pedro Leyva
      Glasheen, Valles & Inderman, LLP
      P.O. Box 1976
      Lubbock, Texas 79408
      Email: efile.inderman@gvilaw.com
      Email: efile.pedro.leyva@gvilaw.com

      David J. Jaramillo
      Jaramillo Law Firm, P.C.
      505 Roma Avenue NW
      Albuquerque, NM 87102
      Email: david2djnmlaw.com

      Judd C. West
      Julia Broggi
      Holland & Hart LLP
      P.O. Box 2208
      Santa Fe, NM 87504
      Email: jbroggi@hollandhart.com
      Email: jcwest@hollandhart.com

      Tyler M. Cuff
      Rodey, Dickason, Sloan, Akin & Robb P.A.
      P.O. Box 1888
      Albuquerque, NM 87103
      Email: tcuff@rodey.com

By: */s/ Matthew S. Rappaport*
      Matthew S. Rappaport

EXHIBIT R

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/10/2021 11:27 AM
KATHLEEN VIGIL CLERK OF THE COURT
Gloria Landin

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.
     Plaintiffs,

v.                            No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
ROBBY GARZA CONDE, JR,
     Defendants.

## ORDER RE: JOINT MOTION FOR EXTENSION OF PRETRIAL DEADLINES

**THIS MATTER** having come before the Court on the Parties' Joint Motion for Extension

of Pretrial Deadlines, and the Court having reviewed the Motion and having been advised that all

parties have stipulated to the extension of deadlines provided below, and being otherwise fully

apprised in the premises FINDS;

The Motion is well taken and should be GRANTED.

**IT IS THEREFORE ORDERED** that the Rule 16(B) Scheduling Order shall be amended

as follows:

1.      Mediation/Settlement Conference: ___ May 27, 2022_____.

2.      Motions for Summary Judgment/Exclude Expert Testimony: ___ June 17, 2022___.

3.      Plaintiffs' expert witnesses: ___ March 18, 2022_____;

4.      Defendants' expert witnesses: ___ April 18, 2022_____.

5.      Non-expert witnesses expected to testify at trial: ___ February 25, 2022_____;

6.      Discovery: ___ June 03, 2022_____;

7.    All other deadlines contained in the Rule 1-016 NMRA Pretrial Scheduling Order

filed on _____ July 26, 2021 _____, shall remain the same.

_____  12/10/2021

HONORABLE MATTHEW J. WILSON
DISTRICT COURT JUDGE


Submitted by:

/s/ Pedro Leyva
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

And

Approved by email 12/06/2021
Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Suite 1
P.O. Box 2208

Santa Fe, NM 87504
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

And

Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 210-8955
Facsimile: (713) 655-0222
michaelmagee@mehaffyweber.com

And

Matthew S. Rappaport
P.O. Box 25687
Albuquerque, NM 87125
Tel: (505) 842-1950
mrappaport@mstlaw.com

**ATTORNEYS FOR DEFENDANT
EOG RESOURCES, INC.**

And

Approved by email 12/06/2021

Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
Post Office Box 1888
Albuquerque, NM 87103
Tel: (505) 765-5900
Fax: (505) 768-1395
tcuff@rodey.com

**ATTORNEYS FOR DEFENDANT BEDROCK
PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, AND
BOBBY GARZA CONDE**

EXHIBIT S

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/25/2022 4:38 PM
KATHLEEN VIGIL CLERK OF THE COURT
Gloria Landin

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA, and ESMERALDA RAMOS QUIRINO,
On behalf of her minor child, A.J.R.R.

      Plaintiffs,

v.                                      No. D-101-CV-2020-00899

EOG RESOURCES, INC.;
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, and
BOBBY GARZA CONDE, JR,

      Defendants,

v.

AMERICAN TRANSPORTATION GROUP
INSURANCE RISK RETENTION GROUP, INC.,

      Plaintiff-in-Intervention,

v.

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, and
BOBBY GARZA CONDE, JR., TODD LOPEZ,
as Personal Representative of the Estate of
APOLINAR JAQUEZ GARCIA, CYNTHIA
GUERECA, and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.,

      Defendants-in-Intervention.

**AMERICAN TRANSPORTATION GROUP INSURANCE
RISK RETENTION GROUP, INC.'S
COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW American Transportation Group Insurance Risk Retention Group, Inc. ("ATG") by and through its attorneys of record, Butt Thornton & Baehr PC (Amy E. Headrick and Nicholas W. Chiado), and pursuant to NMSA 1978, Sections 44-6-1 to -15 (1975) and 1-057 NMRA, requests declaratory judgment that ATG does not owe a duty to defend, indemnify, or reimburse Defendants EOG Resources, Inc. ("EOG"), Bedrock Petroleum Consultants, LLC, RCG Energy Services, and Bobby Garza Conde Jr. for the claims by Plaintiffs contained in the Second Amended Complaint filed herein. In support of ATG's Complaint for Declaratory Judgment, ATG states as follows:

## PARTIES AND JURISDICTION

1.     This is a civil action over which this Court has original jurisdiction pursuant to NMSA 1978, Section 44-6-2 (1975).

2.     Plaintiff-Intervenor ATG is a foreign company doing business in the State of New Mexico, with its principal place of business in North Carolina. ATG is organized pursuant to the laws of the State of North Carolina.

3.     Defendant EOG is a foreign corporation registered to do business in the State of New Mexico. Defendant/Counter Defendant EOG's principal place of business is Texas. Defendant/Counter Defendant EOG has previously entered an appearance and may be served through its counsel of record.

4.     Defendant Bedrock Petroleum Consultants, LLC ("Bedrock") is a foreign limited liability company registered to do business in the State of New Mexico. Defendant Bedrock's

principal place of business is Texas. Defendant Bedrock has previously entered an appearance and may be served through its counsel of record.

5.     RCG Energy Services, LLC (hereinafter referred to as part of Defendant "Bedrock") is a foreign limited liability company. RCG Energy Services, LLC's principal place of business is Texas. Defendant Bedrock has previously entered an appearance and may be served through its counsel of record.

6.     Upon information and belief, at all times material hereto, Defendant Robby Garza Conde, Jr., (hereinafter referred to as part of Defendant "Bedrock") is an individual working in the State of New Mexico who resides in Lubbock County, Texas. Defendant Bedrock has previously entered an appearance and may be served through his counsel of record.

7.     The Estate of Apolinar J. Garcia ("the Garcia Estate"), Cynthia Guereca ("Guereca"), and Esmeralda Ramos Quirino (on behalf of her minor child) ("Quirino") are joined as Defendants-in-Intervention because as third-party claimants, they are necessary parties pursuant to *Gallegos v. Nevada Gen. Ins. Co.*, 2011-NMCA-004 and NMSA 1978, Section 44-6-12.

8.     Defendant EOG has alleged Decedent Apolinar Jaquez Garcia ("Garcia") to have been an employee of Sur Transporte Incorporated ("STI") at all material times. *See* April 1, 2020, Demand Letter from EOG to ATG, attached herein as **Exhibit A**.

9.     This matter is a declaratory judgment action brought pursuant to the New Mexico Declaratory Judgment Act, 44-6-1 to -15 and Rule 57 of the New Mexico Rules of Civil Procedure based in part upon a commercial auto liability insurance contract issued by ATG to STI, policy number ATG-TX-0055889-19, with effective dates December 13, 2019, through December 13, 2020.

10.     Venue is proper through the ongoing active litigation in this matter.

3

11.     ATG's intervention herein is proper pursuant to Rule 1-024(A)(2) NMRA and *Foundation Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038, 97 N.M. 618 because ATG has an interest that relates directly to the claims asserted by the Garcia Estate in this case and disposition of this case without permitting ATG's intervention will impair ATG's ability to protect its interests, which are not adequately represented by the existing parties.

12.     An actual case and controversy of a justiciable nature exists between Plaintiff-Intervenor ATG and Defendants involving the rights and obligations of the parties under the ATG Commercial Auto Liability Policy of insurance issued by Plaintiff-Intervenor to STI, with respect to damages claimed in this suit filed by Plaintiffs. Resolution of this controversy is dependent upon construction of the insurance contract and construction of the New Mexico Oilfield Anti-Indemnity Statute and may be determined as a matter of law in this action without resort to any factual findings.

<u>**UNDERLYING CASE AND RELEVANT FACTS**</u>

13.     Upon information and belief, EOG is engaged in the business of oil and gas exploration which regularly contracts with independent contractors for related services.

Upon information and belief, the Bedrock Defendants are engaged in the business of exploring for and producing oil, gas, and other hydrocarbons. Upon information and belief, at all material times, Bedrock was engaged in its business pursuant to a Master Service Agreement with EOG executed on or about September 5, 2018 ("the Bedrock MSA"). *See* May 26, 2021, Demand Letter from EOG to ATG, attached herein as **Exhibit B**.

14.     STI is a New Mexico based independent service contractor which operated vacuum and hydrovac trucks in the oilfield pursuant to a Master Service Agreement with EOG executed

4

on or about 12/18/19 ("the STI MSA").  Relevant portions of the MSA are attached herein as **Exhibit C**.

15.      Upon information and belief, at all material times, Apolinar J. Garcia was an employee of STI.

16.      Upon information and belief, on March 27, 2020, EOG contracted with STI to transport fluid from one EOG facility to another. To that end, Mr. Garcia operated a 1999 vacuum tanker truck owned by STI and leased to DJM Logistics, LLC, which Mr. Garcia drove to the EOG Lomas Rojas reuse facility. While at the Lomas Rojas facility, the truck's vacuum tank exploded, killing Mr. Garcia.

17.      A *Complaint for Wrongful Death and Loss of Consortium* was filed herein on behalf of the Garcia Estate and Mr. Garcia's surviving spouse and minor child on April 6, 2020, which was amended on 04/06/21 ("the wrongful death suit").

18.      The Plaintiffs in the wrongful death suit allege EOG owned and operated water reuse facilities in southeastern New Mexico including two facilities at issue in the wrongful death suit. *Second Amended Complaint for Wrongful Death and Loss of Consortium* (filed 04/06/21) ("Second Amended Complaint") ¶¶ 12 and 16.

19.      The Plaintiffs in the wrongful death suit allege Defendant Garza, while working as a "reuse consultant" and "EOG representative" at the EOG "Hearns" reuse facility, "instructed" Mr. Garcia, "a water truck driver", to "clean [a] chemical spill in the chemical containment area at the Hearns facility by sucking the chemicals into [a] vacuum tanker." Sec. Am. Compl. ¶¶ 15 & 16.

20.      The Plaintiffs in the wrongful death suit allege Defendants EOG and Garza "failed to inform [Mr.] Garcia that he was loading hazardous materials into his water truck." *Id.* ¶ 16.

21.     The Plaintiffs in the wrongful death suit state a negligence cause of action against EOG alleging EOG's negligence "was the sole cause and/or cause of the explosion." *Id.* ¶ 23.

22.     In support of the negligence claim against EOG, the Plaintiffs in the wrongful death suit allege EOG: (a) provided hazardous materials for transport in a water hauler; (b) failed to inform Mr. Garcia of the hazardous nature of the load he was transporting; (c) failed to provide shipping papers describing the hazardous materials; (d) failed to warn of the flammable and hazardous nature of the load Mr. Garcia was transporting; (e) failed to provide a material safety data sheet; (f) failed to have proper hazmat placards; (g) failed to provide proper instruction to drivers transporting hazardous materials; (h) failed to placard Mr. Garcia's tanker; (i) provided a dangerous location at which to load/unload hazardous materials; (j) failed to take reasonable precautions at their facility when having drivers load/unload hazardous materials; (k) failed to warn Garcia of the potential of a fire and/or explosion; (l) failed to stop the job after learning that smoke was coming out of the tanker; and (m) failed to train its workers regarding the dangers of its facilities. *Id.*

23.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG for negligent hiring, supervision, and training alleging EOG negligently hired, supervised, and trained Defendant Garza. *Id.* ¶¶ 26–27.

24.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG for *respondeat superior* alleging EOG is liable for damages resulting from the negligence of its employees, agents, apparent agents, or contractors including Defendants Bedrock and Garza because they were "acting within the course and scope of their employment and were negligent". *Id.* ¶ 29.

25.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG

for negligence *per se* alleging EOG committed multiple violations of the Federal Motor Carrier

Safety Act, which applied to EOG because it was a "shipper[] of hazardous materials." *Id.* ¶¶ 31–

32.

26.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG

for negligent selection of a contractor, in the event Defendants Bedrock and Garza "are found to

be independent contractors", alleging EOG negligently and carelessly selected Defendants

Bedrock and Garza as contractors "knowing the dangers involved in the work they would be

performing." *Id.* ¶ 34.

27.     The Plaintiffs in the wrongful death suit seek compensatory damages, wrongful

death damages, and punitive damages from EOG.

28.     The Plaintiffs in the wrongful death suit state a cause of action against Defendant

Bedrock for negligence alleging Bedrock's negligence was "a cause of the explosion." *Id.* ¶ 40.

29.     In support of the negligence claim against Bedrock, the Plaintiffs in the wrongful

death suit allege Bedrock: (a) provided hazardous materials for transport in a water hauler; (b)

failed to inform Mr. Garcia of the hazardous nature of the load he was transporting; (c) failed to

provide shipping papers describing the hazardous materials; (d) failed to warn of the flammable

and hazardous nature of the load Mr. Garcia was transporting; (e) failed to provide a material safety

data sheet; (f) failed to have proper hazmat placards; (g) failed to provide proper instruction to

drivers transporting hazardous materials; (h) failed to placard Mr. Garcia's tanker; (i) failed to take

reasonable precautions at EOG's facility when having drivers load/unload hazardous materials; (j)

failed to warn Garcia of the potential of a fire and/or explosion; and (k) failed to stop the job after

learning that smoke was coming out of the tanker. *Id.* ¶ 41.

30.     The Plaintiffs in the wrongful death suit also state a cause of action against

Defendant Bedrock for negligent hiring, supervision, and training alleging Bedrock negligently hired, supervised, and trained Defendants RCG and Garza. *Id.* ¶ 43.

31.    The Plaintiffs in the wrongful death suit also state a cause of action against Defendant Bedrock for *respondeat superior* alleging Bedrock is liable for damages resulting from the negligence of its employees, agents, apparent agents, or contractors including Defendants RCG and Garza because they were "acting within the course and scope of their employment and were negligent". *Id.* ¶ 46.

32.    The Plaintiffs in the wrongful death suit also state a cause of action against Defendant Bedrock for negligent selection of a contractor, in the event Defendants RCG and Garza are "found to be independent contractors", alleging Bedrock negligently and carelessly selected Defendants RCG and Garza as contractors "knowing the dangers involved in the work [he] would be performing." *Id.* ¶ 47.

33.    The Plaintiffs in the wrongful death suit seek compensatory damages, wrongful death damages, and punitive damages from the Bedrock Defendants.

34.    ATG issued a Commercial Auto Liability Policy ("the Policy") to STI: Policy No. ATG-TX-0055889-19, with effective dates of December 13, 2019, through December 13, 2020. Relevant portions of which are attached hereto as **Exhibit D**.

35.    STI also procured commercial general liability coverage and an Umbrella/Excess Policy from Hudson Specialty Insurance Company ("Hudson"). Neither EOG nor any of the Bedrock Defendants are named insureds or additional insureds under the ATG policy.

36.    EOG tendered its defense and indemnity to ATG under the commercial auto policy and Hudson under the CGL policy.

37.     EOG's demand for defense and indemnity under the ATG policy is based on the MSA entered into between EOG and STI, which purports to obligate STI to defend and indemnify EOG without limitation.

38.     The ATG policy was in effect on the date of loss in this case. However, the ATG policy carries only commercial automobile liability coverage.

39.     On August 25, 2020, ATG tendered a defense to EOG subject to a reservation of rights.

40.     On June 21, 2021, ATG tendered the defense and indemnity of the Bedrock Defendants subject to a reservation of rights.

41.     EOG's demand for defense and indemnity of the Bedrock Defendants under the ATG policy is based on the MSA entered into between EOG and Bedrock, which purports to obligate STI to defend and indemnify EOG and members of "the Company Group" as that term is defined in the MSA.

42.     ATG contends there is no coverage under the ATG Policy for the damages sought by the Plaintiffs in the wrongful death suit.

<u>**GENERAL ALLEGATIONS**</u>

<u>**The ATG Policy**</u>

43.     ATG repeats and realleges the allegations contained in Paragraphs 1 through 41 as though fully set forth in their entirety.

44.     ATG issued a Commercial Auto Liability Policy ("the Policy") to STI: Policy No. ATG-TX-0055889-19, with effective dates of December 13, 2019, through December 13, 2020. *See* **Ex. D at 1**.

9

45. The Policy provides that ATG "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'" *See* **Ex. D** at 8.

46. The Policy further specifies that:

> We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

*Id.*

47. "Insureds" are defined in the Policy as:

> 1. You for any covered "auto".
>
> \*\*\*
>
> 5. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.* at 9.

48. The declarations page of the Policy provides a description of the coverage afforded under the policy and states "[e]ach of these coverages will apply only to those 'autos' listed on next page of this policy. *Id.* at 4.

49. A "schedule of covered autos" is provided in the Policy and includes two (2) trucks, six (6) tractors, and eight (8) drivers. *Id.* at 5.

50. The policy provides numerous exclusions, including:

> This insurance does not apply to any of the following:

10

2. Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs after the execution of the contract or agreement;

*** 

4. Employee Indemnification and Employer's Liability

  "Bodily injury" to:

a) An "employee" of the "insured" arising out of and in the course of:

1. Employment by the "insured"; or

2. Performing the duties related to the conduct of that "insured's" business;

*Id.* at 11.

51.     "Insured contract" is defined in the Policy as:

That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality, except in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

*Id.* at 28.

52.     A "scheduled driver endorsement" is attached to the Policy. This endorsement includes:

The Policy shall provide no coverage while a scheduled 'auto' is being used or operated by any individual other than the drivers listed in the Scheduled Driver Endorsement. No coverage shall be provided under the terms of this Policy to any individual operating a scheduled 'auto' who has not been underwritten and approved by the Company and listed therein.

*** 

It is an express condition of this policy that non-scheduled and non-approved drivers will not operate insured vehicles, and if liability arises from such operations it is the Insured's responsibility. Any costs incurred by the American Transportation Group as a result of claims arising out of the operation of insured vehicles by non-insured and/or non-approved drivers will be reimbursed to the Company by the Insured within 15 days of the demand.

11

*Id.* at 43–44.

53.    A "scheduled vehicles endorsement" is attached to the Policy. This endorsement includes:

> This Endorsement identifies the vehicles that are covered Autos under this Policy. Coverage is provided only for Scheduled Autos operated by Scheduled Driver(s) in scope of named insured trucking operations.
> All changes must be submitted to the company in writing at least 2 business days before the requested effective date. Changes will not take effect, unless a written confirmation (endorsement) was received from us.
>
> **Excluded Vehicle Types**:
>     1.    Hazmat haulers
>     2.    Tankers
>     3.    Overweight and Oversize vehicles
>     4.    Trucks older than 20 years old
>
> It is an express condition of this policy that non-scheduled and non-approved vehicles will not be operated by the policy holder, and if liability arises from such operation it is the Insured's responsibility. Any costs incurred by the American Transportation Group RRG as a result of claims arising out of the operation of an unscheduled or unapproved vehicle will be reimbursed by the insured to the Company by the Insured within 15 days of the demand.

*Id.* at 45.

## The EOG/STI Master Service Agreement

54.    ATG repeats and realleges the allegations contained in Paragraphs 1 through 52 as though fully set forth in their entirety.

55.    On December 18, 2019, EOG and STI signed and executed a Master Service Agreement ("MSA"). *See* **Ex. C**.

56.    Section 7A of the MSA states:

> CONTRACTOR AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, WITHOUT LIMIT, ON ACCOUNT OF BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR LOSS OF OR DAMAGE TO PROPERTY OF CONTRACTOR GROUP ALLEGEDLY

12

OR ACTUALLY SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF COMPANY GROUP. CONTRACTOR EXPRESSLY AGREES TO INDEMNIFY COMPANY FROM ALL LOSSES, DAMAGES, CLAIMS, COSTS, LIABILITIES, AND/OR OTHER EXPENSES ARISING OUT OF, OR INCURRED IN CONNECTION WITH, CLAIMS BROUGHT BY CONTRACTOR GROUP REGARDING ALLEGED OR ACTUAL MISCLASSIFICATION AS AN INDEPENDENT CONTRACTOR.

**Ex. C**.

57.     Subsection B(2) of Exhibit A to the MSA included a provision that required Sur Transporte to name EOG as "an additional insured to the full limits of each [insurance] policy" of Sur Transporte's.

58.     The MSA defines "company group" to mean:

> individually and collectively: (a) Company; (b) Affiliates; (C) the co-lessees, partners, joint venturers, co-owners, members and managers of (a) and (b); (d) Company's contractors and subcontractors of every tier (except for the Party named herein as "Contractor" and any member of its Group) and their Affiliates; and the agents, officers, directors, and employees of (a), (b), (c), and (d).

*Id*. at 2.

## <u>COUNT 1—DECLARATORY RELIEF</u>

59.     ATG repeats and realleges the allegations contained in Paragraphs 1 through 57 as though fully set forth in their entirety.

60.     The rights and obligations of ATG, EOG, and Bedrock Defendants are in dispute and affected by the terms and conditions of the Policy at issue and case law.

61.     Plaintiffs in this case have asserted the following claims: (1) Negligence—all Defendants; (2) Negligent Hiring, Supervision, and Training—EOG and Bedrock; (3) Respondeat Superior—all Defendants; (4) Negligence *Per Se*—EOG; (5) Negligent Selection of a

13

Contractor—EOG and Bedrock; (6) Wrongful Death of Apolinar Jaquez Garcia—all Defendants; and (7) Loss of Consortium—all Defendants. *See generally* Second Amended Complaint.

62.     Plaintiffs' claims stem from an incident on March 27, 2020, in which Decedent Garcia was preparing to unload hazardous materials at an EOG facility and an explosion resulted in his death. Second Amended Complaint, ¶¶ 17–18.

63.     On December 18, 2018, EOG and STI entered into a Master Service Agreement ("MSA"). *See* **Ex. C**.

64.     Defendants EOG and Bedrock entered into a separate MSA on September 5, 2018. *See* **Ex. B**.

65.     EOG and Bedrock are interested parties herein as both have demanded indemnification from ATG related to the claims brought by the Plaintiffs in this matter. *See* **Ex. A and B**.

66.     Relying upon the definition of "Company Group" located in the MSA and upon the provision requiring Sur Transporte to name EOG as an "additional insured" to its Policy, EOG and Bedrock justify their demands for indemnification from ATG.

67.     On August 25, 2020, and June 21, 2021, ATG informed EOG and Bedrock that it would provide defense through assigned defense counsel under full and complete reservation of rights. *See* **Ex. E** and **F**.

68.     Thus, a controversy exists between the parties regarding whether ATG owes a duty of indemnification to EOG and Bedrock through the policy issued to Sur Transporte.

69.     Decedent Garcia was not included as a Scheduled Driver on the Policy and thus, the unambiguous Scheduled Driver Endorsement to the Policy precludes coverage for all claims pertaining to the alleged wrongful death of Garcia.

70.     ATG never received a request that Garcia be added and approved for coverage on the Policy and thus, the unambiguous Scheduled Driver Endorsement to the Policy precludes coverage for all claims pertaining to the alleged wrongful death of Garcia.

71.     The tractor involved in the incident was 21 years old at the time of the incident and thus, the unambiguous Scheduled Vehicle Endorsement to the Policy precludes coverage for all claims pertaining to the alleged wrongful death of Garcia.

72.     The vehicle involved in the incident complained of by the Plaintiffs (VIN # 2HSFMAMR1XC020314) was not included in the Policy as a Scheduled Vehicle and thus, the unambiguous Scheduled Vehicle Endorsement precludes coverage for all claims pertaining to the alleged wrongful death of Garcia.

73.     The "Employee Indemnification and Employer's Liability" exclusion to the Policy precludes coverage, as Garcia is alleged to have been an employee of STI, the Insured under the Policy.

74.     Additionally, the provision of the MSA in which STI purportedly agreed to indemnify the Company Group against loss or liability for damages arising from the sole or concurrent negligence of the indemnitee is against the public policy of the State of New Mexico and is void, pursuant to NMSA 1978, Section 56-7-2 (2003).

75.     By reason of the foregoing, there now exists an actual and justiciable controversy between ATG, EOG, and Bedrock, as required by NMSA 1978, Section 44-6-2 (1975) and declaratory judgment will terminate the controversy.

WHEREFORE, Plaintiff-Intervenor, American Transportation Group Insurance Risk Retention Group, Inc, respectfully requests this Court declare the rights and obligations of the parties hereto in accordance with ATG's contentions herein. Specifically, ATG requests:

15

A.     That judgment be entered in ATG's favor and the Court enter a declaration regarding the rights and obligations of each of the parties with respect to the dispute herein and find there is no coverage under the Policy for the claims asserted by Plaintiffs;

B.     That the Court enter judgment declaring the indemnity provision located in the Master Service Agreement between Sur Transporte, Inc. and EOG is void as against New Mexico statutes and the public policy of New Mexico and unenforceable;

C.     That the Court enter judgment declaring ATG has no duty to defend or indemnify EOG or Bedrock for the claims asserted by the Plaintiffs in this matter; and

D.     That the Court award ATG such other relief, including its costs, as this Court deems just and proper.

Respectfully Submitted,

BUTT THORNTON & BAEHR PC

*/s/ Nicholas W. Chiado*
Amy E Headrick
Nicholas W. Chiado
*Attorneys for American Transportation*
*Group Insurance Risk Retention Group, Inc.*
PO Box 3170
Albuquerque, NM 87190-3170
Telephone: (505) 884-0777
aeheadrick@btblaw.com
nwchiado@btblaw.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of February, 2022, I filed a copy of the foregoing via the Odyssey File & Serve system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road NE
Albuquerque, NM  87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com


Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Ste. 1
Santa Fe, NM  87501
Tel: (505) 988-4421
Fax: (505) 983-6043
jcwest@hollandhart.com
jbroggi@hollandhart.com


Michael W. Magee
Mark M. Appling
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Ste. 2800
Houston, TX  77002
Tel: (713) 210-8955
Fax: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com


Matthew S. Rappaport
Miller Stratvert P.A.
P.O. Box 25687
Albuquerque, NM  87125
Tel: 505-842-1950
mrappaport@mstlaw.com

Chad Inderman
Pedro Leyva
Glasheen, Valles, & Inderman, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX  79408
Tel: (806) 776-1331
Fax: (806) 329-0594
efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM  87102
Tel: 505-200-9454
Fax: 505-717-1502
david@djnmlaw.com

Tyler M. Cuff
Rodey, Dickason, Sloan, Akin & Robb
P.O. Box 1888
Albuquerque, NM  87103
Tel: 505-765-5900
Fax: 505-768-1395
tcuff@rodey.com


*/s/ Nicholas W. Chiado*
Nicholas W. Chiado



**MEHAFFYWEBER**
HOUSTON | BEAUMONT | SAN ANTONIO | AUSTIN | LAS VEGAS

Michael W. Magee // *Shareholder*
Board Certified by the Texas Board of Legal Specialization
in Personal Injury Trial Law

Email  michaelmagee@mehaffyweber.com
Direct  713.210.8955
Mobile  713.501.0748
www.mehaffyweber.com

April 1, 2020

*Via Certified Mail & Email*
Laureano Puerto
Sur Transporte, Inc.
726 East Michigan Drive, Suite 513
Hobbs, New Mexico 88240

Re:  Your Employee:  Apolinar Jaquez Garcia
       Location:           Lomas Rojas Water Reuse Facility, Lea County, New Mexico
       D/Loss:             March 27, 2020

Dear Mr. Puerto:

As you are aware, I represent EOG Resources, Inc. ("EOG") in connection with an incident involving your employee, Apolinar Jaquez Garcia, that occurred on March 27, 2020 at the Lomas Rojas Water reuse Facility.  Mr. Garcia's family has now retained a lawyer. *See* Exhibit "A".

On December 18, 2018, EOG and Sur Transporte, Inc. ("Sur Transporte") entered into a Master Service Agreement ("MSA"). *See* Exhibit "B".  Pursuant to Section 7A of the MSA, Sur Transporte is required to defend and indemnify EOG for any claim made by the Garcia family.  Pursuant to Section B(2) of Exhibit "A" of the MSA, EOG was to be a named additional insured on the Sur Transporte Commercial General Liability and Excess/Umbrella Liability insurance policies.

EOG hereby demands that Sur Transporte agree to defend and indemnify EOG for any claim made by the Garcia family.  EOG would request a written response to this demand by May 1, 2020.

Yours Very Truly,

/s/ Michael W. Magee

Michael W. Magee

MWM/sw

HOULITIGATION:1684606.1

*EXHIBIT A*

April 1, 2020
Page 2

cc:    ***Via U.S. Mail (without enclosures)***
        Linda Tarin Agency, LLC
        1720 N. Dal Paso Street
        Hobbs, New Mexico 88241

        ***Via U.S. Mail (without enclosures)***
        3321 Group, LLC – North Country Insurance
        16621 N. 91st Street, Suite 103
        Scottsdale, Arizona 85260

*EXHIBIT A*



**Michael W. Magee** // *Shareholder*
Board Certified by the Texas Board of Legal Specialization
in Personal Injury Trial Law

Email  michaelmagee@mehaffyweber.com
Direct  713.210.8955
Mobile 713.501.0748
www.mehaffyweber.com

May 26, 2021

*Via Email: Team1@gbgroupllc.com*
Edward Kanevsky
GB GROUP LLC
P. O. Box 51414
Philadelphia, PA 19115

Re:   Your Named Insured:      Sur Transporte, Inc.
      Policy No.:              ATG-TX-0055889-19
      Insured Driver:          Apolinar Garcia
      Date of Loss:            March 27, 2020
      Location of Loss:        Hobbs, New Mexico
      Your Claim Number:       101294

Dear Mr. Kanevsky:

As you are aware, I have been retained by EOG Resources, Inc. ("EOG") in connection with a claim that has made by the family of Apolinar Jaquez Garcia arising from an incident that occurred on March 27, 2020 at the EOG Lomas Rojas Water Reuse Facility. Plaintiffs, Todd Lopez as personal representative of the Estate of Apolinar Jaquez, Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child, A.J.J.R. (collectively "Garcia Plaintiffs") have filed a Second Amended Complaint joining Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC and Robby Garza Conde, Jr. (collectively "Bedrock") as Defendants. *See* Exhibit "A".

On September 5, 2018, EOG and Bedrock entered into a Master Service Agreement ("MSA"). Bedrock has now made a demand for defense and indemnity to EOG for the claims of the Garcia Plaintiffs. *See* Exhibit "C".

On December 18, 2019, EOG and Sur Transporte, Inc. ("Sur Transporte") entered into a MSA. *See* Exhibit "D". Pursuant to Paragraph 1(4) of the MSA, Bedrock would be part of the "Company Group". Pursuant to Section 7A of the MSA, Sur Transporte is required to defend and indemnify Bedrock for any claim made by the Garcia Plaintiffs. Pursuant to Section B(2) of Exhibit "A" of the MSA, Bedrock was to be a named additional insured on the Sur Transporte Commercial General Liability and Excess/Umbrella Liability insurance policies.

EOG hereby demands that American Transportation Group agree to defend and indemnify Bedrock for any claim made by Garcia Plaintiffs. EOG would request a written response to this demand by June 25, 2021.

HOULITIGATION:1775681.1

*EXHIBIT B*

May 26, 2021
Page 2

Yours Very Truly,

/s/ Michael W. Magee

Michael W. Magee

MWM/cw

cc:     *Via Email*: **aeheadrick@btblaw.com**
        Amy E. Headrick

*EXHIBIT B*

## MASTER SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT ("Agreement"), which comprises the full and complete agreement of the Parties hereto and supersedes all previous agreements between the Parties relating to the subject matter hereof, is entered into the _18th_ day of _December_ , 20_19_, by and between EOG RESOURCES, INC., P.O. Box 4362, Houston, Texas 77210-4362, for itself and its wholly owned subsidiaries ("Company"), and _Sur Transporte Inc. 5024 W. Steel Prior Rd. Hobbs, NM 88240_ ("Contractor"). Company and Contractor may be referred to hereinafter individually as a "Party" or collectively as the "Parties."

WHEREAS, Company is engaged in the business of exploring for and producing oil, gas and other hydrocarbons in the onshore and offshore areas of the Continental United States for its own account and for the joint account of itself and others, and in the course of such operations regularly and customarily enters into contracts with independent contractors for the performance of services relating thereto; and

WHEREAS Contractor, as a service contractor engaged in the business of _vacuum and hydrovac trucks for the oilfield._ and any ancillary functions related thereto ("Services"), may agree to perform the Services as an independent contractor for Company from time to time at Company's request.

NOW, THEREFORE, in consideration of the mutual promises and agreements contained herein, the sufficiency of which is hereby acknowledged, the Parties mutually agree as follows:

1. **Definitions.** As used in this Agreement, the following terms and/or phrases shall be defined as follows:

(1) "Affiliate" means, in respect of a Person, any other Person or group of Persons acting in concert, directly or indirectly, that controls, is controlled by, or is under common control with the first mentioned Person. For the purposes of this definition, "control" means the direct or indirect ownership of more than fifty percent (50%) of the outstanding shares or other voting rights of the subject entity to elect directors (or in the case of an entity that is not a corporation, interests entitled to vote in the election of the corresponding managing authority), or the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the subject entity by ownership of securities, contract, credit arrangement or otherwise.

(2) "Background Intellectual Property" shall mean all Intellectual Property owned by or licensed to a Party prior to the Services performed under this Agreement.

(3) "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, and/or expenses (including, without limitation, reasonable attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or the subject matter of this Agreement (including, but not limited to, property loss or damage, bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

MSA – Ver 2018a

_EXHIBIT C_

(4) "Company Group" shall mean individually and collectively: (a) Company; (b) its Affiliates; (c) the co-lessees, partners, joint venturers, co-owners, members and managers of (a) and (b); (d) Company's contractors and subcontractors of every tier (except for the Party named herein as "Contractor" and any member of its Group) and their Affiliates; and (e) the agents, officers, directors and employees of (a), (b), (c), and (d).

(5) "Confidential Information" shall mean all Intellectual Property, Data, and other confidential, non-public or proprietary Information of a Party's Group. Confidential Information shall not include information which: (a) is or becomes generally available or known to the public through no fault of the receiving Party; (b) was already known by or available to the receiving Party on a non-confidential basis prior to the disclosure by the disclosing Party; (c) is subsequently disclosed to the receiving Party by a third party who is not under any obligation of confidentiality to the disclosing Party; (d) has already been, or is hereafter independently acquired or developed by, the receiving Party without violating any confidentiality agreement or other similar obligation; or (e) is required to be disclosed by any tribunal, state or federal court, and/or administrative body or agency, by oral questions, subpoenas, civil or criminal investigative demand, interrogatories, requests for information, or other similar process, provided that the receiving Party shall first give notice of any such request or order of the court to give the disclosing Party an opportunity to contest or limit said request or order of the court.

(6) "Contractor Group" shall mean, individually and collectively: (a) Contractor; (b) its Affiliates; (c) the co-owners, members, and managers of (a) and (b); (d) Contractor's subcontractors of every tier and their Affiliates; and (e) the agents, officers, directors and employees of (a), (b), (c), and (d).

(7) "Data" shall mean all data and information (and any and all derivatives thereof) that is received, created, acquired, obtained, collected, generated, developed, derived, or stored in connection with a Party's business operations (including, but not limited to, the performance of the Services or other obligations under this Agreement) however derived, whether such data or information is generated by sensors, machines, user input, or otherwise. Data shall include, but not be limited to, reservoir data, geologic and geophysical data, financial data, economic data, commercial data, contractual data, environmental data, marketing data, operational data, engineering data, and data or information contained in (or derived from) analyses, interpretations, compilations, reports, investigations, research, studies, codes, maps, models, logs, sales or service programs, customer lists, records relating to past services, capital expenditure projects, cost summaries, equipment or production system designs or drawings, physical samples, projections, present and future business plans, agreements with vendors, joint venture agreements, or confidential filings with any governmental authority developed or prepared by (or on behalf of) the Party's Group.

(8) "Group" shall mean Company Group or Contractor Group, as applicable.

(9) "Intellectual Property" shall mean and include all inventions, ideas, concepts, improvements, discoveries, trade secrets, Works of Authorship, derivative Works of Authorship, formulae, computations, calculations, industrial processes, business plans and strategy, know-how, patents and patent applications, designs, copyrights, including moral rights, trademarks, and all other legally protectable results of intellectual effort, whether developed by, owned by, or licensed to a Party.

EXHIBIT C

6A. In the performance of any Services by Contractor for Company, Contractor shall be conclusively deemed an independent contractor, with the authority and right to direct and control all of the details of the Services, Company only being interested in the result obtained. However, all Services contemplated by a Work Order shall be subject to the approval of Company and shall be subject to Company's general right of inspection. Company shall have no right or authority to supervise or give instructions to the employees, personnel, agents or representatives of Contractor, and Contractor's employees, personnel, agents or representatives at all times shall be under the direct and sole supervision and control of Contractor. Any suggestions or directions which may be given by Company or its employees shall be given only to the superintendent or other person in charge of Contractor's crew. It is the understanding and intention of the Parties hereto that no relationship of master and servant, or principal and agent, shall exist between Company and the employees, personnel, agents or representatives of Contractor.

6B. To the extent that Contractor's employees (defined, for purposes of this Agreement, to include Contractor's direct, borrowed, special or statutory employees) are covered by the Louisiana Workers' Compensation Act, LSA R.S. 23:1021, et seq., notwithstanding the foregoing or any other provision to the contrary in this Agreement, Company and Contractor agree that all Services and operations performed by Contractor and its employees pursuant to this Agreement are an integral part of and are essential to the ability of Company to generate goods, products and services for purposes of LSA R.S. 23:1061 (A)(1). Furthermore, Company and Contractor agree that Company is the principal or statutory employer of Contractor's employees for purposes of LSA R.S. 23:1061 (A)(3) and the protections afforded a statutory employer under Louisiana law shall apply. Irrespective of Company's status as the statutory employer or special employer (as defined in LSA R.S. 23:1031) of Contractor's employees, Contractor shall remain primarily responsible for the payment of Louisiana Workers' Compensation benefits to its employees and shall not be entitled to seek contribution for any such payment from Company; Company shall be entitled to indemnity from Contractor for any such payment made by Company.

6C. To the extent that Contractor's employees (defined, for purposes of this Agreement, to include Contractor's direct, borrowed, special or statutory employees) are covered by the New Mexico Workers' Compensation Administration Act, NMSA 1978 § 52-1-1, et seq., notwithstanding the foregoing or any other provision to the contrary in this Agreement, Company and Contractor agree that all Services and operations performed by Contractor and its employees are part of Company's trade and business. Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees for purposes of NMSA 1978 §52-1-22 and the protections afforded a statutory employer under New Mexico law shall apply. Irrespective of Company's status as the statutory employer or special employer of Contractor's employees, Contractor shall remain primarily responsible for carrying workers' compensation insurance and the payment of New Mexico Workers' Compensation benefits to its employees and shall not be entitled to seek contribution for any such payment from Company; Company shall be entitled to indemnity from Contractor for any such payment made by Company.

7A. CONTRACTOR AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, WITHOUT LIMIT, ON ACCOUNT OF BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR LOSS OF OR DAMAGE TO PROPERTY OF CONTRACTOR GROUP ALLEGEDLY OR ACTUALLY

*EXHIBIT C*

SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF COMPANY GROUP. CONTRACTOR EXPRESSLY AGREES TO INDEMNIFY COMPANY FROM ALL LOSSES, DAMAGES, CLAIMS, COSTS, LIABILITIES, AND/OR OTHER EXPENSES ARISING OUT OF, OR INCURRED IN CONNECTION WITH, CLAIMS BROUGHT BY CONTRACTOR GROUP REGARDING ALLEGED OR ACTUAL MISCLASSIFICATION AS AN INDEPENDENT CONTRACTOR.

7B.  COMPANY AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD CONTRACTOR GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, WITHOUT LIMIT, ON ACCOUNT OF BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR LOSS OF OR DAMAGE TO PROPERTY OF COMPANY GROUP ALLEGEDLY OR ACTUALLY SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF CONTRACTOR GROUP.

7C.  For the purposes of this Paragraph 7, the term "employee" of Contractor shall include all employees of Contractor, even if one of Contractor's employees is determined to be a borrowed employee or statutory employee of any other entity.

7D.  In the event of loss or damage sustained by third parties other than Contractor Group or Company Group, each Party shall only be liable for such loss and/or damages to the extent of its own proportionate fault or negligence.

7E.  The Parties agree that the indemnities provided by Contractor under this Agreement shall be supported by insurance available to Contractor, and the indemnities provided by Company shall be supported by insurance available to Company.  The minimum limits of insurance supporting the Parties' indemnity obligations shall be the total limits of Company's insurance or the total limits of Contractor's insurance (whether or not required by this Agreement), whichever is less, provided that in no event shall such limits be less than the amount required in Exhibit A.  Any deductibles, self-insurance, or self-insured retention under either Party's insurance policies shall be for the sole account of that Party, and the other Party shall have no liability for same. The Parties agree that the insurance requirements of this Paragraph 7 shall support but not limit the Parties' indemnity obligations, except to the extent mandated by applicable law.

8.  As a separate, distinct, and independent obligation, Contractor (and each subcontractor within Contractor Group) shall comply with, and before performing any Services hereunder provide Company certificates of insurance evidencing compliance with, the minimum insurance requirements set forth in Exhibit A, which are not intended in any way to limit the extent of Contractor's indemnity obligation provided for in Paragraph 7 herein.  Further, Company's failure to object to an improper or incomplete certificate of insurance, or Contractor's failure to provide such a certificate, shall not relieve Contractor of any of its insurance obligations under this Agreement.  In the event non-maritime Services are to be performed in or offshore Louisiana for which the Louisiana Oilfield Anti-Indemnity Act would apply, Contractor shall abide by the procedures set forth in Exhibit A.

*EXHIBIT C*

**Policy**
Printed 12-13-2019



SUR TRANSPORTE INC
 105 FM 1788
SEMINOLE, Texas 79360

| **Commercial Auto Liability** |
| :--- |
| **Policy No.** ATG-TX-0055889-19 |

## NOTICE

This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

**INSURED**      SUR TRANSPORTE INC
               105 FM 1788
               SEMINOLE, Texas 79360

**BUSINESS DESCRIPTION**      Trucking

**POLICY PERIOD**      From      12-13-2019
                     To        12-13-2020
                               AT 12:01AM STANDARD TIME AT YOUR
                               MAILING ADDRESS SHOWN ABOVE

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

This policy consists of the following coverage parts for which a premium is indicated.  This premium may be subject to adjustment.

| | |
| :--- | ---: |
| Commercial Automobile Coverage | $ ▉▉▉ |
| Taxes | $ ▉▉▉ |
| Fees | $ ▉▉▉ |
| Total annual cost | $ ▉▉▉ |

Subject to a 25% Minimum Earned Premium in the event of cancellation by the Insured.

Countersigned:           Date: 12-13-2019

*EXHIBIT D*

**Policy**
Printed 12-13-2019



## MOTOR CARRIER LIABILITY COVERAGE PART DECLARATIONS

NOTICE This policy is issued by your risk retention group. Your risk retention group may not be subject to all the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

**Policy Number:** ATG-TX-0055889-19

**INSURED**

SUR TRANSPORTE INC
105 FM 1788
SEMINOLE, Texas 79360

**AGENT**

Winter Group, Inc.
16935 West Bernardo Drive
#150
San Diego, California 92127

**POLICY PERIOD**

| From | 12-13-2019 |
| To | 12-13-2020 AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE |

**DEDUCTIBLE/Collateral**          $ 1,000.00

This policy provides only those coverages where a limit-sum is shown in table below.  Each of these coverages will apply only to those 'autos' listed on next page of this policy.

| COVERAGE | LIMIT |
|---|---|
| Automobile Liability Insurance | $ 1,000,000.00 |
| Uninsured Motorist Insurance | $ 85,000.00 |
| Auto Medical Payments | $ 0.00 |

*EXHIBIT D*

**Policy**
Printed 12-13-2019



# SCHEDULE OF COVERED AUTOS

1. Tractor : 2005 Freightliner VIN # 1FUJBBCK55LN56066

2. Truck : 2020 KENWORTH VIN # 1NKZX4EX6LJ371340

3. Truck : 2020 KENWORTH VIN # 1NKZX7EX6LJ383568

4. Tractor : 2007 KENWORTH VIN # 1XKTDB9X57J183126

5. Tractor : 2006 Freightliner VIN # 1FUJBBCK96LU10237

6. Tractor : 2005 Freightliner VIN # 1FUJA6AV95PU52504

7. Tractor : 2012 INTERNATIONAL VIN # 3HSDJSJRXCN127090

8. Tractor : 2013 INTERNATIONAL VIN # 3HSDJSJR3DN415258

9. Driver : RODOVALDO GONZALEZ Florida License # G524720882980

10. Driver : DAYAN TEJERA Florida License # T262160822650

11. Driver : MOISES PEREZ Florida License # P621540793420

12. Driver : CARMENATE ISRAEL Florida License # C65540062206

13. Driver : DAYOSKY ESQUIJAROSA Florida License # E226160884150

14. Driver : FAUSTION MARIN Florida License # Z256240902900

15. Driver : LAUREANO ARDILA Florida License # P636520643100

16. Driver : MARCIAL BLANCO Florida License # B452540643240

**Policy**
Printed 12-13-2019



# MOTOR CARRIER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

The schedule of covered "autos" included in this policy, shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**Description of Covered Auto Designation Symbols:**

| 1 | Any "Auto" | |
|---|---|---|
| 2 | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger Type "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the policy begins. |
| 4 | Owned Commercial "Autos" Only | Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject to No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject to A Compulsory Uninsured | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| X | Specifically Described "Autos" | Only those "autos" described in schedule of covered autos (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), |

*EXHIBIT D*

**Policy**
Printed 12-13-2019



**Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.
2. "Mobile equipment" while being carried or towed by a covered "auto".
3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
   a) Breakdown;
   b) Repair;
   c) Servicing;
   d) "Loss"; or
   e) Destruction.

SECTION II – COVERED AUTOS LIABILITY COVERAGE

**Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

ATG Insurance Risk Retention Group inc, 555 Fayetteville St, Raleigh, NC-27601.

Page 8

*EXHIBIT D*

**Policy**
Printed 12-13-2019



**Who Is an Insured**

The following are "insureds":

1. You for any covered "auto".
2. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
   a. The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".
   b. Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.
   c. Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
   d. Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".
   e. A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.
3. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.
4. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.
5. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

1. Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":
   a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.
   b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

**Policy**
Printed 12-13-2019



**Exclusions**

This insurance does not apply to any of the following:

1.      Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2.      Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

    a)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs after the execution of the contract or agreement; or
    b)  That the "insured" would have in the absence of the contract or agreement.

3.      Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4.      Employee Indemnification and Employer's Liability

"Bodily injury" to:

    a)  An "employee" of the "insured" arising out of and in the course of:
        1.  Employment by the "insured"; or
        2.  Performing the duties related to the conduct of the "insured's" business; or
    b)  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

    1.  Whether the "insured" may be liable as an employer or in any other capacity; and
    2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**Policy**
Printed 12-13-2019



b. The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;
2. A side-track agreement;
3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or
6. That part of any other contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**Policy**
Printed 12-13-2019



# SCHEDULED DRIVER ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

The Policy shall provide no coverage while a scheduled 'auto' is being used or operated by any individual other than the drivers listed in the Scheduled Driver Endorsement.  No coverage shall be provided under the terms of this Policy to any individual operating a scheduled 'auto' who has not been underwritten and approved by the Company and listed herein.

Drivers shall be scheduled as approved drivers, subject to underwriting review and approval. Driver(s) will be added to the Policy at 12:01 am, 2 business days following the Company's receipt of written request from the insured to endorse a driver(s), subject to underwriting approval. No changes will be accepted via a telephone request.  Written request must include (requests may be faxed or emailed to the Company):

1.      A clear copy of current driver license and MVR Abstract.

2.      Effective Date.

3.      Policy Number and Name of the insured.

## SUMMARY OF DRIVER QUALIFICATIONS

Minimum underwriting guidelines require the following terms to be met by each applicant:

1. Driver shall be between the ages of 25 and 65 years old.  Drivers over the age of 65 may be eligible for approval upon the Company's review of the driver's medical statement.
2. No driver shall have accumulated more than 3 violations. MVR's are subject to the Company's review at any time during the term of the Policy. The total eligibility points shall be prior to any forgiveness earned.  It is, however, the responsibility of the insured to notify the Company of any infractions or violations that would cause one of it's drivers to become non-qualified for coverage under the Company's underwriting guidelines.
3. Hold a current valid commercial driver's license applicable to the class of the vehicle operated for at least 2 years.  If the applicant had a license from more than one state in the past two years, it is the applicant's responsibility to provide proofs of out of state license.
4. A driver(s) driving rights must not have been suspended during the last year.
5. A driver(s) must not have any DUI/DWI convictions or any major violations within the past five years.
6. A driver(s) may not have more than 1 at fault accident within 3 years.

*EXHIBIT D*

**Policy**



Printed 12-13-2019

7. A driver may be disqualified if it is determined that he/she has been convicted or pled guilty to violations of any motor vehicle code and shows a propensity to be reckless or indifferent to the public health, safety or welfare of others.

8. A driver(s) must be certified to be physically and mentally fit by a health care provider. Company reserves its right to require a copy of medical certification during the term of the policy and at inception.

Drivers not meeting minimum underwriting guidelines will not be endorsed. It is the policy holder's responsibility to ensure that all its drivers are listed and qualified under this endorsement.

It is an express condition of this policy that non-scheduled and non-approved drivers will not operate insured vehicles, and if liability arises from such operation it is the Insured's responsibility. Any costs incurred by the American Transportation Group as a result of claims arising out of the operation of insured vehicles by non-insured and/or non-approved drivers will be reimbursed to the Company by the Insured within 15 days of the demand.

**Claim Reporting**

**In the event of accident, be sure to secure I sense number of the other vehicle, also full names and addresses of all other persons in the accident. Also, write down full names and addresses of all witnesses. Report at once full details of accidents to your insurance company's Claim Operations, 555 Fayettevile, Raleigh NC 27601. Toll Free 1-800-730-0373 Email atgclaims@gbgroupllc.com**

ATG Insurance Risk Retention Group Inc, 555 Fayetteville St, Raleigh, NC-27601.

Page 44

*EXHIBIT D*

**Policy**
Printed 12-13-2019



## SCHEDULED VEHICLES ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This Endorsement identifies the vehicles that are covered Autos under this Policy. Coverage is provided only for Scheduled Autos operated by Scheduled Driver(s) in scope of named insured trucking operations.

All Changes must be submitted to the company in writing at least 2 business days before the requested effective date. Changes will not take effect, unless a written confirmation (endorsement) was received from us.

**Excluded Vehicle Types:**

1. Hazmat haulers
2. Tankers
3. Overweight and Oversize vehicles
4. Trucks older than 20 years old

It is an express condition of this policy that non-scheduled and non-approved vehicles will not be operated by the policy holder, and if liability arises from such operation it is the Insured's responsibility. Any costs incurred by the American Transportation Group RRG as a result of claims arising out of the operation of an unscheduled or unapproved vehicle will be reimbursed by the insured to the Company by the Insured within 15 days of the demand.

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
2/25/2022 5:46 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

**CAUSE No. D-101-CV-2020-00899**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA; and ESMERALDA RAMOS QUIRINO, on behalf of her minor child, A.J.J.R.,

     Plaintiffs,

v.

EOG RESOURCES, INC., BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, LLC, and ROBBY GARZA CONDE, JR.,

     Defendants.

_____

HILLTOP SPECIALTY INSURANCE COMPANY f/k/a HUDSON SPECIALTY INSURANCE COMPANY,

     Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC., BEDROCK PETROLEUM CONSULTANTS, LLC., RCG ENERGY SERVICES, LLC, ROBBY GARZA CONDE, JR., TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA, CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, on behalf of her minor child, A.J.J.R.,

     Defendants-in-Intervention.

**<u>HILLTOP SPECIALTY INSURANCE COMPANY F/K/A
HUDSON SPECIALTY INSURANCE COMPANY'S
COMPLAINT-IN-INTERVENTION FOR DECLARATORY JUDGMENT</u>**

Plaintiff-in-Intervention, Hilltop Specialty Insurance Company f/k/a Hudson

Specialty Insurance Company[1] ("Hilltop"), by and through its attorneys, Riley | Keller | Alderete | Gonzales (Courtenay L. Keller and Taryn M. Kaselonis), seeks declaratory judgment pursuant to the New Mexico Declaratory Judgment Act (NMSA 1978, §§ 44-6-1, *et seq.*) and Rule 1-057 NMRA holding Hilltop does not owe a duty to defend and indemnify Defendants EOG Resources, Inc., Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC, and Robby Garza Conde, Jr. against the claims brought by the Estate of Apolinar J. Garcia in the *Complaint for Wrongful Death and Loss of Consortium* filed herein.  As grounds, Hilltop states the following:

## JURISDICTIONAL ALLEGATIONS

1.      Hilltop is a New York corporation with its principal place of business located in New York.

2.      Sur Transporte, Inc. ("STI") is a New Mexico corporation with its principal place of business located in New Mexico.

3.      EOG Resources, Inc. ("EOG") is a foreign corporation with its principal place of business located in Texas.  EOG has demanded that Hilltop defend and indemnify it against the claims brought by the Garcia Estate.

4.      Bedrock Petroleum Consultants, LLC ("Bedrock") is a foreign corporation. Upon information and belief, Bedrock's principal place of business is located in Louisiana.

5.      RCG Energy Services, LLC ("RCG") is a foreign corporation.   Upon

---

[1] Hudson Specialty Insurance Company was renamed to Hilltop Specialty Insurance Company  on 10/26/2020.  The relevant policies will be referred to as the "Hudson Policies" to reflect how the policies appear as they were originally written; however, the correct legal name for the underwriting entity is now Hilltop Specialty Insurance Company.

information and belief, RCG's principal place of business is located in Texas.

6.      Robby Garza Conde, Jr. ("Garza") is an individual who resides in Texas.

7.      Bedrock, RCG, and Conde (collectively referred to herein as "the Bedrock Defendants") have demanded that Hilltop defend and indemnify them against the claims brought by the Garcia Estate.

8.      The Estate of Apolinar J. Garcia ("the Garcia Estate"), Cynthia Guereca ("Guereca"), and Esmeralda Ramos Quirino (on behalf of her minor child) ("Quirino") are joined as Defendants-in-Intervention because as third-party claimants, they are necessary parties pursuant to *Gallegos v. Nevada Gen. Ins. Co.*, 2011-NMCA-004 and NMSA 1978, Section 44-6-12.

9.      There is an actual, justiciable controversy in this case between Hilltop and the Defendants-in-Intervention concerning their rights, status, and duties under a Commercial General Liability ("CGL") policy (No. WSC 19001405) and an Umbrella/Excess ("Excess") policy (No. WSU 19000783) issued by Hudson Specialty Insurance Company ("Hudson") to its named insured, STI.[2]

10.     This Court has the power to declare the rights, status, and duties of the parties to Hilltop's Complaint-in-Intervention under the subject insurance policies including any question of construction or validity arising under the policies, applicable statute, and other governing New Mexico law.

---

[2]      Hilltop has included relevant provisions in the text of this Complaint and has attached as Exhibit A, and adopts and incorporates by reference, those portions of the policies that are material to this matter.

11.     Declaratory judgment in this case would terminate the controversy between Hilltop and the Defendants-in-Intervention.

12.     Hilltop's intervention herein is proper pursuant to Rule 1-024(A)(2) NMRA and *Foundation Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038 because Hilltop has an interest that relates directly to the claims asserted by the Garcia Estate in this case and disposition of this case without permitting Hilltop's intervention will impair Hilltop's ability to protect its interests, which are not adequately represented by the existing parties.

13.     This Court's jurisdiction over the subject matter of this Complaint-in-Intervention and venue is not in dispute.

## PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS

14.     Upon information and belief, EOG is engaged in the business of oil and gas exploration which regularly contracts with independent contractors for related services.

15.     Upon information and belief, the Bedrock Defendants are engaged in the business of exploring for and producing oil, gas, and other hydrocarbons.  Upon information and belief, at all material times, Bedrock was engaged in its business pursuant to a Master Service Agreement with EOG executed on or about 09/05/18 ("the Bedrock MSA").

16.     STI is a New Mexico based independent service contractor which operated vacuum and hydrovac trucks in the oilfield pursuant to a Master Service Agreement with EOG executed on or about 12/18/19 ("the STI MSA").

17.     Upon information and belief, at all material times, Apolinar J. Garcia was an employee of STI.

18.     Upon information and belief, on 03/27/20 EOG contracted with STI to transport fluid from one EOG facility to another.  To that end, Mr. Garcia operated a 1999 vacuum tanker truck owned by STI and leased to DJM Logistics, LLC, which Mr. Garcia drove to the EOG Lomas Rojas reuse facility.  While at the Lomas Rojas facility, the truck's vacuum tank exploded killing Mr. Garcia.

19.     A *Complaint for Wrongful Death and Loss of Consortium* was filed herein on behalf of the Garcia Estate and Mr. Garcia's surviving spouse and minor child on 04/06/20, which was amended on 04/06/21 ("the wrongful death suit").

20.     The Plaintiffs in the wrongful death suit allege EOG owned and operated water reuse facilities in southeastern New Mexico including two facilities at issue in the wrongful death suit.  *Second Amended Complaint for Wrongful Death and Loss of Consortium* (filed 04/06/21) ("Second Amended Complaint") at ¶¶ 12 and 16.

21.     The Plaintiffs in the wrongful death suit allege Defendant Garza, while working as a "reuse consultant" and "EOG representative" at the EOG "Hearns" reuse facility, "instructed" Mr. Garcia, "a water truck driver", to "clean [a] chemical spill in the chemical containment area at the Hearns facility by sucking the chemicals into [a] vacuum tanker."  Second Amended Complaint at ¶¶ 15 & 16.

22.     The Plaintiffs in the wrongful death suit allege Defendants EOG and Garza "failed to inform [Mr.] Garcia that he was loading hazardous materials into his water truck."  *Id.* at ¶ 16.

23.     The Plaintiffs in the wrongful death suit state a negligence cause of action against EOG alleging EOG's negligence "was the sole cause and/or cause of the

explosion". *Id.* at ¶¶ 23.

24.     In support of the negligence claim against EOG, the Plaintiffs in the wrongful death suit allege EOG: (a) provided hazardous materials for transport in a water hauler; (b) failed to inform Mr. Garcia of the hazardous nature of the load he was transporting; (c) failed to provide shipping papers describing the hazardous materials; (d) failed to warn of the flammable and hazardous nature of the load Mr. Garcia was transporting; (e) failed to provide a material safety data sheet; (f) failed to have proper hazmat placards; (g) failed to provide proper instruction to drivers transporting hazardous materials; (h) failed to placard Mr. Garcia's tanker; (i) provided a dangerous location at which to load/unload hazardous materials; (j) failed to take reasonable precautions at their facility when having drivers load/unload hazardous materials; (k) failed to warn Garcia of the potential of a fire and/or explosion; (l) failed to stop the job after learning that smoke was coming out of the tanker; and (m) failed to train its workers regarding the dangers of its facilities. *Id.*

25.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG for negligent hiring, supervision, and training alleging EOG negligently hired, supervised, and trained Defendant Garza. *Id.* at ¶¶ 26-27.

26.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG for *respondeat superior* alleging EOG is liable for damages resulting from the negligence of its employees, agents, apparent agents, or contractors including Defendants Bedrock and Garza because they were "acting within the course and scope of their employment and were negligent". *Id.* at ¶ 29.

27.     The Plaintiffs in the wrongful death suit also state a cause of action against

EOG for negligence *per se* alleging EOG committed multiple violations of the Federal Motor Carrier Safety Act, which applied to EOG because it was a "shipper[] of hazardous materials." *Id.* at ¶¶ 31-32.

28.     The Plaintiffs in the wrongful death suit also state a cause of action against EOG for negligent selection of a contractor, in the event Defendants Bedrock and Garza "are found to be independent contractors", alleging EOG negligently and carelessly selected Defendants Bedrock and Garza as contractors "knowing the dangers involved in the work they would be performing." *Id.* at ¶ 34.

29.     The Plaintiffs in the wrongful death suit seek compensatory damages, wrongful death damages, and punitive damages from EOG.

30.     The Plaintiffs in the wrongful death suit state a cause of action against Defendant Bedrock for negligence alleging Bedrock's negligence was "a cause of the explosion". *Id.* at ¶ 40.

31.     In support of the negligence claim against Bedrock, the Plaintiffs in the wrongful death suit allege Bedrock: (a) provided hazardous materials for transport in a water hauler; (b) failed to inform Mr. Garcia of the hazardous nature of the load he was transporting; (c) failed to provide shipping papers describing the hazardous materials; (d) failed to warn of the flammable and hazardous nature of the load Mr. Garcia was transporting; (e) failed to provide a material safety data sheet; (f) failed to have proper hazmat placards; (g) failed to provide proper instruction to drivers transporting hazardous materials; (h) failed to placard Mr. Garcia's tanker; (i) failed to take reasonable precautions at EOG's facility when having drivers load/unload hazardous materials; (j) failed to warn

Garcia of the potential of a fire and/or explosion; and (k) failed to stop the job after learning that smoke was coming out of the tanker. *Id.* at ¶ 41.

32.    The Plaintiffs in the wrongful death suit also state a cause of action against Defendant Bedrock for negligent hiring, supervision, and training alleging Bedrock negligently hired, supervised, and trained Defendants RCG and Garza. *Id.* at ¶ 43.

33.    The Plaintiffs in the wrongful death suit also state a cause of action against Defendant Bedrock for *respondeat superior* alleging Bedrock is liable for damages resulting from the negligence of its employees, agents, apparent agents, or contractors including Defendants RCG and Garza because they were "acting within the course and scope of their employment and were negligent". *Id.* at ¶ 46.

34.    The Plaintiffs in the wrongful death suit also state a cause of action against Defendant Bedrock for negligent selection of a contractor, in the event Defendants RCG and Garza are "found to be independent contractors", alleging Bedrock negligently and carelessly selected Defendants RCG and Garza as contractors "knowing the dangers involved in the work [he] would be performing." *Id.* at ¶ 47.

35.    The Plaintiffs in the wrongful death suit seek compensatory damages, wrongful death damages, and punitive damages from the Bedrock Defendants.

36.    Hilltop (at the time named Hudson Specialty Insurance Company ("Hudson")) issued a Commercial General Liability ("CGL") policy (No. WSC19001405) and an Umbrella/ Excess ("Excess") policy (No. WSU19000783) to its named insured, Sur Transporte, Inc. ("STI").

37. STI also procured commercial auto liability coverage from American Transportation Group ("ATG"). Neither EOG nor any of the Bedrock Defendants are named insureds or additional insureds under the Hudson CGL and Excess policies.

38. EOG tendered its defense and indemnity to ATG under the commercial auto policy and Hudson under the CGL policy.

39. EOG's demand for defense and indemnity under the Hudson policies is based on the MSA entered into between EOG and STI, which purports to obligate STI to defend and indemnify EOG without limitation.

40. Both Hudson policies were in effect on the date of loss in this case. However, the Hudson CGL policy carries only commercial general liability and limited pollution liability coverage. The Excess policy is a follow form policy; the Schedule of Underlying Insurance identifies only the Hudson CGL policy and expressly excludes commercial auto and employer's liability coverages.

41. On 07/02/20, Hudson tendered a defense to EOG subject to a reservation of rights, but EOG initially declined said defense. On 06/03/21, EOG advised Hudson that EOG "accepts" Hudson's offer to provide EOG with a defense "subject to EOG's full and complete reservation of all rights to seek coverage under the policy issued by [Hudson] to Sur Transporte and to contest the contentions set forth" in Hudson's reservation of rights letter.

42. On 05/26/21, EOG tendered the defense and indemnity of the Bedrock Defendants to Hudson under the CGL policy.

43.     EOG's demand for defense and indemnity of the Bedrock Defendants under the Hudson policies is based on the MSA entered into between EOG and Bedrock, which purports to obligate STI to defend and indemnify EOG and members of "the Company Group" as that term is defined in the MSA.

44.     Hilltop contends there is no coverage under the Hudson polices for the damages sought by the Plaintiffs in the wrongful death suit.

45.     Insofar as a court may find coverage under the Hudson policies, Hilltop contends such coverage would be secondary to any commercial auto coverage procured by STI.

## THE HUDSON INSURANCE POLICIES

46.     The Hudson CGL policy includes commercial general liability coverage, the terms of which are set forth in the following applicable coverage forms and endorsements.

47.     The Hudson CGL Common Policy Declarations identifies the named insured as "Sur Transporte, Inc.".

48.     Neither EOG nor the Bedrock Defendants are named or additional insureds.

49.     Neither the policy provisions establishing "who is an insured" nor any other policy provision or endorsement render EOG and the Bedrock Defendants "an insured."

50.     The COMMERCIAL GENERAL LIABILITY COVERAGE FORM (Form CG 00 01 10 01) defines the words "you" and "your" as referring to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . ."  The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

51.     The insuring agreement in the Commercial General Liability Coverage Form

(Form CG 00 01 10 01) provides in pertinent part:

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.  INSURING AGREEMENT

a.  We will pay those sums that the *insured* becomes legally obligated to pay as
damages because of "bodily injury" . . . to which this insurance applies. We will
have the right and duty to defend the *insured* against any "suit" seeking those
damages. However, we will have no duty to defend the insured against any "suit"
seeking damages for "bodily injury" . . . to which this insurance does not apply.
We may, at our discretion, investigate any "occurrence" and settle any claim or
"suit" that may result. . .

No other obligation or liability to pay sums or perform acts or services is covered
unless explicitly provided for under Supplementary Payments – Coverages A
and B.

b.  This insurance applies to "bodily injury" . . . only if:

(1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the
"coverage territory" . . .

(emphasis added).

52.     The COMMERCIAL GENERAL LIABILITY COVERAGE FORM (Form

CG 00 01 10 01) includes the following exclusions:

### 2.  Exclusions

This insurance does not apply to:
. . . .

### b.  Contractual Liability

"Bodily injury" . . . for which the insured is obligated to pay damages by reason
of the assumption of liability in a contract or agreement. This exclusion does not
apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" . . . occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" . . . provided:

    (a) Liability to such party for, or for the cost of, that party's defense has been assumed in the same "insured contract"; and

    (b) Such attorney fees and litigation expenses are for defense of that party against a civil . . . proceeding in which damages to which this insurance applies are alleged.

. . . .

**d.  Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.  Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

(1) "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

(2) Any insured's contractor's, subcontractors', or independent contractors' "employees", "leased worker", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors arising out of and in the course of:

    (a) Employment by any insured; or

    (b) Directly or indirectly performing duties related to the conduct of any insured's business; or

. . . .

This exclusion applies:

(1) Regardless of where the:

    (a) Services are performed; or

    (b) "Bodily injury" occurs; and

(2) Whether any insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

. . . .

53.    The COMMERCIAL GENERAL LIABILITY COVERAGE FORM (Form CG 00 01 10 01) also includes conditions under which Hudson will defend a contractual indemnitee. *See* SUPPLEMENTARY PAYMENTS – COVERAGES A AND B. The COMMERCIAL GENERAL LIABILITY COVERAGE FORM (Form CG 00 01 10 01) also includes the following definitions:

SECTION V – DEFINITIONS

. . . .

3.    "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment"

4.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

9.    "Insured contract" means:

. . . .

    f.    That part of any other contract or agreement pertaining to your business. . . under which you assume the tort liability of another party to pay for bodily injury . . . to a third person or organization, provided the bodily injury . . . is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means

13

a liability that would be imposed by law in the absence of any contract or agreement.

. . . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

54.    The Hudson CGL policy also includes the following endorsement:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AUTO (ABSOLUTE) – EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . . .

It is understood and agreed by you and us that **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY Exclusion g. – Aircraft, Auto or Watercraft** is amended to delete the term "auto" throughout the exclusion.  **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY Exclusion g.** remains in full effect and is unamended with respect to aircraft and watercraft.  In addition, the following exclusion is added to **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILTY.**

This insurance does not apply to "bodily injury". . . allegedly or actually arising out of, related to, caused by, contributed to by, or in any way connected to or with the ownership, maintenance, use, or entrustment to others, by or on behalf of any insured of an "auto", or the direct or indirect arranging or brokering by or on behalf of any insured for the ownership, maintenance, use or entrustment to others of any "auto."  "Use" includes, but is not limited to, operation and "loading or unloading."

This exclusion applies even if the claims against any insured, or anyone acting on any insured's behalf, allege negligence or any other wrongdoing in the supervision, hiring, retention, employment, training, or monitoring of others by or on behalf of any insured.

Direct or indirect arranging or brokering by or on behalf of any insured includes, but is not limited to "bodily injury" . . . arising out of, related to, caused by, contributed to by, or in any way connected to or with the ownership, maintenance, use or entrustment to others of any "auto" by another for which any insured is alleged to be liable under any theory of law,

14

including but not limited to joint venture, respondeat superior, conspiracy, partnership or joint enterprise.

This exclusion also applies to any "bodily injury" . . .  for which any insured is obligated, or is alleged to be obligated, to pay damages or defend any "suit" by reason of the assumption of liability in an "insured contract."

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury" . . . to which this exclusion applies.

55.     Based on the foregoing, Hilltop contends it has no duty under the Hudson CGL policy to defend and indemnify any insured, any additional insured or contractual indemnitee, including EOG and the Bedrock Defendants, against bodily injury and death "allegedly or actually arising out of, related to, caused by, contributed to by, or in any way connected to or with the ownership, maintenance, use, or entrustment to others, by or on behalf of any insured of an 'auto'. . . ."  *See* the AUTO (ABSOLUTE) – EXCLUSION (Form WH-C 0339).

56.     Hilltop contends the Absolute Auto Exclusion applies even if there is an allegation of negligence "or any other wrongdoing in the supervision, hiring, retention, employment, training, or monitoring of others by or on behalf of any insured."

57.     Hilltop contends coverage is also excluded under the Hudson CGL policy for bodily injury to any insured's employees (as that term is defined), any insured's independent contractors, and any insured's independent contractor's employees when the injury arises out of and in the course of employment or the performance of duties related to the insured's business.

58.     Hilltop contends it has no duty under the Hudson CGL policy to defend and indemnify EOG and the Bedrock Defendants because none qualify as an "insured" as defined by the Hudson policy.

59.     Hilltop contends it has no duty under the Hudson CGL policy to defend and indemnify EOG and the Bedrock Defendants in the absence of coverage.

## EOG'S "MSA" IS VOID TO THE EXTENT IT IS CONTRARY TO NEW MEXICO PUBLIC POLICY

60.     The MSA executed by and between EOG and Bedrock on or about 09/05/18 ("the Bedrock MSA") includes language that renders the Bedrock Defendants members of the "Company Group" as that term is defined in both the Bedrock MSA and the STI MSA.[3]

61.     The MSA executed by and between EOG and STI on or about 12/18/19 ("the STI MSA") includes language that purports to obligate STI to defend and indemnify EOG and the Bedrock Defendants against any and all claims of the sort stated in the wrongful death suit "ALLEGEDLY OR ACTUALLY SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF COMPANY GROUP" ("the indemnity provision"). *See* STI MSA at ¶ 7A, pgs. 6-7 of 20 (emphasis in original).

---

[3]     Hilltop has included relevant provisions in the text of this Complaint and has attached as Exhibit B, and adopts and incorporates by reference, those portions of the MSA that are material to this matter.

62.    EOG contends the Bedrock Defendants are members of the "COMPANY GROUP" as that term is defined in the STI MSA.

63.    The Plaintiffs in the wrongful death suit state direct liability claims against EOG and the Bedrock Defendants based on the acts and omissions of EOG and/or the Bedrock Defendants were the sole and/or a cause of the explosion.

64.    Insofar as the Plaintiffs in the wrongful death suit state vicarious liability claims against EOG and the Bedrock Defendants, said liability is based on the acts and omissions of EOG and/or the Bedrock Defendants, not STI.

65.    The indemnity provision included in the STI MSA is void as a matter of New Mexico statutory law because it purports to obligate STI to indemnify EOG and the Bedrock Defendants from liability for their own negligence. *See*, NMSA 1978, Section 56-7-2 (the New Mexico Oilfield Anti-Indemnity Statute).

66.    The indemnity provision included in the STI MSA is void as a matter of New Mexico public policy because it purports to obligate STI to indemnify EOG and the Bedrock Defendants from liability for their own negligence.

67.    The indemnity provision included in the STI MSA is void as a matter of New Mexico law because it is violative of New Mexico's comparative fault scheme and traditional (common law) indemnity principles.

68.    The MSA executed by and between EOG and STI on or about 12/18/19 ("the STI MSA") includes a choice-of-law provision that purports to require application of Texas law to STI's obligation to indemnify EOG and the Bedrock Defendants from liability for their own negligence ("the choice-of-law provision").

17

69.     The choice-of-law provision included in the STI MSA is void as a matter of New Mexico public policy applicable to oil well sites in New Mexico.

## COUNT I:
## REQUEST FOR DECLARATORY RELIEF

70.     Based on the foregoing, Hilltop respectfully requests that this Court construe the applicable policy provisions in accordance with governing law and declare as follows:

a.      The applicable language in the Hudson policies is clear, unambiguous, and enforceable;

b.      The applicable exclusionary language in the Hudson policies is clear, unambiguous, enforceable and bars coverage for the damages sought by the Plaintiffs in the wrongful death suit;

c.      Neither EOG nor the Bedrock Defendants qualify as "insureds" or "additional insureds" under the Hudson policies;

d.      There is no coverage for EOG or the Bedrock Defendants under the Hudson policy for the damages sought by the Plaintiffs in the wrongful death suit;

e.      Hilltop owes no duty to defend EOG or the Bedrock Defendants under the Hudson policy for the damages sought by the Plaintiffs in the wrongful death suit;

f.      Hilltop owes no duty to indemnify EOG or the Bedrock Defendants under the Hudson policy for the damages sought by the Plaintiffs in the wrongful death suit;

g.    The indemnity provision in the STI MSA is void and unenforceable as a matter of New Mexico law;

h.    The indemnity provision in the STI MSA is void and unenforceable as a matter of New Mexico public policy; and

i.    The choice-of-law provision in the STI MSA is void an unenforceable as a matter of New Mexico public policy.

71.    Hilltop reserves the right to seek supplemental relief based on any declaratory judgment rendered in this case.

72.    Hilltop reserves the right to have any fact issues tried to and determined by a jury insofar as the declaratory judgment sought depends on the determination of a fact issue.

73.    Hilltop reserves the right to seek recovery of its costs in bringing this action from any party hereto as permitted by New Mexico law.

## JURY DEMAND

Hilltop hereby demands a 12-person jury on any fact issues on which declaratory judgment depends.

**WHEREFORE**, Hilltop Specialty Insurance Company respectfully requests that this Court enter Judgment as requested above and grant such other and further relief as this Court deems just and proper.

Respectfully submitted:

**RILEY | KELLER | ALDERETE | GONZALES**

By: */s/ Courtenay L. Keller (electronically filed)*
    **COURTENAY L. KELLER**
    **TARYN M. KASELONIS**
    3880 Osuna Road NE
    Albuquerque, NM  87109
    (505) 883-5030
    ckeller@rileynmlaw.com
    tkaselonis@rileynmlaw.com
    *Attorneys for Hilltop Specialty Insurance*
    *Company*

POLICY NUMBER: WSC19001405

# IMPORTANT NOTICE #2 - COMBINED

**Please Read Carefully**

**This endorsement modifies insurance provided under the following:**

1. **Auditable Policy** – Your policy is an AUDITABLE policy unless otherwise stated as being on a FLAT basis.  You are being notified that ADDITIONAL PREMIUMS, over and above the M&D PREMIUM, may be due on your AUDITABLE policy with any natural expiration or mid-term cancellation subject to the terms and conditions of the policy.  Any additional premium difference between your projected exposure base and your actual exposure base will be calculated, charged and due carrier for the scheduled coverage(s) provided.

   The rate(s) stated on your policy apply to the adjustable exposure base(s) reflected which may be your gross sales, gross receipts, gross footage or any other stated exposure basis or any combination thereof for the covered classification(s) described on your policy Declarations page.  You will be requested to provide the actual adjustable exposure basis for the period of coverage for your policy, either at the expiration date or cancellation date of your policy.  You will owe any additional premium due as calculated.

   Policy terms, conditions or limitations apply as respects to your policy premium and obligation(s) for remitting premium(s) due under your policy.  Please review your policy and ask your agent if you have any further questions.

2. **Privacy Policy** – Hudson Insurance Group does not disclose any nonpublic personal information about individual policyholders or claimants to any affiliate or any non-affiliate third party other than those permitted by law and only for the purpose of transacting the business of the policyholder's insurance coverage or claim.

   Hudson Insurance Group consists of:
   Hudson Insurance Company
   Hudson Specialty Insurance Company
   Hudson Excess Insurance Company

3. **Economic Sanctions** – The insurer shall not be deemed to provide cover and the insurer shall not be liable to pay any such claim or provide any such benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the insurer, its parent company or its ultimate controlling entity to any trade or economic sanctions under the laws and regulations of the United States of America or the European Union or to any sanction, prohibition or restriction under United Nations resolutions.



EXHIBIT
**A-1**

# CLAIMS REPORTING PROCEDURES

All claims will be administered by Hudson Insurance Group.

Insured policyholders or their brokers can report claims via a dedicated toll free call in center which is operated 24/7 all year round or via the internet. Calls will be promptly answered by our First Report of Incident unit.

If possible, please include the following information in your claim notice or have it available for our customer service representative:

- Policy Holder #
- Contact Information
- Policy Number
- Date of Loss
- Description of Loss

The First Report of Incident Unit will electronically route the accident information to the control branch which will then assign an adjuster and a claim number to the reported

**Toll Free Number:**

**(866) 546 - 3981**

**Internet Reporting**

Hudsonclaims300@hudsoninsgroup.com

**Hudson Insurance Group**

**100 William Street, 5th Floor**

**New York, NY 10038**

**Fax: (646) 216-3786**

WS-HUA CLAIMS (10/14)

**Policy No.** **WSC19001405**

## HUDSON INSURANCE GROUP®

WSC18011783
Renewal of Number

### HUDSON SPECIALTY INSURANCE COMPANY
### COMMERCIAL LINES POLICY
### COMMON POLICY DECLARATIONS

This policy provides surplus lines insurance by an Insurer not otherwise authorized to transact business in New Mexico. This policy is not subject to supervision, review, or approval by the superintendent of insurance. The insurance so provided is not within the protection of any guaranty fund law of New Mexico designed to protect the public in the event of the insurer's insolvency.

**Named Insured and Mailing Address** (No., Street, Town or City, County, State, Zip Code)
• SUR TRANSPORTE INC.

  1515 E. SCHARBAUER DRIVE, APT, #802
  HOBBS, NM 88240

**Policy Period:** From 07/18/2019 to 07/18/2020 at 12:01 A.M. Standard Time
at your mailing address shown above.

**The Named Insured is:** ☐ Individual; ☐ Partnership; ☒ Corporation; ☐ Joint Venture; ☐ Other _____

**Business Description:** Refer to Form WH-0150 for classification(s) Shown

**Audit Period:** ☒ Annual; ☐ Other _____   **Tax State:** NM

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| **Commercial Property Coverage** | $ NOT COVERED |
| **Commercial General Liability Coverage** | $ ████ ** |
| **Professional Liability Coverage - Claims Made Form** | $ NOT COVERED |
| **Inland Marine Coverage** | $ NOT COVERED |
| **Limited, Sudden & Accidental Pollution Liability Coverage (Claims Made)** | $ ████ ** |
| **Terrorism Coverage** | $ NOT COVERED |
| **Other Coverage** _____ | $ _____ |
| **Policy Fee** | $ ████ |
| State Tax$ _____ ████   Stamp Fee $ _____ | $ ████ |
| TOTAL PREMIUM (Payable at policy inception): | $ ████ |

**\*\* TOTAL ADVANCE PREMIUM IS MINIMUM & DEPOSIT**

Form(s) and Endorsement(s) made a part of this policy at time of issue:
See Schedule of Forms & Endorsements - WH-SCHLIST

PRODUCER'S NAME & ADDRESS
WESTERN SURPLUS LINES AGCY.
P.O. BOX 6609
ABILENE, TEXAS 79608-6609

Countersigned On:- 07/28/2019  AA/DA

At:- ABILENE, TEXAS

By: _____
Authorized Representative

THESE COMMON POLICY DECLARATIONS AND, IF APPLICABLE, THE COMMERCIAL PROPERTY COVERAGE, THE COMMERCIAL GENERAL LIABILITY DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBER POLICY. THIS POLICY IS NOT BINDING UNLESS COUNTERSIGNED BY HUDSON SPECIALTY INSURANCE COMPANY OR ITS AUTHORIZED REPRESENTATIVE.

**ORIGINAL**

**Policy:**  WSC19001405

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

This endorsement modifies insurance provided in all coverage parts that are contained in this policy.

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Dina Daskalakis, Hudson Specialty Insurance Company, Administrative Office, 100 William St,  New York, NY 10038, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of any such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we herey designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

WH-0020  (09/15)

**Policy:** WSC19001405

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

**Policy:**  WSC19001405

THIS ENDORESEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NON-RENEWAL CHANGES

This endorsement modifies insurance provided under the following:

All Coverage Parts.

Any reference to notification requirements to the insured, mortgage holder, loss payee, or any other party in the event we elect not to renew this policy are deleted in their entirety.

All other Terms and Conditions of the Policy remain unchanged.

WH-0099  (09/11)

Policy Number: WSC19001405

# SCHEDULE OF FORMS AND ENDORSEMENTS

```
WH-IN 0002   (09/18)   Important Notice #2 - Combined
WS-HUA CLAIMS(10/14)   Claims Reporting Procedures
WH-DEC       (02/13)   Hudson Declarations Page
WH-0020      (09/15)   Service of Suit
IL 00 17     (11/98)   Common Policy Conditions
WH-0099      (09/11)   Non-Renewal Changes
WH-SCHLIST   (10/17)   Schedule of Forms and Endorsements


WH-0150  (10/15)      Commercial General Liability Coverage Part
WH-C 0023  (09/11)    Premium Basis Endorsement
CG 00 01     (10/01)  Commercial General Liability Coverage Form
WH-0003  (09/11)      Changes in Coverage Parts - Exclusions
CG 21 16     (07/98)  Exclusion - Designated Professional Services
CG 21 47     (07/98)  Employment Related Practices Exclusion
CG 21 60     (09/98)  Exclusion - Year 2000 Computer - Related & Other Electronic Problems
CG 21 75     (06/08)  Exclusion-Certified Acts of Terrorism & Other Acts of Terrorism Committed Outside United States
IL 00 21     (11/85)  Nuclear Energy Liability Exclusion Endorsement (Broad Form)
WH-C 0001  (09/11)    Minimum & Deposit Premium Provision - Condition
WH-C 0012  (09/11)    Classification Limitation
WH-C 0017  (09/11)    Silica (Absolute) - Exclusion
WH-C 0024  (09/11)    Deductible Liability Insurance
WH-C 0049  (09/11)    Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants-Exclusion
WH-C 0051  (09/11)    Total Pollution - Exclusion
WH-C 0076  (09/11)    Coverage C - Medical Payments Limitation
WH-C 0077  (09/11)    Absolute Unsolicited Communications - Exclusion
WH-C 0083  (09/11)    Toxic Metals - Exclusion
WH-C 0087  (09/11)    Contagious, Infectious or Transmissible Disease - Exclusion
WH-C 0333  (11/12)    Subsidence of Land or Earth Movement - Exclusion
WH-C 0356  (09/11)    Intellectual Property Exclusion (Amended Definition of Personal and Advertising Injury)
WH-C 0380  (01/17)    Exclusion-Access/Disclosure of Confidential/Personal Info &  Data-Related Liability-Lmtd BI Exce
WH-0004  (02/13)      Sub-Limited Coverage & Additional Exclusions-DEX
WH-C 0006  (09/11)    Subcontractors and Independent Contractors - Exclusion
WH-C 0007  (09/11)    Cross Suits Liability By Named Insured(s) - Exclusion
WH-C 0014  (09/11)    Collapse and Underground Property Damage Hazard Specified Operations - Amendment
WH-C 0060  (05/17)    Supervision, Oversight or Management of Any Job-Site or Work-Site -Exclusion
WH-C 0078  (09/11)    Injury to Employees, Contractors, Volunteers and Workers - Exclusion
WH-C 0295  (09/11)    Coverage Limitation - Work Commenced Prior to Policy Inception Date
WH-C 0339  (09/11)    Auto (Absolute) - Exclusion
CG 24 26     (07/04)  Amendment of Insured Contract Definition
WH-POLL 0001  (10/15) Limited, Sudden, Accidental Pollution Liability Coverage Part (Claims Made)
WH-POLL 0002  (10/15) Limited, Sudden, Accidental Pollution Liability Coverage Form (Claims Made)
WH-POLL 0003  (02/13) Premium Basis Endorsement
WH-POLL 0004  (03/13) Terrorism Exclusion (Absolute)
WH-POLL 0060  (05/17) Supervision, Oversight or Management of Any Job-Site or Work-Site - Exclusion
```

**Policy:**   WSC19001405

# SCHEDULE OF FORMS AND ENDORSEMENTS

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Policy No.** WSC19001405          **Effective Date:** 07/18/2019  **Expiration Date:** 07/18/2020
                                                    12:01 A.M., Standard Time

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit | $ 2,000,000. | |
| (Other Than Products-Completed Operations) | | |
| Products-Completed Operations Aggregate Limit | $ INCLUDED | |
| Personal and Advertising Injury Limit | $ 1,000,000. | |
| Each Occurrence Limit | $ 1,000,000. | |
| Damage To Premises Rented To You Limit | $ 100,000. | Any One Fire |
| Medical Expense Limit | $ 5,000. | Any One Person |

**"Property Damage Limits May Be Reduced or Restricted - PLEASE Read Carefully"**

## RETROACTIVE DATES

Coverages A and B of this insurance does not apply to "bodily injury","personal injury","property damage" or "advertising injury" which occurs before the Retroactive Date, if any, shown here:

                                                    None

                                                    (Enter Date or "None" if no Retroactive Date Applies)

## PREMIUM

| Classification | Code No. | Premium Basis (Symbol) | Rate | Per | Advance Premium |
|---|---|---|---|---|---|
| OIL OR GAS LEASE SITE TRANSPORT OR DELIVERY OF FRESH OR SALT WATER, NOT ENGAGED IN ANY WELL TREATING SERVICES OR VACUUM OPERATIONS, (PRODUCTS AND COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | 99793 | 3) | ▮ | ▮ | ▮ MP |
| OIL OR GAS PRODUCTION WELLS VACUUM OR TANK TRUCK SERVICES AT OIL OR GAS LEASE SITES, INCLUDING TRANSPORTING AND DISPOSAL OF WASTE WATER AND OTHER LIQUIDS TO APPROVED DISPOSAL SITES, NOT ENGAGED IN TRANSPORT OF ANY HAZARDOUS CHEMICALS OR MATERIALS, (PRODUCTS AND COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | 98152 | INCL. | INCL. | INCL. | INCL. |

|  |  |  |
|---|---|---|
| Total Advance Premium | $ ▮ | MP |
| Minimum & Deposit Annual Premium | $ ▮ | MP |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
See Schedule of Forms & Endorsements - WH-SCHLST

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND
THE POLICY PERIOD.  SEE ATTACHED PREMIUM BASIS ENDORSEMENT WH-0023

WH-0150 (10/15)

POLICY NUMBER: WSC19001405                          COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PREMIUM BASIS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART OWNERS AND
CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

When used as a premium basis, one or more of the following symbols may be entered under the Premium Basis column of the Commercial General Liability Coverage Part Declarations.  These symbols designate the basis used for determining your premium.  The following is a definition of these symbols when used as a premium basis.

| SYMBOL | DEFINITION |
|---|---|

(1)     **REMUNERATION**

remuneration meaning the entire payroll, money, or substitutes for money paid during the policy period for services by proprietors and by all employees of the Named Insured other than chauffeurs (except operators of mobile equipment) and aircraft pilots or  co-pilots, subject to any special limitations or exceptions provided by the company at the time coverage was effected or as stated below under symbol (6).
The rates apply per ███████ remuneration.

(2)     **COST**

cost means the total cost to the Named Insured with respect to operations performed for the Named Insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made, paid or due.
The rates apply per ███████ cost.

(3)     **SALES OR RECEIPTS**

sales or receipts means the gross amount of money charged by the Named Insured, his concessionaires, and others trading under his name, for goods and products sold or distributed, operations performed (Installation, repair or servicing), dues or fees and rentals during the policy term, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.
The rates apply per ███████ sales or receipts.

(4)     **AREA**

The total number of square feet of floor space at the insured premises.
The rates apply per ███████ square feet of Area.

(5)     **EACH**

The basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the declarations page, such as Per person.

The rates apply per unit of exposure.

(6)     **OTHER -**   (Premium basis as specifically defined below.):

WH-C 0023  (09/11)

POLICY NUMBER: WSC19001405

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any con tinuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 Copyright ISO Properties, Inc., 2000 CG 00 01 10 01

POLICY NUMBER: WSC19001405

**f.   Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way re sponding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    Copyright ISO Properties, Inc., 2000    CG 00 01 10 01

POLICY NUMBER: WSC19001405

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

      Copyright ISO Properties, Inc., 2000      CG 00 01 10 01

POLICY NUMBER: WSC19001405

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

Copyright ISO Properties, Inc., 2000
CG 00 01 10 01

POLICY NUMBER:  WSC19001405

## SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    **a.**  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.**  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.**  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.**  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

    **a.**  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

        **(1)**  "Bodily injury" or "personal and advertising injury":

            **(a)**  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            **(b)**  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

            **(c)**  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

            **(d)**  Arising out of his or her providing or failing to provide professional health care services.

        **(2)**  "Property damage" to property:

            **(a)**  Owned, occupied or used by,

            **(b)**  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

            you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.**  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    **c.**  Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)**  With respect to liability arising out of the maintenance or use of that property; and

        **(2)**  Until your legal representative has been appointed.

    **d.**  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    **a.**  "Bodily injury" to a co-"employee" of the person driving the equipment; or

    **b.**  "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

 Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Copyright ISO Properties, Inc., 2000
CG 00 01 10 01

POLICY NUMBER: WSC19001405

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

   **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

     **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

     **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

     **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

     **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

   **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

 Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.

Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.** **Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.** **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7.** **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8.** **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9.** **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

Copyright ISO Properties, Inc., 2000
CG 00 01 10 01

POLICY NUMBER:  WSC19001405

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c.  All other parts of the world if the injury or damage arises out of:

(1)  Goods or products made or sold by you in the territory described in **a.** above;

(2)  The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

(3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication provided the insured's responsibility to pay damages is determined in a. "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement;

f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3)  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

  Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      **(1)** Equipment designed primarily for:

         **(a)** Snow removal;

         **(b)** Road maintenance, but not construction or resurfacing; or

         **(c)** Street cleaning;

      **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

    Copyright ISO Properties, Inc., 2000    CG 00 01 10 01

POLICY NUMBER: WSC19001405

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

         Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Copyright ISO Properties, Inc., 2000

POLICY NUMBER: WSC19001405

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22**. "Your work":

**a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

 Copyright ISO Properties, Inc., 2000 CG 00 01 10 01

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CHANGES IN COVERAGE PARTS - EXCLUSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART.
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART.

**ABSOLUTE ASBESTOS EXCLUSION:**

It is agreed that such insurance as is afforded by this policy does not apply to any and all liability for claims or claims expense, for bodily injury, disease, or illness, including death at any time resulting therefrom, or property damage, for past, present or future claims arising in whole or in part either directly or indirectly out of the manufacture, distribution, sale, resale, rebranding, repair or removal, encapsulation, abatement, replacement or handling of, exposure to or testing for, asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

**ASSAULT AND BATTERY EXCLUSION:**

It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

**ATHLETIC PARTICIPANTS EXCLUSION:**

It is agreed that the insurance does not apply to bodily injury to any person while practicing for a or participating in any contest or exhibition of an athletic or sports nature.

**ERRONEOUS DELIVERY EXCLUSION:**

It is agreed that the insurance does not apply to liability from any operations or work performed by or on behalf of the insured and arising out of the delivery of, or insertion of, any product into a wrong receptacle or container; or the delivery of any liquid product into a wrong receptacle, container, or to a wrong address, including the erroneous delivery of one liquid product for another by an automobile or similar self-propelled conveyance.

**LEASED EMPLOYEE EXCLUSION:**

It is agreed that the insurance afforded by this policy does not apply to liability arising out of injury to an employee of any entity engaged by any insured under a contract to provide employees for any work performed or to be performed for or on behalf of an insured.

**WATER HAZARD EXCLUSION:**

There is no coverage provided under this policy for any bodily injury or property damage loss resulting from any operation being conducted upon, into or over any navigable body of water performed by or on behalf of the Named Insured.

**CRIMINAL ACTS EXCLUSION:**

This insurances does not apply to "personal and advertising injury" caused by, or resulting from, the will violation of a penal statute or ordinance committed by or with the consent of the insured.

IT IS FURTHER AGREED THAT FOR ANY CLAIM MADE OR SUIT BROUGHT WHICH IS EXCLUDED UNDER THE TERMS OF THIS ENDORSEMENT, THE COMPANY SHALL NOT HAVE THE OBLIGATION TO DEFEND, ADJUST, INVESTIGATE OR PAY ANY COST FOR INVESTIGATION, DEFENSE, ATTORNEY FEES OR ADJUSTMENT ARISING OUT OF SUCH CLAIMS.

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY
CG 21 16 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION — DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description of Professional Services: |
| --- |
| 1.   -- All Operations -- |
| 2. |
| 3. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION — YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I Coverage A Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I Coverage B ersonal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY
CG 21 75 06 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM
# AND EXCLUSION OF OTHER ACTS OF TERRORISM
# COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

Copyright ISO Properties, Inc., 2002

POLICY NUMBER: WSC19001405

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States) regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a certified certified act of terrorism.

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

 Copyright ISO Properties, Inc., 2002

POLICY NUMBER: WSC19001405

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties; "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

IL 00 21 11 85      Copyright, Insurance Services Office, Inc., 1984, 1991     

POLICY NUMBER: WSC19001405

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor;"

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1984, 1991

POLICY NUMBER: WSC19001405                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM AND DEPOSIT PREMIUM PROVISION - CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Paragraph 5. Premium Audit (Section IV)** is replaced by the following:

All premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum and deposit premiums applicable to the Insurance afforded herein.

Premium designated in this policy as "advance premium" is a minimum and deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period.  At the close of each period (or part thereof terminating with the end of policy period), designated in the declarations as the audit period, the earned premium shall be computed for such period and, upon notice thereof, to the Named Insured, shall become due and payable.  Should it become necessary to institute collection activities, including litigation, in order to collect the additional earned premium, then the Insured shall be responsible for <u>100%</u> of the expenses, fees and costs incurred by the Company in that regard plus any collectible interest.  If the total computed earned premium for the policy period is less than the premium previously paid, then the Company shall receive and retain no less than the minimum and deposit premium(s) listed in the coverage part(s) attached hereto.

The first Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

It is agreed that in the event of cancellation of this policy by the first Named Insured as specified herein, return premium shall be computed at .90 of the pro rata unearned policy premium (or minimum premium if applicable) subject, however, to a retention by the Company of not less than $    **    . Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the form. It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non-payment, subject, however to retention by the Company of the minimum as shown above.

**     25   **% of the Advance Premium or Minimum and Deposit Premium Designated in this Policy**

WH-C 0001  (09/11)

POLICY NUMBER:  WSC19001405

**LIABILITY ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CLASSIFICATION LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance applies to "bodily injury", "property damage", "personal injury" or "advertising injury" not otherwise excluded herein, arising out of only those operations which are described by the classification, or classifications, shown on Commercial General Liability Coverage Part, form WH-0150, which is part of the policy terms and provisions.

All other terms and conditions of this policy remain unchanged.

WH-C 0012  (09/11)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number: WSC19001405

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA (ABSOLUTE) - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCT/COMPLETED OPERATIONS LIABILITY COVERATE PART
PROFESSIONAL LIABILITY COVERAGE PART

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" related to actual, alleged, or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of mining, the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of, testing for or failure to disclose the presence of, failure to warn or advise of silica, products containing silica, or products designed or used to protect from inhalation, ingestion, contact with or any other exposure to silica, whether or not the silica is or was at the time airborne as a fume, dust, powder, fiber or particle, contained in a product carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.

It is further agreed that this insurance does not apply to any loss, cost or expense including, but not limited to, payment for investigation or defense, fines, penalties, interest and other costs or expenses, arising out of or related to any:

(1) Clean up or removal of silica or products and materials

(2) Such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of silica or products and material containing silica;

(3) Disposal of silica substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4) Compliance with any law or regulation regarding silica;

(5) Existence, storage, handling or transportation of silica;

(6) Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

It is further agreed that for any claim made or suit brought which is excluded under the terms of this endorsement the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, attorney fees or adjustment arising out of such claims.

POLICY NUMBER: WSC19001405                                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART.

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $   1,000 | | $ |
| OR | | | |
| Property Damage Liability | $   1,000 | | $ |
| OR | | | |
| Bodily Injury Liability and/or | | | |
| Property Damage Liability Combined | $ | | $ |
| OR | | | |
| Personal and Advertising | | | |
| Injury Liability | $ | | $ |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT**      (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "Bodily Injury","Property Damage" and "Personal and Advertising Injury Liability", however caused):-

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, and Personal and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2.  The deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

    a.  PER CLAIM BASIS.      If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

        (1)  Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "Bodily Injury";
        (2)  Under Personal and Advertising Injury Liability Coverage, to all damages sustained by anyone person because of Personal and Advertising Injury Liability.
        (3)  Under Property Damage Liability Coverage, to all damages sustained by any one person because of "Property Damage"; or

WH-C 0024  (09/11)                                                            1 of 2

POLICY NUMBER: WSC19001405

      (4) Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (a) "Bodily Injury";
      (b) "Property Damage"; or
      (c) "Bodily Injury" and "Property Damages" combined as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "Bodily Injury", a separate deductible amount will be applied to each person making a claim for such damages. With respect to "Property Damage" and "Personal and Advertising Injury Liability", person includes an organization.

    b. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

      (1) Under Bodily Injury Liability Coverage, to all damages because of "Bodily Injury";
      (2) Under Personal and Advertising Injury Liability Coverage, to all damages sustained by any one person because of Personal and Advertising Injury Liability.
      (3) Under Property Damage Liability Coverage, to all damages because of "Property Damage"; or
      (4) Under Bodily Injury Liability and/or Property Damages Liability Coverage Combined, to all damages because of:
      (a) "Bodily Injury";
      (b) "Property Damage"; or
      (c) "Bodily Injury" and "Property Damage" combined as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. The terms of this insurance, including those with respect to:
    (a) Our right and duty to defend any "suits" seeking those damages; and
    (b) Your duties in the event of an "occurrence", claim, or "suit" apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claims or "suit" and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

5. When used in this endorsement, damages includes any payments made under the Supplementary Payments provisions of this policy.

6. If you do not promptly reimburse us for any deductible amount owed, then any cost incurred by us in collection of the deductible amount will be added and applied in addition to the applicable deductible amount without limitation. These costs include, but are not limited to, collection agency fees, attorney's fees and interest.

POLICY NUMBER:  WSC19001405

<div align="right">**LIABILITY ENDORSEMENT**</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS - EXCLUSION

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      BUSINESSOWNERS LIABILITY COVERAGE FORM

The following exclusion is added to EXCLUSIONS:

This insurance does not apply to:

1.  Liability, injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or

    b.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms, bioaerosols or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damage of any kind, including but not limited to "bodily injury", "property damage", or "personal and advertising injury" to which this endorsement applies.

All other terms and conditions of this policy remain unchanged.

POLICY NUMBER: WSC19001405                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

AMENDMENT - PROPERTY DAMAGE AGGREGATE LIMITS AND UNDERGROUND RESOURCES AND EQUIPMENT, AND BLOWOUT AND CRATERING AND EXPLOSION HAZARDS ENDORSEMENT

AMENDMENT - LIMITATION TO UNDERGROUND RESOURCES AND UNDERGROUND EQUIPMENT HAZARDS, PROPERTY DAMAGE LIABILITY ENDORSEMENT

All other pollution exclusion wording is replaced and there is NO COVERAGE for:

I.   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migrations, release or escape of "pollutants" at any time.

II.  Any loss, cost or expense arising out of any:
    A.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to , or assess the effects of "pollutants", or
    B.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of "pollutants".

WH-C 0051  (09/11)

POLICY NUMBER: WSC19001405                      **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE C - MEDICAL PAYMENTS LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION III - LIMITS OF INSURANCE, item **2.a. Medical Expenses under Coverage C** is deleted and replaced as follows:

The LIMITS of INSURANCE shown in General Liability Coverage Part, AD-150, for **Medical Expense Limit** is the most we will pay in the total aggregate and any one annual period or to any coverage period which is more or less than 12 months regardless of the number of:

a.  Insured;
b.  Claims made or **suits** brought; or
c.  Persons or organizations making claims or bring **suits**.

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABSOLUTE UNSOLICITED COMMUNICATIONS - EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERICAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

This insurance does not apply to liability. injury or damages of any kind, to include but not limited to "bodily injury", "property damage" and "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with "unsolicited communications" made by or on behalf of any insured.

"Unsolicited communications" means any form of communication, distribution, or the transmittal or publication of information or material, including, but not limited to facsimile, electronic mail, postal mail, express mail, telephone, internet or web-based advertisement, instant message, SMS message or text message that the recipient has not specifically requested.

"Unsolicited communications" includes, but is not limited to actual or alleged violations of:

1.  The Telephone Consumer Protection Act (47 U.S.C.  227), including any amendment of, or additions to, such statute;

2.  The Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. 7701. et seq.), including any amendment of, or addition to, such statute;or

3.  Any other statute, ordinance or regulation relating to the communication, distribution or transmittal of unwanted content, information or material.

This exclusion also applies to any liability or "bodily injury", "property damage" and "personal and advertising injury" for which the insured is obligated, or is alleged to be obligated, to pay damages or defend any claim or "suit" by reason of the assumption of liability in an "Insured contract".

This insurance does not apply to any other liability or "bodily injury", "property damage" and "personal and advertising injury" in any claim or "suit" in which allegations of "unsolicited communications" are also made.

We shall have no duty to defend any insured against any claim or "suit" alleging damages arising out of or related to liability or "bodily injury", "property damage" and "personal or advertising injury" to which this exclusion applies.

WH-C 0077  (09/11)

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOXIC METALS - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following is **added** to Paragraph **2., Exclusions of Section I - Coverage A- Bodily injury and Property Damage Liability, Section I - Coverage B - Personal and Advertising Injury** and **Section I - Coverage C - Medical Payments:**

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation or absorption of any "toxic metals" in any form; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or requirement by or on behalf of any authority, governmental or otherwise, that any insured or others abate, test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "toxic metals"; or

   b. Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "toxic metals".

We shall have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation or absorption of any "toxic metals" in any form.

B. For the purpose of this endorsement, the following definitions are **added** to the **Definitions** section:

1. "Toxic metals" are individual metals and metal compounds that negatively affect people's health. "Toxic metals" include, but are not limited to, arsenic, beryllium, "heavy metals" or hexavalent chromium.

2. "Heavy metals" are a group of elements between copper and bismuth on the periodic table of the elements having specific gravities greater than 4.0. "Heavy metals" include, but are not limited to, cadmium, cobalt, copper, lead, manganese, mercury, molybdenum, strontium, vanadium or zinc.

All other terms and conditions of this policy remain unchanged.

WH-C 0083  (09/11)

POLICY NUMBER:  WSC19001405                                    COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTAGIOUS, INFECTIOUS OR TRANSMISSIBLE DISEASE - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability, and Coverage C - Medical Payments:

Contagious, Infectious or Transmissible Disease

1.  This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of claims or "suits" for actual or alleged damages caused by or arising out of:

a.  Direct or indirect contact with or exposure to any human, mammal, reptile, insect, bird, fish, parasite, or any sub-species thereof infected with or carrying any "infectious agent" that may result in the contracting or transferring of any "contagious, infectious or transmissible disease"; or

b.  Direct or indirect exposure to any "contagious, infectious or transmissible disease"; or

c.  Use of, contact with, or exposure to, any product or object allegedly infected with, exposed to or contaminated by any "infectious agent" whether or not such product or object was handled, inspected, distributed, manufactured or processed by any insured or any other person.

2.  This exclusion applies regardless of culpability or intent, including whether or not such damages were caused by or arising out of:

a.  Allegations of negligent hiring, placement, training, or supervision; or

b.  Any premises owned or occupied by, rented or leased to any insured; or

c.  Any act, error or omission relating to negligent maintenance of premises where the insured allegedly knew or should have known that exposure to any "infectious agent" may result in the contracting or transferring of any "contagious, infectious or transmissible disease"; or

d.  Any act, error or omission relating to negligent handling, inspection, distribution, manufacturing or processing of any product or object where the insured allegedly knew or should have known that exposure to any "infectious agent" may result in the contracting or transferring of any "contagious, infectious or transmissible disease".

3.  This exclusion also applies to any:

a.  Claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of a "contagious, infectious or transmissible disease" and specifically excludes from coverage, claims or "suits" for:

(1)  Emotional distress;

(2)  Loss of society, services, consortium or income;

(3)  Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

(4)  Legal expenses, costs or fees associated with any claim or "suit".

b.  Obligation to share damages with or repay someone who must pay damages arising out of any claim or "suit".

POLICY NUMBER:  WSC19001405

    c.   Any loss, cost or expense arising out of any:

       (1)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "contagious, infectious or transmissible disease"; or

       (2)  Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "contagious, infectious or transmissible disease".

  4.  We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any "contagious, infectious or transmissible disease".

B.  For the purpose of this endorsement, the following definitions are added to the Definitions Section:

  1.  "Contagious, infectious or transmissible disease" means a disease or condition caused by or arising out of direct or indirect contact with or exposure to any form of "infectious agent".

     "Contagious, infectious or transmissible diseases" include, but are not limited to, Anthrax, Avian Influenza Viruses including all Influenza A viruses and H5N1 Influenza, Botulism, Bovine Spongiform Encephalopathy, Cat Scratch Fever, Cholera, Chronic Wasting Disease, Diphtheria, Dysentery, E. coli, Fifth Disease, Foot-and-Mouth Disease, Group A Streptococcal Disease, Group B Streptococcal Disease, Hantavirus Infections, Hepatitis A, Hepatitis B, Hepatitis C, Influenza, Legionellosis (Legionnaires' Disease or Pontiac Disease), Lyme Disease, Malaria, Meningitis, Necrotizing Fasciitis, New Variant Creutzfeldt-Jakob Disease, Pertussis, Pneumococcal Disease, Rabies, Ringworm, Rocky Mountain Spotted Fever, Scrapie, Shingles, Staphylococcus, Tetanus, Transmissible Spongiform Encephalopathy, Variant Creutzfeldt-Jakob Disease, West Nile Virus, Yellow Fever or Zoonoses.

  2.  "Infectious agent" means any one or more pathogens such as, but not limited to, bacterium, fungus, marker, microbial agent, microorganism, organism, protozoa, virus, or any other source, variant or mutation thereof, capable of transmission by any means from any source to any other source that can potentially infect, contaminate, cause, contribute or lead to the development of a "contagious, infectious or transmissible disease".

All other terms and conditions of this policy remain unchanged.

LIABILITY ENDORSEMENT

POLICY NUMBER: WSC19001405

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SUBSIDENCE OF LAND OR EARTH MOVEMENT - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

This policy does not apply to any cost, expense, damage or liability caused by, resulting from, attributable to, contributed to, or aggravated by the subsidence or movement of land as a result of landslide, mudslide, earth sinking, upheaval, shrinking, rising or shifting whether or not such movement or subsidence results from operations of any insured or others working or operating on behalf of any insured.

All other terms and conditions of this policy remain unchanged.

**Policy Number:** WSC19001405

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INTELLECTUAL PROPERTY EXCLUSION
## (Amended Definition of Personal and Advertising Injury)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

I.   SECTION I - COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY Exclusion i. is deleted in its entirety and replaced by the following:

i.   "Personal and advertising injury" arising out of:

(1)   Any infringement, disparagement, dilution or diminution of or damage to:

(a)   Copyright, slogan or title;

(b)   Patent;

(c)   Trademark, service mark, service name, collective mark or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

(d)   Trade secret or practice;

(e)   Trade dress, including without limitation any shape, color, design or appearance used to distinguish the origin of a good, product or service;

(f)   Advertising ideas, concepts, campaigns, or style of doing business; or

(g)   Any other proprietary property rights or intellectual property rights recognized or implied by law.

(2)   Any false designation of the origin of a good, product or service.

(3)   Any deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice.

II.   SECTION V - DEFINITIONS Paragraph 14. is deleted in its entirety and replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

(1)   False arrest, detention or imprisonment;

(2)   Malicious prosecution;

(3)   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

(4)   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(5)   Oral or written publication of material that violates a person's right of privacy.

WH-C 0356  (09/11)

POLICY NUMBER: WSC19001405                                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following Exclusions are added to Paragraph 2 Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**o. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission     that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B. The following Exclusions are added to Paragraph 2. Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.  Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**q.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SUB-LIMITS OF INSURANCE AND ADDITIONAL EXCLUSIONS FOR PROPERTY DAMAGE ARISING FROM UNDERGROUND RESOURCES HAZARD, UNDERGROUND EQUIPMENT HAZARD, BLOWOUT OR CRATERING HAZARD AND EXPLOSION HAZARD

This endorsement, including exclusions,  modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY
      COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

The following provisions apply with respect to "Property Damage" actually or allegedly arising from oil and gas operations or water well drilling or servicing operations as described within the Classification Codes in WH-0150:

I.    SECTION III - LIMITS OF INSURANCE, is amended to show with respect to "Property Damage" liability included within the hazards selected below that the most we will pay during any policy period is an AGGREGATE LIMIT of: $_100,000____                       .

    **THIS DOES NOT INCREASE THE LIMITS OF INSURANCE**

    THE ABSENCE OF AN "X" BESIDE ANY HAZARD DESCRIBED BELOW MEANS "PROPERTY DAMAGE" IN THAT HAZARD IS ABSOLUTELY EXCLUDED FROM COVERAGE UNDER THE FOLLOWING:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
    COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

_X_ **Underground Resources Hazard:**

    "Property Damage" to oil, gas, water or other mineral substance(s) which have not been reduced to physical possession above the surface of the earth, including the cost of reducing any such substance(s) to physical possession above the surface of the earth or to the expense incurred or rendered necessary to prevent or minimize "Property Damage" to other property resulting from acts or omissions causing "Property Damage" to any such substance(s).

_X_ **Underground Equipment Hazard:**

    A.   "Property Damage" to any drilling or well servicing equipment or machinery, including, without limitation, casing, pipe, bit, tool or pump located beneath the surface of the earth in a well or hole through which exploration or production of any substance is conducted, including the cost of reducing any such drill or well servicing equipment or machinery to physical possession above the surface of the earth and any expense incurred or rendered necessary to prevent or minimize "Property Damage" to other property resulting from acts or omissions causing "Property Damage" to any such drill or well servicing equipment or machinery;

    B.   "Property Damage" to any well, hole, formation, strata or area in or through which exploration for or production of any substance is conducted.

POLICY NUMBER:  WSC19001405

__X__ **Blowout or Cratering Hazard:**

"Property Damage" to property located on or above the surface of the earth which arises out of the blowout or cratering of any well, but any sublimit that applies to this hazard does not apply to any costs or expenses incurred in connection with controlling or bringing under control any "well out of control". All such costs or expenses in connection with controlling or bringing under control a "well out of control" are excluded from coverage.

__X__ **Explosion Hazard:**

"Property Damage" which arises out of blasting operations or an explosion. The explosion hazard does not include "Property Damage" arising out of an explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment.

II.  The deductible amount shown in endorsement DEDUCTIBLE LIABILITY INSURANCE, form WH-C 0024, for Property Damage Liability, will apply subject to those specified terms and conditions contained in the form.  However, if another DEDUCTIBLE AMOUNT is provided below, it will apply with NO EXCEPTIONS.

    A.  The following amends and supercedes any other "Property Damage" Liability deductible conditions or provisions contained elsewhere in the policy:

        The PROPERTY DAMAGE LIABILITY DEDUCTIBLE AMOUNT per claim is: $_____

    B.  The deductible amount applies to "Property Damage" arising out of any hazard covered by this endorsement and which is sustained by any one person or organization as a result of any one occurrence. At our option we may:

        1)  pay any part or all of the deductible amount to effect settlement of any claim or "suit" and upon notification of the action taken you shall promptly reimburse us for such part of the deductible amount as has been paid by us, or

        2)  upon receipt of notice of claim, we may request you to pay over and deposit with us all or any part of the deductible amount, to be held and applied per the terms of the policy.

**The following definitions apply to this Endorsement:**

    A.  "Co-owner of the working interest" means any person or organization who is, with the Named Insured, a co-owner, joint venturer or mining partner in mineral properties who participates in the operating expense of such properties or who has the right to participate in the control, development or operation of such properties.

    B.  "Well out of control" means an uncontrolled and continuous flow of gas, oil or other fluids, whether above or below the surface of the earth, from any well.

POLICY NUMBER:  WSC19001405

**The following additional exclusions apply to the following:**

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY
    COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**This insurance does not apply:**

A.  to any cost or expense incurred by or at the request of the Named Insured or any "co-owner of the working interest" in connection with controlling or bringing under control any oil, gas or water well, nor to damages claimed by any "co-owner of the working interest".

B.  to any occurrence of a blowout or cratering of any oil, gas or water well resulting from or in connection with operations performed by or on behalf of the Named Insured unless the Named Insured, at his own cost and expense, uses due and reasonable diligence to take all such prompt and immediate steps for the purpose of controlling or bringing under control such well as shall be required of him by regulation, order or directive of public authorities having jurisdiction in the matter, unless such regulation, order or directive is being complied with by others.

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SUBCONTRACTORS AND INDEPENDENT CONTRACTORS - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

There is no coverage under this policy for any "bodily injury" or "property damage" that an insured may become legally obligated to pay when such "bodily injury" or "property damage" is caused by, or arises out of, any work, operations, services, or activities of any "subcontractor" or "independent contractor".

For the purpose of this exclusion, a "subcontractor" or "independent contractor" means anyone that performs any work, operations, services or activities for or on behalf of an insured, including any person or persons hired by, loaned to or contracted by any "subcontractor" or "independent contractor" and none of whom, including the "subcontractor" or "independent contractor", have any benefits or status as an employee of an insured.

IT IS FURTHER AGREED THAT FOR ANY CLAIM MADE OR SUIT BROUGHT WHICH IS EXCLUDED UNDER THE TERMS OF THIS ENDORSEMENT, THE COMPANY SHALL NOT HAVE THE OBLIGATION TO DEFEND, ADJUST, INVESTIGATE OR PAY ANY COST FOR INVESTIGATION, DEFENSE, ATTORNEY FEES OR ADJUSTMENT ARISING OUT OF SUCH CLAIMS.

POLICY NUMBER:  WSC19001405

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CROSS SUITS LIABILITY BY NAMED INSURED(S) - EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

It is agreed this insurance does not apply to:

(1) Any claim made or "suit" brought for damages or liability of any kind by any Named Insured or any "employee", "volunteer worker", "temporary worker", "executive officer", director stockholder, partner or member of any Named Insured against any other Named Insured or any "employee", "volunteer worker", "temporary worker", "executive officer", director stockholder, partner or member of any other Named Insured because of "bodily injury", "property damage" or "personal and advertising injury", or

(2) Any claim made or "suit" brought for damages by the spouse, child, parent, brother or sister of any "employee", "volunteer worker", "temporary worker", "executive officer", director, stockholder, partner or member of any Named Insured as a consequence of (1) above.

IT IS FURTHER AGREED THAT FOR ANY CLAIM MADE OR SUIT BROUGHT WHICH IS EXCLUDED UNDER THE TERMS OF THIS ENDORSEMENT, THE COMPANY SHALL NOT HAVE THE OBLIGATION TO DEFEND, ADJUST, INVESTIGATE OR PAY ANY COST FOR INVESTIGATION, DEFENSE, ATTORNEY FEES OR ADJUSTMENT ARISING OUT OF SUCH CLAIMS.

WH-C 0007  (09/11)

POLICY NUMBER: WSC19001405                          COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COLLAPSE AND UNDERGROUND PROPERTY DAMAGE HAZARD SPECIFIED OPERATIONS - AMENDMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to "property damage" within the "hazards" defined below the limits of insurance shall not exceed:

$ ___100,000.___ aggregate limit.

This insurance applies to "property damage" included within the "collapse hazard" or the "underground property damage hazard".  The following definitions apply:

**"Collapse hazard"** includes "structural property damage" and any resulting "property damage" to any other property at any time.

**"Structural property damage"** means the collapse of or structural injury to any building or structure due to:

(1)   Grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work; or

(2)   Moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.

**"Underground property damage hazard"** includes "underground property damage" and any resulting "property damage" to any other property at any time **except with respect to any operations involving an oil or gas well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on.**

**"Underground property damage"** means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar  property, and any apparatus used with them beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving.

WH-C 0014  (09/11)

POLICY NUMBER: WSC19001405                                COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SUPERVISION, OVERSIGHT OR MANAGEMENT OF ANY JOB-SITE OR WORK-SITE - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

There is no coverage under the policy if the insured is engaged or employed to supervise, oversee, or manage operations at a job-site or work-site. This exclusion applies regardless of any assumption of liability(ies) by the insured under an oral or written contract or agreement.

**I hereby understand and agree that this endorsement restricts and limits the coverages contained in the policy and I hereby accept these terms.**

_____          _____
**Named Insured or Corporate Officer**                     **Date**

***The above signature is required only when this form is added after the policy is quoted, bound and issued; otherwise the exclusion applies in full force from inception.

WH-C 0060  (05/17)

POLICY NUMBER:  WSC19001405

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND WORKERS - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e. Employer's Liability** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**e.** **Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

**(1)** "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)** Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)** Regardless of where the:

**(a)** Services are performed; or

**(b)** "Bodily injury" occurs; and

**(2)** Whether any insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** Exclusion **a. Any Insured** of **2. Exclusions** of **Section I - Coverage C - Medical Payments** is **replaced** by the following:

We will not pay expenses for "bodily injury":

**a.** **Any Insured**

To any insured.

All other terms and conditions of this policy remain unchanged.

WH-C 0078  (09/11)

Policy Number: WSC19001405

LIABILITY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE LIMITATION - WORK COMMENCED PRIOR TO POLICY INCEPTION DATE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance applies only to "bodily injury" or "property damage" included in the "products/completed operations hazard" and arising out of "your work" that commences on or after the policy inception date.

We will have no duty to defend any insured against any loss, claim, "suit" or other proceeding seeking damages for "bodily injury" or "property damage" arising out of "your work" that commences prior to the policy inception date.

All other terms and conditions of this policy remain unchanged.

**Policy Number:** WSC19001405

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AUTO (ABSOLUTE) - EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCT/COMPLETED OPERATIONS LIABILITY COVERATE PART

It is understood and agreed by you and us that **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY Exclusion g. - Aircraft, Auto or Watercraft** is amended to delete the term "auto" throughout the exclusion. **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY Exclusion g.** remains in full effect and is unamended with respect to aircraft and watercraft. In addition, the following exclusion is added to **SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY.**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" allegedly or actually arising out of, related to, caused by, contributed to by, or in any way connected to or with the ownership, maintenance, use, or entrustment to others, by or on behalf of any insured of an "auto," or the direct or indirect arranging or brokering by or on behalf of any insured for the ownership, maintenance, use or entrustment to others of any "auto." "Use" includes, but is not limited to, operation and "loading or unloading."

This exclusion applies even if the claims against any insured, or anyone acting on any insured's behalf, allege negligence or any other wrongdoing in the supervision, hiring, retention, employment, training, or monitoring of others by or on behalf of any insured.

Direct or indirect arranging or brokering by or on behalf of any insured includes, but is not limited to "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, caused by, contributed to by, or in any way connected to or with the ownership, maintenance, use or entrustment to others of any "auto" by another for which any insured is alleged to be liable under any theory of law, including but not limited to joint venture, respondeat superior, conspiracy, partnership or joint enterprise.

This exclusion also applies to any "bodily injury", "property damage" or "personal and advertising injury" for which any insured is obligated, or is alleged to be obligated, to pay damages or defend any "suit" by reason of the assumption of liability in an "insured contract."

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this exclusion applies.

WH-C 0339  (09/11)

POLICY NUMBER: WSC19001405

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDMENT OF INSURED CONTRACT DEFINITION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 9 of the **Definitions** Section is replaced by the following:

**9. Insured Contract** means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**;

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization, provided the **bodily injury** or **property damage** is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Copyright, ISO Properties, Inc., 2004

**LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART (Claims Made)**

**Policy No.**  WSC19001405        **Effective Date:** 07/18/2019  **Expiration Date:** 07/18/2020
                                                                    12:01 A.M., Standard Time

## LIMITS OF INSURANCE

| | |
|---|---|
| Environmental Property Damage Limit | $ 1,000,000. |
| Mandated Clean-Up Expenses Limit | $ 1,000,000. |
| Aggregate Limit | $ 1,000,000. |

## RETROACTIVE DATES

This insurance does not apply to "environmental property damage" or "mandated clean-up expenses" caused by a "pollution incident" that commences prior to the Retroactive Date shown here: **07/18/2018**

(Enter Date or "None" if no Retroactive Date Applies)

## DEDUCTIBLE(S)

| | | |
|---|---|---|
| Environmental Property Damage | $  6,500. | Each Pollution Incident |
| Mandated Clean-Up Expense | $  6,500. | Each Pollution Incident |

## PREMIUM

| Business Description of Operations | Code No. | Premium Basis (Symbol) | Rate | Per | Advance Premium | |
|---|---|---|---|---|---|---|
| OIL OR GAS LEASE SITE TRANSPORT OR DELIVERY OF FRESH OR SALT WATER, NOT ENGAGED IN ANY WELL TREATING SERVICES OR VACUUM OPERATIONS, OIL OR GAS PRODUCTION WELLS VACUUM OR TANK TRUCK SERVICES AT OIL OR GAS LEASE SITES, INCLUDING TRANSPORTING AND DISPOSAL OF WASTE WATER AND OTHER LIQUIDS TO APPROVED DISPOSAL SITES, NOT ENGAGED IN TRANSPORT OF ANY HAZARDOUS CHEMICALS OR MATERIALS | 3) | █████ | ████ | ████ | ████████ | MP |

|  | | |
|---|---|---|
| Total Advance Premium | $ ██████ | MP |
| Minimum & Deposit Annual Premium | $ ██████ | MP |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
See Schedule of Forms & Endorsements - WH-SCHLST

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND
THE POLICY PERIOD.  SEE ATTACHED PREMIUM BASIS ENDORSEMENT WH-0023

WH-POLL 0001 (10/15)

**Policy Number:** WSC19001405

# LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION
## LIABILITY COVERAGE FORM (Claims Made)

**THIS FORM PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in this coverage form restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words " you" and " your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we" , "us" and "our" refer to the Company providing this insurance.

The word " insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

## SECTION I - LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE

All of the following apply but only with respect to oil and gas operations or water well drilling operations as designated and specifically scheduled in the classification(s) contained in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART:**

1.  **Insuring Agreement - "Environmental Property Damage" Liability and Reimbursement of "Mandated Clean-Up Expenses"**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "environmental property damage" or "mandated clean-up expenses," caused by a "pollution incident," to which this insurance applies. We will have the right and duty to defend the insured against any " suit" seeking "environmental property damage" . However, we will have no duty to defend the insured against any " suit" seeking damages for "environmental property damage," nor any obligation to pay "mandated clean-up costs," to which this insurance does not apply. We may, at our discretion, investigate any "pollution incident" and settle any claim or " suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "mandated clean-up expenses" .

    b.  This insurance applies to **"Environmental Property Damage" Liability** only if:

        (1) The "environmental property damage" is caused by a "pollution incident" arising out of " your work"," your product" , or any "well" owned or operated in whole or in part by you and specifically scheduled in the classification(s) contained in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART;**

        (2) The "environmental property damage" is caused by a "pollution incident" that commences on or after the Retroactive Date shown in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART;**

        3)  The "environmental property damage" is caused by a "pollution incident" that takes place in the " coverage territory;

        4)  The insured's responsibility to pay damages because of "environmental property damage" is determined in a " suit" on the merits in the " coverage territory" or in a settlement we agree to.

    c.  This insurance applies to **"Mandated Clean-Up Expenses"** which you have an obligation to pay because of a "pollution incident" arising out of " your work" , " your product" , or any "well" owned or operated in whole or in part by you and specifically scheduled in the classification(s) contained in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART** and it becomes the insured's obligation to pay "mandated clean-up costs" because "environmental property damage" is asserted under the statutory authority of the government of the United States of America, Canada or any governmental subdivisions of the United States or Canada. Notice asserting such obligation must be first received by you during the policy period.

Policy Number: WSC19001405

d.  This claims made insurance only applies to claims for "environmental property damage" or "mandated clean-up expenses" caused by a "pollution incident" if that "pollution incident" becomes known to you within THIRTY-FIVE _____ , (35 ), days of its commencement and you notify us, in writing, of the "pollution incident" within NINETY-FIVE _____ , (95 ), days of its commencement. Notice to us should include all of the following:

(1)  How, when and where the "pollution incident" took place;

(2)  The names and addresses of any witnesses; and

(3)  The nature and location of any "environmental property damage" or "mandated clean-up expenses" arising out of the "pollution incident" .

Notice of a "pollution incident" is not notice of a claim.

e.  This claims made insurance only applies to claims for "environmental property damage" or "mandated clean-up expenses" FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD.

f.  No other obligation or liability to pay sums or to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**2.  Exclusions**

This insurance does not apply to:

a.  Prior Pollution Incidents

"Environmental property damage" or "mandated clean-up expenses" caused by a "pollution incident" that first commenced prior to the Retroactive Date shown in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART**. A series of repeated "pollution incidents" shall be deemed to have first commenced at the earliest time of the first such "pollution incident" .

**b.  Expected Or Intended Injury**

Any "Environmental property damage" or "mandated clean-up expenses" arising out of any "pollution incident" expected or intended from the standpoint of any insured.

**c.  Contractual Liability**

"Environmental property damage" or "mandated clean-up expenses" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**d.  Damage to Property**

"Environmental property damage" or "mandated clean-up expenses" to:

(1)  Real property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of damage to another's property; or

(2)  Premises you sell, give away or abandon, if "property damage" or "environmental property damage" arise out of any part of those premises, except for an abandoned "well" owned or operated in whole or in part by you and specifically scheduled in the classification(s) contained in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART**; or

(3)  Sub-surface oil, gas, water or any other sub-surface substances, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason; or

(4)  Personal property loaned to you or in the care, custody or control of the insured.

**e.  Clean-Up Costs**

"Clean-up costs" or any other expense incurred by you or others to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize "pollutants" at real property you own, rent or occupy, or to any recovery claimed for such cost or expense.

**Policy Number:** WSC19001405

    **f.   Offshore Facility**

"Environmental property damage" or "mandated clean-up expenses" arising out of the ownership or operation of any offshore facility as defined in the Outer Continental Shelf Lands Act, Amendment of 1978 or the Clean Water Act of 1977 as amended 1978 or any deepwater port as defined in the Deepwater Port Act of 1974 as amended or as may be amended.

    **g.   Closed Well**

"Environmental property damage" or "mandated clean-up expenses" arising out of a "pollution incident" from any location or any "well" that was used by you for the storage, disposal, processing or treatment of "pollutants" and was sealed off or closed, or was in the process of being sealed off or closed, subject to statute, ordinance or governmental regulation or directive requiring maintenance or monitoring during or after sealing off or closure prior to the Retroactive Date shown in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART** and specifically scheduled in the classification(s) contained in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART.**

    **h.   Aircraft, Auto, Rolling Stock Or Watercraft**

"Environmental property damage" or "mandated clean-up expenses" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" , rolling stock or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and " loading or unloading" . This exclusion does not apply to "environmental property damage" or "mandated clean-up expenses" arising out of the operation of any of the equipment listed in Paragraph f. (2) or f. (3) of the definition of "mobile equipment" .

    **i.   Failure To Comply With Environmental Laws**

"Environmental property damage" or "mandated clean-up expenses" arising out of a "pollution incident" which results from or is directly or indirectly attributable to failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, if such failure to comply is a willful or deliberate act or omission of:

       (1)  Any insured; or

       (2)  Any insured's members, managers, partners or "executive officers" .

    **j.   Acid Rain**

"Environmental property damage" or "mandated clean-up expenses" arising out of acid rain.

    **k.   War**

"Environmental property damage" or "mandated clean-up expenses" , however caused, arising, directly or indirectly, out of:

       (1)  War, including undeclared or civil war;

       (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

       (3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

    **l.   Co-owner Of The Working Interest**

Any claim or " suit" brought by any " co-owner of the working interest" against the Named Insured or any other insured, including any other " co-owner of the working interest" .

    **m. Subsidence or Earth Movement**

Any cost, expense, or damage caused by, resulting from, attributable to, contributed to, or aggravated by the subsidence or movement of land as a result of landslide, mudslide, earth sinking, upheaval or shifting, whether or not such movement results from operations of an insured.

    **n.   Well Control**

Any cost, expense, or damage in connection with controlling or bringing under control any "well" .

**Policy Number:** WSC19001405

    **o.**  **Your Product**

        Any "Environmental property damage" , however caused, to " your product" .

    **p.**  **Navigable Waterways**

        "Environmental property damage" or "mandated clean-up expenses" in connection with any work, activity or operation being conducted upon, into or over any "navigable body of water" .

    **q.**  **Animals or Livestock**

        Any "environmental property damage" or "mandated clean-up expenses" in connection with any loss, or loss of use, of any animal or livestock whether domesticated or in the wild.

    **r.**  **Electronic Data**

        Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

        As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

    **s.**  **Classification Limitation**

        "Environmental property damage" or "mandated clean-up expenses" arising out of, in whole or in part, any of your operations not specifically included in the Classifications shown on the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART SUPPLEMENTARY PAYMENTS**

**3.**  **Supplmentary Payments**

    We will pay, with respect to any claim we investigate or settle, or any " suit" against an insured we defend:

    1.  All expenses we incur.

    2.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or " suit" , including actual loss of earnings up to $250 a day because of time off from work.

    3.  All court costs taxed against the insured in the " suit" . However, these payments do not include attorneys' fees or attorneys' expenses taxed or awarded against the insured.

    4.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

    1.  If you are designated in the Declarations as:

        a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

        b.  A partnership or joint venture, you are an insured. Your members and your partners and their spouses are also insureds, but only with respect to the conduct of your business.

        c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

        d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Policy Number: WSC19001405

2. Each of the following is also an insured:

   a. Your "employees" , other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for "property damage" or "environmental property damage" to property:

      (1) Owned, occupied or used by any of your "employees" , any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company) that is not a Named Insured on the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART;**

      (2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by any of your "employees" , any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company) that is not a Named Insured on the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART.**

   b. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 30th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

   b. Coverage does not apply to "property damage" or "environmental property damage" that occurred before you acquired or formed the organization.

   c. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

4. A " co-owner of the working interest" . However:

   a. Coverage will apply only to the extent that the proportionate part of the total amount of any damages apply in exact relation to the " co-owner of the working interest" proportionate interest bears to 100% of the total interest of all other parties regardless of whether one or more of the " co-owner of the working interest" parties, including the Named Insured, has been held severally liable for damages or whether such damages shall have been held to be a joint liability as between two or more said parties, including the Named Insured.

   b. Any other coverage available to any " co-owner of the working interest" will be primary and this insurance shall be excess over and not contribute with any other valid and collectible insurance.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or " suits" brought;

   c. Persons or organizations making claims or bringing " suits" ; or

   d. Governmental actions taken with respect to " clean-up costs" .

2. The Aggregate Limit is the most we will pay for the sum of all damages because of "environmental property

Policy Number: WSC19001405

damage" and "mandated clean-up expenses" .

3.  We will pay "environmental property damage" and "mandated clean-up expenses" only for the amounts which are in excess of the deductible amount, if any, shown in the **LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE PART.** Subject to the Aggregate Limit above, the most we will pay in any one "pollution incident" for the sum of all damages because of all "environmental property damage" and "mandated clean-up expenses" will be the lesser of:

    a.  The Each "Pollution Incident" Limit; or

    b.  The sum of all those damages.

We may, or will, if required by law, pay all of any deductible amount, if applicable, to effect settlement of any claim or " suit" . Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - POLLUTION LIABILITY CONDITIONS

1.  **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.  **Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    a.  To join us as a party or otherwise bring us into a " suit" asking for damages from an insured; or

    b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

3.  **Other Insurance**

    If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

    a.  **Primary Insurance**

        This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

    b.  **Excess Insurance**

        This insurance is excess over and not contributory with any of such other insurance, whether primary, excess, contingent or on any other basis:

        (1) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance, or;

        (2) Where there is any other valid and collectible pollution liability insurance available to you covering pollution liability for damages arising out of " your work" performed or " your product" , or;

        (3) under which you are an additional insured.

        When this insurance is excess, we will have no duty to defend the insured against any " suit" if any other insurer has a duty to defend the insured against that " suit" . If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

        When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

        (a) The total amount that all such other insurance would pay for the loss in the absence of this

**Policy Number:** WSC19001405

insurance; and

   (b)  The total of all deductible and self-insured amounts under all that other insurance. We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**4.  Premium Audit**

   a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**5.  Representations**

By accepting this policy, you agree:

   a.  The statements in the Declarations are accurate and complete;

   b.  Those statements are based upon representations you made to us; and

   c.  We have issued this policy in reliance upon your representations.

**6.  Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a.  As if each Named Insured were the only Named Insured; and

   b.  Separately to each insured against whom claim is made or " suit" is brought.

**7.  Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring " suit" or transfer those rights to us and help us enforce them.

**8.  Coverage Part Issued To Comply With Law or Regulation**

If this policy is issued to comply with any law or regulation which requires notice of cancellation to any governmental body, cancellation may not be effected until the required notice has been provided by you or us.

**9.  Notice of a Claim**

Notice of a "pollution incident" is not notice of a claim. If a claim is made or " suit" is brought against any insured or an action is initiated, you must see to it that we receive prompt written notice of the claim or " suit" or notice of action. You and any other involved insured must:

   a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or " suit" ;

   b.  Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation or settlement of the claim or defense against the " suit" ; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be

Policy Number: WSC19001405

liable to the insured because of injury or damage to which this insurance may also apply.

**10. No Voluntary Payments**

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## SECTION V - DEDUCTIBLE

The deductible amount applies separately to each "pollution incident" and to each person or organization that sustains "environmental property damage" or "mandated clean-up expenses." At our option we may:

1. Pay any part of or all of the deductible amount to effect settlement of any claim or " suit" and upon notification of the action taken you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

2. Upon receipt of notice of claim, we may request you to pay and deposit with us all or part of the deductible amount, to be held and applied per the terms of the policy.

## SECTION VI - DEFINITIONS

1. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. However, "auto" does not include "mobile equipment" .

2. "Claim" means:

   a. a demand received by any insured for money or services; or

   b. a written notice received by any insured resulting from a "pollution incident" that may result in a demand for money or services; or

   c. service of suit, or notice received of the initiation of arbitration or other proceedings against any insured. "Claim" includes " related claims" . "Related claims" means two or more " claims" that are logically or causally connected.

3. "Clean-up costs" means expenses for the removal or neutralization of contaminants, irritants or "pollutants" that are not "mandated clean-up expenses" .

4. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

5. "Co-owner of the working interest" means any person or organization, who with you, is a co-owner, joint venturer, or mining partner in any mineral property and who participates in, or has the right to participate in, operating expenses, control development, or operation of such property.

6. "Environmental property damage" means damage to property caused by the presence upon surface land or into or on an inland body of surface water of "pollutants" .

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, rolling stock, watercraft or "auto" ;

   b. While it is in or on an aircraft, rolling stock, watercraft or "auto" ; or

   c. While it is being moved from an aircraft, rolling stock, watercraft or "auto" to the place where it is finally delivered; But " loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, rolling stock, watercraft or "auto" .

Policy Number: WSC19001405

9.  "Mandated Clean-Up Expenses" means expenses to remove or neutralize damage caused by "environmental property damage" that you are obligated to pay under the statutory authority of the government of the United States of America, Canada, or any governmental subdivisions of the United States or Canada.

10.  "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.  Vehicles maintained for use solely on or next to premises you own or rent;

c.  Vehicles that travel on crawler treads;

d.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1)  Power cranes, shovels, loaders, diggers or drills; or

   (2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.  Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2)  Cherry pickers and similar devices used to raise or lower workers;

f.  Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1)  Equipment designed primarily for:

      (a)  Snow removal;

      (b)  Road maintenance, but not construction or resurfacing; or

      (c)  Street cleaning;

   (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment. However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

11.  "Navigable body of water" means any waterway that is used for business or transportation and is under the jurisdiction of the federal government.

12.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

13.  "Pollution incident" means the sudden and accidental emission, discharge, release or escape of "pollutants" upon surface land or on or into an inland body of surface water.

14.  "Suit" means a civil proceeding in which damages because of "environmental property damage" or "mandated clean-up expenses" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Policy Number: WSC19001405

15. "Well" means:

A hole or bore that is being drilled, or has been drilled, on surface land or in an inland body of water for the purpose of obtaining, producing, pumping, exploring for or disposing of crude oil, natural gas, raw and unprocessed petroleum substances, raw and unprocessed petroleum related hydrocarbons or water, including liquids, liquid-based substances or fluids used at or in connection with the use and purpose of the "well".

16. "Your product":

   a.  "Your product" means:

      (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a)  You;

         (b)  Others trading under your name; or

         (c)  A person or organization whose business or assets you have acquired; and

      (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b.  "Your product" includes:

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2)  The providing of or failure to provide warnings or instructions.

   c.  "Your product" does not include products that are still in your physical possession.

17. "Your work":

   a.  "Your work" means:

      (1)  Work or operations performed by you, or by subcontractors or others on your behalf; and

      (2)  Materials, parts or equipment furnished in connection with such work or operations; and

      (3)  Work that has not yet been completed, or abandoned. "Your work" will be deemed completed at the earliest of the following times:

         (a)  When all of the work called for in your contract has been completed.

         (b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b.  "Your work" includes:

      (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work"; and

      (2)  The providing of or failure to provide warnings or instructions.

POLICY NUMBER: WSC19001405

LIMITED, SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PREMIUM BASIS ENDORSEMENT

This endorsement modifies insurance provided under the following:

LIMITED, SUDDEN, AND ACCIDENTAL POLLUTION LIABILITY COVERAGE - CLAIMS MADE

When used as a premium basis, one or more of the following symbols may be entered under the Premium Basis column of the Commercial General Liability Coverage Part Declarations.  These symbols designate the basis used for determining your premium.  The following is a definition of these symbols when used as a premium basis.

| SYMBOL | DEFINITION |
| --- | --- |

(1)   **REMUNERATION**

remuneration meaning the entire payroll, money, or substitutes for money paid during the policy period for services by proprietors and by all employees of the Named Insured other than chauffeurs (except operators of mobile equipment) and aircraft pilots or  co-pilots, subject to any special limitations or exceptions provided by the company at the time coverage was effected or as stated below under symbol (6).
The rates apply per ▮▮▮▮ remuneration.

(2)   **COST**

cost means the total cost to the Named Insured with respect to operations performed for the Named Insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made, paid or due.
The rates apply per ▮▮▮▮ cost.

(3)   **SALES OR RECEIPTS**

sales or receipts means the gross amount of money charged by the Named Insured, his concessionaires, and others trading under his name, for goods and products sold or distributed, operations performed (Installation, repair or servicing), dues or fees and rentals during the policy term, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.
The rates apply per ▮▮▮▮ sales or receipts.

(4)   **AREA**

The total number of square feet of floor space at the insured premises.
The rates apply per ▮▮▮▮ square feet of Area.

(5)   **EACH**

The basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the declarations page, such as Per person.

The rates apply per unit of exposure.

(6)   **OTHER -**   (Premium basis as specifically defined below.):

WH-POLL 0003 (02/13)

POLICY NUMBER:  WSC19001405

LIMITED, SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TERRORISM EXCLUSION
# (ABSOLUTE)

This endorsement modifies insurance provided under the following:

LIMITED, SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE - CLAIMS MADE

This policy does not apply to "damages", including but not limited to "bodily injury", "property damage" or "personal and advertising injury" arising, directly or indirectly, out of an "act of terrorism".

"Act of terrorism" means activities against persons, organizations or property of any nature:

    **a.**  That involve the following or preparation for the following:

        **(1)**  Use or threat of force or violence; or

        **(2)**  Commission or threat of a dangerous act; or

        **(3)**  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **b.**  When one or both of the following applies:

        **(1)**  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        **(2)**  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

POLICY NUMBER: WSC19001405                    LIMITED, SUDDEN & ACCIDENTAL POLLUTION LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SUPERVISION, OVERSIGHT OR MANAGEMENT OF ANY
## JOB-SITE OR WORK-SITE - EXCLUSION

This endorsement modifies insurance provided under the following:

LIMITED, SUDDEN & ACCIDENTAL POLLUTION LIABILITY COVERAGE PART (Claims Made)

There is no coverage under the policy if the insured is engaged or employed to supervise, oversee, or manage operations at a job-site or work-site. This exclusion applies regardless of any assumption of liability(ies) by the insured under an oral or written contract or agreement.

**I hereby understand and agree that this endorsement restricts and limits the coverages contained in the policy and I hereby accept these terms.**

_____          _____

**Named Insured or Corporate Officer**            **Date**

***The above signature is required only when this form is added after the policy is quoted, bound and issued; otherwise the exclusion applies in full force from inception.

WH-POLL 0060  (05/17)

POLICY NUMBER: WSU19000783

# IMPORTANT NOTICE #2 - COMBINED
**Please Read Carefully**

**This endorsement modifies insurance provided under the following:**

1. **Auditable Policy** – Your policy is an AUDITABLE policy unless otherwise stated as being on a FLAT basis.  You are being notified that ADDITIONAL PREMIUMS, over and above the M&D PREMIUM, may be due on your AUDITABLE policy with any natural expiration or mid-term cancellation subject to the terms and conditions of the policy.  Any additional premium difference between your projected exposure base and your actual exposure base will be calculated, charged and due carrier for the scheduled coverage(s) provided.

   The rate(s) stated on your policy apply to the adjustable exposure base(s) reflected which may be your gross sales, gross receipts, gross footage or any other stated exposure basis or any combination thereof for the covered classification(s) described on your policy Declarations page.  You will be requested to provide the actual adjustable exposure basis for the period of coverage for your policy, either at the expiration date or cancellation date of your policy.  You will owe any additional premium due as calculated.

   Policy terms, conditions or limitations apply as respects to your policy premium and obligation(s) for remitting premium(s) due under your policy.  Please review your policy and ask your agent if you have any further questions.

2. **Privacy Policy** – Hudson Insurance Group does not disclose any nonpublic personal information about individual policyholders or claimants to any affiliate or any non-affiliate third party other than those permitted by law and only for the purpose of transacting the business of the policyholder's insurance coverage or claim.

   Hudson Insurance Group consists of:
   Hudson Insurance Company
   Hudson Specialty Insurance Company
   Hudson Excess Insurance Company

3. **Economic Sanctions** – The insurer shall not be deemed to provide cover and the insurer shall not be liable to pay any such claim or provide any such benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the insurer, its parent company or its ultimate controlling entity to any trade or economic sanctions under the laws and regulations of the United States of America or the European Union or to any sanction, prohibition or restriction under United Nations resolutions.

EXHIBIT
A-2

# CLAIMS REPORTING PROCEDURES

All claims will be administered by Hudson Insurance Group.

Insured policyholders or their brokers can report claims via a dedicated toll free call in center which is operated 24/7 all year round or via the internet. Calls will be promptly answered by our First Report of Incident unit.

If possible, please include the following information in your claim notice or have it available for our customer service representative:

     - Policy Holder #

     - Contact Information

     - Policy Number

     - Date of Loss

     - Description of Loss

The First Report of Incident Unit will electronically route the accident information to the control branch which will then assign an adjuster and a claim number to the reported

**Toll Free Number:**

**(866) 546 - 3981**

**Internet Reporting**

Hudsonclaims300@hudsoninsgroup.com

**Hudson Insurance Group**

**100 William Street, 5th Floor**

**New York, NY 10038**

**Fax: (646) 216-3786**



**HUDSON SPECIALTY INSURANCE COMPANY**

**Umbrella/Excess Policy Declarations**

---

Previous No. WSU18004594

Policy No. WSU19000783

Name and address of the Insured

Sur Transporte Inc.

1515 E. Scharbauer Drive, Apt, #802
Hobbs, NM  88240

**This policy provides surplus lines insurance by an Insurer not otherwise authorized to transact business in New Mexico. This policy is not subject to supervision, review, or approval by the superintendent of insurance. The Insurance so provided is not within the protection of any guaranty fund law of New Mexico designed to protect the public in the event of the insurer's insolvency.**

The Named Insured is:  ☐ Individual   ☐ Partnership   ☒ Corporation   ☐ Joint Venture   ☐ Other_____

---

Effective from  07/26/2019  to  07/26/2020                    Tax State: NM
12:01 a.m. Standard Time at the Named Insured's address stated above.

**1** Limits of Insurance, Coverages A and B Combined.
 The Limits of Insurance, subject to all the terms of this policy are:

    (a)  Each Occurrence Limit      $  5,000,000.

    (b)  General Aggregate Limit      $  5,000,000.

**2** Self-Insured Retention - Coverage B      $  10,000.   Per Occurrence.

**Premium:**
a. If not subject to Audit,
    Premium    $_____ Annual
b. If subject to Audit,
    (See WS-HU 00 64, Premium Basis Endorsement,
    for Definitions)
    **Dollar Basis**
    Estimated RECEIPTS $ ████████
    Rate per 1000    $ ████
    **Item Basis**
    Estimated _____
    Rate per    $_____
    Estimated Premium    $ ████
    Advance Premium    $ ████
    Minimum Premium    $ ████ for Policy Period
c. In the event of cancellation by the Named Insured; the Company shall receive and retain not less than a
    Minimum Premium    $_____

d. Terrorism Premium    $_____
    Policy Fee    $ ████
    State Tax    $ ████
    Stamping Fee    $_____

e. Total Premium    $ ████

---

**Forms Attached at Inception:**
SEE WS-HU FORM LIST - FORMS & ENDORSEMENTS ATTACHED AT TIME OF ISSUE

Dated  07/28/2019   AA/DA

WESTERN SURPLUS LINES AGENCY, INC.
P.O. BOX 6609
ABILENE, TEXAS  79608-6609

by _____
Authorized Representative

THIS POLICY IS NOT BINDING UNLESS COUNTERSIGNED BY HUDSON SPECIALTY INSURANCE COMPANY OR ITS AUTHORIZED REPRESENTATIVE

**ORIGINAL**

POLICY NUMBER: WSU19000783

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PREMIUM BASIS ENDORSEMENT

When used as a premium basis, one or more of the following exposure definitions may be entered under the Premium Column b., of the Umbrella/Excess Policy Declarations.  These exposure definitions designate the basis used for determining your premium when your policy is subject to audit adjustment:

Audit Exposure Definitions:

**PAYROLL**

payroll means the entire payroll, money, or substitutes for money paid during the policy period for services by proprietors and by all employees of the Named Insured other than chauffeurs, (except operators of mobile equipment), and aircraft pilots or co-pilots.

**SALES OR RECEIPTS**

"sales" or "receipts" means the gross amount of money charged by the Named Insured, his concessionaires, and others trading under his name, for goods and products sold or distributed, operations performed (installations, repair or servicing), dues or fees and rentals during the policy term, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

**OTHER** - (Premium basis as specifically defined below):

WS-HU 00 64 (ed 09/11)

**WS-HU Form List
(Ed. Effective 10/17)**

# GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

This endorsement changes the policy in the following particulars:

**FORMS & ENDORSEMENTS ATTACHED AT TIME OF ISSUE**

```
WH-IN 0002 (10/17)      IMPORTANT NOTICE #2 - COMBINED
WS-HUA CLAIMS (10/14)   CLAIMS REPORTING PROCEDURES
WH-U DEC    (09/11)     UMBRELLA DECLARATIONS
WS-HU 00 64  (09/11)    PREMIUM BASIS ENDORSEMENT
WS-HU FORM LIST         FORMS & ENDORSEMENTS ATTACHED AT TIME OF ISSUE
WS-HU 00 02  (09/11)    SCHEDULE OF UNDERLYING INSURANCE
WS-HU 00 01  (09/11)    UMBRELLA COVERAGE PART
WS-HU 00 12  (09/11)    CONTRACTUAL LIABILITY FOLLOW FORM
WS-HU 00 15  (09/11)    DESIGNATED PROFESSIONAL SERVICES EXCLUSION
WS-HU 00 16  (09/11)    DIRECTORS & OFFICERS LIABILITY EXCLUSION
WS-HU 00 17  (09/11)    DISCRIMINATION EXCLUSION
WS-HU 00 32  (11/12)    SUBSIDENCE OF LAND OR EARTH MOVEMENT-EXCLUSION
WS-HU 00 33  (09/11)    LIQUOR LIABILITY COVERAGE EXCLUSION
WS-HU 00 44  (09/11)    PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION
WS-HU 00 56  (09/11)    INSOLVENCY OR BANKRUPTCY EXCLUSION
WS-HU 00 61  (09/15)    SERVICE OF SUIT
WS-HU 00 62  (09/11)    MOLD EXCLUSION
WS-HU 00 65  (09/11)    ABSOLUTE UNSOLICITED COMMUNICATIONS EXCLUSION
WS-HU 00 66  (09/11)    EXCLUSION - TOXIC METAL
WH-0099     (09/11)     NON-RENEWAL CHANGES
EX 47 35    (12/02)     EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM
EX 47 69    (01/06)     EXCLUSION - TERRORISM FOR COMMERCIAL AUTO LIABILITY (ABSOLUTE)
WS-HU 00 03  (09/11)    OIL INDUSTRIES & CONTRACTORS LIMITATION COMBINATION ENDORSEMENT
WS-HU 00 09  (09/11)    AUTOMOBILE EXCLUSION
WS-HU 00 18  (09/11)    EMPLOYER'S LIABILITY EXCLUSION
WS-HU 00 20  (09/11)    ERRONEOUS DELIVERY OF LIQUID PRODUCTS EXCLUSION
WS-HU 00 28  (09/11)    PERSONAL INJURY FOLLOWING FORM
WS-HU 00 31  (09/11)    PRODUCTS - COMPLETED OPERATIONS FOLLOWING FORM
WS-HU 00 34  (09/11)    SALINE SUBSTANCE CONTAMINATION EXCLUSION
WS-HU 00 51  (09/11)    PRIOR ACTS EXCLUSION
WS-HU 00 77  (02/13)    UNINSURED OR UNDERINSURED INDEPENDENT CONTRACTORS EXCLUSION
```



**Schedule of Underlying Insurance**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No. ___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

It is agreed that the following "Underlying Insurance" is in force as collectible insurance for limits of insurance stated below:

| COVERAGE: | CARRIER, POLICY PERIOD AND POLICY NUMBERS: | APPLICABLE LIMITS: | |
|---|---|---|---|
| Commercial General Liability | HUDSON SPECIALTY INSURANCE C  WSC19001405  07/18/2019      07/18/2020 | $2,000,000. | General Aggregate Limit (Other than Products/Completed Operations) |
| | | $SEE WS-HU 0031 | Products/Completed Operations Aggregate Limit |
| | | $1,000,000. | Personal and Advertising Injury Limit |
| | | $1,000,000. | Each Occurrence Limit |
| Commercial Auto Liability | EXCLUDED | $ | Any One Accident or Loss |
| Employer's Liability | EXCLUDED | $ | Bodily Injury by Accident - Each Accident |
| | | $ | Bodily Injury by Disease - Policy Limit |
| | | $ | Bodily Injury by Disease - Each Employee |
| | | $ | |
| | | $ | |
| | | $ | |

WS-HU 00 02  (09/11)



**HUDSON**
INSURANCE GROUP®

Wilmington, Delaware
(a stock insurance company)

# UMBRELLA/EXCESS LIABILITY POLICY

In this policy the words **you** and **your** refer to the Named Insured shown in the Declarations.  The word **insured** means any person or organization qualifying as such under Section IV - Named Insured and Insured.  **We, us** and **our** refer to the stock insurance company shown in the Declarations.  Other words and phrases that appear in **bold print have special meaning**.  Refer to the definitions section of this policy.

In return for the payment of the premium, in reliance upon the statements in the Declarations made a part hereof and subject to all of the terms of this policy, **we** agree with **you** as follows:

I.   **INSURING AGREEMENTS**

**COVERAGE A - EXCESS LIABILITY INSURANCE (FOLLOWING FORM)**

Coverage A is excess insurance and follows the **underlying insurance** except as otherwise stated in this policy.

1.   **We** will pay those sums that the **insured** must legally pay as **damages** because of **bodily injury, property damage, personal injury** or **advertising injury**, caused by an **occurrence** which occurs during the Policy Period which are in excess of the sums payable as **damages** in the **underlying insurance** or would have been payable but for the exhaustion of the applicable Limit of Insurance.

2.   **We** have no other obligation or liability to pay sums or perform acts or services except as shown under DEFENSE EXPENSE.

3.   In any jurisdiction where **we** are prevented by law or otherwise from paying on the **insured's** behalf, **we** will indemnify the **insured** instead, and paragraph **1.** shall be deemed changed accordingly.

4.   Coverage A is subject to the terms of the **underlying insurance** except:

   a.   That the amounts or limits of liability, policy period, and conditions relating to the premium, subrogation, other insurance, obligation to investigate and defend, and cancellation or non-renewal and any renewal agreement of **underlying insurance** do not apply to this insurance;

   b.   That where any exclusions of this policy conflict with any terms of the **underlying insurance**, the exclusions of this policy shall apply;

   c.   That where the **underlying insurance** has an aggregate limit of liability, such aggregate limit shall not, for the purpose of determining when this insurance applies, be reduced or exhausted by any payment relating to any act, error, omission, injury, damage or offense which does not occur within the term of this policy as shown in the Declarations.

   d.   For any obligation to provide or to pay for legal defense.  Legal defense is covered by this insurance only as shown under DEFENSE EXPENSE.

5.   Settlement of any **claim** or **suit** for an amount in excess of available **underlying insurance** by any underlying insurer shall not be binding on **us** unless **we** consent in writing.

**COVERAGE B - UMBRELLA LIABILITY INSURANCE**

Coverage B is excess insurance over a **self-insured retention**. Coverage B applies only to the exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.

WS-HU 00 01  (09/11)                                                                                                                    Page 1 of 12

1.   **We** will pay those sums that the **insured** must legally pay as **damages** in excess of the **self-insured retention** because of **bodily injury, property damage, personal injury** or **advertising injury** caused by an **occurrence** which occurs during the period of this policy.

2.   In any jurisdiction where **we** are prevented by law or otherwise from paying on the **insured's** behalf, **we** will indemnify the **insured** instead, and paragraph **1.** shall be deemed changed accordingly.

3.   Legal defense is covered by this insurance only as shown under DEFENSE EXPENSE.

## II.   DEFENSE EXPENSE

**We** will pay **defense expenses** only as follows:

i.    When **defense expense** payments of any **underlying insurance** reduce the Limits of Insurance provided by that policy, then any such expense payment made under this policy will reduce the Limits of Insurance as stated in Item 1 of the Declarations and will be made after the underlying limit has been exhausted.

ii.   When **defense expense** payments of any of the **underlying insurance** do not reduce the Limits of Insurance provided by those policies, then any such expense payment made under this policy will not reduce the Limits of Insurance as stated in Item 1 of the Declarations.

1.   **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend.  If **we** elect to join in the defense of such **claims** or **suits**, we will pay all expenses **we** incur.  **You** shall give us the opportunity to associate with **you** or the underlying insurer, or both, in the defense and control of any **claims, suits** or proceedings which involve or appear likely to involve this insurance.  **You** and **your** insurers shall cooperate with **us** in the defense of such **claim, suit** or proceeding.

2.   **We** will defend any **suit** which is likely to involve **us** for **damages** payable under Coverages A or B (including **damages** wholly or partly within the **self-insured retention**) but which are not payable by a policy of **underlying insurance**, or any other available insurance, because:

a.   Such **damages** are not covered by such underlying or other insurance; or

b.   The **underlying insurance** has been exhausted by the payment of **claims.**

3.   **We** may investigate and settle any **claim** or **suit** in 2 above at our discretion.

4.   All **defense expenses** in 2 above end when **we** have exhausted the applicable Limit of Insurance in the payment of judgments or settlements.

5.   **We** will pay, with respect to any **claim** or **suit we** defend in 2 above:

a.   All expense **we** incur.

b.   The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance and which relate to and arise from a covered occurrence.  **We** do not have to furnish these bonds.

c.   All reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation and defense of any **claim** or **suit**, including actual loss of earnings up to $100 a day because of the time taken off from work.

d.   All costs taxed against the **insured** in the **suit**.

e.   All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have

(1)  paid, or offered to pay; or

(2)  deposited in court;

the part of the judgment that is within the applicable Limit of Insurance.

6.   In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico and Canada, where **we** may be prevented by law or otherwise from carrying out this agreement:

a.   The **insured** must arrange to investigate, defend or settle any **claim** or **suit**.

b.   The **insured** will not make any settlement without **our** consent.

c.   **We** will pay expenses incurred with **our** consent.

## III.   LIMITS OF INSURANCE - COVERAGES A AND B COMBINED

1.   The Limits of Insurance, Coverages A and B combined shown in the Declarations and the rules below specify the most **we** will pay regardless of the number of:

i.    **Insureds;**

ii.   **Claims** or **suits** brought; or

iii.  Persons or organizations making **claims** or bringing **suits.**

a.   The Limit of Insurance stated in Item 1(a) of the Declarations is the most we will pay for **damages** under Coverages

A and B Combined because of **bodily injury, property damage, personal injury** and **advertising injury** arising out of any one **occurrence.**

    b.   The Limit of Insurance stated under item 1(b) of the Declarations is the most we will pay for the sum of all **damages** under Coverages A and B combined. Each payment we make for **damages** reduces by the amount of the payment the General Aggregate limit stated. This reduced limit will then be the General Aggregate Limit of Insurance available for all further **damages.**

2.   Our obligations under Coverage A and B end when the applicable Limit of Insurance available is exhausted.  If **we** pay any amounts for **damages** in excess of that Limit of Insurance, **you** agree to reimburse us for such amounts.

3.   The limit of this policy applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

4.   **You** agree to reimburse **us** promptly for **damages** paid in settlement of **claims** or **suits** to the extent that such amounts are within the **self-insured retention** as stated in the Declarations.

## IV.  NAMED INSURED AND INSURED

1.   **WHO IS AN INSURED**

    a.   Except as provided in WHO IS AN INSURED - NEWLY ACQUIRED OR FORMED ENTITIES, the Named Insured of the following is an **insured**.

       If you are designated in the Declarations as:

      (1)  An individual, **you** and **your** spouse are insureds, but only with respect to the conduct of a business of which **you** are the sole owner.

      (2)  A partnership or joint venture, **you** are an **insured.**  **Your** members, **your** partners, and their spouses are also **insureds,** but only with respect to the conduct of **your** business.

      (3)  An organization other than a partnership or joint venture, **you** are an **insured.**  **Your executive officers** and directors are **insureds,** but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **insureds,** but only with respect to their liability as stockholders.

    b.   Each of the following are also **insureds:**

      (1)  Your employees, other than **your executive officers,** but only for acts within the scope of their employment by **you.**

      (2)  Any person or organization to whom or to which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to **your** operations, or facilities **you** own or use.

      (3)  Any person or organization having proper temporary custody of **your** property if **you** die, but only:

         (a)  With respect to liability arising out of the maintenance or use of that property; and

         (b)  Until **your** legal representative has been appointed.

      (4)  **Your** legal representative if **you** die, but only with respect to duties as such.  That representative will have all **your** rights and duties under this Coverage Part.

    c.   With respect to any **auto you** own or hire for use, any person (including **your** employees) while using such **auto** and any person or organization legally responsible for the use thereof, provided its actual use is with **your** permission, except:

      (1)  Any person or organization, or any agent or employee thereof, operating an **auto** sales agency, repair shop, service station, storage garage or public parking place, with respect to an **occurrence** arising out of  the operation thereof, or;

      (2)  The owner or any lessee of a hired **auto** or any agent or employee of such owner or lessee.

2.   **WHO IS AN INSURED - NEWLY ACQUIRED OR FORMED ENTITIES**

    a.   Any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will be deemed to be an **insured** if there is no other similar insurance available to that organization.

       However:

      (1)  Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier;

      (2)  Coverage does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization;

(3) Coverage does not apply to **personal injury** or **advertising injury** arising out of an offense committed before **you** acquired or formed the organization;

(4) No person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

# EXCLUSIONS

**I.**   **UNDER COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)**

With respect to Coverage A (Excess Liability Insurance) and Coverage B (Umbrella Liability Insurance), this policy does not apply to:

1.   Liability imposed on the **insured** under any of the following laws:

   a.   Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or changes to it;

   b.   to any obligation for which the **insured** or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

   c.   or to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** for which the **insured** may be held liable as an employer or in any other capacity; or to any obligation of the **insured** to indemnify or contribute with another because of **damages** arising out of the **bodily injury;** or to **bodily injury** sustained by the spouse, parent, brother or sister of an employee of the **insured** as a consequence of **bodily injury** to such employee arising out of and in the course of his employment by the **insured**; and this exclusion applies to all **claims** and **suits** by any person or organization for damages because of such **bodily injury** including **damages** for care and loss of services, but this exclusion does not apply to liability assumed by the **insured** under any contract.

   d.   **Damages** awarded under the provisions of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. Sections 1961-68 (1970) (RICO) or changes to it.

2.   Liability assumed by the **insured** under any contract or agreement with respect to an **occurrence** taking place before the contract or agreement is made.

3.   To any **bodily injury**, **property damage** or **personal injury** arising out of the actual, alleged or threatened **contamination** of any **environment** by **pollutants** that are introduced at any time, anywhere, in any way; and to costs or other loss or damage arising out of such **contamination** including but not limited to, cleaning up, remedying or detoxifying such **contamination**; or to payment of sums related to:

   (a)   the investigation or defense of any loss, injury or damage, or

   (b)   payment of any cost, fine, penalty or

   (c)   payment of any expense involving a claim or **suit** related or defined herein.

   As used in this policy, the following terms have the following meanings:

   (1)   **Contamination** means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of **pollutants**, whether permanent or transient in any **environment**;

   (2)   **Environment** includes any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to, any of the above, owned, controlled or occupied by you or any other insured;

   (3)   **Pollutants** means smoke, vapors, soot, fumes, acids, sounds, alkalies, chemicals, liquids, solids, gases, thermal **pollutants**, and all other irritants and **contaminants**.

4.   To any liability for past, present or future **claims** arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to or testing for asbestos or products containing asbestos whether or not the asbestos is or was at any time airborne as a fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever.  It is further agreed that this policy does not apply to any liability including expenses for

   (a)   the costs of clean up or removal of asbestos or products and materials containing asbestos;

   (b)   the cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, of asbestos or products and material containing asbestos;

   (c)   the cost of disposal of asbestos substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

   (d)   the cost of compliance with any law or regulation regarding asbestos.

5.   Any liability incurred by an **insured** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection

military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

6.  Any Liability:

   a.  For **bodily injury, property damage, personal injury, advertising injury** if;

      (1)  with respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2)  resulting from the **hazardous properties** of nuclear material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

   b.  For **bodily injury, property damage, personal injury** and **advertising injury** if;

      (1)  the nuclear material (i) is at any nuclear facility owned by or operated on behalf of, an **insured** or (ii) has been discharged or dispersed therefrom;

      (2)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **insured;** or

      (3)  the injury, sickness, disease, death, or destruction arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction or damage of property at such nuclear facility.

      As used in this Exclusion 6:

      **hazardous properties** means source material, special nuclear material or byproduct material; **source material, special nuclear materials** and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

      **spent fuel** means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

      **waste** means any waste material (i) containing byproduct material and (ii) resulting from the operation by any person or organization of any nuclear facility;

      **nuclear facility** means:

      (a)  any nuclear reactor,

      (b)  any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packing waste,

      (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

      (d)  any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations; **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word **injury** or **destruction** includes all forms of radioactive contamination of property.

7.  Any **claim** for Uninsured or Underinsured Motorists Coverage, personal injury protection, property protection or similar no-fault coverage by whatever name called, unless this policy is endorsed to provide such coverage.

8.  Any obligation to pay expenses under any medical payments coverage.

## II.  UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)

In addition to the exclusions in Section I, above, this policy does not apply under Coverage A to:

1.  Any loss not covered by the **underlying insurance,** and all exclusions now or hereafter contained in the **underlying insurance,** apply to Coverage A with the same force and effect.

## III.  UNDER COVERAGE B (UMBRELLA LIABILITY INSURANCE)

In addition to the exclusions in Section I and II above, this insurance does not apply under Coverage B to:

1.  Any injury or damage:

    a.   Covered under Coverage A; or

    b.   which would have been covered under Coverage A but for the actual or alleged bankruptcy or insolvency of any underlying insurer, or an **insured** if the underlying is comprised in whole or in part of self insurance or any fronting arrangement in any form, or the termination of the underlying policy.

2.   **Bodily injury** to any officer or employee of the **insured** who is injured in the course of such employment by any other officer or employee of the same **insured**.

3.   **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others, loading or un-loading of any aircraft or watercraft.

4.   **Property damage** to:

    a.   Property **you** own, rent, or occupy;

    b.   Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;

    c.   Property loaned or entrusted to **you.**

5.   **Property damage** to **your product** arising out of it or any part of it.

6.   **Property damage** with respect to the loss of use of tangible property which has not been physically injured or destroyed resulting from:

    a.   A delay in or lack of performance by or on behalf of the **insured** of any contract or agreement, or

    b.   The failure of **your product** or **your work** to meet the level of performance, quality, fitness or durability warranted or represented by or on behalf of the **insured**.

This exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of **your product** or **your work** after such products or work have been put to use by any person or organization other than an **insured**.

7.   **Property damage** to **your work** arising out of it or any part of it and included in the **products/completed operations hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the **insured's** behalf by a sub-contractor.

8.   **Damages** claimed for any loss, cost or expense incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    a.   **Your product**

    b.   **Your work** or,

    c.   Any property of which **your product** or **your work** forms a part;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

9.   **Bodily injury** to:

    a.   An employee of the **insured** arising out of and in the course of employment by the **insured**; or

    b.   The spouse, child, parent, brother or sister of that employee as a consequence of **bodily injury** to that employee.

This exclusion applies whether the **insured** may be liable as an employer or in any other capacity.

It also applies to any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.

This exclusion does not apply to liability assumed by **you** under any contract.

10.   **Personal injury** or **advertising injury**:

    a.   Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

    b.   Arising out of oral or written publication of material first published before the beginning of the Policy Period;

    c.   Arising out of the willful violation of penal statute or ordinance committed by or with the consent of the **insured**; or

    d.   For which the **insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for **damages** that **you** would have in the absence of the contract or agreement.

11.   **Advertising injury** arising out of:

    a.   Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    b.   The failure of goods, products or services to conform with advertised quality or performance;

    c.   The wrong description of the price of goods, products or services;

d.  An offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting; or

e.  Infringement of trademark, patent, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised.

12.  **Personal injury** or **bodily injury** arising out of discrimination or sexual harassment directly or indirectly related to the employment or prospective employment of any person or persons by any **insured**.

13.  **Personal injury** or **bodily injury** arising out of termination of employment of any person by an **insured.**

# DEFINITIONS

1.  **Advertising injury** means injury, other than **personal injury,** arising out of one or more of the following offenses committed in the course of the **insured's** advertising activities during the Policy Period.

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral or written publication of material that violates a person's right to privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of copyright, title or slogan or trademark.

2.  **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But **auto** does not include mobile equipment.

3.  **Bodily injury** means bodily injury, sickness or disease including death sustained by a person at any time during the Policy Period.

4.  **Claim** means a demand for **damages** or services.

5.  **Damages** are all sums that the **insured** is legally obligated to pay.  This obligation may be the decision of a court or the result of a settlement.  The cause of the obligation must be from **bodily injury, personal injury, property damage** or **advertising injury** covered by this policy.  **Damages** include interest which accumulates on a civil court judgment from the time the **suit** is brought until the final judgment is entered by the court.  **Damages** include **defense expense** to the same extent included in the **underlying insurance**.  **Damages** do not include fines or penalties.  **Damages** do not include damages from which insurance is prohibited by law or public policy applicable in construction of this policy.

6.  **Defense expense** means payments allocated to a specific **claim** or **suit** for its investigation, settlement or defense, including:

    a.  Attorney fees and all other litigation expenses;

    b.  Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies;

    c.  The costs of bonds to release attachments, but only for bond amounts within the Limit of Insurance available and arising out of a covered occurrence;

    d.  Reasonable expenses incurred by the **insured** at our request to assist **us** in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $100 a day because of time off from work;

    e.  Costs taxed against the **insured** in the **suit**.

    Defense expense does not include:

    (1)  Salaries and expenses of **our** employees or employees of the **insured,** other than that portion of **our** employed attorney's fees, salaries and expenses allocated to a specific **claim** or **suit**;

    (2)  Fees and expenses of independent adjusters **we** hire.

7.  **Employee** includes a **leased worker**.  **Employee** does not include a **temporary worker**.

8.  **Executive officer** means a person holding any of the officer positions created by the **insured's** charter, constitution or by-laws.

9.  **First Named Insured** means the person or organization first named in the Declarations of this policy.

10.  **Insured** means any person or organization qualifying as an **insured** in the applicable WHO IS AN INSURED provision of this policy.  The insurance afforded applies separately to each **insured** against whom **claim** is made or **suit** is brought, except with respect to the limits of **our** liability.

11.  **Leased worker** means a person leased to you by a labor firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  **Leased worker** does not include a **temporary worker**.

12.  **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.   Vehicles maintained for use solely on or next to the premises **you** own or rent;

c.   Vehicles that travel on crawler treads;

d.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1)   Power cranes, shovels, loaders, diggers or drills; or

(2)   Road construction or resurfacing equipment such as graders, scrapers or rollers, or

(3)   Geophysical Exploration and Well Servicing equipment.

e.   Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1)   Air compressors, pumps and generators, including spraying, welding, building cleaning; or

(2)   Cherry pickers and similar devices used to raise or lower workers.

f.   Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.  However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

(1)   Equipment designed primarily for:

(a)   Snow removal;

(b)   Road maintenance, but not construction or resurfacing;

(c)   Street cleaning.

(2)   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers, and

(3)   Air compressors, pumps and generators, including spraying, welding, building cleaning.

13.   **Occurrence** means:

a.   With respect to **bodily injury** or **property damage**: an accident, including continuous or repeated exposure to substantially the same general condition, which results in **bodily injury** or **property damage** neither expected or intended from the standpoint of the **insured** and includes:

(1)   The rendering of or failure to render professional medical, dental or nursing services by **your dispensary or clinic**;

(2)   The use of reasonable force for the lawful protection of **your** employees, tenants, guests or property.

All **damages** that arise from exposure to the same general conditions are considered to arise out of one **occurrence**.

b.   With respect to **advertising injury** and **personal injury** respectively; an offense described in one of the numbered subdivisions of those terms in this policy.

All **damages** that arise from exposure to the same general conditions are considered to arise out of one **occurrence**.

14.   **Personal injury** means injury, other than **advertising injury** or **bodily injury**, arising out of one or more of the following offenses committed in the course of the **insured's** business during the Policy Period:

a.   false arrest, detention or imprisonment;

b.   Malicious prosecution;

c.   Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication of material that violates a person's right of privacy arising out of the conduct of **your** business, excluding advertising, publishing, broadcasting or telecasting done by or for **you**.

15.   **Products/completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own, rent, or use and arising out of **your product** or **your work** except:

a.   Products that are still in **your** physical possession; or

b.   Work that has not yet been completed or abandoned.
**Your** work will be deemed completed at the earliest of the following times:

(1)   when all the work called for in **your** contract has been completed;

(2)   when all of the work to be done at the site has been completed if **your** contract calls for work at more than one site;

    (3) when the part of the work done at a job site has been put to its intended use by any person or organization other than another contractor, or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.

  c.  This hazard does not include **bodily injury** or **property damage** arising out of:

    (1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    (2) the existence of tools, uninstalled equipment or abandoned or unused materials.

16. **Property damage** means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property occurring during the Policy Period; or

  b.  Loss of use of tangible property that is not physically injured caused by an **occurrence** during the Policy Period.

17. **Self-insured retention** means the amount stated as such in the Declarations which is retained and payable by the **insured** with respect to each **occurrence**. All expenses incurred by **us**, or by the **insured** with **our** consent in the investigation or defense of a **claim** or **suit** within the **self-insured retention** shall be payable by **us**.

18. **Suit** means a civil proceeding in which **damages** because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes an arbitration proceeding alleging such **damages** to which the **insured** must submit or submit with **our** consent.

19. **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

20. **Underlying insurance** means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of **underlying insurance** includes any deductible amount, any participation of the **insured** or any **self-insured retention** above or beneath any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced by payment of loss with respect to **bodily injury, property damage, personal injury** or **advertising injury** taking place after the effective date of this policy. The coverages and limits of such policies shall be deemed to be applicable regardless of (1) any defense which the underlying insurer may assert because of the **insured's** failure to comply with any condition of any such policy, (2) the actual or alleged insolvency, financial impairment or bankruptcy of the underlying insurer or any **insured** or (3) cancellation or termination of the underlying policy.

21. **Your dispensary or clinic** means a dispensary, clinic or similar facility maintained by **you** for the benefit or convenience of **your** employees or students.

22. **Your product** means:

  a.  Any goods or **products**, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) **You**

    (2) Others trading under **your** name, or

    (3) A person or organization whose business or the assets of which, **you** have acquired majority interest; and

  b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items include in a. and b. above.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

23. **Your work** means:

  a.  Work or operations performed by **you** or on **your** behalf; and

  b.  Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

## CONDITIONS

1. Premium
The Advance Premium stated in the Declarations is a deposit premium only, unless otherwise specified. Upon termination of this policy, the final premium shall be computed in accordance with the rates and Minimum Premium stated in the Declarations. If the final premium thus computed exceeds the Advance Premium paid, the **insured** shall pay the excess to **us**.

The **insured** shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to **us** at the end of the Policy Period, as **we** may direct.

Any Minimum Premium shown in the Declarations shall be fully earned and not subject to return upon audit of this insurance.

2. Inspection and Audit

   **We** shall be permitted but not obligated to inspect **your** property and operations at any time.  Neither **our** right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on **your** behalf or for **your** benefit or that of others to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.  **We** may examine and audit **your** books and records at any time during the Policy Period and extensions thereof and within three years after the final termination of this policy, insofar as they relate to the subject matter of this insurance.

3. Notice of **Occurrence, Claim** or **Suit**

   Whenever it appears that an **occurrence, claim** or **suit** is likely to involve payment under this policy, written notice shall be given to **us** or **our** authorized representative by **you** or **your** designated representative as soon as practicable.  Such notice shall contain particulars sufficient to identify the **insured** and also reasonably obtainable information respecting the time, place and circumstance of the **occurrence, claim** or **suit,** the names and addresses of the injured and of available witnesses.

4. Assistance and Cooperation of the Insured

   The **insured** shall cooperate with **us** and shall comply with all the terms and conditions of this policy and shall cooperate with the underlying insurers as required by the terms of the **underlying insurance** and comply with all the terms and conditions thereof.  The **insured** shall enforce any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of **bodily injury, personal injury, property damage** or **advertising injury** with respect to which insurance is afforded under this policy or any of the **underlying insurance** policies.

5. Action Against Company

   No action shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured,** after actual trial, or by written agreement by the **insured,** the claimant and **us**.

   Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.  No person or organization shall have any right under this policy to join **us** as a party to any action against the **insured** to determine the **insured's** liability, nor shall **we** be impleaded by the **insured's** legal representative.  Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve **us** of any of our obligations hereunder.

6. Appeals

   In the event the **insured** or the **insured's** underlying insurer elects not to appeal a judgment in excess of the **underlying insurance** or the **self-insured retention, we** may elect to make such appeal, at our cost and expense, and shall be liable in addition to the applicable Limit of Insurance, for the taxable costs, disbursements and additional interest incidental to such appeal.

7. Other Insurance

   The insurance afforded by this policy shall be excess insurance over all **underlying insurance** covering a loss covered by this policy whether or not valid and collectible.  It shall also be excess insurance over all other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which is available to the **insured,** covering a loss also covered by this policy, not described in the Schedule of Underlying Insurance Policies.

8. Subrogation

   In the event of any payment under this policy, **we** shall participate with the **insured** and any underlying insurer in the exercise of all the **insured's** rights of recovery against any person or organization liable therefore, and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **insured** shall do nothing to prejudice such rights.

   Recoveries shall be applied:

   First, to reimburse any interest (including the **insured's**) that may have paid any amount with respect to liability in excess of our Limit of Insurance hereunder;

   Then to reimburse **us** up to the amount paid hereunder, along with any other insurers having a proportionate interest at the same level; and

   Lastly, to reimburse such interest (including the **insured's**) with respect to which this insurance is excess, as are entitled to claim the residue, if any;

   A different apportionment may be made to effect settlement of a claim by agreement signed by all interests.  Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interest in the ratio of their

respective losses for which recovery is sought.

9. Changes

Notice to any person, or knowledge possessed by any person, shall not effect a waiver or a change in any part of this policy, or stop **us** from asserting any rights under the terms of this policy with respect to any requirements as to **underlying insurance**; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by our authorized representative.

10. Assignment

Assignment of interest under this policy shall not bind **us** until **our** consent is endorsed hereon; if, however, **you** shall die, such insurance as is afforded by this policy shall apply (i) to **your** legal representative, but only while acting within the scope of his or her duties as such, and (ii) with respect to **your property**, to the person having proper temporary custody thereof, as **insured**, but only until the appointment and qualification of the legal representative.

11. Maintenance of Underlying Insurance

**You** agree to maintain all insurance policies affording in total the coverage and limits as stated in the Schedule of Underlying Insurance Policies in full force and effect during this policy period, except for reduction of aggregate limits where applicable, solely as a result of the payment of **claims** for **occurrences** which take place during the period of this policy.

**You** agree to notify **us** in writing within sixty days if any company replaces or changes any terms or conditions of any of the policies designated in the Schedule of Underlying Insurance Policies. **Your** failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, **we** shall be liable only to the extent that **we** would have been liable had **you** complied herewith.

12. Service of Suit Clause

(Not Applicable in Delaware and New Jersey)

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company, at the request of the insured (or Reinsured) will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon Thomas Peppel, Assistant Vice President/Claims of Hudson Insurance Group, 100 William Street, New York, New York, 10038, or his designee, and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The above named is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the insured (or Reinsured) to give a written undertaking to the insured (or Reinsured) that it or they will enter a general appearance on the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and the Company hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

13. Sole Agent

The **first Named Insured** is authorized to act on behalf of all **insureds** with respect to the giving or receiving of notice of cancellation, receiving unearned premium, agreeing to any changes in the policy and being billed for additional premiums.

14. Cancellation

a. The **first Named Insured** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.

b. **We** may cancel this policy by mailing or delivering to the **first Named Insured** written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if **we** cancel for any other reasons.

c. **We** will mail or deliver **our** notice to the **first Named Insured's** last mailing address known to **us**.

d. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

e. If the policy is cancelled, **we** will send the **first Named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **first Named Insured** cancels, the refund will be based upon the customary short rate table. The cancellation will be effective even if **we** have not made or offered a refund.

f.   If notice is mailed, proof of mailing will be sufficient proof of notice.

15.  Workers' Compensation Agreement

With respect to **bodily injury** to or death of any officer or other employee arising out of and in the course of employment by **you**, it is a condition to the recovery of any loss under this policy, and **you** represent and agree, **you** have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation Law by rejection of such law or otherwise.  In the event you shall, at any time during the Policy Period, abrogate such defenses, such insurance as is afforded for **bodily injury** with respect to such officer or other employees shall automatically terminate at the same time.

16.  Bankruptcy or Insolvency

In the event of the actual or alleged bankruptcy or insolvency of an underlying insurer, or of the **insured** if the **underlying insurance** is comprised in whole or in part of self-insurance, it is agreed that this insurance shall not take the place of such **underlying insurance** which is or becomes invalid, uncollectible or otherwise unavailable.  The **underlying insurance** listed in the Schedule of Underlying Insurance Policies will be deemed in effect and the risk of such bankruptcy or insolvency is retained by **you** and others, and not by **us**.

17.  By acceptance of this policy the **first Named Insured** agrees that the statements in the Declarations are its agreements and representations, that this policy issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the **first Named Insured** and **us** or any of **our** representatives relating to this insurance.

**IN WITNESS WHEREOF**, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York.

_____
Secretary

_____
Chairman



**Contractual Liability Following Form**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No. ___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This policy does not apply unless coverage is provided in the underlying insurance at the limits specified in the Schedule of Underlying Insurance to liability you assume under any contract or agreement except:

**(1)** lease of premises;

**(2)** easement agreements, except in connection with construction or demolition operations on or adjacent to a railroad;

**(3)** undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality;

**(4)** sidetrack agreement; or

**(5)** elevator maintenance.



**Designated Professional
Services Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____ forms a part of Policy No._____WSU19000783_____
                                              (12:01 a.m. Standard Time)

issued to (Named Insured)___Sur Transporte Inc._____

by (Company)___HUDSON SPECIALTY INS COMPANY_____

This policy does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising out of the rendering or failure to render any professional service designated below.


**ALL WORK, OPERATIONS, ACTIVITIES, OR SERVICES CONDUCTED BY OR ON BEHALF OF ANY INSURED**

 **Directors and Officers Liability Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____ forms a part of Policy No._____WSU19000783_____
(12:01 a.m. Standard Time)

issued to (Named Insured)___Sur Transporte Inc._____

by (Company)___HUDSON SPECIALTY INS COMPANY_____

This policy does not apply to your liability for your activities as:

**(a)** An officer, director, trustee or executor of any business charitable organization, or fund, trust or estate of union, or school board; or

**(b)** A public official.

WS-HU 00 16  (09/11)

 **Discrimination Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No.___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This insurance does not apply to any liability, defense costs, fines or damages which arise out of the actual or alleged discrimination of any person or persons based upon, but not limited to color, creed, gender, race, natural origin, age, handicap, illness, religion or sexual preference.

WS-HU 00 17  (09/11)



**Subsidence of Land or Earth Movement - Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No. ___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This policy does not apply to any cost, expense, damage or liability caused by, resulting from, attributable to, contributed to, or aggravated by the subsidence or movement of land as a result of landslide, mudslide, earth sinking, upheaval, shrinking, rising or shifting whether or not such movement or subsidence results from operations of any insured or others working or operating on behalf of any insured.

WS-HU 00 32  (11/12)

 **HUDSON**
INSURANCE GROUP®

**Liquor Liability Coverage Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ , forms a part of Policy No.___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured)___Sur Transporte Inc.___

by (Company)___HUDSON SPECIALTY INS COMPANY___

This policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" for which you may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol;

3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.



**Punitive or Exemplary
Damage Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _07/26/2019_ forms a part of Policy No. _WSU19000783_
                                   (12:01 a.m. Standard Time)

issued to (Named Insured) _Sur Transporte Inc._

by (Company) _HUDSON SPECIALTY INS COMPANY_

It is agreed that this policy does not apply to punitive damages, exemplary damages, fines, penalties, treble damages or any other increase in damages resulting from the multiplication of compensatory damages.

WS-HU 00 44  (09/11)

 **Insolvency or Bankruptcy Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endoresement which is effective  07/26/2019  forms a part of Policy No. WSU19000783  issued to
(12:01 a.m. Standard Time)

(Named Insured) Sur Transporte Inc.

by (Company) HUDSON SPECIALTY INS COMPANY

It is agreed that this policy does not apply nor will the company be required to defend any claim where the carrier as provided in the Schedule of Underlying Insurance becomes bankrupt or insolvent or where any reinsurer of such carrier becomes bankrupt or insolvent or where reinsurance coverage becomes uncollectible for any reason, except for any excess above the underling carrier's stated limits of underlying insurance and where coverage is not excluded or limited elsewhere in the policy.

WS-HU 00 56  (09/11)



**Service of Suit**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____, forms a part of Policy No._____WSU19000783_____
                                        (12:01 a.m. Standard Time)

issued to (Named Insured) __Sur Transporte Inc.__

by (Company) __HUDSON SPECIALTY INS COMPANY__

This endorsement modifies insurance provided in all coverage parts that are contained in this policy.

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Dina Daskalakis, Hudson Specialty Insurance Company, Administrative Office, 100 William St, New York, NY 10038, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of any such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

WS-HU 00 61  (09/15)



**Mold Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____ forms a part of Policy No._____WSU19000783_____
                                       (12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This insurance does not apply to:

(1) Injury or damages of any kind to include but not limited to "bodily injury", "property damage", "personal and advertising injury" which would not have occurred in whole or in part but for the existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of the growth, proliferation or secretion.

   (a) At, from or within any premises, site, location or building which is or was at any time owned or occupied by, directly or indirectly managed by, rented or loaned to, used by or for any insured or others;

   (b) At, from or within any premises, site, location or building on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf are performing or have completed operations.

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of microorganisms, biological organisms or organic contaminants, including but not limited to mold, mildew, fungus, spores, yeast, or other toxins, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, or "suit" or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury", "property damage", "personal injury and advertising injury" to which this endorsement applies.

WS-HU 00 62  (09/11)



### Absolute Unsolicited Communications Exclusion

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No.___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This insurance does not apply to liability. injury or damages of any kind, to include but not limited to "bodily injury", "property damage" and "personal and advertising injury", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with "unsolicited communications" made by or on behalf of any insured.

"Unsolicited communications" means any form of communication, distribution, or the transmittal or publication of information or material, including, but not limited to facsimile, electronic mail, postal mail, express mail, telephone, internet or web-based advertisement, instant message, SMS message or text message that the recipient has not specifically requested.

"Unsolicited communications" includes, but is not limited to actual or alleged violations of:

1.  The Telephone Consumer Protection Act (47 U.S.C. 227), including any amendment of, or additions to, such statute;

2.  The Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. 7701. *et seq.*), including any amendment of, or addition to, such statute;or

3.  Any other statute, ordinance or regulation relating to the communication, distribution or transmittal of unwanted content, information or material.

This exclusion also applies to any liability or "bodily injury", "property damage" and "personal and advertising injury" for which the insured is obligated, or is alleged to be obligated, to pay damages or defend any claim or "suit" by reason of the assumption of liability in an "Insured contract".

This insurance does not apply to any other liability or "bodily injury", "property damage" and "personal and advertising injury" in any claim or "suit" in which allegations of "unsolicited communications" are also made.

We shall have no duty to defend any insured against any claim or "suit" alleging damages arising out of or related to liability or "bodily injury", "property damage" or"personal and advertising injury" to which this exclusion applies.

WS-HU 00 65  (09/11)



**Exclusion - Toxic Metals**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____ forms a part of Policy No._____WSU19000783_____
(12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This insurance does not apply to:

1.  "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation, or absorption of any "toxic metals" in any form; or

2.  Any loss, cost, or expense arising out of any:

    a.  Request, demand, order, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "toxic metals"; or

    b.  Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "toxic metals".

We shall have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation, or absorption of any "toxic metals" in any form.

For the purpose of this endorsement, the following definitions are **added** to the **Definitions** section:

1.  "Toxic metals" are individual metals and metal compounds that negatively affect people's health. "Toxic metals" include, but are not limited to, arsenic, beryllium, "heavy metals", or hexavalent chromium.

2.  "Heavy metals" are a group of elements between copper and bismuth on the periodic table of the elements having specific gravities greater than 4.0.  "Heavy metals" include, but are not limited to, cadmium, cobalt, copper, lead, manganese, mercury, molybdenum, strontium, vanadium, or zinc.

All other terms and conditions of this policy remain unchanged.

WS-HU 00 66  (09/11)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NON-RENEWAL CHANGES

This endorsement modifies insurance provided under the following:

All Coverage Parts.

Any reference to notification requirements to the insured, mortgage holder, loss payee, or any other party in the event we elect not to renew this policy are deleted in their entirety.

All other Terms and Conditions of the Policy remain unchanged.

WH-0099  (09/11)

POLICY NUMBER: WSU19000783

EX 47 35 12 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This edorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**
Any injury or damage arising out of, resulting from, caused or contributed to by a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusion; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, paragraph **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a " certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.  "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appear to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appears to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this policy.

EX 47 69 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - TERRORISM FOR COMMERCIAL AUTO LIABILITY (ABSOLUTE)

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE PART

This insurance does not apply to any injury or damage, costs or expenses arising out of, resulting from, caused or contributed to by:

**1.** The ownership, maintenance, use, loading or unloading or entrustment to others of any auto; and

**2.** an "act of terrorism".

"Act of terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 **HUDSON** INSURANCE GROUP®

**Oil Industries Limitation and Contractors Limitation
Combination Endorsement**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ⎯⎯⎯⎯⎯ 07/26/2019 ⎯⎯⎯⎯⎯, forms a part of Policy No. ⎯⎯⎯ WSU19000783 ⎯⎯⎯
                                   (12:01 a.m. Standard Time)

issued to (Named Insured)  Sur Transporte Inc.

by (Company)  HUDSON SPECIALTY INS COMPANY

I.  Oil Industries Limitation:
  A.  It is agreed that this insurance does not apply to:
    1.  Loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by sub- surface operations of an Insured.
    2.  Damages claimed by any co-owner of the working interest arising from operations in which an Insured is a co-owner of the same working interest.
    3.  Any cost or expenses incurred by or at the request of an Insured or any co-owner of the working interest in connection with controlling or bringing under control any oil, gas or water well which becomes out of control.  A well shall be deemed "out of control" only so long as there is a continuous flow of drilling fluid, oil, gas or water above the surface of the ground which is uncontrollable.
    4.  Loss or damage to drilling rigs or production platforms, work-over rigs and servicing rigs; or loss or damage to specialty contractors equipment in an Insured's care, custody or control.
    5.  Liability arising out of work or operations performed on any oil or gas lease in oceans, gulfs, bays or marshes.
    6.  Any professional services performed by or on behalf of the Insured, including but limited to the preparation or approval of maps, plans, opinions, report surveys, designs or specifications, and any supervisory, inspection, or engineering services.

  B.  It is further agreed that except insofar as coverage is available to the Insured in the underlying insurances at the limits specified in the Schedule of Underlying Insurance and not specifically excluded above, this policy does not apply to:
    1.  Damages to or destruction of underground property defined below as "Underground Resources and Equipment Hazard" (referred to as "d");
    2.  Damage to or destruction of property located on or above the surface of the earth arising from the blowout or cratering of any well (referred to as "e");
    3.  Damage to or destruction of property arising out of "Blasting or Explosion Hazard" as defined below (referred to as "x");
    4.  Liability arising out of work or operations performed on any oil or gas lease at locations:
        (a)  Within the limits of any town; or
        (b)  On the right-of-way of any railroad.
    5.  Liability assumed by an Insured under contract or agreement.

  C.  It is further agreed that this insurance is modified by the following provisions:
    1.  As respects any liability of the Insured which is insured under this policy and which arising in any manner whatsoever out of operation or existence of any joint venture, co-venture, joint lease, joint operating agreement or partnership (herein called "Joint Venture") in which the Insured has an interest, the liability of the company under this policy shall be limited to the product of (a) the percentage interest of the Insured in said Joint Venture, and (b) the total limit of liability Insurance afforded to the Insured by this policy.  Where the percentage interest of the Insured in said Joint Venture is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the Joint Venture.
    2.  Where any underlying insurance(s) have been reduced by a clause having the same effect as paragraph (1) the liability of the company under this policy as limited by paragraph (1), shall be excess of the sum of (a) such reduced limits of any underlying insurance(s) and (b) the limits of any underlying insurance(s) not reduced.

II. Contractors Limitation:

A. It is agreed that except insofar as coverage is available to the Insured in the underlying insurances at the limits specified in the Schedule of Underlying Insurance and not specifically excluded, this policy does not apply to:

1. Property damage included within:

   (a) the Collapse Hazard (referred to as "c");

   (b) the Underground Property Damage Hazard (referred to as "u").

2. Liability assumed by any Insured under any contract or agreement.

B. It is further agreed that this insurance does not apply under any circumstances to:

1. Liability arising out of any partnership or joint venture of which any Insured is a partner or member and which is not designated in the Declarations as a Named Insured;

2. Any liability arising out of any project insured under a wrap up or any similar rating plan;

3. Property damage to work performed by or on behalf of any Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

4. Any liability arising out of faulty design, maps, plans, and specifications or any other error, omission or mistake of a professional nature committed or alleged to have been committed by or on behalf of an Insured in the conduct of an Insured's business or occupation.

Definitions when used in this endorsement:

1. "Collapse Hazard" includes Structrual Property Damage as defined herein and property damage to any other property at any time resulting therefrom.  Structural Property Damage means the collapse of or structural injury to any building or structure due to:

   (a) grading of land, excavating, burrowing, filling, backfilling, tunnelling, pile driving, cofferdam work or caisson work; or

   (b) moving, shoring, underpinning, raising or demolishing any building or structure or removing or rebuilding any structural support thereof.  The collapse Hazard does not include property damage included with the Completed Operations Hazard or Underground Property Damage Hazard.

2. "Underground Property Damage Hazard" includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom.  Underground Property Damage means property damage to wire, conduits, pipes, mains, sewers, tanks, tunnels, any similar property and any apparatus in connection, therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, backfilling or pile driving.  The Underground Property Damage Hazard does not include property damage included within the Completed Operations Hazard.

3. "Wrap-up" means any agreement or arrangement under which all the contractors working on a specified project are insured under one or more policies issued by a specified insurer for liability arising out of the project.

III. Follow Form Aggregate Limits Reduction:

Where any underlying insurance(s) contain a reduced aggregate limit or sublimit of liability relating to Underground Resources and Equipment Hazard (referred to as "d"), Blasting or Explosion Hazard (referred to as "x"), Blowout and Cratering Hazard (referred to as "e"), Collapse Hazard (refered to as "c"), and Underground Property Damage Hazard (referred to as "u"), this insurance is modified and the general aggregate limit is reduced so as not to exceed and only be equal to the underlying reduced aggregate limit or sublimit of liability for any such hazards.

IV. Definitions when used in this endorsement:

1. (d) "Underground Resources and Equipment Hazard" includes property damage to any of the following:

   (a) Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

   (b) Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

   (c) Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well, hole or beneath the surface of any body of water.

2. (e) "Blowout or Cratering Hazard" includes destruction of property located on or above the surface of the earth arising from the blowout or cratering of any well.

3. (x) "Blasting or Explosion Hazard" includes coverage for property damage arising out of "Blasting or Explosion". The explosion hazard does not include property damage:

   (a) Arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

   (b) Included within the Completed Operations Hazard or the Underground Property Damage Hazard.

This endorsement shall not extend coverage for any liability which would not have been covered had this endorsement not been attached.

All other terms and conditions of this policy remain unchanged.



**Automobile Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No.___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured)___Sur Transporte Inc.___

by (Company)___HUDSON SPECIALTY INS COMPANY___

It is agreed that this policy does not apply to liability arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile while away from premises owned by, rented to or controlled by you.

WS-HU 00 09  (09/11)

 **Employer's Liability Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No.___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured)___Sur Transporte Inc.___

by (Company)___HUDSON SPECIALTY INS COMPANY___

This policy does not apply to liability arising out of bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, and, if arising out of the foregoing, mental anguish or mental injury, sustained by any of your employees and arising out of and in the course of their employment by you.



**Erroneous Delivery of Liquid
Products Exclusion**

**This endorsement changes the policy.   Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No.___WSU19000783___
(12:01 a.m. Standard Time)

issued to (Named Insured)___Sur Transporte Inc.___

by (Company)___HUDSON SPECIALTY INS COMPANY___

This insurance does not apply to any liability arising out of the delivery of any liquid product into a wrong receptacle
or to a wrong address or the erroneous delivery of one liquid for another.

WS-HU 00 20  (09/11)

 **Personal Injury Following Form**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ___07/26/2019___ forms a part of Policy No. ___WSU19000783___
                                     (12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

This policy does not apply to your liability arising out of one or more of the following offenses:
**(1)** False arrest, detention or imprisonment;
**(2)** Malicious Prosecution;
**(3)** Wrongful entry by a person into, or eviction of a person from a room, dwelling or premises that a person occupies;
**(4)** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**(5)** Oral or written publication of material that violates a persons right of privacy.

This exclusion does not apply if such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and then only for such liability for which coverage is afforded under the underlying insurance.



**Products - Completed Operations**
**Following Form**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____ forms a part of Policy No._____WSU19000783_____
                                          (12:01 a.m. Standard Time)

issued to (Named Insured) ___Sur Transporte Inc.___

by (Company) ___HUDSON SPECIALTY INS COMPANY___

UNDERLYING COMMERCIAL GENERAL LIABILITY COVERAGE:

>    Carrier          HUDSON SPECIALTY INSURANCE C

>    Policy Number    WSC19001405

>    Policy Period    07/18/2019      07/18/2020

This policy does not apply to Products and Completed Operations unless coverage is provided in the underlying insurance, as shown above, to either, condition A. or condition B., shown below:

APPLICABLE LIMITS:

A. $ 2,000,000.     General Aggregate Limit (with Products and Completed Operations included in the General
                    Aggregate Limit of the underlying Commercial General Liability coverage)

OR

B. $                Products and Completed Operations Aggregate Limit
                    (as a separate limit within the underlying Commercial General Liability coverage)



**Saline Substance Contamination Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _07/26/2019_ forms a part of Policy No. _WSU19000783_
(12:01 a.m. Standard Time)

issued to (Named Insured) _Sur Transporte Inc._

by (Company) _HUDSON SPECIALTY INS COMPANY_

It is agreed that with respect to operations performed by or on your behalf:

1.  The insurance does not apply to property damage included within the saline substance contamination hazard. "Saline Substance Contamination Hazard" includes property damage to any of the following wherever located:

    a.  Oil, gas, water or other mineral substance, if the property damage is caused directly or indirectly by a saline substance;

    b.  Any other property, if the property damage results from the property damage described in subdivision (a) of this hazard.

**Description of Operations:**

Gas Lease Work
Gasoline Recovery - from casing head or natural gas
Oil Lease Work
Oil or Gas Well Shooting
Oil or Gas Wells - cleaning or swabbing by contractors
Oil or Gas Wells - servicing - by contractors
Oil or Gas Wells - drilling or redrilling, installation or recovery of casing
Oil Lease Operators or Gas Lease Operators - natural gas

WS-HU 00 34  (09/11)

 **Prior Acts Exclusion**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective _____07/26/2019_____ forms a part of Policy No._____WSU19000783_____
(12:01 a.m. Standard Time)

issued to (Named Insured) __Sur Transporte Inc.__

by (Company) __HUDSON SPECIALTY INS COMPANY__

This insurance does not apply to claims for damages arising out of acts, occurrences, errors, omissions or allegations of any of the above that occur prior to the effective date of this policy.

All other terms and conditions of this policy remain unchanged.

WS-HU 00 51  (09/11)

 **Uninsured or Underinsured Independent Contractors Exclusion**

**This endorsement modifies insurance provided under the following:**

   **UMBRELLA/EXCESS LIABILITY COVERAGE PART**

**This endorsement changes the policy.  Please read it carefully.**

This endorsement which is effective ____07/26/2019____ forms a part of Policy No.___WSU19000783___
                                                    (12:01 a.m. Standard Time)

issued to (Named Insured)  Sur Transporte Inc.

by (Company)   HUDSON SPECIALTY INS COMPANY

This insurance does not apply to **bodily injury, property damage, personal injury or advertising injury** arising out of the operations of work of any "uninsured or underinsured independent contractor(s)" as defined below:

An "uninsured or underinsured independent contractor" means an "Independent Contractor" who does not have, in full effect, Commercial General Liability Insurance Coverage, including an endorsement that provides you with coverage as Additional Insured(s) with minimum limits as follows:

| | |
|---|---|
| General Aggregate Limit (Other than Products/Completed Operations): | $2,000,000 |
| Products/Completed Operations Aggregate Limit: | $1,000,000 |
| Each Occurrence Limit: | $1,000,000 |
| Personal and Advertising Limit: | $1,000,000 |

"Independent Contractor" means any subcontractor, person or entity hired by your or on your behalf to perform duties or work related to the conduct of your business who is not your employee. "Independent Contractor" includes any entity, person or persons hired by, employed by, loaned to or sub-contracted by any such subcontractor, person or entity.

WS-HU 00 77  (02/13)

# MASTER SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT ("Agreement"), which comprises the full and complete agreement of the Parties hereto and supersedes all previous agreements between the Parties relating to the subject matter hereof, is entered into the _18th_ day of _December_, 20_19_, by and between EOG RESOURCES, INC., P.O. Box 4362, Houston, Texas 77210-4362, for itself and its wholly owned subsidiaries ("Company"), and _Sur Transporte Inc. 5024 W. Steel Prior Rd Hobb. NM 88240_ ("Contractor"). Company and Contractor may be referred to hereinafter individually as a "Party" or collectively as the "Parties."

WHEREAS, Company is engaged in the business of exploring for and producing oil, gas and other hydrocarbons in the onshore and offshore areas of the Continental United States for its own account and for the joint account of itself and others, and in the course of such operations regularly and customarily enters into contracts with independent contractors for the performance of services relating thereto; and

WHEREAS, Contractor, as a service contractor engaged in the business of _Vacuum and hydrovac trucks for the oilfield._ and any ancillary functions related thereto ("Services"), may agree to perform the Services as an independent contractor for Company from time to time at Company's request.

NOW, THEREFORE, in consideration of the mutual promises and agreements contained herein, the sufficiency of which is hereby acknowledged, the Parties mutually agree as follows:

1. **Definitions.** As used in this Agreement, the following terms and/or phrases shall be defined as follows:

(1) "Affiliate" means, in respect of a Person, any other Person or group of Persons acting in concert, directly or indirectly, that controls, is controlled by, or is under common control with the first mentioned Person. For the purposes of this definition, "control" means the direct or indirect ownership of more than fifty percent (50%) of the outstanding shares or other voting rights of the subject entity to elect directors (or in the case of an entity that is not a corporation, interests entitled to vote in the election of the corresponding managing authority), or the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the subject entity by ownership of securities, contract, credit arrangement or otherwise.

(2) "Background Intellectual Property" shall mean all Intellectual Property owned by or licensed to a Party prior to the Services performed under this Agreement.

(3) "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, and/or expenses (including, without limitation, reasonable attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or the subject matter of this Agreement (including, but not limited to, property loss or damage, bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

**EXHIBIT B**

MSA – Ver 2018a

Page 1 of 20

(4) "Company Group" shall mean individually and collectively: (a) Company; (b) its Affiliates; (c) the co-lessees, partners, joint venturers, co-owners, members and managers of (a) and (b); (d) Company's contractors and subcontractors of every tier (except for the Party named herein as "Contractor" and any member of its Group) and their Affiliates; and (e) the agents, officers, directors and employees of (a), (b), (c), and (d).

(5) "Confidential Information" shall mean all Intellectual Property, Data, and other confidential, non-public or proprietary information of a Party's Group. Confidential Information shall not include information which: (a) is or becomes generally available or known to the public through no fault of the receiving Party; (b) was already known by or available to the receiving Party on a non-confidential basis prior to the disclosure by the disclosing Party; (c) is subsequently disclosed to the receiving Party by a third party who is not under any obligation of confidentiality to the disclosing Party; (d) has already been, or is hereafter independently acquired or developed by, the receiving Party without violating any confidentiality agreement or other similar obligation; or (e) is required to be disclosed by any tribunal, state or federal court, and/or administrative body or agency, by oral questions, subpoenas, civil or criminal investigative demand, interrogatories, requests for information, or other similar process, provided that the receiving Party shall first give notice of any such request or order of the court to give the disclosing Party an opportunity to contest or limit said request or order of the court.

(6) "Contractor Group" shall mean, individually and collectively: (a) Contractor; (b) its Affiliates; (c) the co-owners, members, and managers of (a) and (b); (d) Contractor's subcontractors of every tier and their Affiliates; and (e) the agents, officers, directors and employees of (a), (b), (c), and (d).

(7) "Data" shall mean all data and information (and any and all derivatives thereof) that is received, created, acquired, obtained, collected, generated, developed, derived, or stored in connection with a Party's business operations (including, but not limited to, the performance of the Services or other obligations under this Agreement) however derived, whether such data or information is generated by sensors, machines, user input, or otherwise. Data shall include, but not be limited to, reservoir data, geologic and geophysical data, financial data, economic data, commercial data, contractual data, environmental data, marketing data, operational data, engineering data, and data or information contained in (or derived from) analyses, interpretations, compilations, reports, investigations, research, studies, codes, maps, models, logs, sales or service programs, customer lists, records relating to past services; capital expenditure projects, cost summaries, equipment or production system designs or drawings, physical samples, projections, present and future business plans, agreements with vendors, joint venture agreements, or confidential filings with any governmental authority developed or prepared by (or on behalf of) the Party's Group.

(8) "Group" shall mean Company Group or Contractor Group, as applicable.

(9) "Intellectual Property" shall mean and include all inventions, ideas, concepts, improvements, discoveries, trade secrets, Works of Authorship, derivative Works of Authorship, formulae, computations, calculations, industrial processes, business plans and strategy, know-how, patents and patent applications, designs, copyrights, including moral rights, trademarks, and all other legally protectable results of intellectual effort, whether developed by, owned by, or licensed to a Party.

6A.  In the performance of any Services by Contractor for Company, Contractor shall be conclusively deemed an independent contractor, with the authority and right to direct and control all of the details of the Services, Company only being interested in the result obtained. However, all Services contemplated by a Work Order shall be subject to the approval of Company and shall be subject to Company's general right of inspection. Company shall have no right or authority to supervise or give instructions to the employees, personnel, agents or representatives of Contractor, and Contractor's employees, personnel, agents or representatives at all times shall be under the direct and sole supervision and control of Contractor. Any suggestions or directions which may be given by Company or its employees shall be given only to the superintendent or other person in charge of Contractor's crew.  It is the understanding and intention of the Parties hereto that no relationship of master and servant, or principal and agent, shall exist between Company and the employees, personnel, agents or representatives of Contractor.

6B.  To the extent that Contractor's employees (defined, for purposes of this Agreement, to include Contractor's direct, borrowed, special or statutory employees) are covered by the Louisiana Workers' Compensation Act, LSA R.S. 23:1021, et seq., notwithstanding the foregoing or any other provision to the contrary in this Agreement, Company and Contractor agree that all Services and operations performed by Contractor and its employees pursuant to this Agreement are an integral part of and are essential to the ability of Company to generate goods, products and services for purposes of LSA R.S. 23:1061 (A)(1). Furthermore, Company and Contractor agree that Company is the principal or statutory employer of Contractor's employees for purposes of LSA R.S. 23:1061 (A)(3) and the protections afforded a statutory employer under Louisiana law shall apply. Irrespective of Company's status as the statutory employer or special employer (as defined in LSA R.S. 23:1031) of Contractor's employees, Contractor shall remain primarily responsible for the payment of Louisiana Workers' Compensation benefits to its employees and shall not be entitled to seek contribution for any such payment from Company; Company shall be entitled to indemnity from Contractor for any such payment made by Company.

6C.  To the extent that Contractor's employees (defined, for purposes of this Agreement, to include Contractor's direct, borrowed, special or statutory employees) are covered by the New Mexico Workers' Compensation Administration Act, NMSA 1978 § 52-1-1, et seq., notwithstanding the foregoing or any other provision to the contrary in this Agreement, Company and Contractor agree that all Services and operations performed by Contractor and its employees are part of Company's trade and business. Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees for purposes of NMSA 1978 §52-1-22 and the protections afforded a statutory employer under New Mexico law shall apply. Irrespective of Company's status as the statutory employer or special employer of Contractor's employees, Contractor shall remain primarily responsible for carrying workers' compensation insurance and the payment of New Mexico Workers' Compensation benefits to its employees and shall not be entitled to seek contribution for any such payment from Company; Company shall be entitled to indemnity from Contractor for any such payment made by Company.

7A.  CONTRACTOR AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, WITHOUT LIMIT, ON ACCOUNT OF BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR LOSS OF OR DAMAGE TO PROPERTY OF CONTRACTOR GROUP ALLEGEDLY OR ACTUALLY

SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF COMPANY GROUP. CONTRACTOR EXPRESSLY AGREES TO INDEMNIFY COMPANY FROM ALL LOSSES, DAMAGES, CLAIMS, COSTS, LIABILITIES, AND/OR OTHER EXPENSES ARISING OUT OF, OR INCURRED IN CONNECTION WITH, CLAIMS BROUGHT BY CONTRACTOR GROUP REGARDING ALLEGED OR ACTUAL MISCLASSIFICATION AS AN INDEPENDENT CONTRACTOR.

7B. COMPANY AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD CONTRACTOR GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, WITHOUT LIMIT, ON ACCOUNT OF BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR LOSS OF OR DAMAGE TO PROPERTY OF COMPANY GROUP ALLEGEDLY OR ACTUALLY SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF CONTRACTOR GROUP.

7C. For the purposes of this Paragraph 7, the term "employee" of Contractor shall include all employees of Contractor, even if one of Contractor's employees is determined to be a borrowed employee or statutory employee of any other entity.

7D. In the event of loss or damage sustained by third parties other than Contractor Group or Company Group, each Party shall only be liable for such loss and/or damages to the extent of its own proportionate fault or negligence.

7E. The Parties agree that the indemnities provided by Contractor under this Agreement shall be supported by insurance available to Contractor, and the indemnities provided by Company shall be supported by insurance available to Company. The minimum limits of insurance supporting the Parties' indemnity obligations shall be the total limits of Company's insurance or the total limits of Contractor's insurance (whether or not required by this Agreement), whichever is less, provided that in no event shall such limits be less than the amount required in Exhibit A. Any deductibles, self-insurance, or self-insured retention under either Party's insurance policies shall be for the sole account of that Party, and the other Party shall have no liability for same. The Parties agree that the insurance requirements of this Paragraph 7 shall support but not limit the Parties' indemnity obligations, except to the extent mandated by applicable law.

8. As a separate, distinct, and independent obligation, Contractor (and each subcontractor within Contractor Group) shall comply with, and before performing any Services hereunder provide Company certificates of insurance evidencing compliance with, the minimum insurance requirements set forth in Exhibit A, which are not intended in any way to limit the extent of Contractor's indemnity obligation provided for in Paragraph 7 herein. Further, Company's failure to object to an improper or incomplete certificate of insurance, or Contractor's failure to provide such a certificate, shall not relieve Contractor of any of its insurance obligations under this Agreement. In the event non-maritime Services are to be performed in or offshore Louisiana for which the Louisiana Oilfield Anti-Indemnity Act would apply, Contractor shall abide by the procedures set forth in Exhibit A.

EXHIBIT U

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/16/2022 4:07 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R.

       Plaintiffs,

v.                           No. D-101-CV-2020-00899

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG
ENERGY SERVICES, and BOBBY GARZA CONDE, JR,

       Defendants,

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY
INSURANCE COMPANY,

       Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

       Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD
LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R,

       Defendants-in-Intervention.

### DEFENDANTS-IN-INTERVENTION BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES AND BOBBY GARZA CONDE, JR.'S ANSWER TO AMERICAN TRANSPORTATION GROUP INSURANCE RISK RETENTION GROUP, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT

       COMES NOW Defendants-in-Intervention Bedrock Petroleum Consultants, LLC, RCG

Energy Services, and Bobby Garza Conde, Jr., by and through their attorneys of record,

O`BRIEN & PADILLA, P.C., by Daniel J. O`Brien, and for their Answer to American

Transportation Group Insurance Risk Retention Group, Inc., state as follows:

## PARTIES AND JURISDICTION

1.      These Defendants admit the allegations contained in paragraph 1 of the Complaint for Declaratory Judgment.

2.      These Defendants admit the allegations contained in paragraph 2 of the Complaint for Declaratory Judgment.

3.      These Defendants admit the allegations contained in paragraph 3 of the Complaint for Declaratory Judgment.

4.      These Defendants admit the allegations contained in paragraph 4 of the Complaint for Declaratory Judgment.

5.      These Defendants admit the allegations contained in paragraph 5 of the Complaint for Declaratory Judgment.

6.      These Defendants admit the allegations contained in paragraph 6 of the Complaint for Declaratory Judgment.

7.      The allegations contained in paragraph 7 of the Complaint for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary.  To the extent a response is deemed to be required, these Defendants are without sufficient information to admit or deny the allegations contained in paragraph 7 and, therefore deny same and demand strict proof thereof.

8.      These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 8 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

9.      These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 9 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

10.      These Defendants admit the allegations contained in paragraph 10 of the Complaint for Declaratory Judgment.

11.     These Defendants admit the allegations contained in paragraph 11 of the Complaint for Declaratory Judgment.

12.     These Defendants admit the allegations contained in paragraph 12 of the Complaint for Declaratory Judgment.

13.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 13 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

14.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 14 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

15.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 15 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

16.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 16 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

17.     These Defendants admit the allegations contained in paragraph 17 of the Complaint for Declaratory Judgment.

18.     In response to paragraph 18 of the Complaint for Declaratory Judgment, these Defendants admit that the *Complaint for Wrongful Death and Loss of Consortium* and the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 18 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

19.     In response to paragraph 19 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 19 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

20.     In response to paragraph 20 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 20 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

21.     In response to paragraph 21 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 21 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

22.     In response to paragraph 22 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 22 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

23.     In response to paragraph 23 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 23 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

24.     In response to paragraph 24 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 24 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

25.     In response to paragraph 25 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 25 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

26.     In response to paragraph 26 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 26 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

27.     In response to paragraph 27 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 27 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

28.     In response to paragraph 28 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 28 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

29.     In response to paragraph 29 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 29 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

30.     In response to paragraph 30 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 30 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

31.     In response to paragraph 31 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 31 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

32.      In response to paragraph 32 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 32 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

33.      In response to paragraph 33 of the Complaint for Declaratory Judgment, these Defendants admit that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* include allegations set forth in paragraph 3 but affirmatively state that the Complaint speaks for itself and must be read and interpreted as a whole.

34.      These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 34 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

35.      These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 35 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

36.      These Defendants admit the allegations contained in paragraph 36 of the Complaint for Declaratory Judgment.

37.      These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 37 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

38.      These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 38 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

39.      These Defendants admit the allegations contained in paragraph 39 of the Complaint for Declaratory Judgment.

40.      These Defendants admit the allegations contained in paragraph 40 of the Complaint for Declaratory Judgment.

41.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 41 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

42.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 42 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

## GENERAL ALLEGATIONS

### The ATG Policy

43.     In response to paragraph 43 of the Complaint for Declaratory Judgment, these Defendants incorporate their responses to the preceding paragraphs as set forth above.

44.     These Defendants admit the allegations contained in paragraph 44 of the Complaint for Declaratory Judgment.

45.     In response to paragraph 45 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 45 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

46.     In response to paragraph 46 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 46 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

47.     In response to paragraph 47 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 47 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

48.     In response to paragraph 48 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG policy declarations page includes the language alleged in paragraph 48 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

49.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 49 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

50.     In response to paragraph 50 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 50 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

51.     In response to paragraph 51 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 51 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

52.     In response to paragraph 52 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 52 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

53.     In response to paragraph 53 of the Complaint for Declaratory Judgment, these Defendants admit that the ATG's policy includes the language alleged in paragraph 53 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

**The EOG/STI Master Service Agreement**

54.     In response to paragraph 54 of the Complaint for Declaratory Judgment, these Defendants incorporate their responses to the preceding paragraphs as set forth above.

55.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 55 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

56.     In response to paragraph 56 of the Complaint for Declaratory Judgment, these Defendants admit that the Master Service Agreement includes the language alleged in paragraph 56 but affirmatively state that the agreement speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

57.     In response to paragraph 57 of the Complaint for Declaratory Judgment, these Defendants admit that the Master Service Agreement includes the language alleged in paragraph 57 but affirmatively state that the agreement speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

58.     In response to paragraph 58 of the Complaint for Declaratory Judgment, these Defendants admit that the Master Service Agreement includes the language alleged in paragraph 58 but affirmatively state that the agreement speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

## COUNT I-DECLARATORY RELIEF

59.     In response to paragraph 59 of the Complaint for Declaratory Judgment, these Defendants incorporate their responses to the preceding paragraphs as set forth above.

60.     These Defendants admit the allegations contained in paragraph 60 of the Complaint for Declaratory Judgment.

61.     In response to paragraph 61 of the Complaint for Declaratory Judgment, these Defendants admit that the Second Amended Complaint includes the claims alleged in paragraph 61 but affirmatively state that the Second Amended Complaint speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

62.     These Defendants admit the allegations contained in paragraph 62 of the Complaint for Declaratory Judgment.

63.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 63 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

64.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 64 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

65.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 65 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

66.     In response to paragraph 66 of the Complaint for Declaratory Judgment, these Defendants admit the allegations contained therein but deny that the basis for coverage for these Defendants under the American Transportation policy is limited to the circumstances alleges in paragraph 66 and demand strict proof thereof.

67.     These Defendants admit the allegations contained in paragraph 67 of the Complaint for Declaratory Judgment.

68.     These Defendants admit the allegations contained in paragraph 68 of the Complaint for Declaratory Judgment.

69.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 69 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

70.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 70 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

71.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 71 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

72.     These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 72 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

73.     The allegations contained in paragraph 73 of the Complaint for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary.  To the extent a response is deemed to be required, these Defendants deny the allegations contained in paragraph 73 and demand strict proof thereof.

74. These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 74 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

75. These Defendants are without sufficient information to admit or deny the allegations contained in paragraph 75 of the Complaint for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

## AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following defenses should be available to Defendants in this matter. Defendants accordingly reserve the right to assert these separate defenses. If the facts warrant, Defendants may withdraw any of these defenses. Defendants further reserve the right to amend their answer and defenses, and to assert additional defenses and other claims, as discovery proceeds. Further answering, and by way of defense, Defendants state as follows:

### FIRST AFFIRMATIVE DEFENSE

American Transportation Group Insurance Risk Retention Group, Inc.'s attempt to deny these Defendants coverage for defense and indemnity is barred by the doctrine of reasonable expectations.

### SECOND AFFIRMATIVE DEFENSE

American Transportation Group Insurance Risk Retention Group, Inc.'s attempt to deny these Defendants coverage for defense and indemnity is barred by the doctrine of waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

American Transportation Group Insurance Risk Retention Group, Inc.'s policy and evidence extrinsic to the policy give rise to ambiguities in the ATG policy that require it to be interpreted in favor of a determination of coverage for these Defendants.

WHEREFORE, Defendants-in-Intervention Bedrock Petroleum Consultants, LLC, RCG Energy Services, and Bobby Garza Conde, Jr., request that this Court deny the relief sought by American Transportation Group Insurance Risk Retention Group, Inc., in its Complaint-in-Intervention for Declaratory Judgment and find that American Transportation Group Insurance Risk Retention Group, Inc., has a duty to defend and indemnify these defendants against the claims being asserted herein by Plaintiffs, and award these Defendant costs and fees and such further and other relief as the Court deems proper.

Respectfully submitted,

O'BRIEN & PADILLA, P.C.

By: */s/ Daniel J. O'Brien*
    DANIEL J. O'BRIEN
    6000 Indian School Rd. N.E., Suite 200
    Albuquerque, NM 87110
    (505) 883-8181
    dobrien@obrienlawoffice.com
    *Attorneys for Defendants Bedrock Petroleum*
    *Consultants, LLC, RCG Energy Services, and*
    *Bobby Garza Conde, Jr. on Complaints-in-*
    *Intervention*

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that on this 16th day of March, 2022, I caused to be served, via e mail, a true and correct copy of the foregoing to the following:

Amy E. Headrick
Nicholas W. Chiado
BUTT THORNTON & BAEHR, P.C.
P.O. Box 3170
Albuquerque, NM 87190-0777
aeheadrick@btblaw.com
nwchiado@btblaw.com
*Attorneys for American Transportation Group*
*Insurance Risk Retention Group, Inc.*

Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road N.E.
Albuquerque, NM 87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com
*Attorneys for Hilltop Insurance Company*

12

Judd C. West
Julia Broggi
HOLLAND AND HART, LLP
P.O. Box 2208
Santa Fe, NM 87504-2208
jcwest@hollandhart.com
jbroggi@hollandhart.com
*Attorneys for EOG Resources, Inc.*

Chad Inderman
Pedro Leyva, Jr.
GLASHEEN, VALLES, & INDERMAN, LLP
P.o. Box 1976
Lubbock, TX 79408
inderman@gvilaw.com
pedro.leyva@gvilaw.com
*Attorneys for Plaintiffs*

David J. Jaramillo
JARAMILLO LAW FIRM, PC
505 Roma Ave. N.W.
Albuquerque, NM 87102
david@djnmlaw.com
*Attorneys for Plaintiffs*

Tyler M. Cuff
Lauren Kedge
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
P.O. Box 1888
Albuquerque, NM 87103
tcuff@rodey.com
lkedge@rodey.com
*Attorneys for Defendant Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC and Bobby Garza Conde*

Michael W. Magee
Mark M. Applint
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, TX 77002
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com
*Attorneys for Defendant EOG Resources, Inc.*

Matthew S. Rappaport
MILLER STRATVERT, P.A.
P.O. Box 25687
Albuquerque, NM 87125
mrappaport@mstlaw.com
*Attorneys for Defendant EOG Resources, Inc.*

*/s/ Daniel J. O'Brien*
DANIEL J. O'BRIEN

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/17/2022 1:34 PM
KATHLEEN VIGIL CLERK OF THE COURT
Gloria Landin

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.

      Plaintiffs,

v.                                                          Case No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
ROBBY GARZA CONDE, JR,

      Defendants.

## SECOND ORDER AMENDING TRIAL SETTING

      Due to Supreme Court's recent relaxing of the public health emergency protocols, the Court has returned to its original venue schedule for all trial settings at the direction of the Chief Judge of the First Judicial District. For jury trials, jury selection will be conducted in the Jury Assembly Room with the remainder of the trial being held in my assigned courtroom. Non-jury trials will be conducted in my assigned courtroom. All members of the public, counsel and court personnel in all courtrooms must wear masks. Social distancing will be reduced to a minimum of 3 feet from the previous 6 foot requirement.

      All deadlines in the 16(B) Scheduling Order will remain the same. However, the pre-trial conference and trial setting will be adjusted to the following:

      **Pre-Trial Conference: <u>July 5, 2022 at 9:00 a.m.</u>**

      **Trial Setting: <u>August 1, 2022 at 8:30 a.m.</u>**

If there are any scheduling conflicts, the parties may submit a proposed stipulated order adjusting the trial setting or a party may request a hearing for a scheduling conference to be set on the docket at the Court's earliest availability.

So Ordered:

3/17/2022

Matthew J. Wilson
District Court Judge

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies of this Order were served on the parties listed below on the date this Order was accepted for filing by the Clerk's Office.

Chad Inderman
Pedro Leyva
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

and

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Suite 1

2

P.O. Box 2208
Santa Fe, NM 87504
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

and

Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 210-8955
Facsimile: (713) 655-0222
michaelmagee@mehaffyweber.com

and

Matthew S. Rappaport
P.O. Box 25687
Albuquerque, NM 87125
Tel: (505) 842-1950
mrappaport@mstlaw.com

**ATTORNEYS FOR DEFENDANT EOG RESOURCES, INC.**

Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road N.E.
Albuquerque, NM 87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com

**ATTORNEYS FOR HILLTOP INSURANCE COMPANY**

Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
Post Office Box 1888
Albuquerque, NM 87103
Tel: (505) 765-5900
Fax: (505) 768-1395
tcuff@rodey.com

3

and

Daniel J. O'Brien
O'BRIEN & PADILLA, P.C.
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM 87110
(505) 883-8181
dobrien@obrienlawoffice.com

**ATTORNEYS FOR DEFENDANT BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, LLC, AND
BOBBY GARZA CONDE**

*Jessica Vigil*

Jessica Vigil
TCAA for Judge Matthew J. Wilson

4

EXHIBIT W

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/28/2022 5:29 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leticia Cunningham

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R.,

       Plaintiffs,

v.                                 No. D-101-CV-2020-00899

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY
SERVICES, and BOBBY GARZA CONDE, JR,

       Defendants,

_____

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY
INSURANCE COMPANY,

       Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

       Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD
LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R.,

       Defendants-in-Intervention.

### DEFENDANT-IN-INTERVENTION EOG RESOURCES, INC.'S ANSWER TO AMERICAN TRANSPORTATION GROUP INSURANCE RISK RETENTION GROUP, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT

      **NOW INTO COURT**, through undersigned counsel, comes Defendant-in-Intervention,

EOG Resources, Inc. ("EOG"), and responds to the allegations in Plaintiff American

Transportation Group Insurance Risk Retention Group, Inc.'s Complaint for Declaratory Judgment

("Complaint") as follows:

## PARTIES AND JURISDICTION

1.   The allegations in Paragraph 1 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 1 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

2.   The allegations in Paragraph 2 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

3.   EOG admits the allegations contained in Paragraph 3 of the Complaint.

4.   The allegations in Paragraph 4 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

5.   The allegations in Paragraph 5 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

6.   The allegations in Paragraph 6 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

7.   The allegations in Paragraph 7 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 7 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

8.   EOG admits that it has alleged that Apolinar Jaquez Garcia ("Garcia") was an employee of Sur Transporte, Inc. ("STI") on March 27, 2020, the day of his alleged injury.  However, EOG denies that it has ever alleged Garcia was an employee of STI "at all material times," as stated in Paragraph 8 of the Complaint.

9.  The allegations in Paragraph 9 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 9 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

10. EOG admits the allegations contained in Paragraph 10 of the Complaint.

11. The allegations in Paragraph 11 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 11 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

12. The allegations in Paragraph 12 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 12 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

**UNDERLYING CASE AND RELEVANT FACTS**

13. EOG admits the allegations contained in Paragraph 13 of the Complaint regarding EOG's business.  EOG also admits the allegation that Bedrock was engaged pursuant to its Master Service Agreement with EOG.  The allegation of Paragraph 13 regarding Bedrock's business is denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegation.

14. The allegations in Paragraph 14 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

15. The allegations in Paragraph 15 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

16. The allegations in Paragraph 16 of the Complaint are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

17. EOG admits the allegations contained in Paragraph 17 of the Complaint.

18. EOG admits the allegations contained in Paragraph 18 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

19. EOG admits the allegations contained in Paragraph 19 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

20. EOG admits the allegations contained in Paragraph 20 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

21. EOG admits the allegations contained in Paragraph 21 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

22. EOG admits the allegations contained in Paragraph 22 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

23. EOG admits the allegations contained in Paragraph 23 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

24. EOG admits the allegations contained in Paragraph 24 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

25. EOG admits the allegations contained in Paragraph 25 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

26. EOG admits the allegations contained in Paragraph 26 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

27. EOG admits the allegations contained in Paragraph 27 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

28. EOG admits the allegations contained in Paragraph 28 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

29. EOG admits the allegations contained in Paragraph 29 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

30. EOG admits the allegations contained in Paragraph 30 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

31. EOG admits the allegations contained in Paragraph 31 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

32. EOG admits the allegations contained in Paragraph 32 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

33. EOG admits the allegations contained in Paragraph 33 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

34. EOG admits the allegations contained in Paragraph 34 of the Complaint.

35. EOG admits that STI procured commercial general liability coverage and an Umbrella/Excess Policy from Hudson Specialty Insurance Company ("Hudson").  However, the remaining allegations in Paragraph 35 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

36. EOG admits the allegations contained in Paragraph 36 of the Complaint.

37. EOG admits the allegations contained in Paragraph 37 of the Complaint.

38. EOG admits that the American Transportation Group Insurance Risk Retention Group, Inc. ("ATG") policy was in effect on the date of loss in this case.  The remaining allegations in Paragraph 38 of the Complaint contain legal conclusions that do not require a response from EOG. To the extent a response is required, the remaining allegations in Paragraph 38 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

39. EOG admits the allegations contained in Paragraph 39 of the Complaint.

40. EOG admits the allegations contained in Paragraph 40 of the Complaint.

41. EOG admits the allegations contained in Paragraph 41 of the Complaint.

42. The allegations in Paragraph 42 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 42 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

## GENERAL ALLEGATIONS

### The ATG Policy

43. In response to Paragraph 43 of the Complaint, EOG incorporates its responses to the preceding Paragraphs as set forth above.

44. EOG admits that the ATG policy includes the language alleged in Paragraph 44 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

45. EOG admits that the ATG policy includes the language alleged in Paragraph 45 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

46. EOG admits that the ATG policy includes the language alleged in Paragraph 46 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

47. EOG admits that the ATG policy includes the language alleged in Paragraph 47 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

48. The allegations in Paragraph 48 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph

48 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

49. The allegations in Paragraph 49 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 49 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

50. EOG admits that the ATG policy includes the language alleged in Paragraph 50 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

51. EOG admits that the ATG policy includes the language alleged in Paragraph 51 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

52. EOG admits that the ATG policy includes the language alleged in Paragraph 52 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

53. EOG admits that the ATG policy includes the language alleged in Paragraph 53 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

### The EOG/STI Master Service Agreement

54. In response to Paragraph 54 of the Complaint, EOG incorporates its responses to the preceding Paragraphs as set forth above.

55. EOG admits the allegations contained in Paragraph 55 of the Complaint.

56. EOG admits that the Master Service Agreement includes the language alleged in Paragraph 56 but affirmatively states that the agreement speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

57. EOG admits that the Master Service Agreement includes the language alleged in Paragraph 57 but affirmatively states that the agreement speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

58. EOG admits that the Master Service Agreement includes the language alleged in Paragraph 58 but affirmatively states that the agreement speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

## COUNT 1—DECLARATORY RELIEF

59. In response to Paragraph 59 of the Complaint, EOG incorporates its responses to the preceding Paragraphs as set forth above.

60. The allegations in Paragraph 60 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 60 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

61. The allegations in Paragraph 61 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 61 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

62. The allegations in Paragraph 62 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph

62 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

63. EOG admits the allegation contained in Paragraph 63 of the Complaint, but clarifies that the correct date is December 18, 2019.

64. The allegations in Paragraph 64 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 64 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

65. The allegations in Paragraph 65 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 65 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

66. EOG admits the allegations contained in Paragraph 66 but denies that the basis for coverage for EOG under the ATG policy is limited to the circumstances alleged in Paragraph 66.

67. EOG admits the allegations contained in Paragraph 67 of the Complaint.

68. The allegations in Paragraph 68 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 68 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

69. The allegations in Paragraph 69 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 69 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

70. The allegations in Paragraph 70 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 70 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

71. The allegations in Paragraph 71 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 71 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

72. The allegations in Paragraph 72 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 72 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

73. The allegations in Paragraph 73 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 73 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

74. The allegations in Paragraph 74 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 74 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

75. The allegations in Paragraph 75 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph

75 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

## AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that one or more of the following defenses should be available to EOG in this matter.  EOG accordingly reserves the right to assert these separate defenses.  If the facts warrant, EOG may withdraw any of these defenses.  EOG further reserves the right to amend its answer and defenses, and to assert additional defenses and other claims, as discovery proceeds.   Further answering, and by way of defense, EOG states the following affirmative defenses without assuming any burden of proof on issues where plaintiffs bear such burden:

### FIRST AFFIRMATIVE DEFENSE

ATG's attempt to deny EOG coverage for defense and indemnity is barred by the doctrine of reasonable expectations.

### SECOND AFFIRMATIVE DEFENSE

ATG's attempt to deny EOG coverage for defense and indemnity is barred by the doctrines of waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

ATG's policy and evidence extrinsic to the policy give rise to ambiguities in the ATG policy that require it to be interpreted in favor of a determination of coverage for EOG.

### FOURTH AFFIRMATIVE DEFENSE

ATG's claims are premature at this time.   Because ATG's claims are not ripe for adjudication and/or otherwise are not justiciable, the Court lacks subject matter jurisdiction.

WHEREFORE, Defendant EOG requests that this Court deny the relief sought by ATG in its Complaint, dismiss the claims ATG asserts against EOG with prejudice, find that ATG has a duty to defend and indemnify EOG against the underlying claims asserted herein, and award EOG costs and fees and such further and other relief as the Court deems proper.  EOG reserves the right to have any fact issues tried to and determined by a jury insofar as the declaratory judgment sought depends on the determination of a fact issue.

Respectfully submitted,

**HOLLAND AND HART, LLP**

By:_____*/s/ Judd C. West*_____
Judd C. West
P.O. Box 2208
Santa Fe, NM 87504-2208
Telephone:  505-988-4421
Facsimile:  505-983-6043
Email:  jcwest@hollandhart.com

***Attorney for EOG Resources, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of March 2022, I filed the foregoing instrument via the court's electronic filing system, which caused counsel of record on the court's service contacts list to be served by electronic mail.  The foregoing instrument was also emailed to the following:

Amy E. Headrick
Nicholas W. Chiado
BUTT THORNTON & BAEHR, P.C.
P.O. Box 3170
Albuquerque, NM 87190-0777
aeheadrick@btblaw.com
nwchiado@btblaw.com

*Attorneys for American Transportation Group*
*Insurance Risk Retention Group, Inc.*

Tyler M. Cuff
Lauren Kedge
RODEY, DICKASON, SLOAN, AKIN &
ROBB, P.A.
P.O. Box 1888
Albuquerque, NM 87103
tcuff@rodey.com
lkedge@rodey.com

*Attorneys for Defendant Bedrock Petroleum*
*Consultants, LLC, RCG Energy Services, LLC*
*and Bobby Garza Conde*

Daniel J. O'Brien
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM 87110
(505) 883-8181
dobrien@obrienlawoffice.com

*Attorney for Defendants Bedrock Petroleum*
*Consultants, LLC, RCG Energy Services, and*
*Bobby Garza Conde, Jr.*

Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road N.E.
Albuquerque, NM 87109
ckeller@rsk-law.com
ckeller@rileynmlaw.com
tkaselonis@rsk-law.com
tkaselonis@rileynmlaw.com

*Attorneys for Hilltop Insurance Company*

Chad Inderman
Pedro Leyva, Jr.
GLASHEEN, VALLES, & INDERMAN,
LLP
P.o. Box 1976
Lubbock, TX 79408
inderman@gvilaw.com
efile.inderman@gvilaw.com
pedro.leyva@gvilaw.com
efile.pedro.leyva@gvilaw.com

-and-
David J. Jaramillo
JARAMILLO LAW FIRM, PC
505 Roma Ave. N.W.
Albuquerque, NM 87102
david@djnmlaw.com

*Attorneys for Todd Lopez, as Personal*
*Representative of the Estate of Apolinar*
*Jaquez Garcia, Cynthia Guereca, and*
*Esmeralda Ramos Quirino, on behalf of her*
*minor child, A.J.R.R.*

/s/ Judd C. West
Judd C. West

18499922_v2

EXHIBIT X

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
3/28/2022 5:23 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leticia Cunningham

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R.,

      Plaintiffs,

v.                           No. D-101-CV-2020-00899

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, and BOBBY GARZA CONDE, JR,

      Defendants,

_____

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY INSURANCE COMPANY,

      Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

      Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R.,

      Defendants-in-Intervention.

### DEFENDANT-IN-INTERVENTION EOG RESOURCES, INC.'S ANSWER TO HILLTOP SPECIALTY INSURANCE COMPANY'S COMPLAINT-IN-INTERVENTION FOR DECLARATORY JUDGMENT

      **NOW INTO COURT**, through undersigned counsel, comes Defendant-in-Intervention, EOG Resources, Inc. ("EOG"), and responds to the allegations in Plaintiff Hilltop Specialty Insurance Company's Complaint-in-Intervention for Declaratory Judgment ("Complaint-in-Intervention") as follows:

## JURISDICTIONAL ALLEGATIONS

1.  The allegations in Paragraph 1 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

2.  The allegations in Paragraph 2 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

3.  EOG admits the allegations contained in Paragraph 3 of the Complaint-in-Intervention.

4.  The allegations in Paragraph 4 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

5.  The allegations in Paragraph 5 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

6.  The allegations in Paragraph 6 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

7.  The allegations in Paragraph 7 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

8.  The allegations in Paragraph 8 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 8 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

9.  The allegations in Paragraph 9 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 9 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

10. The allegations in Paragraph 10 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 10 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

11. The allegations in Paragraph 11 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 11 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

12. The allegations in Paragraph 12 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 12 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

13. EOG denies the allegation that this Court's subject matter jurisdiction is not in dispute. EOG admits the remaining allegations contained in Paragraph 13 of the Complaint-in-Intervention.

## **PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS**

14. EOG admits the allegations contained in Paragraph 14 of the Complaint-in-Intervention.

15. The allegations of Paragraph 15 of the Complaint-in-Intervention are denied with respect to Bedrock's business for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.  The allegation that Bedrock was engaged pursuant to its Master Service Agreement with EOG is admitted.

16. The allegations in Paragraph 16 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

17. The allegations in Paragraph 17 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

18. The allegations in Paragraph 18 of the Complaint-in-Intervention are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

19. EOG admits the allegations contained in Paragraph 19 of the Complaint-in-Intervention.

20. EOG admits the allegations contained in Paragraph 20 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

21. EOG admits the allegations contained in Paragraph 21 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

22. EOG admits the allegations contained in Paragraph 22 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

23. EOG admits the allegations contained in Paragraph 23 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

24. EOG admits the allegations contained in Paragraph 24 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

25. EOG admits the allegations contained in Paragraph 25 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

26. EOG admits the allegations contained in Paragraph 26 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

27. EOG admits the allegations contained in Paragraph 27 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

28. EOG admits the allegations contained in Paragraph 28 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

29. EOG admits the allegations contained in Paragraph 29 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

30. EOG admits the allegations contained in Paragraph 30 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

31. EOG admits the allegations contained in Paragraph 31 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

32. EOG admits the allegations contained in Paragraph 32 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

33. EOG admits the allegations contained in Paragraph 33 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

34. EOG admits the allegations contained in Paragraph 34 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

35. EOG admits the allegations contained in Paragraph 35 but affirmatively states that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole in the context of extrinsic evidence.

36. EOG admits the allegations contained in Paragraph 36 of the Complaint-in-Intervention.

37. EOG admits that Sur Transporte, Inc. procured commercial auto liability coverage from American Transportation Group Insurance Risk Retention Group, Inc.  However, the remaining allegations in Paragraph 37 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

38. EOG admits the allegations contained in Paragraph 38 of the Complaint-in-Intervention.

39. EOG admits the allegations contained in Paragraph 39 of the Complaint-in-Intervention.

40. EOG admits that both Hudson Specialty Insurance ("Hudson") policies were in effect on the date of loss in this case.  The remaining allegations in Paragraph 40 of the Complaint contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the remaining allegations in Paragraph 40 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

41. EOG admits the allegations contained in Paragraph 41 of the Complaint-in-Intervention.

42. EOG admits the allegations contained in Paragraph 42 of the Complaint-in-Intervention.

43. EOG admits the allegations contained in Paragraph 43 of the Complaint-in-Intervention.

44. The allegations in Paragraph 44 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 44 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

45. The allegations in Paragraph 45 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 45 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

### THE HUDSON INSURANCE POLICIES

46. EOG admits that the Hudson commercial general liability ("CGL") policy includes the provisions alleged in Paragraph 46 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

47. EOG admits that the Hudson CGL policy includes the provisions alleged in Paragraph 47 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

48. The allegations in Paragraph 48 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 48 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

49. The allegations in Paragraph 49 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in

Paragraph 49 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

50. The allegations in Paragraph 50 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG. To the extent a response is required, the allegations in Paragraph 50 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

51. EOG admits that the Hudson CGL policy includes the provisions alleged in Paragraph 51 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

52. EOG admits that the Hudson CGL policy includes the provisions alleged in Paragraph 52 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

53. The allegations in Paragraph 53 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG. To the extent a response is required, the allegations in Paragraph 53 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

54. EOG admits that the Hudson CGL policy includes the provisions alleged in Paragraph 54 but affirmatively states that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

55. The allegations in Paragraph 55 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG. To the extent a response is required, the allegations in Paragraph 55 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

56. The allegations in Paragraph 56 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 56 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

57. The allegations in Paragraph 57 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 57 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

58. The allegations in Paragraph 58 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 58 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

59. The allegations in Paragraph 59 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 59 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

## EOG'S "MSA" IS NOT VOID

60. The allegations in Paragraph 60 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 60 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

61. EOG admits the allegations contained in Paragraph 61 of the Complaint-in-Intervention.

62. EOG admits the allegations contained in Paragraph 62 of the Complaint-in-Intervention.

63. The allegations in Paragraph 63 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 63 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

64. The allegations in Paragraph 64 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 64 are denied for lack of sufficient knowledge or information to form a belief as to the truth of the allegations.

65. The allegations contained in Paragraph 65 of the Complaint-in-Intervention call for a legal conclusion and, therefore, no response is necessary. To the extent a response is deemed to be required, EOG denies the allegations contained in Paragraph 65.

66. The allegations contained in Paragraph 66 of the Complaint-in-Intervention call for a legal conclusion and, therefore, no response is necessary. To the extent a response is deemed to be required, EOG denies the allegations contained in Paragraph 66.

67. The allegations contained in Paragraph 67 of the Complaint-in-Intervention call for a legal conclusion and, therefore, no response is necessary. To the extent a response is deemed to be required, EOG denies the allegations contained in Paragraph 67.

68. EOG admits the allegations contained in Paragraph 68 of the Complaint-in-Intervention.

69. The allegations contained in Paragraph 69 of the Complaint-in-Intervention call for a legal conclusion and, therefore, no response is necessary. To the extent a response is deemed to be required, EOG denies the allegations contained in Paragraph 69.

<u>**COUNT I:**</u>
<u>**REQUEST FOR DECLARATORY RELIEF**</u>

70. The allegations in Paragraph 70 of the Complaint-in-Intervention contain legal conclusions that do not require a response from EOG.  To the extent a response is required, the allegations in Paragraph 70 are denied.

71. Paragraph 71 contains no allegation that EOG is required to admit or deny.

72. Paragraph 72 contains no allegation that EOG is required to admit or deny.

73. Paragraph 73 contains no allegation that EOG is required to admit or deny.

<u>**AFFIRMATIVE DEFENSES**</u>

Discovery and investigation may reveal that one or more of the following defenses should be available to EOG in this matter.  EOG accordingly reserves the right to assert these separate defenses.  If the facts warrant, EOG may withdraw any of these defenses.  EOG further reserves the right to amend its answer and defenses, and to assert additional defenses and other claims, as discovery proceeds.  Further answering, and by way of defense, EOG states the following affirmative defenses without assuming any burden of proof on issues where plaintiffs bear such burden:

**FIRST AFFIRMATIVE DEFENSE**

Hilltop Specialty Insurance Company f/k/a Hudson Specialty Insurance Company's ("Hilltop") attempt to deny EOG coverage for defense and indemnity is barred by the doctrine of reasonable expectations.

**SECOND AFFIRMATIVE DEFENSE**

Hilltop's attempt to deny EOG coverage for defense and indemnity is barred by the doctrines of waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Hilltop's policy and evidence extrinsic to the policy give rise to ambiguities in the Hudson CGL policy that require it to be interpreted in favor of a determination of coverage for EOG.

### FOURTH AFFIRMATIVE DEFENSE

Hilltop's claims are premature at this time.  Because Hilltop's claims are not ripe for adjudication and/or otherwise are not justiciable, the Court lacks subject matter jurisdiction over them.

WHEREFORE, Defendant EOG requests that this Court deny the relief sought by Hilltop in its Complaint-in-Intervention, dismiss the claims Hilltop asserts against EOG with prejudice, find that Hilltop has a duty to defend and indemnify EOG against the underlying claims asserted herein, and award EOG costs and fees and such further and other relief as the Court deems proper. EOG reserves the right to have any fact issues tried to and determined by a jury insofar as the declaratory judgment sought depends on the determination of a fact issue.

Respectfully submitted,

**HOLLAND AND HART, LLP**

By: ___*/s/ Judd C. West*_____

    Judd C. West
    P.O. Box 2208
    Santa Fe, NM 87504-2208
    Telephone:  505-988-4421
    Facsimile:  505-983-6043
    Email:  jcwest@hollandhart.com

    ***Attorney for EOG Resources, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March 2022, I filed the foregoing instrument via the court's electronic filing system, which caused counsel of record on the court's service contacts list to be served by electronic mail.  The foregoing instrument was also emailed to the following:

Amy E. Headrick
Nicholas W. Chiado
BUTT THORNTON & BAEHR, P.C.
P.O. Box 3170
Albuquerque, NM 87190-0777
aeheadrick@btblaw.com
nwchiado@btblaw.com

*Attorneys for American Transportation Group Insurance Risk Retention Group, Inc.*

Tyler M. Cuff
Lauren Kedge
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
P.O. Box 1888
Albuquerque, NM 87103
tcuff@rodey.com
lkedge@rodey.com

*Attorneys for Defendant Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC and Bobby Garza Conde*

Daniel J. O'Brien
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM 87110
(505) 883-8181
dobrien@obrienlawoffice.com

*Attorney for Defendants Bedrock Petroleum Consultants, LLC, RCG Energy Services, and Bobby Garza Conde, Jr.*

Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road N.E.
Albuquerque, NM 87109
ckeller@rsk-law.com
ckeller@rileynmlaw.com
tkaselonis@rsk-law.com
tkaselonis@rileynmlaw.com

*Attorneys for Hilltop Insurance Company*

Chad Inderman
Pedro Leyva, Jr.
GLASHEEN, VALLES, & INDERMAN, LLP
P.o. Box 1976
Lubbock, TX 79408
inderman@gvilaw.com
efile.inderman@gvilaw.com
pedro.leyva@gvilaw.com
efile.pedro.leyva@gvilaw.com

-and-
David J. Jaramillo
JARAMILLO LAW FIRM, PC
505 Roma Ave. N.W.
Albuquerque, NM 87102
david@djnmlaw.com

*Attorneys for Todd Lopez, as Personal Representative of the Estate of Apolinar Jaquez Garcia, Cynthia Guereca, and Esmeralda Ramos Quirino, on behalf of her minor child, A.J.R.R.*

/s/ Judd C. West
Judd C. West

18499750_v2

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R.

      Plaintiffs,

v.                             No. D-101-CV-2020-00899

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, and BOBBY GARZA CONDE, JR,

      Defendants,

_____

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY INSURANCE COMPANY,

      Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

      Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R,

      Defendants-in-Intervention.

**DEFENDANTS-IN-INTERVENTION TODD LOPEZ, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, AND ESMERALDA RAMOS QUIRINO, ON BEHALF OF HER MINOR CHILD, A.J.R.R.'S ANSWER TO AMERICAN TRANSPORTATION GROUP INSURANCE RISK RETENTION GROUP, INC.'S COMPLAINT-IN-INTERVENTION FOR DECLARATORY JUDGMENT**

      COMES NOW Defendants-in-Intervention TODD LOPEZ, as Personal Representative of the

Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS

1

QUIRINO, On behalf of her minor child, A.J.R.R., (hereinafter referred to as "Defendants-in-Intervention"), for their Answer to Hilltop Specialty Insurance Company f/k/a Hudson Specialty Insurance Company's Complaint-in-Intervention for Declaratory Judgment, state as follows:

## PARTIES AND JURISDICTION

1.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 1 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

2.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 2 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

3.      These Defendants-in-Intervention admit the allegations contained in paragraph 3 of the Complaint-in-Intervention for Declaratory Judgment.

4.      These Defendants-in-Intervention admit the allegations contained in paragraph 4 of the Complaint-in-Intervention for Declaratory Judgment.

5.      These Defendants-in-Intervention admit the allegations contained in paragraph 5 of the Complaint-in-Intervention for Declaratory Judgment.

6.      These Defendants-in-Intervention admit the allegations contained in paragraph 6 of the Complaint-in-Intervention for Declaratory Judgment.

7.      The allegations in paragraph 7 of the Complaint-in-Intervention for Declaratory judgment call for a legal conclusion and, therefore no response is necessary. To the extent a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 7 and, therefore deny same and demand strict proof thereof.

8.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 8 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

9.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 9 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

10.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 10 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

11.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 11 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

12.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 12 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

13.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 13 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

14.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 14 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

15.      These Defendants-in-Intervention admit the allegations contained in paragraph 15 of the Complaint-in-Intervention for Declaratory Judgment.

16.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 16 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

17.     These Defendants-in-Intervention admit the allegations contained in paragraph 17 of the Complaint-in-Intervention for Declaratory Judgment.

18.     In response to paragraph 18 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

19.     In response to paragraph 19 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

20.     In response to paragraph 20 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

21.     In response to paragraph 21 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

22.     In response to paragraph 22 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second

*Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

23.     In response to paragraph 23 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

24.     In response to paragraph 24 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

25.     In response to paragraph 25 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

26.     In response to paragraph 26 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

27.     In response to paragraph 27 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

28.     In response to paragraph 28 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

29.     In response to paragraph 29 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

30.     In response to paragraph 30 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

31.     In response to paragraph 31 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

32.     In response to paragraph 32 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

33.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 33 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

34.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 34 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

35.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 35 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

36.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 36 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

37.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 37 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

38.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 38 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

39.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 39 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

40.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 40 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

41.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 41 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

42.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 42 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

43.      In response to paragraph 43 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention incorporate their responses to the preceding paragraphs as set forth above.

44.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 44 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

45.     In response to paragraph 45 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in paragraph 45 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

46.     In response to paragraph 46 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in paragraph 46 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

47.     In response to paragraph 47 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in

paragraph 47 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

48.     In response to paragraph 48 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in paragraph 48 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

49.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 49 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

50.     In response to paragraph 50 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in paragraph 50 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

51.     In response to paragraph 51 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in paragraph 51 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

52.     In response to paragraph 52 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in paragraph 52 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

53.     In response to paragraph 53 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the ATG's policy includes the language alleged in

paragraph 53 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

54.    In response to paragraph 54 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention incorporate their responses to the preceding paragraphs as set forth above.

55.    These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 55 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

56.    In response to paragraph 56 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the Master Service Agreement includes the language alleged in paragraph 56 but affirmatively state that the agreement speaks for itself and must be read and interpreted as a whole.

57.    In response to paragraph 57 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the Master Service Agreement includes the language alleged in paragraph 57 but affirmatively state that the agreement speaks for itself and must be read and interpreted as a whole.

58.    In response to paragraph 58 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit that the Master Service Agreement includes the language alleged in paragraph 58 but affirmatively state that the agreement speaks for itself and must be read and interpreted as a whole.

59.    In response to paragraph 59 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention incorporate their responses to the preceding paragraphs as set forth above.

60.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 60 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

61.     In response to paragraph 61 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the Second Amended Complaint speaks for itself and must be read and interpreted as a whole.

62.     In response to paragraph 62 of the Complaint-in-Intervention Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the Second Amended Complaint speaks for itself and must be read and interpreted as a whole.

63.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 63 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

64.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 64 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

65.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 65 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

66.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 66 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

67.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 67 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

68.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 68 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

69.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 69 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

70.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 70 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

71.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 71 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

72.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 72 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

73.     The allegations in paragraph 73 of the Complaint-in-Intervention for Declaratory judgment call for a legal conclusion and, therefore no response is necessary. To the extent a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 73 and, therefore deny same and demand strict proof thereof.

74.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 74 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

75.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 75 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

        WHEREFORE, Defendants-in-Intervention TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, on behalf of her minor child, A.J.R.R, request that this Court deny the relief sought by American Transportation Group Insurance Risk Retention Group, Inc., in its Complaint-in-Intervention for Declaratory Judgment.

                            Respectfully submitted,

                            GLASHEEN, VALLES & INDERMAN, LLP
                            P.O. Box 1976 (79408-1976)
                            1302 Texas Avenue
                            Lubbock, Texas 79401
                            (806) 776-1331 – Direct
                            (806) 329-0600 – Facsimile
                            Email: efile.inderman@gvilaw.com
                            Email: efile.pedro.leyva@gvilaw.com


                              /s/ Pedro Leyva
                            Chad Inderman
                            Pedro Leyva

                            And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454
505-717-1502 Facsimile
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed through the First Judicial District Court Odyssey File & Serve system, which caused all counsel of record to be served by electronic means, and that a courtesy copy was emailed on this **28th day of March 2022**.

Bradford C. Berge
Judd C. West
Julia Broggi
Holland & Hart, LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

Michael W. Magee
Mehaffy Weber
One Allen Center
500 Dallas Street, Suite 2800
Houston, TX 77002
michaelmagee@mehaffyweber.com

Matthew S. Rappaport
P.O. Box 25687
Albuquerque, NM 87125
Tel: (505) 842-1950
mrappaport@mstlaw.com
**ATTORNEYS FOR DEFENDANT EOG RESOURCES, INC.**

Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
Post Office Box 1888
Albuquerque, NM 87103
Tel: (505) 765-5900
Fax: (505) 768-1395
tcuff@rodey.com
**ATTORNEYS FOR DEFENDANT BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, LLC, AND BOBBY GARZA CONDE**

Courtenay L. Keller
RILEY KELLER ALDERETE GONZALES
3880 Osuna Road NE
Albuquerque, NM 87109
Tel: (505) 833-5030

**ATTORNEYS FOR HILLTOP SPECIALTY INSURANCE COMPANY**

Nicholas W. Chiado
Amy E. Headrick
BUTT THORNTON & BAEHR, PC
PO Box 3170
Albuquerque, NM 87190
Tel: (505) 884-0777
**ATTORNEYS FOR AMERICAN TRANSPORTATION GROUP INSURANCE RISK RETENTION GROUP, INC.**

                                         _/s/ Pedro Leyva_____
                                         Pedro Leyva

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/28/2022 4:45 PM
KATHLEEN VIGIL CLERK OF THE COURT
Judyn Martinez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R.

      Plaintiffs,

v.                                                          No. D-101-CV-2020-00899

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY
SERVICES, and BOBBY GARZA CONDE, JR,

      Defendants,

_____

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY
INSURANCE COMPANY,

      Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

      Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD
LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R,

      Defendants-in-Intervention.

**DEFENDANTS-IN-INTERVENTION TODD LOPEZ, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA, AND ESMERALDA RAMOS QUIRINO, ON BEHALF OF HER MINOR
CHILD, A.J.R.R.'S ANSWER TO HILLTOP SPECIALTY INSURANCE COMPANY'S
COMPLAINT-IN-INTERVENTION FOR DECLARATORY JUDGMENT**

      COMES NOW Defendants-in-Intervention TODD LOPEZ, as Personal Representative of the

Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS

1

QUIRINO, On behalf of her minor child, A.J.R.R., (hereinafter referred to as "Defendants-in-Intervention"), for their Answer to Hilltop Specialty Insurance Company f/k/a Hudson Specialty Insurance Company's Complaint-in-Intervention for Declaratory Judgment, state as follows:

## JURISDICTIONAL ALLEGATIONS

1.      These Defendants-in-Intervention admit the allegations contained in paragraph 1 of the Complaint-in-Intervention for Declaratory Judgment.

2.      These Defendants-in-Intervention admit the allegations contained in paragraph 2 of the Complaint-in-Intervention for Declaratory Judgment.

3.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 3 of the Complaint-in-Intervention for Declaratory Judgment.

4.      These Defendants-in-Intervention admit the allegations contained in paragraph 4 of the Complaint-in-Intervention for Declaratory Judgment.

5.      These Defendants-in-Intervention admit the allegations contained in paragraph 5 of the Complaint-in-Intervention for Declaratory Judgment.

6.      These Defendants-in-Intervention admit the allegations contained in paragraph 6 of the Complaint-in-Intervention for Declaratory Judgment.

7.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 7 of the Complaint-in-Intervention for Declaratory Judgment.

8.      These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 8 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

9.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 9 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

10.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 10 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

11.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 11 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

12.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 12 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

13.     These Defendants-in-Intervention admit the allegations contained in paragraph 13 of the Complaint-in-Intervention for Declaratory Judgment.

14.     These Defendants-in-Intervention admit the allegations contained in paragraph 14 of the Complaint-in-Intervention for Declaratory Judgment.

15.     These Defendants-in-Intervention admit the allegations contained in paragraph 15 of the Complaint-in-Intervention for Declaratory Judgment.

16.     These Defendants-in-Intervention admit the allegations contained in paragraph 16 of the Complaint-in-Intervention for Declaratory Judgment.

17.     These Defendants-in-Intervention admit the allegations contained in paragraph 17 of the Complaint-in-Intervention for Declaratory Judgment.

18.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 18 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

19.     These Defendants-in-Intervention admit the allegations contained in paragraph 19 of the Complaint-in-Intervention for Declaratory Judgment.

20.     In response to paragraph 20 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

21.     In response to paragraph 21 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

22.     In response to paragraph 22 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

23.     In response to paragraph 23 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

24.     In response to paragraph 24 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the

*Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

25.     In response to paragraph 25 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

26.     In response to paragraph 26 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

27.     In response to paragraph 27 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

28.     In response to paragraph 28 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

29.     In response to paragraph 29 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

30.     In response to paragraph 30 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

31.     In response to paragraph 31 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

32.     In response to paragraph 32 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

33.     In response to paragraph 33 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

34.     In response to paragraph 34 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the *Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

35.     In response to paragraph 35 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the allegations therein but affirmatively state that the

*Second Amended Complaint for Wrongful Death and Loss of Consortium* speaks for itself and must be read and interpreted as a whole.

36.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 36 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

37.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 37 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

38.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 38 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

39.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 39 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

40.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 40 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

41.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 41 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

42.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 42 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

43.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 43 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

44.     These Defendants-in-Intervention admit that Hilltop contends there is no coverage under the Hudson policies but deny the allegations contained in paragraph 44 of the Complaint-in-Intervention for Declaratory Judgment and demand strict proof thereof.

45.     These Defendants-in-Intervention admit that those are Hilltop's contentions contained in paragraph 45 but deny the allegations of the Complaint-in-Intervention for Declaratory Judgment and, therefore, and demand strict proof thereof.

46.     In response to paragraph 46 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 46 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

47.     In response to paragraph 47 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 47 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole and in the context of extrinsic evidence.

48.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 48 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

49.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 49 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

50.     In response to paragraph 50 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 50 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

51.     In response to paragraph 51 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 51 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

52.     In response to paragraph 52 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 52 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

53.     In response to paragraph 53 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 53 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

54.     In response to paragraph 54 of the Complaint-in-Intervention for Declaratory Judgment, these Defendants-in-Intervention admit the Hudson GCL policy includes the provisions alleged in paragraph 54 but affirmatively state that the policy speaks for itself and must be read and interpreted as a whole.

55.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 55 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

56.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 56 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

57.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 57 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

58.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 58 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

59.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 59 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

60.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 60 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

61.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 61 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

62.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 62 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

63.     These Defendants-in-Intervention admit the allegations contained in paragraph 63 of the Complaint-in-Intervention for Declaratory Judgment.

64.     The allegations contained in paragraph 64 of the Complaint-in-Intervention for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary. To the extent that a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 64 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

65.     The allegations contained in paragraph 65 of the Complaint-in-Intervention for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary. To the extent that a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 65 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

66.     The allegations contained in paragraph 66 of the Complaint-in-Intervention for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary. To the extent that a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 66 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

67.     The allegations contained in paragraph 67 of the Complaint-in-Intervention for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary. To the extent that a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 67 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

68.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 68 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

69.     The allegations contained in paragraph 69 of the Complaint-in-Intervention for Declaratory Judgment call for a legal conclusion and, therefore no response is necessary. To the extent that a response is deemed to be required, these Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 69 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

70.     These Defendant-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 70, 70a., 70b., 70c., 70d., 70e., 70f., 70g., 70h., and 70i. of the Complaint-in-Intervention for Declaratory Judgment and demand strict proof thereof.

71.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 71 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

72.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 72 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.

73.     These Defendants-in-Intervention are without sufficient information to admit or deny the allegations contained in paragraph 73 of the Complaint-in-Intervention for Declaratory Judgment and, therefore, deny same and demand strict proof thereof.


WHEREFORE, Defendants-in-Intervention TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R, request that this Court deny the relief sought by Hilltop Specialty Insurance Company f/k/a Hudson Specialty Insurance Company in its Complaint-in-Intervention for Declaratory Judgment.

Respectfully submitted,

GLASHEEN, VALLES & INDERMAN, LLP
P.O. Box 1976 (79408-1976)
1302 Texas Avenue
Lubbock, Texas 79401
(806) 776-1331 – Direct
(806) 329-0600 – Facsimile
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com


  */s/ Pedro Leyva*
Chad Inderman
Pedro Leyva

And

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454
505-717-1502 Facsimile
david@djnmlaw.com

**ATTORNEYS FOR PLAINTIFFS**

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed through the First Judicial District Court Odyssey File & Serve system, which caused all counsel of record to be served by electronic means, and that a courtesy copy was emailed on this **28th day of March 2022**.

Bradford C. Berge
Judd C. West
Julia Broggi
Holland & Hart, LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

Michael W. Magee
Mehaffy Weber
One Allen Center
500 Dallas Street, Suite 2800
Houston, TX 77002
michaelmagee@mehaffyweber.com

Matthew S. Rappaport
P.O. Box 25687
Albuquerque, NM 87125
Tel: (505) 842-1950
mrappaport@mstlaw.com
**ATTORNEYS FOR DEFENDANT EOG RESOURCES, INC.**

Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
Post Office Box 1888
Albuquerque, NM 87103
Tel: (505) 765-5900
Fax: (505) 768-1395
tcuff@rodey.com
**ATTORNEYS FOR DEFENDANT BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, LLC, AND BOBBY GARZA CONDE**

Courtenay L. Keller
RILEY KELLER ALDERETE GONZALES
3880 Osuna Road NE
Albuquerque, NM 87109
Tel: (505) 833-5030

**ATTORNEYS FOR HILLTOP SPECIALTY INSURANCE COMPANY**

Nicholas W. Chiado
Amy E. Headrick
Butt Thornton & Baehr, PC
PO Box 3170
Albuquerque, NM 87190
Tel: (505) 884-0777
**ATTORNEYS FOR AMERICAN TRANSPORTATION GROUP INSURANCE RISK RETENTION GROUP, INC.**

_/s/ Pedro Leyva_
Pedro Leyva

EXHIBIT AA

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
4/11/2022 10:53 AM
KATHLEEN VIGIL CLERK OF THE COURT
Desiree Brooks

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

TODD LOPEZ, as Personal Representative of the
Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA
GUERECA; and ESMERALDA RAMOS QUIRINO,
on behalf of her minor child, A.J.J.R.

      Plaintiffs,

v.                                   Case No. D-101-CV-2020-00899

EOG RESOURCES, INC.,
BEDROCK PETROLEUM CONSULTANTS, LLC,
RCG ENERGY SERVICES, LLC, and
ROBBY GARZA CONDE, JR,

      Defendants.

## <u>ORDER DENYING MOTION TO EXCEED PAGE LIMITS</u>

      THIS MATTER came before the Court on American Transportation Group Insurance Risk

Retention Group, Inc.'s Motion for Leave to Exceed Motion Page Limits. Having reviewed the

request, THE COURT FINDS, CONCLUDES AND ORDERS:

      1.      The Court has subject matter and personal jurisdiction in this case.

      2.      The American Transportation Group Insurance Risk Retention Group, Inc. is

asking for a page extension from the standard 10 page limit to 50 pages on its Motion for Summary

Judgment. This request is DENIED.

      3.      Excluding exhibits, the American Transportation Group Insurance Risk Retention

Group, Inc. will be allowed to file its Motion with a 20-page limitation instead of a 50-page

limitation.

So Ordered:

_____   4/11/2022

Matthew Wilson
District Court Judge

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that copies of this Order was served on the party listed below on the date this Order was accepted for filing by the Clerk's Office.

Chad Inderman
Pedro Leyva
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, Texas 79408
Tel: (806) 776-1331
Fax: (806) 329-0594
Email: efile.inderman@gvilaw.com
Email: efile.pedro.leyva@gvilaw.com

and

David J. Jaramillo
Jaramillo Law Firm, PC
505 Roma Ave. NW
Albuquerque, NM 87102
505-200-9454 (p)
505-717-1502 (f)
david@djnmlaw.com

## **ATTORNEYS FOR PLAINTIFFS**

Bradford C. Berge
Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Suite 1
P.O. Box 2208
Santa Fe, NM 87504
Tel: (505) 988-4421
Fax: (505) 983-6043
bberge@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

2

*   and

Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 210-8955
Facsimile: (713) 655-0222
michaelmagee@mehaffyweber.com

and

Matthew S. Rappaport
P.O. Box 25687
Albuquerque, NM 87125
Tel: (505) 842-1950
mrappaport@mstlaw.com

**ATTORNEYS FOR DEFENDANT EOG RESOURCES, INC.**

*   Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road N.E.
Albuquerque, NM 87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com

**ATTORNEYS FOR HILLTOP INSURANCE COMPANY**

Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
Post Office Box 1888
Albuquerque, NM 87103
Tel: (505) 765-5900
Fax: (505) 768-1395
tcuff@rodey.com

and

*   Daniel J. O'Brien
O'BRIEN & PADILLA, P.C.
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM 87110
(505) 883-8181

3

dobrien@obrienlawoffice.com

**ATTORNEYS FOR DEFENDANT BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, LLC, AND
BOBBY GARZA CONDE**

Jessica Vigil, TCAA

4

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
5/25/2022 4:03 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leticia Cunningham

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA**
**GUERECA, and ESMERALDA RAMOS QUIRINO,**
**On behalf of her minor child, A.J.R.R.**

      **Plaintiffs,**

v.                                                    No. D-101-CV-2020-00899

**EOG RESOURCES, INC.;**
**BEDROCK PETROLEUM CONSULTANTS, LLC,**
**RCG ENERGY SERVICES, and**
**BOBBY GARZA CONDE, JR,**

      **Defendants,**

v.

**AMERICAN TRANSPORTATION GROUP**
**INSURANCE RISK RETENTION GROUP, INC., and**
**HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a HUDSON SPECIALTY**
**INSURANCE COMPANY,**

      **Plaintiffs-in-Intervention,**

v.

**SUR TRANSPORTE, INC., EOG RESOURCES, INC.,**
**BEDROCK PETROLEUM CONSULTANTS, LLC,**
**RCG ENERGY SERVICES, and**
**BOBBY GARZA CONDE, JR, TODD LOPEZ,**
**as Personal Representative of the Estate of**
**APOLINAR JAQUEZ GARCIA; CYNTHIA**
**GUERECA, and ESMERALDA RAMOS QUIRINO,**
**On behalf of her minor child, A.J.R.R.,**

      **Defendants-in-Intervention.**

## STIPULATED ORDER GRANTING EOG RESOURCES, INC.'S UNOPPOSED MOTION FOR LEAVE TO EXCEED MOTION PAGE LIMITS

THIS MATTER having come before the Court on Defendant EOG Resources, Inc.'s *Unopposed Motion for Leave to Exceed Motion Page Limits*, the motion being unopposed, and the Court being otherwise fully advised in the premises FINDS the motion is well taken and is hereby granted.

IT IS THEREFORE ORDERED that the page limit for EOG Resources, Inc. to respond to American Transportation Group Insurance Risk Retention Group, Inc.'s summary judgment motion is hereby extended to twenty (20) pages and the page limit for EOG Resources, Inc. to respond to Hilltop Specialty Insurance Company's summary judgment motion is hereby extended to twenty-five (25) pages.

IT IS SO ORDERED.

5/25/2022

The Hon. Matthew J. Wilson
First Judicial District Judge

SUBMITTED BY:

/s/ Judd C. West
Judd C. West
John C. Anderson
HOLLAND & HART LLP
110 North Guadalupe, Ste. 1
Santa Fe, NM 87501
(505) 988-4421
jcwest@hollandhart.com
jcanderson@hollandhart.com

Michael W. Magee
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Ste. 2800
Houston, TX 77002
(713) 210-8955
michaelmagee@mehaffyweber.com

Matthew S. Rappaport
MILLER STRATVERT P.A.
P.O. Box 25687
Albuquerque, NM 87125
505-842-1950
mrappaport@mstlaw.com

*Counsel for EOG Resources, Inc.*

APPROVED AS TO FORM:

/s/ Amy E. Headrick (via email 05/24/22)
Amy E. Headrick
Nicholas W. Chiado
BUTT THORNTON & BAEHR, PC
PO Box 3170
Albuquerque, NM 87190
(505) 884-0777
aeheadrick@btblaw.com
nwchiado@btblaw.com

*Counsel for American Transportation Group
Insurance Risk Retention Group, Inc.*

*/s/ Courtenay L. Keller* (via email 05/24/22)
Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road NE
Albuquerque, NM  87109
ckeller@rileynmlaw.com
tkaselonis@rileynmlaw.com

*Counsel for Hilltop Specialty Insurance Company*

*/s/ Pedro Leyva* (via email 05/24/22)
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX  79408
(806) 776-1331
inderman@glasheenlaw.com
pedro.leyva@glasheenlaw.com

David J. Jaramillo
JARAMILLO LAW FIRM, PC
505 Roma Ave. NW
Albuquerque, NM  87102
505-200-9454
david@djnmlaw.com

*Counsel for Plaintiffs*

Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
P.O. Box 1888
Albuquerque, NM  87103
505-765-5900
tcuff@rodey.com

*/s/ Daniel J. O'Brien* (via email 05/24/22)
Daniel J. O'Brien
O'BRIEN & PADILLA, P.C.
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM  87110
505-883-8181
dobrien@obrienlawoffice.com

*Counsel for Bedrock Petroleum Consultants, LLC, RCG
Energy Services, LLC, and Bobby Garza Conde*

18945194_v4

EXHIBIT AC

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
5/26/2022 4:24 PM
KATHLEEN VIGIL CLERK OF THE COURT
Leticia Cunningham

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R.

      Plaintiffs,

v.                                  No. D-101-CV-2020-00899

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG
ENERGY SERVICES, and BOBBY GARZA CONDE, JR,

      Defendants,

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY
INSURANCE COMPANY,

      Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

      Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD
LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R,

      Defendants-in-Intervention.

---

### STIPULATED ORDER GRANTING DEFENDANTS BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES AND BOBBY GARZA CONDES' UNOPPOSED MOTION TO EXCEED PAGE LIMIT

    This matter having come before the Court on Defendants Bedrock petroleum Consultants, LLC,

RCG Energy Services and Bobby Garza Conde Jr.'s Motion to Exceed Page Limits for their Response to

in Opposition to Hilltop Specialty Insurance Company's Motion for Summary Judgment, the Motion being

unopposed, and the Court having review the Motion, FINDS it is well-taken and should be GRANTED.

    IT IS THEREFORE ORDERED that Defendants Bedrock petroleum Consultants, LLC, RCG

Energy Services and Bobby Garza Conde Jr.., are permitted to file their Response in Opposition to

Hilltop Specialty Insurance Company's Motion for Summary Judgment which exceeds the page limit

by twelve (12) pages.

5/26/2022

_____

HONORABLE MATTHEW JUSTIN WILSON

SUBMITTED:

O'BRIEN & PADILLA, P.C.

By: /s/ Daniel J. O'Brien
   DANIEL J. O'BRIEN
   6000 Indian School Rd. N.E., Suite 200
   Albuquerque, NM 87110
   (505) 883-8181
   dobrien@obrienlawoffice.com
   *Attorneys for Defendants Bedrock Petroleum*
   *Consultants, LLC, RCG Energy Services, and*
   *Bobby Garza Conde, Jr. on Complaints-in- Intervention*

APPROVED:

RILEY, SHANE & KELLER, P.A.

   *No Objection – 05/24/22*
By: *Courtenay L. Keller*
   Courtenay L. Keller
   Taryn M. Kaselonis
   3880 Osuna Road N.E.
   Albuquerque, NM 87109
   (505) 883-5030
   ckeller@rsk-law.com
   tkaselonis@rsk-law.com
   *Attorneys for Hilltop Insurance Company*

BUTT THORNTON & BAEHR, P.C.

11

*No Objection – 05/24/22*
By: *Amy E. Headrick*
    Amy E. Headrick
    Nicholas W. Chiado
    P.O. Box 3170
    Albuquerque, NM 87190-0777
    (505) 884-0777
    aeheadrick@btblaw.com
    nwchiado@btblaw.com
    *Attorneys for American Transportation Group Insurance Risk Retention Group, Inc.*

HOLLAND AND HART, LLP

*Approved as to form*
By: *Judd C. West – 05/24/22*
    John C. Anderson
    Judd C. West
    Julia Broggi
    P.O. Box 2208
    Santa Fe, NM 87504-2208
    (505) 988-4421
    jcanderson@hollandhart.com
    jcwest@hollandhart.com
    jbroggi@hollandhart.com
    *Attorneys for EOG Resources, Inc.*

and

Michael W. Magee
Mark M. Appling
MEHAFFYWEBER, P.C.
One Allen Center
500 Dallas Street, Suite 2800
Houston, TX 77002
(713) 210-8945
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com
*Attorneys for Defendant EOG Resources, Inc.*

and

Matthew S. Rappaport
MILLER STRATVERT, P.A.
P.O. Box 25687
Albuquerque, NM 87125
(505) 842-1950
mrappaport@mstlaw.com
*Attorneys for Defendant EOG Resources, Inc.*

GLASHEEN, VALLES, & INDERMAN, LLP

11

*No Objection – 05/25/22*

By: *Pedro Leyva, Jr.*
    Chad Inderman
    Pedro Leyva, Jr.
    P.O. Box 1976
    Lubbock, TX 79408
    (806) 776-1331
    inderman@gvilaw.com
    pedro.leyva@gvilaw.com
    *Attorneys for Plaintiffs*

and

JARAMILLO LAW FIRM, PC
David J. Jaramillo
505 Roma Ave. N.W.
Albuquerque, NM 87102
david@djnmlaw.com
*Attorneys for Plaintiffs*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

    *Approved as to form*
By: *Tyler M. Cuff – 05/24/22*
    Tyler M. Cuff
    Lauren Kedge
    P.O. Box 1888
    Albuquerque, NM 87103
    (505) 768-7267
    tcuff@rodey.com
    lkedge@rodey.com
    *Attorneys for Defendant Bedrock Petroleum Consultants, LLC,*
    *RCG Energy Services, LLC and Bobby Garza Conde*

11

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/20/2022 1:29 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

No. D-101-CV-2020-00899

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R.

       Plaintiffs,

v.

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, and BOBBY GARZA CONDE, JR,

       Defendants,

_____

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY INSURANCE COMPANY,

       Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

       Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD
LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA; CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child, A.J.R.R,

       Defendants-in-Intervention.

1

## <u>ORDER OF VOLUNTARY DISMISSAL</u>

This matter came before the Court on Plaintiffs' Motion To Voluntarily Dismiss Claims Against Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC, and Bobby Garza Conde, Jr. and to Amend Court Caption.

Plaintiffs' claims against Bedrock Petroleum Consultants, LLC and RCG Energy Services, LLC, are dismissed with prejudice with each party to bear its own costs and attorney fees. Plaintiffs' claims against Bobby Garza Conde, Jr. are dismissed without prejudice with each party to bear its own costs and attorney fees.

The Court caption shall reflect this dismissal and Bedrock Petroleum Consultants, LLC, RCG Energy Services, LLC, and Bobby Garza Conde, Jr. shall no longer be listed as defendants in this action.

IT IS SO ORDERED.

7/20/2022

The Honorable Matthew J. Wilson
First Judicial District Court Judge

Submitted and Approved By:

_Pedro Leyva_
Kevin Glasheen
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX 79408
Tel: (806) 776-1331
Fax: (806) 329-0594

2

efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com

and

David J. Jaramillo
JARAMILLO LAW FIRM, PC
505 Roma Ave. NW
Albuquerque, NM  87102
Tel: 505-200-9454
Fax: 505-717-1502
david@djnmlaw.com
*Counsel for Plaintiffs*

&
*Tyler Cuff*
Tyler M. Cuff
Seth L. Sparks
Lauren Kedge
RODEY, DICKASON, SLOAN, AKIN & ROBB
P.O. Box 1888
Albuquerque, NM  87103
Tel: 505-765-5900
Fax: 505-768-1395
tcuff@rodey.com
slsparks@rodey.com
lkedge@rodey.com
and
Daniel J. O'Brien
O'BRIEN & PADILLA, P.C.
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM  87110
Tel: 505-883-8181
dobrien@obrienlawoffice.com
*Counsel for Bedrock Petroleum Consultants, LLC, RCG*
*Energy Services, LLC, and Bobby Garza Conde*

3

EXHIBIT AE

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/25/2022 5:02 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**TODD LOPEZ, as Personal Representative**                    **No. D-101-CV-2020-00899**
**of the Estate of APOLINAR JAQUEZ GARCIA;**
**CYNTHIA GUERECA; and ESMERALDA**
**RAMOS QUIRINO, on behalf of her minor**
**Child, A.J.J.R.,**

        **Plaintiffs,**

**v.**

**EOG RESOURCES, INC.,**

        **Defendant.**

**STIPULATED PROPOSED JURY INSTRUCTIONS AND PRAECIPE**

        The parties jointly submit the following Stipulated Proposed Jury Instructions and Praecipe

in the above referenced matter.

                                  Respectfully submitted,

                                  */s/ Rosalind B. Bienvenu*
                                  Justin R. Kaufman
                                  Rosalind B. Bienvenu
                                  Caren I. Friedman
                                  **DURHAM, PITTARD & SPALDING, L.L.P.**
                                  505 Cerrillos Road, Suite A209
                                  Santa Fe, New Mexico 87501
                                  Telephone: (505) 986-0600
                                  Facsimile: (505) 986-0632
                                  jkaufman@dpslawgroup.com
                                  rbienvenu@dpslawgroup.com
                                  cfriedman@dpslawgroup.com

                                  Kevin Glasheen
                                    Chad Inderman
                                  Pedro Leyva
                                  **GLASHEEN, VALLES & INDERMAN, LLP**
                                  P.O. Box 1976 (79408-1976)

1302 Texas Avenue
Lubbock, Texas 79401
Telephone: (806) 776-1332
Facsimile: (806) 329-0595
kevin7@gvilaw.com
efile.indermand@gvilaw.com
efile.pedro.leyva@gvilaw.com

David J. Jaramillo
**JARAMILLO LAW FIRM, PC**
505 Roma Ave. NW
Albuquerque, NM 87102
Telephone: (505) 200-9454
Facsimile: (505) 717-1502

*Attorneys for Plaintiffs*

Agreed by:

*/s/ John C. Anderson (by email 7/25/2022)*
John C. Anderson
Judd C. West
Julia Broggi
**HOLLAND & HART LLP**
110 North Guadalupe, Ste. 1
Santa Fe, NM  87501
Tel: (505) 988-4421
Fax: (505) 983-6043
janderson@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

Michael W. Magee
Mark M. Appling
**MEHAFFY WEBER**
One Allen Center
500 Dallas Street, Ste. 2800
Houston, TX  77002
Tel: (713) 210-8955
Fax: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com

Matthew S. Rappaport
**MILLER STRATVERT P.A.**
P.O. Box 25687

Albuquerque, NM  87125
Tel: 505-842-1950
mrappaport@mstlaw.com

***Attorneys for Defendant EOG Resources, Inc.***


Other Parties Entitled to Notice:

Daniel J. O'Brien
**O'BRIEN & PADILLA, P.C.**
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM  87110
Tel: 505-883-8181
dobrien@obrienlawoffice.com

***Attorneys for Bedrock Petroleum Consultants, LLC,***
***RCG Energy Services, LLC, and Bobby Garza Conde***

Courtenay L. Keller
Taryn M. Kaselonis
**RILEY, SHANE & KELLER, P.A.**
3880 Osuna Road NE
Albuquerque, NM  87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com

***Attorneys for Hilltop Specialty Insurance Company***

Amy E. Headrick
Nicholas W. Chiado
**BUTT THORNTON & BAEHR P.C.**
P.O. Box 3170
Albuquerque, NM 87190
Telephone: (505) 884 0777
aehedrick@btblaw.com
nwchiado@btblaw.com

***Attorneys for American Transportation Group***
***Insurance Risk Retention Group, Inc.***

**Instructions Before Trial**

| No. | UJI No. | Title | Given | Denied | Mod. | W/D |
|-----|---------|-------|-------|--------|------|-----|
| 1 | UJI 13-101 NMRA | Voir Dire Orientation Statement | | | | |
| 2 | UJI 13-102A NMRA | Introduction of Court and Staff | | | | |
| 3 | UJI 13-103A NMRA | Scheduling During Trial | | | | |
| 4 | UJI 13-104A NMRA | Voir Dire Orientation Statement | | | | |
| 5 | UJI 13-105A NMRA | Oath to Jurors on Voir Dire Examination | | | | |
| 6 | UJI 13-106A NMRA | Voir Dire Explanation | | | | |
| 7 | UJI 13-107A NMRA | Voir Dire Questioning by the Court | | | | |
| 8 | UJI 13-108A NMRA | Oath to Empaneled Jury | | | | |
| 9 | UJI 13-109 NMRA | Introduction to Preliminary Instructions | | | | |
| 10 | UJI 13-110 NMRA | Conduct of Jurors | | | | |
| 11 | UJI 13-110C NMRA | Use of Interpreter | | | | |
| 12 | UJI 13-111 NMRA | Note Taking Permitted | | | | |
| 13 | UJI 13-112 NMRA | Questions by Jurors | | | | |
| 14 | UJI 13-113 NMRA | The Court | | | | |
| 15 | UJI 13-114 NMRA | Corporation a Party | | | | |
| 16 | UJI 13-115 NMRA | Two or More Plaintiffs | | | | |
| 17 | UJI 13-117 NMRA | Jury Duty to Consult | | | | |
| 18 | UJI 13-118 NMRA | Exclusion of Witnesses | | | | |
| 19 | UJI 13-119 NMRA | Opening Statements | | | | |

**Instructions During Trial**

| No. | UJI No. | Title | Given | Denied | Mod. | W/D |
|---|---|---|---|---|---|---|
| 20 | UJI 13-201 NMRA | Recess Instruction | | | | |
| 21 | UJI 13-202 NMRA | Discussion of Exhibits Prohibited | | | | |
| 22 | UJI 13-203 NMRA | Deposition Testimony | | | | |
| 23 | UJI 13-204 NMRA | Interrogatories | | | | |
| 24 | UJI 13-208 NMRA | Insurance Has No Bearing | | | | |
| 25 | UJI 13-213 NMRA | Expert Testimony | | | | |
| 26 | UJI 13-209 NMRA | Hypothetical Question | | | | |
| 27 | UJI 13-211 NMRA | Oath to Witness | | | | |
| 28 | UJI 13-212 NMRA | Oath to Interpreter | | | | |
| 29 | UJI 13-214 NMRA | Objections | | | | |

**Instructions After Trial**

| No. | UJI No. | Title | Given | Denied | Mod. | W/D |
|---|---|---|---|---|---|---|
| 30 | UJI 13-301 NMRA | Preliminary Statement | | | | |
| 31 | UJI 13-305 NMRA | Causation | | | | |
| 32 | UJI 13-307 NMRA | Rules of Evidence | | | | |
| 33 | UJI 13-308 NMRA | Circumstantial Evidence | | | | |
| 34 | UJI 13-401 NMRA | Agent; Principal; Definition | | | | |
| 35 | UJI 13-402 NMRA | Liability of Principal | | | | |
| 36 | UJI 13-403 NMRA | Employee-Employer; Definition (Master and Servant) | | | | |
| 37 | UJI 13-1601 NMRA | Negligence (Of All Persons); Definition | | | | |

| No. | UJI No. | Title | Given | Denied | Mod. | W/D |
|-----|---------|-------|-------|--------|------|-----|
| 38 | UJI 13-1603 NMRA | Ordinary Care | | | | |
| 39 | UJI 13-1604 NMRA | Duty to Use Ordinary Care | | | | |
| 40 | UJI 13-1616 NMRA | Accident Alone Not Negligence | | | | |
| 41 | UJI 13-1801 NMRA | Liability Must Be Determined Before Damages | | | | |
| 42 | UJI 13-1831 NMRA | Mortality Tables | | | | |
| 43 | UJI 13-1810A NMRA | Loss of Consortium; Definition | | | | |
| 44 | UJI 13-1810B NMRA | Loss of Consortium; Damages | | | | |
| 45 | UJI 13-1827 NMRA | Punitive Damages | | | | |
| 46 | UJI 13-2001 NMRA | Performance of Your Duties | | | | |
| 47 | UJI 13-2002 NMRA | Duty to Follow Instructions | | | | |
| 48 | UJI 13-2003 NMRA | Jury Sole Judges of Witnesses | | | | |
| 49 | UJI 13-2004 NMRA | Witness Impeached | | | | |
| 50 | UJI 13-2005 NMRA | Jury Sole Judges of the Facts | | | | |
| 51 | UJI 13-2006 NMRA | All Jurors to Participate | | | | |
| 52 | UJI 13-2007 NMRA | Closing Arguments | | | | |
| 53 | UJI 13-2009 NMRA | Verdict of Jury | | | | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 25th day of July, 2022, a true and correct copy of the foregoing was filed electronically through the Odyssey system with a request that it be served on all counsel of record via email through the Odyssey System.

<u>*/s/ Rosalind B. Bienvenu*</u>
Rosalind B. Bienvenu

7

## I.    INSTRUCTIONS BEFORE TRIAL

## INSTRUCTION 1

## VOIR DIRE ORIENTATION STATEMENT

Good morning, ladies and gentlemen:

You have been summoned here as prospective jurors.

Jury service is an honored tradition. From its beginning our country has relied on citizens to apply their collective wisdom, experience, and fact-finding abilities to decide disputes under the law.

**Civ. UJI 13-101 NMRA**

GIVEN            _____
REFUSED         _____
MODIFIED        _____
WITHDRAWN       _____

**INSTRUCTION 2**

**INTRODUCTION OF COURT AND STAFF**

I am Judge Matthew Wilson. My bailiff, who will escort you and assist in communicating with the court, is _____. My administrative assistant is _____. If you need anything during the trial [either] the bailiff [or the assistant] would be happy to help.

**Civ. UJI 13-102A NMRA**

GIVEN              _____
REFUSED         _____
MODIFIED       _____
WITHDRAWN   _____

**INSTRUCTION 3**

**SCHEDULING DURING TRIAL**

This trial is expected to last __ days. We will all do our best to move the case along, but delays will occur. During delays, I may be deciding legal questions in this case, or handling emergency matters in other cases.

The usual hours of trial will be from ___ a.m. to ___ p.m. with lunch and occasional rest breaks. Unless a different starting time is announced, please report to the jury room by ___ a.m. Do not come back into the courtroom until you are called by the bailiff.

**Civ. UJI 13-103A NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 4**

**VOIR DIRE ORIENTATION STATEMENT**

The case which you are about to try is a civil case, not a criminal case. It is a lawsuit filed by Todd Lopez, who is the personal representative of the wrongful death estate of Apolinar Jaquez Garcia, and Esmeralda Ramos Quirino, on behalf of her minor child Ariely Jaquez, who are the Plaintiffs, against EOG Resources, Inc., who is the Defendant.

In this case, Plaintiffs seek compensation from EOG for damages Plaintiffs say were caused by the negligence of EOG and Bobby Garza, for whom EOG is responsible. EOG denies what Plaintiffs say about negligence and denies any other wrongdoing.

**Civ. UJI 13-104A NMRA; UJI 13-302A–E NMRA**

GIVEN           _____
REFUSED         _____
MODIFIED        _____
WITHDRAWN       _____

**INSTRUCTION 5**

**OATH TO JURORS ON VOIR DIRE EXAMINATION**

Do you and each of you solemnly swear or affirm that you will well and truly answer any

and all questions asked you by the court or by the lawyers about your qualifications to serve as a

juror in this case?

**Civ. UJI 13-105A NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

**INSTRUCTION 6**

**VOIR DIRE EXPLANATION**

You now will be asked questions by me and by the lawyers so we can select the jury for this case. Each of you is under oath and must truthfully answer the questions. The court will not permit improper questions. Your answers should be straightforward and complete. You must speak out so the court and the lawyers for both sides can clearly hear your answers. If you would prefer not to answer any particular question in front of other people, please say so, and we will address your concerns privately.

We will select fourteen jurors to serve as the jury to hear this case. Two will be alternate jurors. We use alternates to avoid the time and expense of starting a new trial in the event one of you becomes sick or has an emergency. Twelve jurors will participate in final deliberations.

**Civ. UJI 13-106A NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

**INSTRUCTION 7**

**VOIR DIRE QUESTIONING BY THE COURT**

I will begin the preliminary questions. After my questions, the attorneys for the parties may have further questions. If your answer is "yes" to any of these questions, please raise your hand until you are noticed. Also, if, at any time, there is reason for you to change or add to the answers you made to the written questionnaire, please raise your hand.

I will first introduce the parties to the lawsuit.

*(NOTE: The court then introduces the plaintiffs. The court then introduces the defendant.)*

Do any of you know the plaintiffs: Todd Lopez, Apolinar Jaquez Garcia, and Esmeralda Ramos Quirino?

Do any of you know the family or friends of any of the plaintiffs?

Have any of you heard of Defendant EOG Resources, Inc.?

Have any of you or your family members been employed by Defendant EOG Resources, Inc.?

Defendant EOG Resources, Inc. is a publicly traded company. Do any of you own stock in EOG Resources, Inc.?

I will now introduce the attorneys for the parties.

*(NOTE: The court then introduces the attorneys for the plaintiffs. The court then introduces the attorneys for the defendant.)*

Do you know any of the attorneys for the plaintiffs: Kevin Glasheen, David Jaramillo, Pedro Leyva, Justin Kaufman, and Rosalind Bienvenu?

Do you know the family or friends of the attorneys for the plaintiffs?

Do you know any of the partners or associates of the attorneys for the plaintiffs?

14

Do you know any of the attorneys for Defendant EOG Resources, Inc.: John Anderson, Judd West, Michael Magee, Matthew Rappaport?

Do you know the family or friends of the attorneys for Defendant EOG Resources, Inc.?

Do you know any of the partners or associates of the attorneys for Defendant EOG Resources, Inc.?

Have you, any members of your family or any of your friends ever been sued or represented by any of the attorneys in this case or any of their partners or associates?

The following people may be called as witnesses in this case:

Bobby Garza
Reese Martin
Brian Chandler
Theodore Cabrera
Jorge Villareal
Dave Campbell
Jeff Leitzel
Greg McCormack
Laura Torres
Adrian Torres
Laura Rodriguez
Ariely Jaquez
Alberto Jaquez
Whitney Morgan
Gregg Perkins
Roger Craddock
Cynthia Guereca
Esmeralda Ramos Quirino
Francisco Renterra
Robert Conde Garza, Jr.
Luis Enrique Santoyo Villa

Has anyone heard or do you know anything about this case, any parties, any witnesses or any of the circumstances surrounding the case?

Have you learned about this case in the newspapers, on radio or television, or over the internet?

Have you heard anyone discussing this case or anything about the case?

15

*(NOTE: After identifying the subject of affirmative answers to the three foregoing questions, the court may wish to pursue in private, personally or through counsel for the parties, such responses as could prejudice the jury.)*

Can you think of any reason that would cause you to be uncomfortable, embarrassed, biased or prejudiced to serve as a juror in this case?

Is there any fact that might prevent you from returning a true verdict based solely upon the evidence presented here in court and the law which the court will later explain to you?

Do you now have an opinion, tendency or feeling, not known to the court, that might influence your verdict in this case?

Do you have any concern that if selected as a juror in this case you might not be able to render a fair and impartial verdict?

Does the anticipated time frame of this trial cause any hardships for any of you? Are there any daycare issues or other unavoidable scheduling conflicts that we need to be aware of?

Do any of you have any physical or other impairments, taking of scheduled medications, that need to be addressed? And I say this not to exclude you from service; however, there are special arrangements we can make for certain situations to assist you if you are selected as a juror.

The lawyers may now ask some questions.

**Civ. UJI 13-107A NMRA**

GIVEN              _____
REFUSED           _____
MODIFIED          _____
WITHDRAWN         _____

**INSTRUCTION 8**

**OATH TO EMPANELED JURY**

Do you and each of you solemnly swear or affirm that you will render a true verdict according to the law and evidence submitted?

**Civ. UJI 13-108A NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 9**

**INTRODUCTION TO PRELIMINARY INSTRUCTIONS**

I now have additional instructions for you about your job, my job and the job of the lawyers.

I will have other instructions during and at the end of the trial. You will also receive a written copy

of all instructions.

**Civ. UJI 13-109 NMRA**

GIVEN                   _____
REFUSED                 _____
MODIFIED                _____
WITHDRAWN               _____

**INSTRUCTION 10**

**CONDUCT OF JURORS**

Your job is to find and determine the facts in this case, which you must do solely upon the evidence received in court. There are a number of important rules governing your conduct during the trial.

First, you may discuss the evidence during the trial, but only among yourselves and only in the jury room when all of you are present. During the recesses and adjournments, while this case is in progress, do not discuss the case with anyone other than yourselves. The kinds of things you may discuss include the witnesses, their testimony, and exhibits. Be careful, however, not to make up your minds or try to convince others about the final outcome of the case until you have heard everything—all the evidence, the final instructions of law, and the attorneys' closing arguments. It would be unfair to the parties if you attempt to decide the outcome of the case before you begin final deliberations.

Second, it is for you to decide whether the witnesses know what they are talking about and whether they are being truthful. You may give the testimony of any witness whatever weight you believe it merits. You may take into account the witness's ability and opportunity to observe, any interest, bias or prejudice that the witness may have, and the reasonableness of the testimony considered in light of all the evidence in the case.

Third, to minimize the risk of accidentally overhearing something that is not evidence in this case, please continue to wear the jurors' badges while in and around the courthouse. If someone happens to discuss the case in your presence, report that fact at once to a member of the staff.

Fourth, though it is natural to visit with people you meet, please do not talk with any of the attorneys, parties, witnesses or spectators, either in or out of the courtroom. If you meet in the hallways or elevators, there is nothing wrong with saying "good morning" or "good afternoon," but your conversation should end there. If the attorneys, parties and witnesses do not greet you outside of court, or avoid riding in the same elevator with you, they are not being rude. They are just carefully observing this rule.

Fifth, do not consider anything you may have read or heard about the case outside the courtroom. During the trial and your deliberations, avoid news accounts of the trial, whether on radio, television, in the newspaper, on the internet or elsewhere. If you happen to see or hear any news account of the trial, please report that fact to a member of the staff.

Sixth, do not attempt any research, tests, experiments, visits to any locations involved in this case, or other investigation, including on the internet. It would be difficult or impossible to duplicate conditions shown by the evidence; therefore, your results would not be reliable. Such conduct also runs contrary to the rule that your verdict must be based solely upon the evidence presented to you. Nonetheless, in your deliberations, you need not ignore your backgrounds, including professional, vocational, and educational experience.

Seventh, because you are only to consider the evidence presented in the trial in this case, you may not use your computer or phone or other electronic device at any time to do any research on any issue arising in the trial or jury deliberations, or to comment on what is happening in the trial or jury deliberations. Specifically, you may not text-message or go to or use any social networking sites, including, but not limited to, Facebook, MySpace, LinkedIn, Twitter, and/or YouTube. Don't use internet dictionaries, Wikipedia, or any other source of information. You may rely only on the evidence presented in the trial in this case.

Last, there are at least two sides to every lawsuit. It is important that you keep an open mind and not decide any part of the case until the entire case has been completed and submitted to you. Your special responsibility as jurors demands that throughout this trial you exercise your judgment impartially and without regard to any sympathy, bias or prejudice.

These rules apply at all times during the trial—24 hours a day, 7 days a week—until you return a verdict in open court and are discharged by me.

**Civ. UJI 13-110 NMRA**

GIVEN                 _____
REFUSED              _____
MODIFIED             _____
WITHDRAWN         _____

## INSTRUCTION 11

## USE OF INTERPRETER

No matter what language people speak, they have a right to have their testimony heard and understood. You are about to hear a trial in which a court-certified interpreter will interpret for one or more of the witnesses. The interpreter is required to remain neutral. The interpreter is required to interpret what is spoken, or translate documents, between English and Spanish accurately and fairly to the best of the interpreter's skill and judgment.

Some of you may speak or understand Spanish. Ordinarily because the court-certified interpreters must abide by an oath and with standards and the ethics of their profession, their interpretation is presumed to be accurate. However, if based on your understanding of Spanish, you firmly believe that the interpreter has incorrectly interpreted either a question or a witness's response to the question, you may give the bailiff a note before the witness leaves the stand stating your concern. I will decide whether and how to address your concern.

If I decide to leave the interpretation as expressed by the interpreter you must only consider the interpreter's English interpretation, even if you still disagree with the interpreter's interpretation. What the witness(es) may have said in Spanish, before the interpreter's interpretation, is not evidence and may not be used by you in any way in your deliberations.

You must evaluate the interpreted testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

Keep in mind that a person might speak some English without speaking it fluently. That person has the right to the services of an interpreter. Therefore, you shall not give greater or lesser weight to a person's interpreted testimony even if you think the witness speaks some English.

**Civ. UJI 13-110C NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

**INSTRUCTION 12**

**NOTE TAKING PERMITTED**

You are allowed, but not required, to take notes during the trial. Note paper will be provided for this purpose. Notes should not take the place of your independent memory of the evidence. When taking notes, please remember the importance of paying close attention to the trial. Listening to and watching witnesses during their testimony will help you to assess their appearance, behavior, memory and whatever else bears on their believability.

At each recess you may leave your notes on your chair or take them with you to the jury room. At the end of the day, the bailiff will store your notes and return them to you when the trial resumes. At no time will anyone read your notes. At the end of the case the notes will be collected and destroyed.

**Civ. UJI 13-111 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 13**

**QUESTIONS BY JURORS**

Ordinarily, the attorneys will develop all pertinent evidence. It is the exception rather than the rule that an individual juror will have a question that remains unanswered after all of the evidence is presented. However, if you feel an important question has not been asked or answered, write it down on a piece of your notepaper and give it to the bailiff before the witness leaves the stand. I will decide whether or when your question will be asked. Rules of evidence or other considerations apply to questions you submit and may prevent the question from being asked. If the question is not asked, please do not give it any further consideration, and please do not hold it against either side that you did not get an answer.

**Civ. UJI 13-112 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 14**

**THE COURT**

It is my job to preside over the trial, decide and instruct on questions of law and rule upon what evidence may be admitted for your consideration.

No gesture, remark or comment I make should influence your decision in this case. At times I may ask questions of witnesses. If I do, such questions do not in any way indicate my opinion about the facts or indicate the weight I feel you should give to the testimony of the witness.

**Civ. UJI 13-113 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 15**

**CORPORATION A PARTY**

The defendant in this case, EOG Resources Inc., is a corporation. A corporation is entitled to the same fair and unprejudiced treatment as an individual and you should decide the case with the same impartiality as you would use in deciding a case between individuals.

**Civ. UJI 13-114 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 16**

**TWO OR MORE PLAINTIFFS**

Although there is more than one plaintiff in this action, it does not follow from that fact alone that if one is entitled to recover, another is entitled to recover. The rights of the various plaintiffs in this lawsuit are separate and distinct, and you should decide the issues as if each plaintiff had brought a separate lawsuit.

**Civ. UJI 13-115 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

28

**INSTRUCTION 17**

**JURY DUTY TO CONSULT**

In deliberating on this case, it is your duty to consult with one another and to decide the case only after an impartial consideration of the evidence. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion, if convinced it is wrong, but do not give up your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. Remember that you are not partisans but judges—judges of the facts. Your sole interest is to determine the truth from the evidence in the case.

**Civ. UJI 13-117 NMRA**

GIVEN      _____
REFUSED    _____
MODIFIED   _____
WITHDRAWN  _____

## INSTRUCTION 18

## EXCLUSION OF WITNESSES

The rule of exclusion of witnesses is in effect. This means that, until excused as a witness by me, all witnesses will remain outside the courtroom except when testifying. They will wait in the areas directed by the bailiff unless other arrangements have been made with the attorney who has called them. The rule also forbids witnesses from telling anyone but the lawyers what they will testify about or what they have testified to. If witnesses do talk to the lawyers about their testimony, other witnesses and jurors should avoid being present or overhearing.

The lawyers are directed to inform all witnesses of these rules and to remind them of their obligations. The parties and their lawyers should keep a careful lookout to prevent any potential witness from remaining in the courtroom if they enter by mistake.

**Civ. UJI 13-118 NMRA**

GIVEN       _____
REFUSED      _____
MODIFIED    _____
WITHDRAWN   _____

**INSTRUCTION 19**

**OPENING STATEMENTS**

A trial begins with the lawyers telling you what they expect the evidence to show. These statements and other statements made by the lawyers during the course of the trial can be of considerable assistance to you in understanding the evidence as it is presented at trial. Statements of the lawyers, however, are not themselves evidence. The evidence will be the testimony of witnesses, the exhibits, and any facts agreed to by the parties. After you have heard all the evidence, I will give you final instructions on the law. The lawyers will argue the case, and then you will retire to the jury room to arrive at a verdict.

The plaintiffs' attorney will now make an opening statement.

**Civ. UJI 13-119 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

II.     INSTRUCTIONS DURING TRIAL

**INSTRUCTION 20**

**RECESS INSTRUCTION**

During recess, do not discuss this case with anyone other than yourselves and, then, only in the jury room when all of you are present. Do not attempt to decide the outcome of the case before you begin final deliberations. Please continue to wear the jurors' badges while in and around the courthouse. If someone other than a fellow juror happens to discuss the case in your presence, report that fact at once to a member of the staff. If you happen to see or hear any news accounts of this trial, please report that fact to a member of the staff.

**Civ. UJI 13-201 NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

**INSTRUCTION 21**

**DISCUSSION OF EXHIBITS PROHIBITED**

When an exhibit is presented to you in open court, you should not discuss it with other

jurors. You should not point out to another juror matters that seem important to you. You should

not whisper back and forth with other jurors about the exhibit. You will have an opportunity to

discuss the exhibits in the jury room.


**Civ. UJI 13-202 NMRA**

GIVEN               _____
REFUSED             _____
MODIFIED            _____
WITHDRAWN           _____

**INSTRUCTION 22**

**DEPOSITION TESTIMONY**

A deposition is testimony taken under oath before trial and has been preserved in writing

or by video. This testimony is entitled to the same consideration as any other testimony at this trial.

**Civ. UJI 13-203 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 23**

**INTERROGATORIES**

Interrogatories are written questions asked by one party to another before trial and answered under oath. The questions and answers may be read at trial as evidence. The answers read to you are entitled to the same consideration as any other testimony.

**Civ. UJI 13-204 NMRA**

GIVEN              _____
REFUSED           _____
MODIFIED          _____
WITHDRAWN         _____

**INSTRUCTION 24**

**INSURANCE HAS NO BEARING**

The possible existence of any insurance or employment-related benefits has no bearing on whether the defendant was negligent or is liable, or on the amount of any damages that may be awarded to the plaintiffs.

**Civ. UJI 13-208 NMRA**

GIVEN _____

REFUSED _____

MODIFIED _____

WITHDRAWN _____

**INSTRUCTION 25**

**EXPERT TESTIMONY**

The Rules of Evidence do not ordinarily permit a witness to testify as to an opinion or conclusion. However, a witness who is qualified as an expert in a subject may be permitted to state an opinion as to that subject. After considering the reasons stated for an opinion, you should give it such weight as it deserves. You may reject an opinion entirely if you conclude that it is unsound.

**Civ. UJI 13-213 NMRA**

GIVEN        _____
REFUSED      _____
MODIFIED     _____
WITHDRAWN    _____

**INSTRUCTION 26**

**HYPOTHETICAL QUESTION**

An expert witness is permitted to state an opinion based upon a question which, for the purposes of trial, assumes as true certain facts which may or may not be true.

It will be for you in your deliberations, however, to determine from all of the evidence whether or not the facts assumed have been proved to be true.

**Civ. UJI 13-209 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

38

**INSTRUCTION 27**

**OATH TO WITNESS**

Do you solemnly swear or affirm under penalty of law that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

**Civ. UJI 13-211 NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

39

**INSTRUCTION 28**

**OATH TO INTERPRETER**

Do you solemnly swear or affirm that you will truly and impartially interpret or translate from English to Spanish and from Spanish to English all questions and answers and matters pertaining to this cause in an understandable manner using your best skills and judgment in accordance with the standards and ethics of the interpreter profession, under penalty of law?

**Civ. UJI 13-212 NMRA**

GIVEN                _____
REFUSED          _____
MODIFIED        _____
WITHDRAWN   _____

**INSTRUCTION 29**

**OBJECTIONS**

It is the job of a lawyer to object to questions, testimony or exhibits the lawyer believes may not be proper. I will sustain objections if the question or evidence sought is improper for you to consider. When I "sustain" an objection, the question or evidence is not allowed. You must not consider such evidence nor may you consider any evidence I have told you to disregard. By itself, a question is not evidence. You must not speculate about what would be the answer to a question that I rule cannot be answered. If I "overrule" an objection, then the question or evidence will be allowed.

**Civ. UJI 13-214 NMRA**

GIVEN                _____
REFUSED           _____
MODIFIED        _____
WITHDRAWN   _____

### III.    INSTRUCTIONS AFTER TRIAL

### INSTRUCTION 30

### PRELIMINARY STATEMENT

MEMBERS OF THE JURY:

The time has now come to give you final instructions that will guide your deliberations as the sole judges of the facts of this case.

First, I will summarize the issues between the parties. Second, I will state the rules of law governing this case.

Please pay close attention to these instructions. I will read them only once, but the written instructions will be given to you to take to the jury room.

**Civ. UJI 13-301 NMRA**

GIVEN                    _____
REFUSED                  _____
MODIFIED                 _____
WITHDRAWN                _____

**INSTRUCTION 31**

**CAUSATION**

An act or omission is a "cause" of harm if it contributes to bringing about the harm and if injury would not have occurred without it. It need not be the only explanation for the harm, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause," the act or omission, nonetheless, must be reasonably connected as a significant link to the harm.

**Civ. UJI 13-305 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 32**

**RULES OF EVIDENCE**

The evidence which you are to consider in this case consists of the testimony of the witnesses, the exhibits admitted into evidence by the court, any facts admitted or agreed to by counsel, and any facts which the court instructs you to accept as true.

The production of evidence in court is governed by rules of law. From time to time it has been my duty, as judge, to rule on the evidence. You must not concern yourselves with the reasons for these rulings. You should not consider what would or would not have been the answers to the questions which the court ruled could not be answered.

**Civ. UJI 13-307 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

44

**INSTRUCTION 33**

**CIRCUMSTANTIAL EVIDENCE**

A fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved.

**Civ. UJI 13-308 NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

45

**INSTRUCTION 34**

**AGENT; PRINCIPAL; DEFINITION**

An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation. The agreement may be oral or written, and may be either expressed or implied by a course of conduct showing an intention that the relationship exists.

**Civ. UJI 13-401 NMRA**

GIVEN            _____
REFUSED         _____
MODIFIED        _____
WITHDRAWN       _____

**INSTRUCTION 35**

**LIABILITY OF PRINCIPAL**

If you find there was a principal and agent relationship, the principal is liable for the acts

of its agent when:

1.      The agent was acting within the scope of his agency; and

2.       The principal had the right to control the manner in which the details of the work

were to be performed at the time of the occurrence, even though the right of control may not have

been exercised.

**Civ. UJI 13-402 NMRA**

GIVEN                    _____
REFUSED               _____
MODIFIED             _____
WITHDRAWN        _____

47

**INSTRUCTION 36**

**EMPLOYEE-EMPLOYER; DEFINITION (MASTER AND SERVANT)**

An employer is one who has another perform certain work and who has the right to control the manner in which the details of the work are to be done, even though the right of control may not be exercised.

The person performing the work is the employee.

**Civ. UJI 13-403 NMRA**

GIVEN           _____
REFUSED         _____
MODIFIED        _____
WITHDRAWN       _____

**INSTRUCTION 37**

**NEGLIGENCE (OF ALL PERSONS); DEFINITION**

The term "negligence" may relate either to an act or a failure to act.

An act, to be "negligence," must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to himself or to another and which such a person, in the exercise of ordinary care, would not do.

A failure to act, to be "negligence," must be a failure to do an act which one is under a duty to do and which a reasonably prudent person, in the exercise of ordinary care, would do in order to prevent injury to himself or to another.

**Civ. UJI 13-1601 NMRA**

GIVEN              _____
REFUSED           _____
MODIFIED          _____
WITHDRAWN         _____

49

**INSTRUCTION 38**

**ORDINARY CARE**

"Ordinary care" is that care which a reasonably prudent person would use in the conduct of the person's own affairs. What constitutes "ordinary care" varies with the nature of what is being done.

As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases. In deciding whether ordinary care has been used, the conduct in question must be considered in the light of all the surrounding circumstances.

**Civ. UJI 13-1603 NMRA**

GIVEN _____
REFUSED _____
MODIFIED _____
WITHDRAWN _____

**INSTRUCTION 39**

**DUTY TO USE ORDINARY CARE**

Every person has a duty to exercise ordinary care for the safety of the person and the property of others.

Every person also has a duty to exercise ordinary care for the person's own safety and the safety of his property.

**Civ. UJI 13-1604 NMRA**

GIVEN        _____
REFUSED      _____
MODIFIED     _____
WITHDRAWN    _____

**INSTRUCTION 40**

**ACCIDENT ALONE NOT NEGLIGENCE**

The mere happening of an accident is not evidence that any person was negligent. Neither the fact that damages are claimed due to the accident nor the fact that this lawsuit was filed is evidence of any negligence on the part of any person.

**Civ. UJI 13-1616 NMRA**

GIVEN        _____
REFUSED      _____
MODIFIED     _____
WITHDRAWN    _____

**INSTRUCTION 41**

**LIABILITY MUST BE DETERMINED BEFORE DAMAGES**

You are not to engage in any discussion of damages unless you have first determined that there is liability, as elsewhere covered in these instructions.

The fact that you are given instructions on damages is not to be taken as an indication as to whether the court thinks damages should or should not be awarded.

**Civ. UJI 13-1801 NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

53

**INSTRUCTION 42**

**MORTALITY TABLES**

According to a table of mortality, the life expectancy of persons aged ___ years is ___ additional years. This figure is not conclusive. It is the average life expectancy of persons who have reached that age. This figure may be considered by you in connection with other evidence relating to the probable life expectancy of Apolinar Jaquez Garcia, including evidence of his occupation, health, habits, and other activities, bearing in mind that some persons live longer and some live shorter than the average.

**Civ. UJI 13-1831 NMRA**

GIVEN          _____
REFUSED      _____
MODIFIED    _____
WITHDRAWN   _____

**INSTRUCTION 43**

**LOSS OF CONSORTIUM; DEFINITION**

Loss of consortium is a claim to recover compensation for damage to certain relationships. To recover for Ariely Jaquez's loss of consortium, Plaintiffs must show that Ariely Jaquez had a mutually dependent relationship with Apolinar Jaquez Garcia.  Mutual dependence means that she relied on the relationship with Apolinar Jaquez Garcia and could not enjoy life in the same way after his death. In deciding whether a relationship is mutually dependent, factors to consider may include:

The duration of the relationship;

The degree of mutual dependence;

The extent of common contributions to a life together;

The extent and quality of shared experience;

Whether the claimant and decedent were members of the same household;

Their emotional reliance on one another;

The particulars of their day-to-day relationship; and

The manner in which the claimant and decedent related to each other in addressing life's day-to-day requirements.

**Civ. UJI 13-1810A NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

55

**INSTRUCTION 44**

**LOSS OF CONSORTIUM; DAMAGES**

If you decide Plaintiffs have proven damage to a mutually dependent relationship between Ariely Jaquez and Apolinar Jaquez Garcia as a result of his death, you also must decide the amount of money that will reasonably compensate her for the harm she suffered from the loss of her relationship with Apolinar Jaquez Garcia. No fixed standard exists for deciding the amount of these damages. You must use your judgment to decide a reasonable amount of money to compensate the claimant.

**Civ. UJI 13-1810B NMRA**

GIVEN          _____
REFUSED        _____
MODIFIED       _____
WITHDRAWN      _____

**INSTRUCTION 45**

**PUNITIVE DAMAGES**

In this case, Plaintiffs seek to recover punitive damages from Defendant EOG Resources, Inc. You may consider punitive damages only if you find the plaintiffs should recover compensatory damages.

If you find that EOG's conduct was willful, reckless, or wanton, then you may award punitive damages against it.

Willful conduct is the intentional doing of an act with knowledge that harm may result.

Reckless conduct is the intentional doing of an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness.

Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's safety.

Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses. The amount of punitive damages must be based on reason and justice taking into account all the circumstances, including the nature and enormity of the wrong and such aggravating and mitigating circumstances as may be shown. The property or wealth of the defendant is a legitimate factor for your consideration. The amount awarded, if any, must be reasonably related to the injury and to any damages given as compensation and not disproportionate to the circumstances.

**Civ. UJI 13-1827 NMRA**

GIVEN            _____
REFUSED        _____

MODIFIED          _____
WITHDRAWN      _____

**INSTRUCTION 46**

**PERFORMANCE OF YOUR DUTIES**

Faithful performance by you of your duties is vital to the administration of justice.

**Civ. UJI 13-2001 NMRA**

GIVEN                    _____
REFUSED                  _____
MODIFIED                 _____
WITHDRAWN                _____

59

**INSTRUCTION 47**

**DUTY TO FOLLOW INSTRUCTIONS**

The law of this case is contained in these instructions and it is your duty to follow them.

You must consider these instructions as a whole, not picking out one instruction, or parts thereof,

and disregarding others.

**Civ. UJI 13-2002 NMRA**

GIVEN        _____
REFUSED      _____
MODIFIED     _____
WITHDRAWN    _____

**INSTRUCTION 48**

**JURY SOLE JUDGES OF WITNESSES**

You alone are the judges of the credibility of the witnesses and of the weight to be given

to the testimony of each of them. In determining the credit to be given to the testimony of any

witness, you may take into account the witness' ability and opportunity to observe, the witness'

memory, the witness' manner while testifying, any interest, bias or prejudice that the witness may

have and the reasonableness of the testimony, considered in light of all the evidence in the case.


**Civ. UJI 13-2003 NMRA**

GIVEN            _____
REFUSED          _____
MODIFIED         _____
WITHDRAWN        _____

61

**INSTRUCTION 49**

**WITNESS IMPEACHED**

A witness may be discredited or impeached by contradictory evidence or inconsistent conduct, or by evidence that at other times the witness has made material statements, under oath or otherwise, which are inconsistent with the present testimony of the witness.

If you believe that any witness has been impeached or discredited, it is your exclusive province to give the testimony of that witness only such credit as you may think it deserves.

**Civ. UJI 13-2004 NMRA**

GIVEN              _____
REFUSED           _____
MODIFIED          _____
WITHDRAWN      _____

**INSTRUCTION 50**

**JURY SOLE JUDGES OF THE FACTS**

You are the sole judges of all disputed questions of fact in this case. It is your duty to determine the true facts from the evidence produced here in open court. Your verdict should not be based on speculation, guess or conjecture.

You are to apply the law, as stated in these instructions, to the facts as you find them and, in this way, decide the case. Neither sympathy nor prejudice should influence your verdict.

**Civ. UJI 13-2005 NMRA**

GIVEN                    _____
REFUSED                 _____
MODIFIED               _____
WITHDRAWN           _____

**INSTRUCTION 51**

**ALL JURORS TO PARTICIPATE**

The jury acts as a body. Therefore, on every question on the verdict form which the jury must answer it is necessary that all jurors participate regardless of the vote on another question. Before a question can be answered, at least ten of you must agree upon the answer; however, the same ten need not agree upon each answer.

**Civ. UJI 13-2006 NMRA**

GIVEN            _____
REFUSED         _____
MODIFIED        _____
WITHDRAWN       _____

**INSTRUCTION 52**

**CLOSING ARGUMENTS**

After these instructions on the law governing this case, the lawyers may make closing arguments, or statements, on the evidence and the law. These summaries can be of considerable assistance to you in arriving at your decision and you should listen carefully. You may give them such weight as you think proper. However, neither these final discussions nor any other remarks or arguments of the attorneys made during the course of the trial are to be considered by you as evidence or as correct statements of the law, if contrary to the law given to you in these instructions.

**Civ. UJI 13-2007 NMRA**

GIVEN                 _____
REFUSED            _____
MODIFIED          _____
WITHDRAWN   _____

65

**INSTRUCTION 53**

**VERDICT OF JURY**

Upon retiring to the jury room, and before commencing your deliberations, you will select one of your members as foreperson.

You will be given the Court's instructions and a special verdict form.

When as many as ten of you have agreed upon a verdict and your answers to the questions presented on the special verdict form, your foreperson must sign the appropriate form and you will all then return to open court.

**Civ. UJI 13-2009 NMRA**

GIVEN         _____
REFUSED     _____
MODIFIED    _____
WITHDRAWN  _____

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/25/2022 4:42 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

No. D-101-CV-2020-00899

TODD LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R.

     Plaintiffs,

v.

EOG RESOURCES, INC.; BEDROCK PETROLEUM CONSULTANTS, LLC, RCG
ENERGY SERVICES, and BOBBY GARZA CONDE, JR,

     Defendants,

---

HILLTOP SPECIALTY INSURANCE COMPANY, f/k/a/ HUDSON SPECIALITY
INSURANCE COMPANY,

     Plaintiff-in-Intervention,

and

AMERICAN TRANSPORATION GROUP INSURANCE RISK RETENTION GROUP, INC.,

     Plaintiff-in-Intervention,

v.

SUR TRANSPORTE, INC., EOG RESOURCES, INC.; BEDROCK PETROLEUM
CONSULTANTS, LLC, RCG ENERGY SERVICES, BOBBY GARZA CONDE, JR, TODD
LOPEZ, as Personal Representative of the Estate of APOLINAR JAQUEZ GARCIA;
CYNTHIA GUERECA, and ESMERALDA RAMOS QUIRINO, On behalf of her minor child,
A.J.R.R.

     Defendants-in-Intervention.

## PRETRIAL SCHEDULING ORDER

This matter having come before the Court, the Court Orders the following:

The Motion in *Limine* Responses are due on July 18, 2022.

The Responses to Motions for Summary Judgment and any *Daubert/Alberico* Motions are

due on July 18, 2022.

The Replies to Motions for Summary Judgment and any *Daubert/Alberico* Motions are due

on July 22, 2022.

The Motions in *Limine*, Motions for Summary Judgment, and *Daubert/Alberico* Motions

will be heard on July 28, 2022.

IT IS SO ORDERED.

7/22/2022

The Honorable Matthew J. Wilson
First Judicial District Court Judge

Approved:

*Pedro Leyva*
Kevin Glasheen
Chad Inderman
Pedro Leyva
GLASHEEN, VALLES, & INDERMAN, LLP
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX  79408
Tel: (806) 776-1331
Fax: (806) 329-0594
efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com

and

David J. Jaramillo
JARAMILLO LAW FIRM, PC
505 Roma Ave. NW
Albuquerque, NM  87102
Tel: 505-200-9454
Fax: 505-717-1502
david@djnmlaw.com
*Counsel for Plaintiffs*

*Approved via email*
John C. Anderson
Judd C. West
Julia Broggi
HOLLAND & HART LLP
110 North Guadalupe, Ste. 1
Santa Fe, NM 87501
Tel: (505) 988-4421
Fax: (505) 983-6043
jcwest@hollandhart.com
jbroggi@hollandhart.com

and

Michael W. Magee
Mark M. Appling
MEHAFFYWEBER
One Allen Center
500 Dallas Street, Ste. 2800
Houston, TX 77002
Tel: (713) 210-8955
Fax: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com

*and*

Matthew S. Rappaport
MILLER STRATVERT P.A.
P.O. Box 25687
Albuquerque, NM 87125
Tel: 505-842-1950
mrappaport@mstlaw.com
*Counsel for EOG Resources, Inc.*

*Approved via email*
Tyler M. Cuff
RODEY, DICKASON, SLOAN, AKIN & ROBB
P.O. Box 1888
Albuquerque, NM 87103
Tel: 505-765-5900
Fax: 505-768-1395
tcuff@rodey.com

and

Daniel J. O'Brien
O'BRIEN & PADILLA, P.C.
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM  87110
Tel: 505-883-8181
dobrien@obrienlawoffice.com
*Counsel for Bedrock Petroleum Consultants, LLC, RCG
Energy Services, LLC, and Bobby Garza Conde*


*Approved via email*
Courtenay L. Keller
Taryn M. Kaselonis
RILEY, SHANE & KELLER, P.A.
3880 Osuna Road NE
Albuquerque, NM  87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com
*Counsel for Hilltop Specialty Insurance
Company*

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
7/26/2022 10:49 AM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**No. D-101-CV-2020-00899**

**TODD LOPEZ, as Personal Representative of the**
**Estate of APOLINAR JAQUEZ GARCIA;**
**CYNTHIA GUERECA, and ESMERALDA RAMOS**
**QUIRINO, On behalf of her minor child, A.J.R.R.,**

**Plaintiffs,**

v.

**EOG RESOURCES, INC.; BEDROCK PETROLEUM**
**CONSULTANTS, LLC, RCG ENERGY SERVICES, and**
**BOBBY GARZA CONDE, JR,**

**Defendants.**

## PRETRIAL ORDER

This matter having come before the Court on July 05, 2022, at a pretrial conference held

before Hon. Matthew J. Wilson, District Judge, Division IX, pursuant to Rule 1-016(E) NMRA,

and LR 1-404 of the Local Rules of the First Judicial District Court; and Kevin Glasheen, Pedro

Leyva, and David Jaramillo having appeared as counsel for Plaintiffs, Michael Magee, Matthew

Rappaport, John C. Anderson, and Judd West having appeared as counsel for Defendant EOG

Resources, Courtenay L. Keller having appeared as counsel for Plaintiff-in-Intervention Hilltop

Specialty Insurance Company f/k/a Hudson Specialty Insurance Company, Amy E. Headrick

having appeared as counsel for Plaintiff-in-Intervention American Transportation Group

Insurance Risk Retention Group, Inc., the following action was taken.

1.  **GENERAL NATURE OF THE PARTIES' CLAIMS.** The parties' claims are as follows:

    a.  **Plaintiffs' Claims**:

    This lawsuit arises out of the operation of a water re-use facility operated by the

Defendant EOG Resources, Inc. ("EOG" herein) in southeastern New Mexico, known as the

---

Hearns re-use facility.

EOG is engaged in the exploration, drilling, fracking, and production of oil and gas in the Permian Basin in West Texas and Southeastern New Mexico. After drilling, EOG will frac wells by injecting water to hydraulically fracture the subterranean rocks to force open existing fissures and extract oil and gas. The wells produce oil and gas, and water. The water is initially separated from the oil and gas at tank batteries and is carried to one of several water re-use facilities that EOG operates in the Permian Basin. The dirty produced water coming into the re-use facility is called "sludge," and it contains hydrocarbons and other contaminants.

At the re-use facility, EOG pumps the incoming sludge into an above ground storage tank to settle some solids. EOG injects hydrogen peroxide into the water to oxidize and help remove the iron, adds coagulants, runs the water through a bubbler, a skimmer and filter press to make the water clean enough to reuse for fracking.

On March 27, 2020, Defendant EOG wanted to transport sludge from its Hearns re-use facility to its Lomas re-use facility. The reason for needing to ship sludge from one EOG facility to another was that the filter press at the Hearns could not keep up with the fluids being treated at the facility. EOG hired Sur Transporte, a water truck company, to transport sludge from the Hearns to the Lomas facility. The filter press at the Lomas facility was not being used to capacity at the time. Bobby Garza was the EOG representative on site at the Hearns facility on March 27, 2020. Bobby Garza had only worked for EOG for a couple of months, which included a week of part-time training, mostly video, then about a month of shadowing another water re-use consultant. He had only been running a re-use facility for a few days before the incident. Bobby Garza's job at the site included overseeing the re-use facility and providing instruction to anyone working at the facility, including truck drivers. At all relevant times Bobby

Garza was acting as the agent or employee of EOG.

EOG keeps an ISO tank of concentrated hydrogen peroxide (34%) at the Hearns facility. The ISO tank in a chemical containment area, which is small low wall that surrounds the ISO tank to contain any spills. EOG had spilled 30 to 40 gallons of the hydrogen peroxide which was in the containment area. Concentrated hydrogen peroxide is a hazardous material under the federal regulations.

Pursuant to EOG's request, Apolinar Jaquez Garcia (Polo), a water truck driver and employee of Sur Transporte, arrived at the Hearns facility on the morning of March 27, 2020. He was instructed by Bobby Garza to load sludge and deliver it to the Lomas facility where it was to be pressed. After delivering the first load of sludge to the Lomas facility, Polo returned to the Hearns to load more sludge. When Polo arrived back at the Hearns, EOG's manager of the Hearns facility, Bobby Garza, instructed Polo to vacuum the hydrogen peroxide that had spilled inside of the chemical containment area into his water truck. Polo was never told the fluid he was putting inside his water tanker was hydrogen peroxide. Bobby Garza testified that he didn't know the spilled liquid was hydrogen peroxide, but instead thought it was water from a rain, or power washing of the ISO tank. Bobby Garza's supervisors testified that he admitted to them that he knew the material he had asked Polo to put in his vacuum truck was hydrogen peroxide. Bobby testified that he could not communicate with Polo because Polo did not speak English and Bobby does not speak Spanish.

Hydrogen peroxide is a hazardous material. Bobby Garza did not follow EOG procedures for a hazardous material spill. He should have contacted his supervisor, the EOG safety department and the EOG Environmental department, and the material should have been cleaned, transported, and disposed of according to hazardous material spill regulations. Bobby Garza

testified that he did not notify anyone of the spill; he did not test the spilled material to determine its nature; he did not know hydrogen peroxide was a hazardous material; he did not know that a vacuum truck was not an appropriate method of transporting hydrogen peroxide; he did not know that he was supposed to report the spill internally to EOG; he did not know that it was dangerous to mix hydrogen peroxide with organic compounds; he did not know that oil is an organic compound; and he thought it would be "ok" to transport hydrogen peroxide in a vacuum truck if it was "diluted with water."

Bobby Garza did not remember whether the training he had received from EOG included anything about hazardous materials, and EOG has no records of having trained Bobby Garza on hazardous materials, including concentrated hydrogen peroxide.

EOG violated the law regarding shipping hazardous materials. EOG did not inform Polo that the liquid was a hazardous material. EOG did not provide Polo with any shipping papers describing the hazardous materials as required by federal law. EOG and Bobby Garza failed to provide Polo with a safety data sheet describing the hazardous nature of hydrogen peroxide or provide the hazmat placards that EOG was required to furnish.

Pursuant to EOG's instructions, Polo began to vacuum up the spill—which unbeknownst to him was hydrogen peroxide. Polo's truck began loudly venting vapor, which Garza heard and went to investigate. Garza instructed Polo to flush his tank with 40 to 50 barrels of fresh water and dump the tank into the above-ground storage tank, which Polo did. Garza did not tell Polo to abandon the task of transporting the rest of the spilled material and sludge. Polo then vacuumed the rest of the spill and filled his truck with sludge as instructed. He then left the Hearns facility to unload at the Lomas facility. When Polo arrived at the Lomas facility, he backed his water truck to the sludge tanks. Polo got off his truck and began walking to the back of the truck when

Todd Lopez, et al. v. EOG Resources, Inc., et al.
Pretrial Order

Page 4 of 16

his tanker exploded and killed him.

Plaintiffs bring wrongful death claims on behalf of Polo's estate and a loss of consortium claim on behalf of Polo's minor daughter. Plaintiffs allege that EOG was negligent, and that it is liable for the negligence of its agents and/or employees, including Bobby Garza under the doctrine of respondeat superior. EOG's negligence and/or the negligence of its agents and/or employees, including Bobby Garza, was a cause of Polo's death and Plaintiffs' damages.

EOG's conduct also constitutes violations of the following laws, and as such its negligence is negligence per se.

    A.  49 CFR § 172.200 regarding description of hazardous materials;

    B.  49 CFR § 172.201 regarding shipping papers;

    C.  49 CFR § 172.202, § 172.203 regarding description of hazardous materials on shipping papers;

    D.  49 CFR § 172.204 regarding shipper's certification;

    E.  49 CFR § 172.205 regarding hazardous waste manifest;

    F.  49 CFR § 172.328 regarding hazardous material placards;

    G.  49 CFR § 172.400 regarding general labeling requirements;

    H.  49 CFR § 172.400 regarding placarding requirements; and

    I.  49 CFR § 172.704 regarding training requirements.

In addition, EOG's acts or omissions were intentional, malicious, willful, reckless and/or wanton, as those terms are defined by New Mexico law, and therefore Plaintiffs are entitled to punitive damages as well. The aggregate conduct of EOG and its agents and/or employees, including Bobby Garza, demonstrates the malicious, willful, reckless, and/or wanton intent of EOG.

In the event Bobby Garza, or other actors, are found to be independent contractors,

pleading in the alternative, EOG failed to exercise reasonable care and acted negligently and carelessly in selecting, supervising, and training Bedrock Petroleum, Bobby Garza, and RCG Energy, as contractors, knowing the dangers involved in the work they would be performing.

**b. Defendant EOG Resources' Claims**

In this matter, Defendant EOG Resources, Inc. denies any allegations of negligence in regard to the events of March 27, 2020 and denies that any of its actions were the proximate cause of Apolinar Jaquez Garcia's death.   EOG further denies that it is vicariously liable for the action and/or inaction of Bedrock Petroleum Consultants, LLC, Bobby Garza, or RCG Energy Services, LLC.

EOG is an oil and gas exploration and production company that owns and operates water reuse facilities in Artesia, New Mexico.   In March 2020, EOG had a contract with Bedrock Petroleum Consultants, LLC ("Bedrock") through which Bedrock provided EOG with consultants who ran the day-to-day operations at the water reuse facilities.   Bedrock employed Bobby Garza through his company RCG Energy Services, LLC.   Through Bedrock, Mr. Garza was a Water Reuse Consultant at EOG facilities beginning in January 2020.

EOG also had a contract with Sur Transporte, Inc. a USDOT registered and authorized motor carrier.   As a USDOT registered and authorized motor carrier, Sur Transporte and its employees were required to comply with USDOT Federal Motor Carrier Safety Regulations, Federal Motor Vehicle Safety Standards, and the Hazardous Carrier Safety Regulations.   To comply with the applicable regulations, Sur Transporte and/or its employees needed to obtain a material safety data sheet for all transports for a proper description of the type of cargo being transported.

Pursuant to its contract with EOG, Sur Transporte moved sludge from EOG's Hearns

facility to EOG's Lomas facility. Sur Transporte employed Mr. Garcia who held a valid Mexican Licencia Federales de Conductor (#CHIH201591), with both "B" and "E" endorsement. The "B" endorsement is roughly comparable to a U.S. Class A CDL with a tank and doubles endorsement. The "E" endorsement is roughly comparable to a U.S. Class A CDL with a hazmat, tank, and doubles endorsement. As a professional truck driver with a hazardous materials endorsement, Mr. Garcia was required to be knowledgeable regarding hazardous materials, including an understanding of various labels, placards, and signage at EOG facilities where he was operating.

On March 27, 2020, Mr. Garcia was moving sludge between the Lomas and Hearns facilities. While at the Hearns facility Mr. Garza asked Mr. Garcia to vacuum a puddle of clear liquid, later determined to be hydrogen peroxide, from the containment area at the Hearns facility. At the time he issued this instruction, Mr. Garza did not know the clear liquid was hydrogen peroxide and believed it to be water. While Mr. Garcia was vacuuming the puddle, his truck began to smoke, and Mr. Garcia ceased vacuuming the puddle. Mr. Garza was inside his office while this was happening, but he heard a louder than usual noise which caused him to leave his office. Mr. Garza did not witness the truck smoking but instructed Mr. Garcia to pull approximately thirty to forty barrels of fresh water to flush the pump and tank. After flushing the pump and tank, Mr. Garcia, without instruction, returned to the containment area and continued vacuuming the clear liquid that caused his truck to smoke. Mr. Garcia then loaded more sludge at the Hearns facility and again returned to the Lomas Rojas facility to unload the sludge. When he arrived at the Lomas facility, Mr. Garcia backed his truck to the sludge tanks. As he was walking to the back of his truck the tank suddenly exploded, killing Mr. Garcia.

At some point shortly after Mr. Garcia's truck began smoking, he spoke to his wife

Esmeralda Ramos. During this conversation Mr. Garcia expressed that he was frightened by his truck smoking earlier in the day. Mr. Garcia also expressed that he did not want to go back to the containment area and load his truck because he was fearful.

In this matter, Plaintiffs' claim that EOG's action and/or inaction proximately caused Mr. Garcia's death. Plaintiffs' claim is not supported by the evidence. Plaintiffs' also claim that EOG is vicariously liable for Bedrock, Mr. Garza, and RCG Energy Services; however, there is no evidence that EOG ratified the actions and/or inaction of Bedrock, Mr. Garza, or RCG Energy Services. Plaintiffs cannot show that EOG had the requisite culpable mental state to support their claim for punitive damages.

2. **UNCONTROVERTED FACTS:** The parties are willing to further stipulate to the following facts:

1. The explosion that killed Apolinar Jaquez Garcia occurred on March 27, 2020.

2. Defendant EOG owned and operated the Hearns and Lomas Rojas Reuse Facilities.

3. EOG recruited Garza, interviewed him, and instructed Bedrock to put him on payroll.

4. EOG trained Garza.

5. EOG supervised Garza.

6. Bedrock did not train or supervise Garza.

7. EOG provided Garza with a phone, laptop and an EOG email address.

8. EOG required Garza to follow EOG policies and procedures, and could fire him if he did not do so.

9. EOG made Garza's work schedule, Bedrock did not.

10. Garza asked Apolinar Jaquez Garcia to clean up a spill from the Hearns Reuse Facility spill containment area around the 34% hydrogen peroxide tank and transport it in his vacuum truck along with hydrocarbons to the Lomas Reuse Facility on March 27, 2020.

11. Neither EOG nor Garza informed Apolinar Jaquez Garcia that the liquid he was cleaning up and transporting was hydrogen peroxide, or that it was a hazardous material.

12. The fluid in the chemical containment area that Bobby Garza instructed Apolinar Jaquez Garcia to clean with his water truck was hydrogen peroxide.

13. The hydrogen peroxide reacted with the hydrocarbons and other chemicals in the vacuum truck to cause the explosion that killed Apolinar Jaquez Garcia.

14. Apolinar Jaquez Garcia died at the scene due to the injuries he sustained as a result of the explosion.

15. Hydrogen peroxide is a hazardous material under federal law.

16. After Mr. Garcia vacuumed up the first batch of hydrogen peroxide in the early afternoon, his truck began to vent vapor.

17. At or about the time that Mr. Garcia's truck began to vent vapor, Bobby Garza instructed Mr. Garcia to run 30 or 40 barrels of fresh water through the truck. Mr. Garcia did so.

18. Hydrogen peroxide is a hazardous material under federal law.

19. On March 27, 2020, and at all material times, Apolinar Garcia was an employee of Sur Transporte, Inc.

3. **CONTESTED FACTS:** The contested issues of fact are:

a. **Plaintiffs' Contentions**

1. Bobby Garza was EOG's agent or employee acting within the scope of his agency or employment at the time of the incident.

2. EOG had the right to control the manner in which the details of Bobby Garza's work was to be performed at the time of the incident, even though the right of control may not have been exercised.

3. Bobby Garza was the highest level EOG agent or employee onsite at the Hearns facility on March 27, 2020.

4. Bedrock acted as a "payroll service" for some EOG employees, including Garza.

5. EOG violated applicable federal regulations dealing with the cleanup and shipping of hazardous materials.

6. EOG failed to properly warn Apolinar Jaquez Garcia about the identity and hazards of material they asked him to clean up and transport.

7. EOG breached a duty of care in hiring, training, and supervising Bobby Garza.

8.      EOG's negligence was a cause of Apolinar Jaquez Garcia's death and Plaintiffs' damages.

9.      EOG's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith.

10.     Plaintiffs suffered compensatory and punitive damages.

### b.   Defendant EOG's Contentions

1.      At the time he asked Mr. Garcia to clean up the spill in the containment area, Bobby Garza did not know that the clear liquid was in fact hydrogen peroxide.

2.      Mr. Garcia recognized, or should have recognized, the dangerous condition caused by vacuuming up the hydrogen peroxide after his truck began to smoke and became hot to the touch.

3.      The explosion that caused Mr. Garcia's death was caused by his own decision to go back to the containment area a second time to vacuum up additional hydrogen peroxide despite his awareness of the dangers of doing so.

4.      EOG's conduct was not willful, reckless, wanton or malicious and no award of punitive damages is justified.

5.      At or around the time that his truck began to smoke, Mr. Garcia called his ex-wife and expressed to her his fear about the situation.

6.      Mr. Garcia had training in the handling and transportation of hazardous materials.

7.      Pursuant to EOG's safety policies, Mr. Garcia had authority to direct a work stoppage if he believed there existed an unsafe condition on the worksite.

8.      No one acting on behalf of EOG directed or requested Mr. Garcia to go back to the containment area and continue to vacuum up the hydrogen peroxide after doing so caused his truck to emit smoke earlier in the afternoon.

### 4.  UNCONTESTED ISSUES OF LAW:

a.     This Court has jurisdiction over this matter and venue is proper.

### 5.  CONTESTED ISSUES OF LAW: The contested issues of law in addition to those implicit in the foregoing issues of fact are:

### a.   Plaintiffs' Contentions:

1. Whether EOG was negligent.

2. Whether Bobby Garza was negligent.

3. Whether EOG is liable for the negligence of Bobby Garza.

4. Whether EOG's negligence was a cause of Apolinar Jaquez Garcia's death and Plaintiffs' damages.

5. Whether Bobby Garza's negligence was a cause of Apolinar Jaquez Garcia's death and Plaintiffs' damages.

6. Whether EOG's conduct was malicious, willful, reckless, and/or wanton.

7. The amount of Plaintiffs' damages.

**b. Defendant EOG's Contested Issues of Law**

1. Whether any action or omission on the part of EOG was a proximate cause of the explosion that killed Mr. Garcia.

2. Whether EOG is vicariously liable for Bedrock Petroleum, Mr. Garza, or RCG Energy Resources.

3. Whether and to what extent the United States Constitution and/or the New Mexico Constitution impose limits on an award of punitive damages.

## 6. EXHIBITS:

**a. Plaintiffs**

Attached as **Exhibit A** is Plaintiffs' Exhibit List.

**b. Defendant EOG Resources**

EOG's trial exhibit list is attached as **Exhibit B.**

## 7. WITNESSES:

**Plaintiffs**

Pursuant to the Court's Scheduling Order, please see Plaintiffs' List of Witnesses filed on July 05, 2022, for a list of witnesses who will or may testify at trial.

---

a. **Plaintiffs will call or have available at trial**:

Bobby Garza
Reese Martin, as a fact witness and as EOG corporate representative
Brian Chandler
Theodore Cabrera
Jorge Villareal
Dave Campbell
Jeff Leitzel
Greg M. McCormack
Laura Torres
Adrian Torres
Laura Rodriguez
The minor Plaintiff A.J.R.R.
Alberto Jaquez

b. **Plaintiffs may call**:

EOG's corporate rep present at trial
Whitney Morgan
Gregg Perkins
Roger Craddock
Rebuttal witnesses as needed

**Defendants:**

c. **Defendant EOG Resources will call or have available at trial:**
Reese Martin
Whitney Morgan
Roger Craddock
Cynthia Guereca
Esmeralda Ramos Quirino

d. **Defendant EOG Resources may call:**
Brian Chandler
Francisco Renterra
Robert Conde Garza, Jr.,
Luis Enrique Santoyo Villa
Jorge Eduardo Villareal
Theodore Cabrera

## 8. DEPOSITION OFFERS:

Please see the Parties' page and line designations filed on **July 05, 2022**. Please see the Parties' Counter-designations and objections filed by **July 12, 2022.**

9. **JURY INSTRUCTIONS:** Pursuant to the Court's scheduling order, all proposed jury instructions shall be filed on or before **July 25, 2022**, subject to the right of counsel to supplement such instructions during the course of the trial. In accordance with the Court's Rule 16(B) Scheduling Order, jury instructions shall be filed and presented to the Court in three packets. One packet shall consist of those instructions which are stipulated to by all parties. A second packet shall consist of Plaintiffs' additional proposed instructions. The third packet shall consist of Defendants' additional proposed instructions. Each jury instruction submitted shall indicate the UJI source for such instruction. In connection with any modification(s) sought from UJI language, counsel shall indicate in bold typeface on each such instruction any and all proposed modification(s) from New Mexico uniform jury instructions. In addition, the legal authority for any proposed modification shall be set forth at the conclusion of each proposed jury instruction.

10. **LENGTH OF TRIAL:** The following number of days will be set for trial: **8 days.**

11. **SETTLEMENT:** The possibility of settlement of this case is considered: **unlikely.**

12. **MODIFICATION; INTERPRETATION.** This order shall control the entire course of the trial and may not be modified except by court order upon agreement of the parties or to prevent manifest injustice. The pleadings will be deemed merged herein. In the event of ambiguity in any provision of the order, reference may be made to the pleadings.

7/26/22

HONORABLE MATTHEW J. WILSON
DISTRICT JUDGE

**APPROVED BY:**

*Counsel for Plaintiffs*:

*/s/ Kevin Glasheen*
Kevin Glasheen
Chad Inderman
Pedro Leyva
**GLASHEEN, VALLES & INDERMAN, LLP**
1302 Texas Avenue (79401)
P.O. Box 1976
Lubbock, TX  79408
Tel: (806) 776-1331
Fax: (806) 329-0594
efile.inderman@gvilaw.com
efile.pedro.leyva@gvilaw.com

David J. Jaramillo
**JARAMILLO LAW FIRM, PC**

505 Roma Ave. NW
Albuquerque, NM  87102
Tel: 505-200-9454
Fax: 505-717-1502
david@djnmlaw.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87507
Telephone: 505-986-0600
Facsimile: 505-986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

***Counsel for Defendant EOG Resources, Inc.:***

*/s/ John C. Anderson*
John C. Anderson
Judd C. West
Julia Broggi
**HOLLAND & HART LLP**
110 North Guadalupe, Ste. 1
Santa Fe, NM  87501
Tel: (505) 988-4421
Fax: (505) 983-6043
jcwest@hollandhart.com
jbroggi@hollandhart.com

Michael W. Magee
Mark M. Appling
**MEHAFFYWEBER**
One Allen Center
500 Dallas Street, Ste. 2800
Houston, TX  77002
Tel: (713) 210-8955
Fax: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com

Matthew S. Rappaport
**MILLER STRATVERT P.A.**
P.O. Box 25687

---

Albuquerque, NM  87125
Tel: 505-842-1950
mrappaport@mstlaw.com


19324082_v1

**EXHIBIT A**

Plaintiffs' Trial Exhibit List

| NO. | DESCRIPTION | BATES/ DEPO EXHIBIT | TENDERED | ADMITTED | OBJECTION |
|---|---|---|---|---|---|
| P1. | Aerial photo of Hearns facility | P 000207 | | | |
| P2. | Aerial photo of Lomas facility | P 000172 | | | |
| P3. | Concentrated Hydrogen Peroxide Safety Data Sheet | EOG 1616-1628 | | | |
| P4. | Crimson Chemicals 34% Hydrogen Peroxide Bill of Lading | EOG 1331 | | | |
| P5. | Hydrogen Peroxide Properties Sheet | Depo Exhibit 32 | | | |
| P6. | EOG Complete Safety Manual | EOG 0460-0747 | | | |
| P7. | EOG Safety Manual Hazard Communication Section | EOG 564-577 | | | |
| P8. | EOG Safety Manual Emergency Responses Section | EOG 524-525 | | | |
| P9. | Pages from CDL Manual produced by EOG's Whitney Morgan | Depo Exhibit 35 | | | |
| P10. | Aerial photo of Hearns facility labeled from Depo Exhibit 12 | | | | |
| P11. | Map of Hearns to Lomas | | | | |

| | | | | | |
|---|---|---|---|---|---|
| P12. | Hearns Surveillance Video Clip | Depo Exhibit 15 | | | |
| P13. | Hearns Surveillance Video Clip | Depo Exhibit 16 | | | |
| P14. | Hearns Surveillance Video Clip | Depo Exhibit 17 | | | |
| P15. | Hearns Surveillance Video Clip | Depo Exhibit 18 | | | |
| P16. | Hearns Surveillance Video Clip | Depo Exhibit 19 | | | |
| P17. | Hearns Surveillance Video Clip | Depo Exhibit 20 | | | |
| P18. | Hearns Surveillance Video Clip | Depo Exhibit 21 | | | |
| P19. | Hearns Surveillance Video Clip | Depo Exhibit 22 | | | |
| P20. | Hearns Surveillance Video Clip | Depo Exhibit 23 | | | |
| P21. | Hearns Surveillance Video Clip | Depo Exhibit 24 | | | |
| P22. | Hearns Surveillance Video Clip | Depo Exhibit 25 | | | |
| P23. | Hearns Surveillance Video Clip | Depo Exhibit 26 | | | |
| P24. | Lomas Surveillance Video Clip | P 000156 | | | |
| P25. | Photo of Truck Apolinar was driving | EOG 0445 | | | |
| P26. | Photo of water tanker taken evening of | P 000023 | | | |

| | incident | | | | |
|---|---|---|---|---|---|
| P27. | Photo of water tanker side view | P 000047 | | | |
| P28. | Drone photo of water truck | P 000204 | | | |
| P29. | Photo of Deceased Apolinar at scene | P 000107 | | | |
| P30. | Drone photo of Lomas facility | P 000161 | | | |
| P31. | Photo of chemical containment area | P 000491 | | | |
| P32. | Photos of DAF tank | P 000488 | | | |
| P33. | Photo of Hearns facility sign | P 000484 | | | |
| P34. | Photos of frac tanks | P 000464 | | | |
| P35. | Photo of filter press | P 000574 | | | |
| P36. | Photo of Polo and Arely with a Pinata's head | P 000962 | | | |
| P37. | Photo of Polo and Arely at graduation | P 000963 | | | |
| P38. | Photo of Polo, Arely, and Alberto Hiking | P 000964 | | | |
| P39. | Photo of Polo, Alberto, and Arely with a Pinata's head | P 000965 | | | |
| P40. | Photo of Polo and Arely with hands inside fish tank | P 000966 | | | |
| P41. | Photo of Alberto and Polo | P 000967 | | | |
| P42. | Photo of Polo and Arely | P 000968 | | | |
| P43. | Photo of Polo and Arely swimming | P 000971 | | | |

| | | | | | |
|---|---|---|---|---|---|
| P44. | Photo of Polo and Arely | P 000972 | | | |
| P45. | Photo of Polo and Arely Dancing | P 000973 | | | |
| P46. | Photo of Polo and Arely with birthday cake | P 000975 | | | |
| P47. | Photo of Polo and Arely with Arely's painting | P 000976 | | | |
| P48. | EOG and Bedrock Emails | Depo Exhibit 29 | | | |
| P49. | 49 CFR § 172.200 | Depo Exhibit 36 | | | |
| P50. | 49 CFR § 172.202 | Depo Exhibit 37 | | | |
| P51. | 49 CFR § 172.204 (Depo Exhibit 38) | Depo Exhibit 38 | | | |
| P52. | EOG Incident Report | EOG 0119-0136 | | | |
| P53. | List of Reuse Facilities | Depo Exhibit 13 | | | |
| P54. | EOG Produced Water Safety Data Sheet | EOG 2334-2343 | | | |
| P55. | Hearns Surveillance Videos | EOG 2370 | | | |
| P56. | Lomas Surveillance Videos | EOG 2371 | | | |
| P57. | Hearns Surveillance Videos | EOG 2372 | | | |
| P58. | Lomas Surveillance Videos | EOG 2373 | | | |
| P59. | Perkin CV | P 860-862 | | | |
| P60. | McCormack CV | P 871-873 | | | |

| P61. | Figure 2 to McCormack's Report | | | | |
|---|---|---|---|---|---|
| P62. | Autopsy Report | P 916-960 | | | |
| P63. | Photo EOG Office Building in Midland, TX | P 000977 | | | |

1. Any documents introduced, identified, or disclosed by Plaintiffs through discovery.

2. Any documents introduced, identified, or disclosed by Defendants through discovery.

3. Defendants' Answers to Plaintiffs' Interrogatories.

4. Defendants' Responses to Plaintiffs' Request for Admissions.

5. Defendants' Responses to Plaintiffs' Request for Production.

6. Any and all deposition exhibits.

7. Any and all photographs provided to Defendants or provided to Plaintiffs regarding the incident made the basis of Plaintiffs' Complaint, received or sent via discovery.

8. Any and all exhibits identified or introduced by the Defendants.

9. Any additional exhibits identified later will be disclosed.

## EXHIBIT B

Defendant EOG Resources, Inc.'s Trial Exhibit List

| EXHIBIT NO. | DESCRIPTION | TENDERED | ADMITTED | OBJECTION |
|---|---|---|---|---|
| D1 | EOG Resources Safe Practices January 2016 Manual | | | |
| D2 | Driver Sign-in Sheet for 3/23/2020 to 3/26/2020 | | | |
| D3 | PBELAB Summary Report | | | |
| D4 | Sur Transporte MSA | | | |
| D5 | Sur Transporte Certificate of Insurance | | | |
| D6 | Master Incident Report No. 134365 | | | |
| D7 | PRELAB Analytical Report | | | |
| D8 | Photographs of Sur Transporte Truck | | | |
| D9 | Photographs of chemical containment area at Hearns facility | | | |
| D10 | Photographs of Lomas Rojas facility | | | |
| D11 | Photographs of personal items of Apolinar Jacquez Garcia | | | |
| D12 | Garcia Work Tickets | | | |
| D13 | Hearns Reuse Water Facility Form C-147 | | | |
| D14 | MSDS Sheets from Crimson Chemicals | | | |
| D15 | Video of Hearns Facility | | | |
| D16 | Video of Lomas Rojas Facility | | | |
| D17 | EOG Produced Water Safety Data Sheet | | | |
| D18 | Innospec Safety Data Sheet | | | |
| D19 | CV of Whitney Morgan | | | |
| D20 | CV of Roger Craddock | | | |
| D21 | American Petroleum Institute – Safe Operation of Vacuum Trucks in Petroleum Service | | | |

19307307_v1

EXHIBIT AH

## John C. Anderson

| | |
|---|---|
| **From:** | John C. Anderson |
| **Sent:** | Tuesday, July 26, 2022 12:29 PM |
| **To:** | Roz Bienvenu; Julia Broggi; Judd C. West; Ruth Sougstad; Matthew S. Rappaport; Debbie D. Seybold; Magee, Michael W.; cheriewatson@mehaffyweber.com; Courtenay Keller; Amy Headrick; nwchiado@btblaw.com; Tyler Cuff; mmendoza@rodey.com; llamas@rodey.com; lkedge@rodey.com; ssparks@rodey.com; Kevin Glasheen; Chad; Pedro Leyva; Amanda Deer; Erika Simpson; David Jaramillo (david@djnmlaw.com); mark@djnmlaw.com; Justin Kaufman |
| **Subject:** | RE: Jaquez Garcia v. EOG Resources, et al. - Plaintiffs' Proposed Jury Instructions |

Roz,

By way of follow-up to your email below, in light of the decision not to pursue the loss of consortium claim on behalf of Ms. Guereca, would you agree to dismiss her as a plaintiff?

Thanks.



John C. Anderson
Partner, Holland & Hart LLP
110 N. Guadalupe St., Suite 1, Santa Fe, NM 87501
T 505.954.7290 M 505.919.8389

**HOLLAND&HART**



CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail.

**From:** Roz Bienvenu <rbienvenu@dpslawgroup.com>
**Sent:** Monday, July 25, 2022 3:08 PM
**To:** John C. Anderson <JCAnderson@hollandhart.com>; Julia Broggi <JBroggi@hollandhart.com>; Judd C. West <JCWest@hollandhart.com>; Ruth Sougstad <RSougstad@hollandhart.com>; Matthew S. Rappaport <mrappaport@mstlaw.com>; Debbie D. Seybold <dseybold@mstlaw.com>; Magee, Michael W. <michaelmagee@mehaffyweber.com>; cheriewatson@mehaffyweber.com; Courtenay Keller <ckeller@rileynmlaw.com>; Amy Headrick <aeheadrick@btblaw.com>; nwchiado@btblaw.com; Tyler Cuff <tcuff@rodey.com>; mmendoza@rodey.com; llamas@rodey.com; lkedge@rodey.com; ssparks@rodey.com; Kevin Glasheen <Kevin7@glasheenlaw.com>; Chad <Inderman@glasheenlaw.com>; Pedro Leyva <Pedro.Leyva@glasheenlaw.com>; Amanda Deer <amanda.deer@glasheenlaw.com>; Erika Simpson <Erika.Simpson@glasheenlaw.com>; David Jaramillo (david@djnmlaw.com) <david@djnmlaw.com>; mark@djnmlaw.com; Justin Kaufman <jkaufman@dpslawgroup.com>
**Subject:** RE: Jaquez Garcia v. EOG Resources, et al. - Plaintiffs' Proposed Jury Instructions

**External Email**

Hi John,

Attached is an updated set of stipulated instructions, reflecting our discussion. Please let me know if this looks good to you, or if you have any other thoughts. I made the edits we discussed on 13-104A, 13-107A, and 13-2009. A few additional notes:

We agreed on your edits to/inclusion of the following:
- 13-102A (Introduction of Court and Staff);
- 13-114 (Corporation a Party);
- 13-115 (Two or More Plaintiffs);
- 13-117 (Jury Duty to Consult);
- 13-1616 (Accident Alone Not Negligence).

We disagreed on your edits to/inclusion of the following:
- 13-302 (Statement of Theories of Recovery, etc.);
- 13-304 (Burden of Proof);
- 13-306 (Independent Intervening Cause);
- 13-406 (Employer Sued; Employment and Scope of Employment Denied);
- 13-407 (Scope of Employment; Definition);
- 13-1822 (Future Damages; Discount to Present Cash Value);
- 13-1830 (Wrongful Death Damages);
- 13-2218 (Comparative Negligence; No Comparison Among Defendants or Non-Parties; General Verdict);
- 13-2219 (Comparative Negligence; Comparison Among Defendants and Non-Parties; General Verdict).

On 13-103A (Scheduling During Trial), our draft originally stated the trial would last one week, while your draft said 8 days. I reverted to a blank for the Court to fill in as appropriate. Also, I'm confirming we will not be pursuing a claim for loss of consortium by Cynthia Guereca at trial.

Please let me know if I missed anything. With EOG's approval, I'll file and submit to the court.

Thanks!
Roz



**Rosalind B. Bienvenu**  *Partner* (Licensed in NM, TX, and NY)
rbienvenu@dpslawgroup.com
**DURHAM, PITTARD & SPALDING, LLP** | dpslawgroup.com
505 Cerrillos Road, Suite A209 | Santa Fe, New Mexico 87501
505.986.0600 | 505.986.0632 (fax)
Practicing Civil Appeals & Strategic Litigation Support

---

**From:** John C. Anderson <JCAnderson@hollandhart.com>
**Sent:** Sunday, July 24, 2022 3:53 PM
**To:** Roz Bienvenu <rbienvenu@dpslawgroup.com>; Julia Broggi <JBroggi@hollandhart.com>; Judd C. West <JCWest@hollandhart.com>; Ruth Sougstad <RSougstad@hollandhart.com>; Matthew S. Rappaport <mrappaport@mstlaw.com>; Debbie D. Seybold <dseybold@mstlaw.com>; Magee, Michael W. <michaelmagee@mehaffyweber.com>; cheriewatson@mehaffyweber.com; Courtenay Keller <ckeller@rileynmlaw.com>; Amy Headrick <aeheadrick@btblaw.com>, nwchiado@btblaw.com; Tyler Cuff <tcuff@rodey.com>; mmendoza@rodey.com; llamas@rodey.com; lkedge@rodey.com; ssparks@rodey.com; Kevin Glasheen <Kevin7@glasheenlaw.com>; Chad <Inderman@glasheenlaw.com>; Pedro Leyva <Pedro.Leyva@glasheenlaw.com>; Amanda Deer <amanda.deer@glasheenlaw.com>; Erika Simpson <Erika.Simpson@glasheenlaw.com>; David Jaramillo (david@djnmlaw.com) <david@djnmlaw.com>;

[mark@djnmlaw.com](mailto:mark@djnmlaw.com); Justin Kaufman <[jkaufman@dpslawgroup.com](mailto:jkaufman@dpslawgroup.com)>; Amy J. Gross <[AJGross@hollandhart.com](mailto:AJGross@hollandhart.com)>
**Subject:** RE: Jaquez Garcia v. EOG Resources, et al. - Plaintiffs' Proposed Jury Instructions

Roz,

I have attached a redline markup of Plaintiffs' set of jury instructions reflecting the following:

Those with no markup are agreeable as drafted. For others, we have proposed changes which, if accepted by Plaintiffs, would make the instruction also agreeable to EOG. We have also removed some instructions to which EOG will not agree and which should be submitted separately by Plaintiffs. Finally, we have proposed some additional instructions in track changes beyond those proposed by Plaintiffs.

Please let us know if the proposed changes in certain instructions are agreeable to Plaintiffs and whether Plaintiffs will agree to any or all of the additional instructions proposed by EOG.

Thanks.

John C. Anderson
Partner, Holland & Hart LLP
110 N. Guadalupe St., Suite 1, Santa Fe, NM 87501
T 505.954.7290 M 505.919.8389





CONFIDENTIALITY NOTICE: This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail.

---

**From:** Roz Bienvenu <[rbienvenu@dpslawgroup.com](mailto:rbienvenu@dpslawgroup.com)>
**Sent:** Friday, July 22, 2022 1:43 PM
**To:** John C. Anderson <[JCAnderson@hollandhart.com](mailto:JCAnderson@hollandhart.com)>; Julia Broggi <[JBroggi@hollandhart.com](mailto:JBroggi@hollandhart.com)>; Judd C. West <[JCWest@hollandhart.com](mailto:JCWest@hollandhart.com)>; Ruth Sougstad <[RSougstad@hollandhart.com](mailto:RSougstad@hollandhart.com)>; Matthew S. Rappaport <[mrappaport@mstlaw.com](mailto:mrappaport@mstlaw.com)>; Debbie D. Seybold <[dseybold@mstlaw.com](mailto:dseybold@mstlaw.com)>; Magee, Michael W. <[michaelmagee@mehaffyweber.com](mailto:michaelmagee@mehaffyweber.com)>; cheriewatson <[cheriewatson@mehaffyweber.com](mailto:cheriewatson@mehaffyweber.com)>; Courtenay Keller <[ckeller@rileynmlaw.com](mailto:ckeller@rileynmlaw.com)>; Amy Headrick <[aeheadrick@btblaw.com](mailto:aeheadrick@btblaw.com)>; [nwchiado@btblaw.com](mailto:nwchiado@btblaw.com); Tyler Cuff <[tcuff@rodey.com](mailto:tcuff@rodey.com)>; [mmendoza@rodey.com](mailto:mmendoza@rodey.com); [llamas@rodey.com](mailto:llamas@rodey.com); [lkedge@rodey.com](mailto:lkedge@rodey.com); [ssparks@rodey.com](mailto:ssparks@rodey.com); Kevin Glasheen <[Kevin7@glasheenlaw.com](mailto:Kevin7@glasheenlaw.com)>; Chad <[lnderman@glasheenlaw.com](mailto:lnderman@glasheenlaw.com)>; Pedro Leyva <[Pedro.Leyva@glasheenlaw.com](mailto:Pedro.Leyva@glasheenlaw.com)>; Amanda Deer <[amanda.deer@glasheenlaw.com](mailto:amanda.deer@glasheenlaw.com)>; Erika Simpson <[Erika.Simpson@glasheenlaw.com](mailto:Erika.Simpson@glasheenlaw.com)>; David Jaramillo ([david@djnmlaw.com](mailto:david@djnmlaw.com)) <[david@djnmlaw.com](mailto:david@djnmlaw.com)>; [mark@djnmlaw.com](mailto:mark@djnmlaw.com); Justin Kaufman <[jkaufman@dpslawgroup.com](mailto:jkaufman@dpslawgroup.com)>
**Subject:** Jaquez Garcia v. EOG Resources, et al. - Plaintiffs' Proposed Jury Instructions

**External Email**

Hi all,

Please find attached Plaintiffs' proposed jury instructions. Per the pretrial order, we'll need to submit our sets of stipulated and opposed instructions to the Court on Monday, July 25. Please let me know which of these can be agreed, and I'm happy to prepare a stipulated set for approval. In particular, I suspect most of the pre-trial and during-trial instructions can be agreed now.

I'm available this afternoon or Monday to discuss, if a call would be helpful.

Thanks,
Roz



**Rosalind B. Bienvenu**  *Partner* (Licensed in NM, TX, and NY)
rbienvenu@dpslawgroup.com
**DURHAM, PITTARD & SPALDING, LLP** | dpslawgroup.com
505 Cerrillos Road, Suite A209 | Santa Fe, New Mexico 87501
505.986.0600 | 505.986.0632 (fax)
Practicing Civil Appeals & Strategic Litigation Support

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
7/25/2022 5:02 PM
KATHLEEN VIGIL CLERK OF THE COURT
Johnny Enriquez-Lujan

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**TODD LOPEZ, as Personal Representative**                    **No. D-101-CV-2020-00899**
**of the Estate of APOLINAR JAQUEZ GARCIA;**
**CYNTHIA GUERECA; and ESMERALDA**
**RAMOS QUIRINO, on behalf of her minor**
**Child, A.J.J.R.,**

       **Plaintiffs,**

**v.**

**EOG RESOURCES, INC.,**

       **Defendant.**

### STIPULATED PROPOSED JURY INSTRUCTIONS AND PRAECIPE

      The parties jointly submit the following Stipulated Proposed Jury Instructions and Praecipe

in the above referenced matter.


                          Respectfully submitted,

                          */s/ Rosalind B. Bienvenu*
                          Justin R. Kaufman
                          Rosalind B. Bienvenu
                          Caren I. Friedman
                          **DURHAM, PITTARD & SPALDING, L.L.P.**
                          505 Cerrillos Road, Suite A209
                          Santa Fe, New Mexico 87501
                          Telephone: (505) 986-0600
                          Facsimile: (505) 986-0632
                          jkaufman@dpslawgroup.com
                          rbienvenu@dpslawgroup.com
                          cfriedman@dpslawgroup.com

                          Kevin Glasheen
                          Chad Inderman
                          Pedro Leyva
                          **GLASHEEN, VALLES & INDERMAN, LLP**
                          P.O. Box 1976 (79408-1976)

1302 Texas Avenue
Lubbock, Texas 79401
Telephone: (806) 776-1332
Facsimile: (806) 329-0595
kevin7@gvilaw.com
efile.indermand@gvilaw.com
efile.pedro.leyva@gvilaw.com

David J. Jaramillo
**JARAMILLO LAW FIRM, PC**
505 Roma Ave. NW
Albuquerque, NM 87102
Telephone: (505) 200-9454
Facsimile: (505) 717-1502

*Attorneys for Plaintiffs*

Agreed by:

*/s/ John C. Anderson (by email 7/25/2022)*
John C. Anderson
Judd C. West
Julia Broggi
**HOLLAND & HART LLP**
110 North Guadalupe, Ste. 1
Santa Fe, NM  87501
Tel: (505) 988-4421
Fax: (505) 983-6043
janderson@hollandhart.com
jcwest@hollandhart.com
jbroggi@hollandhart.com

Michael W. Magee
Mark M. Appling
**MEHAFFY WEBER**
One Allen Center
500 Dallas Street, Ste. 2800
Houston, TX  77002
Tel: (713) 210-8955
Fax: (713) 655-0222
michaelmagee@mehaffyweber.com
markappling@mehaffyweber.com

Matthew S. Rappaport
**MILLER STRATVERT P.A.**
P.O. Box 25687

Albuquerque, NM  87125
Tel: 505-842-1950
mrappaport@mstlaw.com

***Attorneys for Defendant EOG Resources, Inc.***


Other Parties Entitled to Notice:

Daniel J. O'Brien
**O'BRIEN & PADILLA, P.C.**
6000 Indian School Rd. N.E., Suite 200
Albuquerque, NM  87110
Tel: 505-883-8181
dobrien@obrienlawoffice.com

***Attorneys for Bedrock Petroleum Consultants, LLC,
RCG Energy Services, LLC, and Bobby Garza Conde***

Courtenay L. Keller
Taryn M. Kaselonis
**RILEY, SHANE & KELLER, P.A.**
3880 Osuna Road NE
Albuquerque, NM  87109
ckeller@rsk-law.com
tkaselonis@rsk-law.com

***Attorneys for Hilltop Specialty Insurance Company***

Amy E. Headrick
Nicholas W. Chiado
**BUTT THORNTON & BAEHR P.C.**
P.O. Box 3170
Albuquerque, NM 87190
Telephone: (505) 884 0777
aehedrick@btblaw.com
nwchiado@btblaw.com

***Attorneys for American Transportation Group
Insurance Risk Retention Group, Inc.***

**INSTRUCTION 43**

**LOSS OF CONSORTIUM; DEFINITION**

Loss of consortium is a claim to recover compensation for damage to certain relationships. To recover for Ariely Jaquez's loss of consortium, Plaintiffs must show that Ariely Jaquez had a mutually dependent relationship with Apolinar Jaquez Garcia.  Mutual dependence means that she relied on the relationship with Apolinar Jaquez Garcia and could not enjoy life in the same way after his death. In deciding whether a relationship is mutually dependent, factors to consider may include:

The duration of the relationship;

The degree of mutual dependence;

The extent of common contributions to a life together;

The extent and quality of shared experience;

Whether the claimant and decedent were members of the same household;

Their emotional reliance on one another;

The particulars of their day-to-day relationship; and

The manner in which the claimant and decedent related to each other in addressing life's day-to-day requirements.


**Civ. UJI 13-1810A NMRA**

GIVEN              _____
REFUSED           _____
MODIFIED          _____
WITHDRAWN         _____

55

**INSTRUCTION 44**

**LOSS OF CONSORTIUM; DAMAGES**

If you decide Plaintiffs have proven damage to a mutually dependent relationship between Ariely Jaquez and Apolinar Jaquez Garcia as a result of his death, you also must decide the amount of money that will reasonably compensate her for the harm she suffered from the loss of her relationship with Apolinar Jaquez Garcia. No fixed standard exists for deciding the amount of these damages. You must use your judgment to decide a reasonable amount of money to compensate the claimant.

**Civ. UJI 13-1810B NMRA**

GIVEN               _____
REFUSED            _____
MODIFIED          _____
WITHDRAWN    _____